Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, California 90067-3012
Zia F. Modabber (Bar No. 137388)
zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
tami.sims@katten.com
Tel: (310) 788-4400
Fax: (310) 788-4471
*Attorneys for Defendants Dwayne Michael
Carter Jr. p/k/a Lil Wayne, Young Money
Entertainment, LLC, Young Money
Publishing, Inc. Young Money Records,
Inc. Young Money Ventures, LLC, and
Young Money Touring, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation, | Case No.: 2:21-cv-01689-ODW-JC **REMOVED FROM STATE COURT** (Los Angeles Superior Court No. 2OSTCV47346) |
| Plaintiffs, | |
| v. | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
| DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | **DECLARATION OF TAMI KAMEDA SIMS** |
| Defendants. | |

- 1 -

150417208

## DECLARATION OF TAMI KAMEDA SIMS

I, TAMI KAMEDA SIMS, declare as follows:

1. I am a partner at Katten Muchin Rosenman LLP, attorneys for Defendants Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Carter"), Young Money Entertainment, LLC, Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc. (collectively, "Defendants") in the above-captioned action filed against them by Plaintiffs Ronald E. Sweeney and Avant Garde Management, Inc. (collectively, "Plaintiffs").

2. I have personal knowledge of the matters set forth in this Declaration and, were I called upon to testify to those facts under oath, I could and would do so.

3. Attached as Exhibit 1 is a copy of the First Amended Complaint that Carter filed in New York Supreme Court against Plaintiffs, *Carter v. Sweeney, et. al.*, Index No. 151067/2019.

4. Attached as Exhibit 2 is a copy of: (1) Defendants' Motion to Dismiss Plaintiffs' Complaint; (2) the supporting Declaration of Tami Kameda Sims and; (3) the supporting Declaration of Dwayne Michael Carter, Jr., all filed on April 30, 2021.

5. Attached as Exhibit 3 is a copy of: (1) Plaintiffs' Opposition to Defendants' Motion to Dismiss and; (2) the supporting Declaration of Ronald E. Sweeney, both filed on May 17, 2021.

6. Attached as Exhibit 4 is a copy of: (1) Defendants' Reply Brief in Support of Defendants' Motion to Dismiss; (2) the supporting Declaration of Theodore Harris; (3) the supporting Declaration of Beth Sabbagh and; (4) the supporting Declaration of Derek A. Williams, all filed on May 24, 2021.

7. Attached as Exhibit 5 is a copy of the Joint Rule 26(f) Report filed by all parties on June 14, 2021.

DECLARATION TAMI KAMEDA SIMS

150417208

8.  Attached as <u>Exhibit 6</u> is a copy of "Objections by Defendant [Carter] to Plaintiffs' Notice of Deposition and the Requests for Production of Documents in Exhibit 'A,'" dated August 4, 2021.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of September, 2021, at Los Angeles, California.


*/s/ Tami Kameda Sims*

_____
TAMI KAMEDA SIMS

DECLARATION TAMI KAMEDA SIMS

150417208

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DWAYNE MICHAEL CARTER JR., p/k/a Lil Wayne, :
                                      :

                        Plaintiff,         : Index No. 151067/2019
                                        : Index No. Purchased: 1/30/19
                                        :

              -against-           : **FIRST AMENDED COMPLAINT**
                                        :

RONALD E. SWEENEY, d/b/a SWEENEY,       :
JOHNSON & SWEENEY, a/k/a SWEENEY,      :
JOHNSON & SWEENEY, LLC, a/k/a LAW OFFICES :
OF RONALD E. SWEENEY, and AVANT GARDE    :
MANAGEMENT, INC.,                       :
                                        :

                       Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Plaintiff Dwayne Michael Carter Jr. p/k/a Lil Wayne, by his undersigned attorneys, for his First Amended Complaint against Defendants Ronald E. Sweeney ("Sweeney"), d/b/a Sweeney, Johnson & Sweeney, a/k/a Sweeney, Johnson & Sweeney, LLC, a/k/a Law Offices of Ronald E. Sweeney, and Avant Garde Management, Inc. ("Avant Garde"), states the following:

### PRELIMINARY STATEMENT

        1.   Carter is one of the most prominent rappers and recording artists in the world today, performing under the name Lil Wayne. Beginning in 2005, Carter hired Defendant Sweeney as his attorney and entrusted him to serve as his transactional counsel. Carter was personally managed by Cortez Bryant ("Bryant"), who has continued in that role from the early days of Carter's career to the present time, except for a short interruption.

        2.   Sweeney, who is licensed to practice law only in California, is purportedly a member/owner of a law firm, Sweeney, Johnson & Sweeney, a/k/a Sweeney, Johnson & Sweeney, LLC, a/k/a Law Offices of Ronald E. Sweeney, with an office in New York from which he conducted his legal activities on behalf of Carter. Upon information and belief, no such law firm

1

Case 2:21-cv-01689-ODW-JC   Document 41-3   Filed 09/22/21   Page 6 of 477   Page ID #:921

exists under the laws of any state and Sweeney lacked the ability to lawfully provide legal services to Carter in New York. Sweeney fraudulently omitted these and other material facts to induce Carter to hire him. Sweeney directed most of Carter's payments for legal services to be paid to Defendant Avant Garde, an entity in which Sweeney is or was an officer and director, but which is not a law firm.

3. As an attorney, Sweeney owed his client strict ethical duties to protect Carter's interests and not to take advantage of his lack of knowledge and training. Instead, Sweeney abused his position of trust and authority to enrich himself at Carter's expense, extracting tens of millions of dollars in unconscionable and unlawful fees.

4. Sweeney performed legal services for Carter on a contingency fee basis, but he did so without obtaining any signed written fee agreement, in violation of Cal. Bus. & Prof. Code §§ 6147 or 6148. In addition, Sweeney charged an unconscionable legal fee of 10% – double the customary rate for attorneys in the music industry – and he even took a 10% contingency fee on litigation settlement proceeds without Carter's written agreement.

5. Finally, upon information and belief, most, if not all the legal services provided by Sweeney were unlawfully provided in the State of New York, where he resides but is not licensed to practice law or, at times, when his California license was suspended.

6. Despite this unlawful behavior, Sweeney has continued to seek payment of millions of dollars more in unconscionable fees, which he claims are owed even though he fraudulently induced Carter to hire him as his attorney and was terminated by Carter for cause in September 2018.

7. Under California law, any fee agreement that does not comply with Cal. Bus. & Prof. Code §§ 6147 or 6148 is voidable at the option of the client. Carter has already voided any

2

prior agreements with Sweeney, and he now seeks a declaration by this Court declaring that Sweeney and his entities, whether real or fictitious, were not entitled to any compensation from Carter and are not entitled to receive any percentage of Carter's income from any source after he terminated Sweeney.

8.   In addition, Carter demands Sweeney disgorge all legal fees paid to him because of the absence of a written fee agreement between them, Sweeney's fraud, his failure to make mandatory disclosures, and, upon information and belief, his unauthorized practice of law in the State of New York and potentially elsewhere.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over all causes of action asserted herein pursuant to Article VI of the New York Constitution.

10. This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 because Defendants are physically present in New York County, and pursuant to CPLR § 302 because Defendants transacted business in New York County and committed tortious acts within New York County.

11. Venue is proper in this Court pursuant to CPLR § 503 because Sweeney resides in New York County and a substantial part of the events or omissions giving rise to Carter's claims stated herein occurred in New York County.

## THE PARTIES

12. Carter is a natural person residing in the State of Florida.

3

Case 2:21-cv-01689-ODW-JC   Document 41-3   Filed 09/22/21   Page 8 of 477   Page ID #:923

13. Sweeney is an attorney, who has resided, upon information and belief, in the State of New York since 1996.  He is licensed to practice law in California only and not in any other state.[1]

14. Avant Garde is a corporation organized and existing under the laws of the State of California.[2]  Upon information and belief, Avant Garde is not an entity created for the purpose of practicing law in any state.

### FACTS

15. Carter has enjoyed unparalleled critical and commercial success in the music industry.  He was discovered at the age of nine and signed as a recording artist only a few years later.  Since that time, Carter has released a total of twelve studio albums and has sold over 100 million records worldwide.  He has received numerous musical nominations and awards, including five Grammy Awards, fifteen BET Hip Hop Awards, four Billboard Music Awards, and many others.

16. In addition to his own success, Carter has played a significant role in bringing other major artists to prominence through his record label Young Money Entertainment ("Young Money"), including the rappers Nicki Minaj, Drake, and Tyga.

---

[1] Sweeney's "Attorney Licensee Profile" on the State Bar of California website lists his address as "Sweeney, Johnson & Sweeney, 222 Riverside Drive, PHA, New York, New York 10025." *See* http://members.calbar.ca.gov/fal/Licensee/Detail/85322 (last reviewed on 3/18/19). The California Secretary of State website shows no registration of an entity known as "Sweeney, Johnson & Sweeney," "Law Offices of Ronald E. Sweeney," or any similar name. *See* https://businesssearch.sos.ca.gov/ (queries for "Sweeney, Johnson & Sweeney" and "Law Offices of Ronald E. Sweeney"; last reviewed on 3/18/19). The New York Department of State website shows no registration of an entity known as "Sweeney, Johnson & Sweeney," "Law Offices of Ronald E. Sweeney," or any similar name. *See* https://www.dos.ny.gov/corps/bus_entity_search.html (queries for "Sweeney, Johnson & Sweeney" and "Law Offices of Ronald E. Sweeney"; last reviewed on 3/18/19).

[2] The California Secretary of State website discloses that the corporation's status is "FTB [Franchise Tax Board] Suspended." *See* https://businesssearch.sos.ca.gov/ (query for "Avant Garde Management"; last reviewed on 3/18/19).

4

INDEX NO. 151067/2019

Case 2:21-cv-01689-ODW-JC   Document 41-3   Filed 09/22/21   Page 9 of 477   Page
ID #:924

17. Like many successful recording artists, Carter has no training in law or accounting and has relied on his closest and most trusted lifelong friends to advise him, including his personal manager Bryant, and the president of Young Money, Jermaine Preyan, p/k/a Mack Maine ("Mack"). Both Bryant and Mack were Carter's childhood friends from New Orleans, Louisiana.

18. In January 2004, Bryant began serving as Carter's personal manager. At the time, Carter had no attorney. Bryant and Carter had few connections in the industry and no knowledge of the customary rates charged by entertainment lawyers. However, Bryant sought recommendations from his colleagues and was referred to Sweeney, who presented himself to Bryant as an entertainment lawyer with years of relevant experience and a law office in New York from which he would provide legal services to Carter.

## I. Sweeney's Oral Agreement Concerning the Carter Representation

19. Sweeney informed Bryant that he would represent Carter in exchange for a contingency fee of 10% of the income from any "deals he closed" for him. This proposal was a contingency fee arrangement because the size of Sweeney's legal fees would be a percentage of Carter's income on the deals Sweeney closed, and was conditioned entirely on Carter's success in the music industry.

20. Sweeney failed to inform Bryant or Carter that the customary rate for lawyers in the music industry was only half that amount, or 5%. He also failed to inform Bryant or Carter that, in order to contract to represent Carter on a contingency fee basis, as a California attorney he was required to provide Carter with a written agreement with prescribed mandatory disclosures, and which was executed by both parties.

21. California Business and Professions Code § 6147 provides:

> (a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the

5

Case 2:21-cv-01689-ODW-JC   Document 41-3   Filed 09/22/21   Page 10 of 477   Page ID #:925

client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following:

(1) A statement of the contingency fee rate that the client and attorney have agreed upon.

(2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery.

(3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney.

(4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client.

(5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate.

(b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee.

(c) This section shall not apply to contingency fee contracts for the recovery of workers' compensation benefits.

(d) This section shall become operative on January 1, 2000.

22. Similarly, California Business and Professions Code § 6148 provides:

(a) In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following:

(1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case.

(2) The general nature of the legal services to be provided to the client.

6

(3) The respective responsibilities of the attorney and the client as to the performance of the contract.

(b) All bills rendered by an attorney to a client shall clearly state the basis thereof. Bills for the fee portion of the bill shall include the amount, rate, basis for calculation, or other method of determination of the attorney's fees and costs. Bills for the cost and expense portion of the bill shall clearly identify the costs and expenses incurred and the amount of the costs and expenses. Upon request by the client, the attorney shall provide a bill to the client no later than 10 days following the request unless the attorney has provided a bill to the client within 31 days prior to the request, in which case the attorney may provide a bill to the client no later than 31 days following the date the most recent bill was provided. The client is entitled to make similar requests at intervals of no less than 30 days following the initial request. In providing responses to client requests for billing information, the attorney may use billing data that is currently effective on the date of the request, or, if any fees or costs to that date cannot be accurately determined, they shall be described and estimated.

(c) Failure to comply with any provision of this section renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.

(d) This section shall not apply to any of the following:

(1) Services rendered in an emergency to avoid foreseeable prejudice to the rights or interests of the client or where a writing is otherwise impractical.

(2) An arrangement as to the fee implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client.

(3) If the client knowingly states in writing, after full disclosure of this section, that a writing concerning fees is not required.

(4) If the client is a corporation.

(e) This section applies prospectively only to fee agreements following its operative date.

(f) This section shall become operative on January 1, 2000.

23. Sweeney and Carter never entered into a signed written agreement to memorialize

Sweeney's provision of legal services to Carter.  Sweeney also failed to make any of the mandatory

7

written disclosures required by Cal. Bus. & Prof. Code §§ 6147 or 6148 concerning the terms of his representation in any contract which was ever reduced to a signed writing.[3]

24. Nonetheless, in 2005, Sweeney began representing Carter and proceeded to do so continuously for more than 13 years based upon nothing more than a purported oral agreement.

25. Although California and New York law render Sweeney's oral agreement voidable at Carter's option, or void *ab initio*, Sweeney failed to inform Bryant or Carter that the agreement was voidable.

26. Instead, Sweeney stated that Carter could fire him at any time.  Unbeknownst to Bryant or Carter, Sweeney intended to claim entitlement to a percentage fee on any deals closed by him for so long as income was earned by Carter on those deals, including after Sweeney's termination.

27. Although Bryant and Carter did not know it at the time, if and when in the future Carter elected to void any purported oral agreement with Sweeney, under both California and New York law, any obligation to continue making payments ceased and rendered prior payments subject to disgorgement.

## II.  Sweeney's Unauthorized Practice of Law

28. Upon information and belief, in 1996 Sweeney resided in New York and continued to reside there throughout his representation of Carter.

29. At various times before and after 2008, Sweeney used the following email signature:

---

[3] New York law also requires an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client to provide a written letter of engagement before commencing the representation that explains the scope of legal services to be provided, explains the attorney's fees to be charged, expenses and billing practices, and where applicable, provides that the client may have a right to arbitration under Part 137.  22 NYCRR § 1215.1.

8

> Ronald E. Sweeney, Esq.
> Law Offices of Ronald E. Sweeney
> 222 Riverside Drive, PH5A
> New York, NY 10025

30. The above-listed address falsely implies that Sweeney is a New York lawyer with a registered law office at that address.  Upon information and belief, no such registered law office existed.  In using this email signature, Sweeney unlawfully held himself out as entitled to practice law under the laws of the State of New York.

31. At various times beginning in or around 2009, and continuing thereafter, Sweeney also used the following email signature:

> Law Office of Ronald E. Sweeney
> 1790 Broadway, 10th Floor
> New York, New York 10019

Upon information and belief, no such registered law office existed.  This email signature also falsely implies that Sweeney is a New York lawyer practicing in a New York law office.

32. By 2015, Sweeney used the following email signature:

> Ronald E. Sweeney, Esq.
> Sweeney, Johnson & Sweeney, LLC
> 152 W. 57th Street, 8th Floor
> New York, NY 10019

33. This email signature also falsely implies that Sweeney is a New York lawyer practicing in a New York law firm called "Sweeney, Johnson & Sweeney, LLC."  Upon information and belief, no such entity existed or exists.  In using this email signature, Sweeney continued to unlawfully hold himself out as entitled to practice law under the laws of the State of New York.

34. As recently as this year, Sweeney regularly used the following email signature:

<div align="center">9</div>

Case 2:21-cv-01689-ODW-JC   Document 41-3   Filed 09/22/21   Page 14 of 477   Page ID #:929

Ronald E. Sweeney
Sweeney, Johnson & Sweeney, LLC
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

35. While the above email signature discloses that Sweeney is licensed in California, it fails to disclose that he is *only* licensed in California, is not licensed in any other state, and is not licensed in New York, where the address and telephone area code indicate that his office is located. In using this email signature, Sweeney unlawfully held himself out as entitled to practice law under the laws of the State of New York.

36. Upon information and belief, 222 Riverside Drive is Sweeney's condominium residential address, and there is no entity registered in New York or California with the name "Sweeney, Johnson & Sweeney," "Sweeney, Johnson & Sweeney, LLC," or "Law Offices of Ronald E. Sweeney."

37. Sweeney failed to inform Bryant or Carter that by representing Carter while Sweeney resided in New York, he was committing the statutory offense of unauthorized practice of law. *See* N.Y. Judiciary Law §§ 478 and 485. Under New York law, any agreement for the provision of legal services constituting the unauthorized practice of law is illegal and unenforceable.

38. Upon information and belief, from September 16, 2005 until March 20, 2007, and for the period July 1 to July 9, 2008, Sweeney's California license to practice law was suspended. During these periods, Sweeney was not licensed to practice law in any jurisdiction, yet he continued to represent Carter and, upon information and belief, received payments of more than $500,000 in legal fees from Carter.

10

39. Upon information and belief, in 2005, 2006, 2007, and 2008, Sweeney failed to inform Bryant or Carter that his license had been suspended. Sweeney also failed to inform Bryant or Carter that by representing Carter while his California license was suspended, he was committing the statutory offense of unauthorized practice of law. *See* Cal. Bus. & Prof. Code § 6126; N.Y. Judiciary Law § 486. Under California law, an attorney who fails to disclose to his client that his license is suspended and performs legal services while not authorized to practice law is not entitled to any legal fees for his services.

40. Despite the above, Sweeney provided legal services to Carter from 2005 until September 2018 and was paid contingency fees at a rate of 10% on numerous deals. During this period, Sweeney was paid by Carter approximately $20,000,000 in legal fees.

41. In collecting those legal fees, upon information and belief, Sweeney routinely failed to submit detailed, formal invoices to Bryant or Carter for legal services rendered, and he provided no records of hourly time-keeping or itemization of activities performed. Instead, Sweeney kept track of incoming payments to Carter's and Carter's business accounts administered by his business managers and instructed those business managers to pay the legal fees Sweeney claimed were owed either directly to him or to his company Avant Garde.

42. At times, Bryant, on behalf of Carter, approved fee payments, but did so without knowledge that Sweeney's purported oral agreement with Carter was voidable at any time, that Sweeney was committing the unauthorized practice of law, and that Sweeney's percentage contingency fee was twice the customary rate for attorneys in the music industry.

### III. Sweeney's Attempts to Claim Even Greater Legal Fees

43. In 2009 or 2010, apparently not content with the millions of dollars in unconscionable legal fees he had already been paid, Sweeney began seeking out ways to further

11

enrich himself at Carter's expense. Sweeney proposed that, instead of receiving a 10% contingency fee only on deals he closed, he should also receive 10% of all profits earned by Young Money, essentially giving him an interest in all future income streams of Carter's business. Bryant rejected this proposal on Carter's behalf.

44. In 2010, Carter was incarcerated for nine months at Riker's Island. Perhaps sensing an opportunity, Sweeney attempted to pressure his client, Carter, who, while in jail, was vulnerable, frustrated and, most importantly, had limited access to his advisors Bryant and Mack, to agree to pay Sweeney future income streams from Carter's businesses. Carter refused. Sweeney made other overtures to pressure Carter for more legal fees, which were likewise rebuffed by Carter.

45. Although Sweeney was a transactional lawyer, he also sought to claim entitlement to more legal fees by involving himself in Carter's litigated disputes.

46. Sweeney advised Carter to pursue litigation of certain disputes on behalf of himself and Young Money. Sweeney did so intending to claim for himself a 10% contingency fee of any awards or settlements that might be paid to Carter or his entities, even though he was relying on other counsel who were licensed to practice law in the relevant jurisdictions to handle the actual litigation work.

47. However, under the terms of Sweeney's purported oral agreement, particularly given that the terms were never reduced to writing, Sweeney neither had the right to claim legal fees for litigation work being performed by other counsel, nor for "managing" or "directing" that work as his contingency fee arrangement was purportedly based solely on the "deals he closed."

## IV. <u>Sweeney's Taking of a 10% Contingency Fee on Litigation Settlement Proceeds</u>

48. In 2014, Carter had a legal dispute with Cash Money Records ("Cash Money"), the record company that produced and distributed his recordings. Sweeney advised Carter, through Bryant, to hire New York litigation counsel to pursue claims on his and Young Money's behalf against Cash Money in federal court in New York. Those claims were filed in January 2015 and voluntarily dismissed several months later.

49. Carter and Young Money were later sued by their New York litigation counsel in a dispute over the non-payment of legal fees. After that New York action was commenced in federal court, Sweeney negotiated a settlement directly with the plaintiff on behalf of Carter and Young Money, purporting to represent them in a pending action in a court where he was not admitted to practice and had never appeared.

50. Sometime later, Carter's former New York litigation counsel commenced a second action in the same court concerning non-payment of the legal fees negotiated to be paid from the settlement of the first action the New York law firm had commenced. Sweeney was notified of the commencement of the second action, but negligently failed to act, causing Carter and Young Money to fail to timely appear and allowing the New York law firm to obtain a default judgment and writ of execution against Carter for hundreds of thousands of dollars.

51. At or around the time the claims against Cash Money were voluntarily dismissed in federal court in New York, Sweeney advised Carter, through Bryant, to hire Louisiana litigation counsel to pursue the same claims against Cash Money in state court in Louisiana (the "Cash Money Claims"). Those claims were filed in May 2015.

52. As the costs of litigation in Louisiana began to mount, Sweeney advised Carter, through Bryant, to hire a California law firm as litigation counsel (the "California litigation firm")

13

to take over the litigation of the Cash Money Claims (with the ongoing assistance of Louisiana local counsel), and to pursue a separate litigation in federal court in California against Universal Music Group and SoundExchange (the "UMG Claims").

53. In February 2016, Sweeney advised Carter to accept a contingency fee agreement with the California litigation firm. That contingency fee agreement, unlike Sweeney's own purported oral agreement, was provided to Carter in writing. In the event of any recovery, Carter's contingency fee agreement with the California litigation firm required him to pay it twenty-three and one-third percent (23-1/3%) of any recovery from the Cash Money Claims and fifteen percent (15%) of any recovery from the UMG Claims.

54. Sweeney negotiated the fee provisions of the contingency fee agreement with the California litigation firm, and through Bryant, informed Carter that they would not obligate him to continue paying the California litigation firm a share of future income, such as royalties or streaming income, that accrued after the date of settlement.

55. Also, neither Bryant nor Carter were informed at the time the California litigation firm was engaged that Sweeney intended to claim a contingency fee of 10% of any recovery from the Cash Money Claims and the UMG Claims.

56. In fact, Bryant and Carter selected the California litigation firm at Sweeney's urging because the contingency fee percentages offered by the California litigation firm appeared reasonable to them, given the nature of the claims, the inherent risks of litigation, and that often contingency fees are higher.

57. Upon information and belief, Sweeney purposely concealed from Bryant and Carter the true amounts of the legal fees he intended to participate in at Carter's expense. These facts

14

were material and were concealed by Sweeney for the purpose of inducing Carter to agree to hire the California litigation firm.

58. Although Carter signed the written contingency fee agreement, he never met or spoke with anyone at the California litigation firm. Instead, it was Sweeney who communicated with the California litigation firm during the more than two years of its representation of Carter.

59. In March 2016, the California litigation firm filed suit concerning the UMG Claims in federal court in California. In July 2016, that action was stayed pending resolution of the Louisiana state court action concerning the Cash Money Claims.

60. In March 2018, the California litigation firm negotiated a settlement of the Cash Money Claims that also resolved the UMG Claims. The terms of the settlement have not been made public but required certain payments to be made to Carter and Young Money.

**V. Sweeney's Attempts to Manipulate Carter**

61. At or around the same time in 2018, Sweeney began to realize that Bryant and Mack would not advise Carter to agree to pay him an unearned windfall in the form of 10% of the substantial amounts due to Carter under the settlement of the Cash Money Claims and UMG Claims.

62. For the previous 13 years, Sweeney had only rarely spoken to Carter directly and had, in most instances, used Bryant as a go-between. But in early 2018, Sweeney asked Bryant for Carter's direct contact information and began communicating directly with Carter on a more frequent basis.

63. Upon information and belief, Sweeney began a manipulative campaign of disparagement against Bryant and Mack to pressure Carter to terminate their services and to rely solely upon him at the same time the settlement negotiations were being finalized by the California

15

litigation firm. Sweeney even proposed that, upon terminating Bryant and Mack, Carter should hire him to serve as both Carter's personal manager and his attorney, despite the clear conflict of interest it would pose.

64. After several weeks of direct communication with Carter, Sweeney briefly succeeded in persuading him to terminate Bryant as his personal manager. Carter and Bryant continued to communicate during this time and regularly discussed Sweeney's proposal to expand his own role. Mack and Bryant also communicated with each other about Sweeney, and both of them emphatically advised Carter to reject Sweeney's offer to serve as both personal manager and attorney.

65. At no time was Sweeney ever authorized to act as Carter's personal manager.

66. In May 2018, the California litigation firm received payments on behalf of Carter pursuant to the settlement of the Cash Money Claims. With Bryant out of the way, having been fired by Carter, Sweeney immediately directed Carter's business managers to pay him 10% of the gross amounts received by the California litigation firm. Carter never authorized any payment to Sweeney from the Cash Money Claims.

67. Upon information and belief, the business managers simply treated Sweeney's self-serving assurances as authorization and paid him as he directed by wiring the money to Sweeney's company, Avant Garde.

68. Although Sweeney continued to try, he could not rid himself of Mack the way he had (temporarily) succeeded in causing Carter to fire Bryant. In September 2018, Mack told Carter that Sweeney had been taking advantage of his position by attempting to drive a wedge between Carter and his most trusted friends and advisors, and that Mack believed Sweeney was claiming

16

entitlement to exorbitant legal fees contrary to Carter's best interests. Carter agreed. On or about September 18, 2018, Carter terminated Sweeney.

69. Throughout Sweeney's legal representation of Carter, Sweeney occupied a position of trust and confidence, and Carter reasonably relied on Sweeney to disclose to Bryant or Carter all material facts concerning his representation and the legal fees he charged.

70. By failing to disclose his misconduct and concealing the facts about his representation and legal fees, Sweeney wrongfully prevented Bryant and Carter from discovering the truth. Carter could not have reasonably discovered Sweeney's wrongful conduct prior to terminating him.

## VI. Sweeney's Post-Termination Fee Claims

71. Although Sweeney's termination voids any and all prior agreements that were not already void *ab initio*, it has not stopped him from trying to claim further entitlement to Carter's monies.

72. In October 2018, after Sweeney's termination, the California litigation firm received an additional payment from the settlement of the Cash Money Claims and UMG Claims. Upon information and belief, Sweeney directed the California litigation firm to pay him a 10% contingency fee, despite knowing that he had already been fired and apparently realizing he would not be authorized to receive any payment if the monies were turned over to Carter's business managers. Indeed, Carter's business managers were instructed not to pay Sweeney this amount or any future amounts.

73. Since Sweeney's firing, Bryant and Carter have also learned that, contrary to Carter's understanding when he signed the California litigation firm's written contingency fee

17

agreement, the California litigation firm has construed the engagement letter to entitle it to more payments in the future.

74. Recently, Sweeney has also made demands for the payment of millions of dollars in contingency fees that he claims are past due (including fees on advances from deals that may or may not yield Carter any profits once recoupable expenses are applied against them) or will be due based on income that Carter has not yet received. Carter has rejected these demands.

75. Even after Carter filed suit against Sweeney in the present action, Sweeney has improperly attempted to circumvent Carter's counsel and communicate directly with Carter – a represented party – to persuade him that he needs Sweeney to continue representing him with respect to the settlement of the Cash Money and UMG Claims.

## FIRST CAUSE OF ACTION
### (Fraudulent Inducement Against Sweeney)

76. Carter incorporates each and every allegation in paragraphs 1 through 75 as if fully set forth herein.

77. In 2005, Sweeney made material representations to Carter for the purpose of inducing Carter to agree to pay Sweeney legal fees in exchange for legal services including, among other things, the representation that Sweeney was an attorney authorized to provide legal services to Carter on an ongoing basis.

78. At the time Sweeney made these representations, he was a resident of New York and knew that he was not authorized to provide legal services in New York. Despite knowing that it was unlawful, Sweeney held himself out to the public – and to Carter – as a practicing attorney with an office in New York.

79. From September 16, 2005 until March 20, 2007, and from July 1 to July 9, 2008, Sweeney's license to practice law in California was suspended.

18

80. During these periods, the first of which was at or around the time Sweeney first offered to represent Carter, Sweeney knew that he was not authorized to practice law in any state.

81. Sweeney had a duty to Carter to disclose all material facts, including the fact that his license to practice law in California was suspended and the fact that he was not licensed in New York where he resided and held himself out as having a law office.

82. Sweeney intentionally omitted disclosing to Carter the foregoing with the intention that Carter rely on the false representations that Sweeney was a lawyer authorized to practice law, even at times when he was prohibited from doing so, and that Sweeney could lawfully provide legal services from a law office in New York.

83. The fact that Sweeney was not authorized to practice law in the place where legal services would be provided was a material omission because Sweeney was offering to provide legal services to Carter in exchange for legal fees.

84. Carter justifiably relied on Sweeney's representations because Sweeney held himself out as having knowledge and expertise as an attorney.

85. Carter was injured by being induced to pay legal fees to Sweeney, which Sweeney was not entitled to receive.

86. Had Sweeney disclosed to Carter that Sweeney was not authorized to practice law in any state during certain times, Carter would have terminated his services and engaged another lawyer capable of lawfully representing his interests.

87. Sweeney continued to represent Carter until he was terminated in September 2018.

88. As a direct and proximate result of the aforesaid fraudulent inducement, Carter is entitled to damages in an amount to be determined at trial, which amount is not less than $20,000,000.

<center>19</center>

## SECOND CAUSE OF ACTION
### (Legal Malpractice Against Sweeney)

89. Carter repeats and realleges each and every allegation in paragraphs 1 through 88 as if fully set forth herein.

90. Sweeney agreed to and did in fact act as Carter's attorney from in or around 2005 until September 2018.

91. As Carter's attorney, Sweeney owed Carter fiduciary duties to use such professional skill, care, competence, prudence, and diligence as other attorneys commonly possess and exercise on behalf of similarly situated clients under similar circumstances in similar communities.

92. Specifically, among other duties, Sweeney was required to: (a) discharge his responsibilities competently and with integrity, objectivity, loyalty, fidelity, due professional care, and a genuine interest in serving his client; (b) remain free from conflicts of interest; (c) offer written disclosure concerning, and obtain informed written consent to, any potential or actual conflict of interest; (d) provide full, frank, candid, and unbiased advice to his client; (e) provide all information to his client that is material to his representation; and (f) perform his professional services with reasonable skill, competence, and diligence, putting the best interests of his client before his own self-interest.

93. Sweeney failed to adhere to the required standards of professional skill, care, competence, prudence, and diligence commonly possessed and exercised by attorneys under similar circumstances in similar communities.

94. Sweeney negligently, carelessly, and recklessly rendered his services to Carter by, among other things: (a) practicing law in New York where to do so was a violation of New York Judiciary Law § 478 and California Rule of Professional Conduct 5.5(a)(1); (b) holding himself

20

out to the public and otherwise representing that he was admitted to practice law in New York, and establishing for himself an office or other systematic and continuous presence in New York for the practice of law, in violation of 22 NYCRR § 523.1; (c) failing to exercise due care to inform Carter of material facts concerning his representation, including the fact that he was not licensed to practice law in the state where he performed legal services for his client, in violation of California Rule of Professional Conduct 1.4; (d) breaching his duty of care by his advice concerning the California litigation firm's interpretation of its written contingency fee agreement, in violation of California Rules of Professional Conduct 1.1 and 1.4; and (e) breaching his duty of care by failing to keep his client reasonably informed and negligently causing his client to default in the federal court action brought by New York litigation counsel concerning a dispute over legal fees, in violation of California Rules of Professional Conduct 1.1, 1.3, and 1.4.

95. The statutory and code violations described above further constitute professional negligence per se, as they show that Sweeney violated New York law, the standard of care set forth by California statutes, and the California Rules of Professional Conduct, which are intended to govern lawyers' obligations to their clients.

96. Sweeney's purported oral agreement to provide legal services was illegal and void as against public policy. And Sweeney is not entitled to any fee for the unauthorized practice of law.

97. As a direct and proximate result of the above-described professional negligence, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Sweeney)

98. Carter repeats and realleges each and every allegation in paragraphs 1 through 97 as if fully set forth herein.

99. At all relevant times herein, a fiduciary relationship existed between Sweeney and Carter.

100. At all relevant times, Carter reasonably relied upon Sweeney's superior knowledge and expertise and trusted that Sweeney would conduct himself in Carter's best interest and not in his own self-interest.

101. The fiduciary relationship between the parties required Sweeney to treat Carter with complete fairness and the highest duty of loyalty and candor, including a duty to disclose to Carter all material facts concerning the legal services Sweeney provided and the fees he charged. It also required Sweeney to disclose all relevant information truthfully and candidly to Carter, and not to misrepresent or conceal any facts in connection with any of the services Sweeney provided and the fees he charged.

102. Sweeney had a duty to refrain from conducting himself in any manner that was in conflict with the best interests of Carter without full written disclosure and informed written consent. Sweeney owed Carter a fiduciary duty to refrain from self-dealing and engaging in undisclosed or unconsented-to conflicts of interest.

103. Sweeney breached his fiduciary duties to Carter by, among other things: (a) taking a 10% contingency fee tied to Carter's variable earnings without having any signed written contingency fee agreement between them; (b) taking an excessive and unconscionable fee of 10% (or double the customary rate for attorneys in the entertainment industry); (c) failing to inform Carter's of material facts concerning his representation and fees, including the fact that his

22

Case 2:21-cv-01689-ODW-JC    Document 41-3    Filed 09/22/21    Page 27 of 477    Page ID #:942

contingency fees were voidable, excessive, and unconscionable; (d) taking a 10% contingency fee on litigation settlement proceeds without disclosing or obtaining written consent from Carter; and (e) directing that Carter's funds be used to pay Sweeney's voided contingency fees without Carter's authorization after Sweeney had been fired for cause and any purported oral agreement concerning Sweeney's contingency fees had been voided.

104. As a direct and proximate result of the above-described breaches of fiduciary duty, Carter has been damaged in an amount to be determined at trial, which amount is not less than $10,000,000.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment Against Sweeney and Avant Garde)

105. Carter repeats and realleges each and every allegation in paragraphs 1 through 104, as if fully set forth herein.

106. Carter's payments to Sweeney and, at Sweeney's direction, Avant Garde for legal services were premised on Sweeney being something he was not – a lawyer authorized to practice law in New York – and Avant Garde being something it was not – a corporation authorized to practice law.

107. Sweeney and, at Sweeney's direction, Avant Garde collected undeserved, impermissible, and voidable contingency fees for legal services without any signed written contingency fee agreement while Sweeney was engaging in the unauthorized practice of law in New York and holding himself out as authorized to practice law in New York.

108. Sweeney and, at his direction, Avant Garde collected these fees from Carter, despite the fact that Sweeney breached his fiduciary duties to his client and failed to disclose material facts concerning his representation and fees.

23

109.  Carter's payment of legal fees, which Sweeney and Avant Garde were not entitled to receive provided them with an unlawful benefit at Carter's expense, which Sweeney and Avant Garde had no right to receive or retain.

110.  Sweeney and Avant Garde would not have received the unlawful benefit but for their wrongful conduct.

111.  Carter suffered compensatory damages as a proximate result of Sweeney's and Avant Garde's unlawful conduct.

112.  Accordingly, Carter is entitled to restitution from Sweeney and Avant Garde, in addition to all monetary damages due, in an amount to be determined at trial, which amount is not less than $20,000,000.

## FIFTH CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 6147 Against Sweeney)

113.  Carter incorporates each and every allegation in paragraphs 1 through 112 as if fully set forth herein.

114.  California Business and Professions Code § 6147 requires all contingency fee arrangements between an attorney and his client to be set forth in a signed written agreement, which must contain statutorily mandated disclosures, including the contingency fee rate, how disbursements and costs will affect the contingency fee and recovery, the extent to which the client may be required to compensate the attorney for related matters, and that the contingency fee is not set by law and is negotiable.

115.  In the absence of a written agreement in conformity with the statute, signed by the attorney and client, the contingency fee arrangement is voidable at the client's election.  Cal. Bus. & Prof. Code § 6147(b).

Case 2:21-cv-01689-ODW-JC    Document 41-3    Filed 09/22/21    Page 29 of 477   Page
ID #:944

116.  At all relevant times, Sweeney served as Carter's attorney and provided to him legal advice and services.  Sweeney was paid contingency fees totaling approximately $20,000,000 that were tied to Carter's variable earnings.  The amounts paid to Sweeney or, at his direction, Avant Garde constituted an excessive, unreasonable and unconscionable fee.

117.  Despite collecting millions of dollars of contingency fees, Sweeney had no statutorily prescribed, signed written agreement with Carter for the provision of legal services.

118.  Sweeney's purported oral agreement with Carter did not conform with the requirements of California Business and Professions Code § 6147, and therefore violated the statute.  In accordance with § 6147(b), any purported fee arrangement between Sweeney and Carter is voidable at Carter's option, to the extent it was not already void *ab initio* due to illegality.

119.  Carter has exercised his option to void any purported contingency fee arrangement with Sweeney.

120.  As a direct and proximate result of Sweeney's violation of California Business and Professions Code § 6147, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

## SIXTH CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 6148 Against Sweeney)

121.  Carter incorporates each and every allegation in paragraphs 1 through 120 as if fully set forth herein.

122.  California Business and Professions Code § 6148 requires fee arrangements between attorney and client that do not fall within § 6147 to be set forth in a signed written agreement, which must contain statutorily mandated disclosures, including the basis of compensation and fees, the nature of the legal services to be provided, and the respective responsibilities of the attorney and client.  In the absence of such a written agreement signed by

25

the attorney and client, the fee arrangement is voidable at the client's election.   Cal. Bus. & Prof. Code § 6148(c).

123.   At all relevant times, Sweeney served as Carter's attorney and provided to him legal advice and services.  Sweeney was paid contingency fees tied to Carter's variable earnings totaling approximately $20,000,000.  These amounts paid to Sweeney or, at his direction, Avant Garde constituted an excessive, unreasonable and unconscionable fee.

124.  Despite collecting millions of dollars of contingency fees, Sweeney had no statutorily prescribed, signed written agreement with Carter for the provision of legal services.

125.  To the extent that Sweeney's purported contingency fee arrangement with Carter is not within the scope of California Business and Professions Code § 6147, it was subject to and violated the requirements of § 6148.  Thus, pursuant to § 6148(c), any purported fee arrangement between Sweeney and Carter is voidable at Carter's option, to the extent it was not already void *ab initio* due to illegality.

126.  Carter has exercised his option to void any purported contingency fee arrangement with Sweeney.

127.  As a direct and proximate result of Sweeney's violation of California Business and Professions Code § 6148, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**(Violation of Cal. Bus. & Prof. Code §§ 17200-17210**
**Against Sweeney and Avant Garde)**

</div>

128.  Carter incorporates each and every allegation in paragraphs 1 through 127 as if fully set forth herein.

Case 2:21-cv-01689-ODW-JC    Document 41-3    Filed 09/22/21    Page 31 of 477    Page ID #:946

129.  California's Unfair Competition Law (the "UCL"), which is set forth in California Business and Professions Code §§ 17200-17210, provides that unfair competition shall mean and include any unlawful and unfair business act or practice.

130.  The UCL incorporates violations of other laws and treats them as unlawful practices that are independently actionable.  A cause of action under the UCL may be predicated on unlawful conduct that violates established public policy or is immoral, unethical, oppressive or unscrupulous and causes injury to consumers, which outweighs its benefits.

131.  Sweeney's and Avant Garde's wrongful conduct constitutes unlawful and unfair business acts or practices because Sweeney violated numerous California Rules of Professional Conduct, New York law, and the California Business and Professions Code, and he used Avant Garde, a suspended California corporation not authorized to practice law, as a conduit for the unconscionable legal fees paid to him by Carter.

132.  As alleged above, Sweeney violated, among other things: (a) California Rule of Professional Conduct 5.5(a)(1) by practicing law in New York in violation of New York Judiciary Law § 478; (b) New York Judiciary Law § 478 for the same reason as (a) above; (c) 22 NYCRR § 523.1 by holding himself out as admitted to practice law in New York and establishing for himself an office or other systematic and continuous presence in New York for the practice of law; (d) Cal. Bus. & Prof. Code § 6126 by continuing to practice law, and holding himself out as entitled to practice law, by representing Carter while his California license was suspended; (e) Cal. Bus. & Prof. Code § 6128 by deceiving his client by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (f) California Rule of Professional Conduct 1.5 by agreeing to, charging, and collecting an unconscionable 10% contingency fee; (g) California Business and Professions Code § 6147 or § 6148 by failing to enter into a statutorily

prescribed, signed written contingency fee agreement between Carter and Sweeney for the provision of legal services; (h) California Rule of Professional Conduct 1.4 by failing to inform Carter of material facts concerning his representation and fees, including the fact that his contingency fees were voidable and unconscionable, the fact that he was not licensed to practice law in the state where he performed legal services for Carter, and the fact that his license to practice law in any jurisdiction was at times suspended; (i) California Rule of Professional Conduct 1.4 by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (j) California Rule of Professional Conduct 5.4 by sharing legal fees with Avant Garde, a suspended California corporation not authorized to practice law; (k) California Rules of Professional Conduct 1.1 and 1.4 by negligently advising Carter concerning the California litigation firm's interpretation of its written contingency fee agreement; and (l) California Rules of Professional Conduct 1.1, 1.3, and 1.4 by failing to keep Carter reasonably informed and negligently causing Carter to default in the federal court action brought by New York litigation counsel concerning a dispute over legal fees.

133. Finally, Sweeney's acts and practices, as alleged herein, include, but are not limited to, breaches of fiduciary duty and legal malpractice. These also constitute unlawful and unfair business acts or practices under California Business and Professions Code §§ 17200-17210, because such acts are immoral, unethical, oppressive, or unscrupulous and cause injury to consumers, which outweighs their benefits.

134. As a direct and proximate result of Sweeney's unlawful and unfair business acts and practices, Sweeney and Avant Garde have been unjustly enriched and Carter has suffered monetary harm.

135.  Carter seeks disgorgement and restitution of all fees paid to Sweeney and Avant Garde in an amount to be determined at trial, which amount is not less than $20,000,000.

## EIGHTH CAUSE OF ACTION
### (Violation of N.Y. Gen. Bus. Law § 349 Against Sweeney and Avant Garde)

136.  Carter incorporates each and every allegation in paragraphs 1 through 135 as if fully set forth herein.

137.  Section 349 of the New York General Business Law prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

138.  Section 349 applies to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of New York.

139.  Sweeney's and Avant Garde's wrongful conduct constitutes deceptive acts or practices because Sweeney violated numerous California Rules of Professional Conduct, New York law, and the California Business and Professions Code, and used Avant Garde, a suspended California corporation not authorized to practice law, as a conduit for legal fees paid to him by Carter.

140.  As alleged above, Sweeney committed unlawful deceptive acts by misleading Carter concerning his violations of, among other things: (a) California Rule of Professional Conduct 5.5(a)(1) by practicing law in New York in violation of New York Judiciary Law § 478; (b) New York Judiciary Law § 478 for the same reason as (a) above; (c) Cal. Bus. & Prof. Code § 6126 by continuing to practice law, and holding himself out as entitled to practice law, by representing Carter while his California license was suspended; (d) Cal. Bus. & Prof. Code § 6128 by deceiving Carter by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (e) California Rule of Professional Conduct 1.5 by agreeing to,

29

charging, and collecting an unconscionable 10% contingency fee; (f) California Business and

Professions Code § 6147 or § 6148 by failing to provide Carter with a statutorily prescribed, signed

written contingency fee agreement between Carter and Sweeney for the provision of legal services;

(g) California Rule of Professional Conduct 1.4 by failing to inform Carter of material facts

concerning his representation and fees, including the fact that his contingency fees were voidable

and unconscionable, the fact that he was not licensed to practice law in the state where he

performed legal services for Carter, and the fact that his license to practice law in any jurisdiction

was at times suspended; (h) California Rule of Professional Conduct 1.4 by taking a 10%

contingency fee on litigation settlement proceeds without Carter's written agreement; (i) California

Rule of Professional Conduct 5.4 by sharing legal fees with Avant Garde, a suspended California

corporation not authorized to practice law; (j) California Rules of Professional Conduct 1.1 and

1.4 by negligently advising Carter concerning the California litigation firm's interpretation of its

written contingency fee agreement; and (k) California Rules of Professional Conduct 1.1, 1.3, and

1.4 by failing to act to keep Carter reasonably informed and negligently causing Carter to default

in the federal court action brought by New York litigation counsel concerning a dispute over legal

fees.

141. As a direct and proximate result of Sweeney's unlawful deceptive business acts

and practices, Sweeney and Avant Garde have been unjustly enriched and Carter has suffered

monetary harm.

142. Carter seeks disgorgement and restitution of all fees paid to Sweeney and Avant

Garde and attorney's fees in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Violation of N.Y. Judiciary Law § 487 Against Sweeney and Avant Garde)

143.  Carter incorporates each and every allegation in paragraphs 1 through 142 as if fully set forth herein.

144.  New York law provides that an attorney who is guilty of any deceit or collusion or consents to any deceit or collusion with intent to deceive his own client forfeits to the party injured treble damages to be recovered in a civil action.

145.  Sweeney intentionally and egregiously deceived Carter over a period of many years, including during the pendency of judicial proceedings within New York and elsewhere, concerning: (a) the lawfulness of Sweeney's activities in providing legal services to Carter, holding himself out as admitted to practice law in New York, and establishing for himself an office or other systematic and continuous presence in New York for the practice of law; (b) the reasonableness of the contingency fee to which Sweeney was paid and continues to demand in exchange for providing legal services; (c) the voidability of the contingency fee agreement to which Sweeney claimed entitlement to legal fees in exchange for providing legal services; and (d) Sweeney's claim to be entitled to continue charging a contingency fee even after termination of his services and voiding of any purported agreement.

146.  In addition, Sweeney intentionally and egregiously deceived Carter throughout the two years of Carter's representation by the California litigation firm concerning Sweeney's claim to a contingency fee for litigation work Sweeney never performed and for which Carter never agreed to pay him.

147.  As a direct and proximate result of the aforesaid deceit, Carter is entitled to treble damages in an amount to be determined at trial, which amount is not less than $60,000,000.

31

## TENTH CAUSE OF ACTION
### (Declaratory Judgment Against Sweeney and Avant Garde)

148.  Carter incorporates each and every allegation in paragraphs 1 through 147 as if fully set forth herein.

149.  An actual controversy relating to the legal rights and duties of the parties exists, including, among other things, the following: (a) whether any valid contingency fee agreement ever existed between Sweeney and Carter or was void *ab initio* and unenforceable due to, among other things, the absence of a written contingency fee agreement and Sweeney's unauthorized practice of law; (b) whether and to what extent Sweeney and Avant Garde are required to disgorge past fees paid to them pursuant to any purported oral contingency fee agreement with Carter, based upon the agreement's illegality and violations of the public policy of New York and California; (c) whether and to what extent Sweeney and Avant Garde are required to disgorge past fees paid to them pursuant to any purported oral contingency fee agreement with Carter, based upon the agreement's noncompliance with California Business and Professions Code § 6147 or § 6148 and the excessive, unreasonable, and unconscionable fee of 10% of Carter's variable income on deals closed by Sweeney; and (d) whether and to what extent Sweeney is entitled to unpaid amounts now or in the future pursuant to any purported oral contingency fee agreement, given: (i) the agreement's noncompliance with California Business and Professions Code § 6147 or § 6148, (ii) the excessive, unreasonable, and unconscionable fee of 10% of Carter's variable income on deals closed by Sweeney, and (iii) Carter's voiding of the agreement.

150.  Accordingly, Carter seeks a declaration that any purported contingency fee agreement between him and Sweeney is illegal, contrary to public policy, void, invalid, and unenforceable, and that he is entitled to disgorgement and restitution of all fees paid to Sweeney and Avant Garde based on the breaches of fiduciary duty, legal malpractice, unjust enrichment,

violations of California Business & Professions Code §§ 6147 and 6148, violations of 22 NYCRR § 1215.1, violations of 22 NYCRR § 523.1, violations of California Business & Professions Code § 6126, violations of N.Y. Judiciary Law § 478, violations of California Business & Professions Code §§ 17200-17210, violations of N.Y. General Business Law § 349, violations of California Business & Professions Code § 6128, and violations of N.Y. Judiciary Law § 487, as alleged herein.  In addition, Carter seeks a judgment awarding him damages against Sweeney and Avant Garde in the amount of all contingency fees he paid to them, in an amount to be determined at trial, which amount is not less than $20,000,000.

**WHEREFORE**, Plaintiff seeks judgment against Defendants as follows:

A.  On the First Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

B.  On the Second Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

C.  On the Third Cause of Action, an award of damages in an amount to be determined at trial, but not less than $10,000,000;

D.  On the Fourth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

E.  On the Fifth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

F.  On the Sixth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

G.  On the Seventh Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

H.  On the Eighth Cause of Action, an award of damages in an amount to be determined at trial;

I.  On the Ninth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $60,000,000;

J.  On the Tenth Cause of Action, a declaration that any purported contingency fee agreement between Plaintiff and Sweeney is illegal, contrary to public policy, void, invalid, and unenforceable, and that Plaintiff is entitled to disgorgement and restitution of all fees paid to Sweeney and Avant Garde for the reasons alleged herein, and an award of damages in an amount to be determined at trial, but not less than $20,000,000;

K.  An award of punitive damages against all Defendants as allowed in an amount not less than $60,000,000;

L.  An award against all Defendants for Plaintiff's interest, costs, and attorney's fees as allowed; and

M.  Granting such other and further relief as the Court deems just and proper.

Dated:  March 22, 2019
         New York, New York

                              JONATHAN D. DAVIS, P.C.


                              By: /s/ Jonathan D. Davis
                                  Jonathan D. Davis
                                  Derek A. Williams
                                  Milton E. Otto
                                  10 Rockefeller Plaza, Suite 1015
                                  New York, New York 10020
                                  (212) 687-5464

                                  *Attorneys for Plaintiff Dwayne Michael
                                  Carter Jr. p/k/a Lil Wayne*

34

# EXHIBIT 2

KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Zia F. Modabber (Bar No. 137388)
zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
tami.sims@katten.com
Tel: (310) 788-4400
Fax: (310) 788-4471

*Attorneys for Defendants Dwayne Michael
Carter Jr. p/k/a Lil Wayne, Young Money
Entertainment, LLC, Young Money
Publishing, Inc. Young Money Records,
Inc. Young Money Ventures, LLC, and
Young Money Touring, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation,<br><br>               Plaintiffs,<br><br>   v.<br><br>DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive,<br><br>               Defendants. | Case No.: 2:21-cv-01689-ODW-JC<br>**REMOVED FROM STATE COURT**<br>(Los Angeles Superior Court No. 20STCV47346)<br><br>Assigned to Hon. Otis D. Wright II<br>Courtroom 5D<br><br>**DEFENDANTS' NOTICE OF MOTION AND (1) MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY (2), MOTION TO DISMISS OR STAY THIS ACTION UNDER THE *COLORADO RIVER* DOCTRINE, OR ALTERNATIVELY (3), MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  June 7, 2021<br><br>Hearing Time:  1:30 p.m.<br><br>Location:  Courtroom 5D |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .................................................5

    A.    Carter's Allegations in the NY Action .........................................................5

    B.    Motions Filed in the NY Action .................................................................7

    C.    Plaintiffs' Allegations in the Federal Action ..............................................8

ARGUMENT ..............................................................................................................9

I.    NO PERSONAL JURISDICTION EXISTS OVER DEFENDANTS ...............9

    A.    Personal Jurisdiction Standards ..................................................................9

    B.    General Jurisdiction Does Not Exist Over Defendants ...........................11

    C.    Specific Jurisdiction Does Not Exist Over Defendants ...........................12

II.    THIS ACTION SHOULD BE DISMISSED UNDER *COLORADO RIVER* ...........................................................................................................14

III.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED UNDER THE COURT'S INHERENT POWERS ...........................................19

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12 ......20

    A.    Plaintiffs' Contract Claim Should Be Dismissed ....................................20

    B.    Plaintiffs' Equitable Claims Should Be Dismissed .................................21

    C.    The Fraudulent Inducement Claim Should Be Dismissed ......................22

    D.    The Accounting Claim Should Be Dismissed .........................................25

CONCLUSION ........................................................................................................25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Inc. v. Whatley Kallas, LLP,*
  Case No. CV 19-3532-JFW(JEMx), 2019 WL 4137614 (C.D. Cal.
  July 9, 2019) ................................................................................15

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.,*
  843 F.2d 1253 (9th Cir. 1988) ........................................................17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................20

*Audigier Brand Mgmt. v. Perez,*
  Case No. CV 12–5687–CAS, 2012 WL 5470888 (C.D. Cal. Nov. 5,
  2012) .............................................................................................23

*Baiul v. NBC Sports,*
  Case No. 15-cv-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19,
  2016) .............................................................................................20

*Ballard v. Savage,*
  65 F.3d 1495 (9th Cir. 1995) ..........................................................10

*Barkstrong, LLC v. Texas Farm Prods. Co.,*
  Case No. CV 19-1286-MWF, 2019 WL 6315535 (C.D. Cal. May 6,
  2019) ........................................................................................15, 17

*Beard v. Melvin,*
  60 Cal. App. 2d 421 (1943) ............................................................21

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ..........................................................9

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
  98 F.3d 13 (2d Cir. 1996) ...............................................................23

*Bristol-Myers Squibb Co v. Superior Ct. of California,*
  *San Francisco Cty.,*
  137 S. Ct. 1773 (2017)....................................................................13

ii

*Brue v. Shabaab*,
  54 Cal. App. 5th 578 (2020) ............................................................. 13

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ......................................................... 20

*Clark v. Lacy*,
  376 F.3d 682 (7th Cir. 2004) ........................................................... 15

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) .................................................................... 14–15

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................. 10

*Cronin v. Advanced Fresh Concepts Franchise Corp.*,
  Case No. 2:20-cv-00816-SVV-JPR, 2020 WL 6391216 (C.D. July 14,
  2020) ............................................................................................... 22

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................... 10, 12

*Drum v. Farmers Ins. Exch.*,
  Case No. B166246, 2004 WL 765960 (Cal. Ct. App. Apr. 12, 2004),
  *as modified on denial of reh'g* (May 12, 2004) ............................ 22–23

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011) ............................................. 24

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ......................................................... 23

*First Nationwide Savings v. Perry*,
  11 Cal. App. 4th 1657 (1992) .......................................................... 21

*Gregg v. Hawaii, Dep't of Pub. Safety*,
  870 F.3d 883 (9th Cir. 2017) ........................................................... 20

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ........................................................................... 12

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ......................................................................... 10

NOTICE OF MOTION

*j2 Global Commc'ns, Inc. v. Protus IP Sols.*,
    Case No. CV 06-00566 DPP, 2008 WL 11338136 (C.D. Cal. Sept.
    23, 2008) ................................................................................................19

*JMP Secs. LLP v. Altair Nanotechs. Inc.*,
    880 F. Supp. 2d 1029 (N.D. Cal. 2012)..............................................23

*Johnson v. Country Wide Bank FSB*,
    Case No. EDCV 10-01819 AG (MANx), 2011 WL 13224824 (C.D.
    Cal. Jan. 24, 2011) ........................................................................23–24

*Keller v. Pacific Turf Club*,
    192 Cal. App. 2d 189 (1961) ...............................................................20

*Koch v. Pechota*,
    744 Fed. App'x 105 (3d Cir. 2018) .....................................................10

*Lands v. N. Am. Co.*,
    299 U.S. 248 (1936)..............................................................................19

*Leyva v. Certified Grocers of California, Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ...............................................................19

*Libarian v. State Bar of California*,
    21 Cal.2d 862 (1943) ..............................................................................3

*Montanore Minerals Corp. v. Bakie*,
    867 F.3d 1160 (9th Cir. 2017) .............................................................18

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ...............................................................9

*Morrissey v. City of Los Angeles*,
    Case No. CV 20-3355-JFW(MAAx), 2020 WL 5983923 (C.D. Cal.
    Aug. 12, 2020) ...............................................................15, 17, 18, 19

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..................................................................................14

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) .............................................14, 15, 19

*Natan v. Carter*,
    BC 717798, Order (Cal. Superior Ct. Jan. 7, 2021) .........................12

iv

*Phillippe v. Shapell Industries*,
    43 Cal.3d 1247 (1987) ................................................................22–23

*R.R. Street & Co. v. Transport Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) .................................14, 15, 17, 18–19

*Reeve v. Meleyco*,
    46 Cal. App. 5th 1092 (2020) ...........................................................22

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..............................................................5

*Richardson v. Reliance Nat'l. Indem. Co.*,
    Case No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9,
    2000) ...............................................................................................23

*Santos v. Medina*,
    417 F. Supp. 3d 280 (S.D.N.Y. 2019) ..............................................20

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................23

*Tanedo v. East Baton Rouge Parish School Bd.*,
    Case No. SA CV10–01172 JAK, 2012 WL 5447959 (C.D. Cal. Oct.
    4, 2012) ...........................................................................................23

*Tapia v. Davol, Inc.*,
    116 F. Supp. 3d 1149 (S.D. Cal. 2015) .............................................24

*Thiam v. Am. Talent Agency, Inc.*,
    Case No. 11 CIV. 1465 GBD, 2012 WL 1034901 (S.D.N.Y. Mar. 27,
    2012) ...........................................................................................21–22

*Thomas v. Thomas Wylde, LLC*,
    Case No. LA CV 17-04158-JAK, 2017 WL 8238273 (C.D. Cal. June
    29, 2017) .........................................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014).........................................................10, 11, 13

*Webber v. Dash*,
    19 Civ. 610 (CM), 2019 WL 1213008 (S.D.N.Y. Feb. 25, 2019) ....................20

v

*Winburn v. All Am. Sportswear Co.*,
  215 Cal. App. 2d 380 (1963) ..................................................................20

*Wu v. Sunrider Corp.*,
  Case No. 17-4825 DSF, 2018 WL 6266577 (C.D. Cal. May 22, 2018) ...........22

*Wynn v. AC Rochester*,
  273 F.3d 153 (2d Cir. 2001) ..................................................................22

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ..............................................................10

*Zeising v. Kelly*,
  152 F. Supp. 2d 335 (S.D.N.Y. 2001) ....................................................21

*Ziegler v. Indian River Cnty.*,
  64 F.3d 470 (9th Cir. 1995) ..................................................................10

**Statutes**

Cal. Bus. & Prof. Code § 6147 ........................................................22, 24

Cal. Civ. Code § 1624 ........................................................................20

Cal. Civ. Proc. Code § 339 ..................................................................22

N.Y. Gen. Oblig. Law 5-701 ..................................................................20

**Rules**

Fed. R. Civ. P. 12 ..............................................................................20

Fed. R. Evid. 201 ................................................................................5

**Other Authorities**

Black's Law Dictionary 726 (7th ed. 1999) ........................................18, 21

NOTICE OF MOTION

1 TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

2 **PLEASE TAKE NOTICE** that on June 7, 2021 at 1:30 p.m., or as soon

3 thereafter as the matter may be heard, before the Honorable Otis D. Wright II, United

4 States District Judge, in the above-entitled Court, located at Courtroom 5D, United

5 States Courthouse, 350 W. 1st Street, Los Angeles, California 90012-4565, Defendants

6 Dwayne Michael Carter Jr. p/k/a Lil Wayne ("Carter"), Young Money Entertainment,

7 LLC ("YME"), Young Money Publishing, Inc. ("YMP"), Young Money Records, Inc.

8 ("YMR"), Young Money Ventures, LLC ("YMV"), and Young Money Touring, Inc.

9 ("YMT") (collectively, "Defendants," and YME, YMP, YMR, YMV, and YMT

10 collectively, the "Entity Defendants"), will and hereby do move for an order dismissing

11 the Complaint, dated December 10, 2020 (the "California Complaint" or "CA

12 Compl."), filed by Plaintiffs Ronald E. Sweeney ("Sweeney") and Avant Garde

13 Management, Inc. ("Avant Garde," and together with Sweeney, the "Plaintiffs"), for

14 lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

15 Alternatively, Defendants move for an order dismissing or staying the California

16 Complaint under the *Colorado River* doctrine based on the lawsuit Carter filed against

17 Plaintiffs in January 2019 in New York state court concerning the almost identical facts

18 and circumstances alleged in this action, or staying this action under the Court's

19 inherent authority. Alternatively, Defendants move for an order entering judgment on

20 the pleadings under Federal Rules of Civil Procedure 12(c) and 9(b).[1]

21 This Motion is based upon this Notice and Motion, the accompanying

22 Memorandum of Points and Authorities, the concurrently filed Declaration of Dwayne

---

24 [1] Defendants intended to file a pre-answer motion under Fed. R. Civ. P. 12. However, because
25 Plaintiffs refused to confirm in writing that their written stipulation to extend Defendants' time to
respond to the California Complaint was effective, despite the removal of the case to federal court,
26 Defendants filed an Answer out of an abundance of caution to avoid the possibility of a default.
Plaintiffs were presented with case authority of the longstanding removal principle that a federal court
27 takes the case up where the state court left off, which principle Plaintiffs rejected.

28

NOTICE OF MOTION

Michael Carter, Jr. in Support of Motion to Dismiss the Complaint, and the Declaration of Tami Kameda Sims in Support of Motion to Dismiss the Complaint, all pleadings, and papers on file herein, all matters of which the Court may or must take judicial notice, and such other and further evidence and argument as may be presented to the Court before ruling on the Motion.

This Motion is made following a "meet and confer" between counsel that took place over the telephone on March 31, 2021.

DATED:  April 30, 2021                    KATTEN MUCHIN ROSENMAN LLP


                                          _/s/ Tami Kameda Sims_____

                                          Tami Kameda Sims
                                          (Bar No. 245628)
                                          tami.sims@katten.com
                                          2029 Century Park East, Suite 2600
                                          Los Angeles, CA 90067-3012
                                          Tel: (310) 788-4400
                                          Fax: (310) 788-4471

                                          *Attorneys for Defendants Dwayne Michael Carter Jr. p/k/a Lil Wayne, Young Money Entertainment, LLC, Young Money Publishing Inc., Young Money Records Inc., Young Money Ventures, LLC, and Young Money Touring, Inc.*

# **INTRODUCTION**

Ronald E. Sweeney is a transactional entertainment lawyer, who fraudulently induced Dwayne Michael Carter, Jr., one of the most prominent rappers and recording artists in the world, to retain his legal services. Sweeney was not, as he claims in this lawsuit, Mr. Carter's personal manager.

He filed this action despite the fact that an action has been pending in New York for *more than two years* concerning the professional relationship between Carter and Sweeney and the monies paid to and claimed by Sweeney to be owed to him. In fact, just this month, the New York court ruled, among other things, that the claimed oral contingency fee agreement between them was voided by Carter in September 2018.

The attorney-client relationship Sweeney created with Carter was a lucrative one for Sweeney, who together with his company, Avant Garde, collected over $20 million of contingency legal fees from Carter before he fired Sweeney and *voided* the oral contingency fee agreement. Carter fired Sweeney after he discovered that Sweeney negligently handled legal matters entrusted to him, charged him an unconscionable fee (one that was *double* the contingency legal fee customarily charged by lawyers in the entertainment industry), and was paid legal fees without Carter's consent.

Carter also discovered that Sweeney was not the New York lawyer with a New York office, who he held himself out to be, but an attorney only licensed to practice law in California, who was suspended from the practice of law more than once during the course of their attorney-client relationship. Carter is not obligated to pay Sweeney any additional contingency legal fees after being fired because: (1) Sweeney stopped representing Carter, and (2) any purported oral contingency fee agreement between Sweeney and Carter is unenforceable under California law because it was voided by Carter. While Sweeney would otherwise be entitled to a determination of

whether he has been paid a "reasonable fee," his unlawful conduct entitles Carter to disgorge some or all of the legal fees paid to Plaintiffs.

Nevertheless, despite Sweeney's unlawful conduct, Sweeney has continued to demand from Carter additional contingency legal fees, despite now characterizing them as management fees, under an oral contingency legal fee agreement that was never reduced to writing. Since the lack of a signed writing placed his evergreen income stream from Carter in jeopardy, Sweeney tried, albeit unsuccessfully, to secure a written contingency fee agreement between Sweeney's supposed law firm and Carter.[2] Sweeney even submitted a purported settlement agreement for Carter to sign in a last-ditch effort to recover additional contingency legal fees in perpetuity.

To end Sweeney's attempt to enforce an oral contingency legal fee agreement, Carter sued Plaintiffs in New York (the "NY Action"), where Sweeney has lived and performed most, if not all, of his legal services for Carter. In the NY Action, Carter has alleged that Sweeney: (1) misrepresented his legal practice to obtain Carter as a client; (2) charged Carter an unconscionable and unreasonable legal fee; (3) committed legal malpractice; (4) breached his fiduciary duties owed to Carter; (5) engaged in conduct to unjustly enrich himself and Avant Garde (even going so far as to take settlement proceeds from Carter he was not authorized to receive); (6) violated the law governing contingency fee agreements; (7) engaged in unfair competition and business practices; and (8) engaged in deceit.[3]

---

[2] The California Secretary of State website shows no registration of an entity known as "Sweeney, Johnson & Sweeney," "Law Offices of Ronald E. Sweeney," or any similar name. *See* https://businesssearch.sos.ca.gov/ (queries for "Sweeney, Johnson & Sweeney" and "Law Offices of Ronald E. Sweeney"; last visited on Apr. 30, 2021). The New York Department of State website also shows no registration of any such entities. *See* https://www.dos.ny.gov/corps/bus_entity_search.html (last visited on Apr. 30, 2021).

[3] *Carter v. Sweeney, et al.*, Index No. 151067/2019, was filed on January 30, 2019, in the Supreme Court of the State of New York, County of New York. The documents filed by the parties to the NY Action are available through the website for the New York State Unified Court System. *See*

2

Because collecting any contingency legal fees from Carter without a written contingency fee agreement is doomed, Sweeney opted to file this action in California in which he falsely recharacterizes the only professional relationship that existed between the parties as a "personal management" relationship – rather than the attorney-client relationship it always was.  Sweeney apparently believes he is no longer bound by the fiduciary and professional duties of a lawyer to his client.  But no matter what Sweeney labels his entitlement to purported "fees," this action is the same attorney's fee dispute now litigated in New York.

Sweeney cannot label his way out of liability.  Whether Sweeney considers himself Carter's personal manager – which is contrary to his statements and actions – or his lawyer, he must comport himself as a lawyer and follow the rules that apply to lawyers. *Libarian v. State Bar of California*, 21 Cal.2d 862, 865 (1943) (stating that "[o]ne who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter").

Because Sweeney is a California lawyer who openly engaged in the unauthorized practice of law in New York (even when his California license was suspended), his decision to file this action in California rather than allege his purported claims in the NY Action smacks of forum-shopping and is duplicative litigation that may yield inconsistent determinations and unnecessarily burdens this Court and the administration of justice.

---

https://iapps.courts.state.ny.us/webcivil/FCASMain.  A user may access the docketed documents filed with the court by conducting an "Index Search" for the NY Action using the link provided for that purpose and following the instructions.  Once on the query page, a user may access the docket for the NY Action by entering the Index Number for the case (*i.e.*, 151067/2019) and further limiting the search by selecting "New York Supreme Court" in the box provided, and then clicking the button "Find Case(s)".  That search will show a single line item for the NY Action.  The docket is accessible by clicking the link for the Index Number and then the button labeled "Show eFiled Documents" located at the bottom of the window.

This action is not proper in California for multiple reasons, and no basis exists to keep it here. The Court lacks both general and specific jurisdiction over Defendants. None of the Defendants are citizens of California or "at home" here. And there is no substantial connection between Defendants' suit-related conduct and the forum state to establish specific jurisdiction. Moreover, because Carter filed the NY Action years ago, this lawsuit should be dismissed or stayed under the *Colorado River* doctrine, which defers to a prior pending state court action.

Indeed, the New York court on April 16, 2021 issued a "DECISON + ORDER ON MOTION" (the "<u>NY Decision</u>") granting Sweeney's and Avant Garde's motion to dismiss, in part, and establishing a deadline for additional briefing pertaining to Carter's declaratory judgment claim in which that court recognized the oral contingency fee agreement between Carter and Sweeney was voided. The court's determination of that briefed issue will likely result in document and witness discovery and then a hearing with live fact witnesses and experts.

The dismissed claims in the NY Action will be the subject of a motion to reargue and, if necessary, a prompt appeal by Carter. The grounds for the dismissal of Carter's affirmative claims was due, as will be argued among other things, to the trial court's misapplication of statutes of limitation and of standing principles, and thus those claims should be reinstated after further review by the New York courts. Absent the invocation of the *Colorado River* doctrine, this action should be stayed under this Court's inherent power given the important issues that continue to require adjudication in the NY Action by the courts there. But even if this case were to be litigated in California, Defendants should be awarded a judgment on the pleadings that dismisses the action in its entirety. The alleged oral contract claim is barred by the Statute of Frauds, which cannot be avoided by relabeling the claim as one for unjust enrichment or *quantum meruit*. And Plaintiffs have failed to allege a claim for fraud in the inducement because, among other things, essential facts are not pleaded. Furthermore,

it is well-settled that a contract claim cannot be converted into a fraud claim by merely alleging the defendant did not intend to perform the purported contract. Finally, with no viable claims, Plaintiffs' accounting claim must be dismissed.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### A. **Carter's Allegations in the NY Action**

In January 2019, Carter filed a complaint against Plaintiffs in the NY Action, which was superseded by a First Amended Complaint ("NY Complaint" or "NY Compl.").[4] The NY Complaint describes how Sweeney fraudulently induced Carter to hire Sweeney as his entertainment lawyer in 2005. NY Compl. ¶ 1-6, 18-27, 77-88. Sweeney, a long-time New York resident, held himself out as a New York-based entertainment lawyer with years of experience, and touted his presence in New York. *Id.* at ¶¶ 2, 78. In fact, Sweeney was and is only licensed to practice law in California. *Id.* at ¶¶ 2, 13, 78.

Seizing on the opportunity to represent an up-and-coming talent, *id.* at ¶¶ 15-16, Sweeney did not offer Carter the customary music industry 5% contingency fee on deals he closed, but, instead, demanded twice that percentage. *Id.* at ¶ 4. Sweeney failed to memorialize the attorney-client relationship in a signed writing, and failed to

---

[4] A copy of the NY Complaint is attached as Exhibit A to the Declaration of Dwayne Michael Carter, Jr. in Support of Motion to Dismiss the Complaint, dated April 14, 2021 ("Carter Decl."). Carter filed the NY Complaint, in part, due to an email from Sweeney that purported to "set[] forth the terms for ending [Sweeney's] professional relationship with Wayne" and included a proposed settlement agreement that made clear Sweeney's intention to be paid contingency legal fees that Carter never agreed to pay, including monies from litigation settlements handled by a different law firm. Declaration of Tami Kameda Sims in Support of Motion to Dismiss the Complaint, dated April 30, 2021 ("Sims Decl."), Ex. A. Attached to the Carter and Sims declarations are, among other things, documents filed in other lawsuits involving Carter. Defendants request that this Court take judicial notice of these court documents. Fed. R. Evid. 201 (stating court may "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and that the court "must take judicial notice" if requested "and the court is supplied with the necessary information"). *See*, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

1   give Carter the required statutory disclosures he was entitled to receive as his client.

2   *Id.* at ¶¶ 19-20.  In addition, Sweeney hid from Carter that any obligation to continue

3   paying Sweeney's legal fees was voidable and that any ongoing fee obligation was

4   voided by Carter.  *Id.* at ¶¶ 7, 20, 23, 27, 71.

5       Although Sweeney's trade names and addresses changed throughout the

6   attorney-client relationship, what remained constant was his misrepresentation that he

7   operated a New York law firm.  *Id.* at ¶¶ 28-36.  And even when his California law

8   license was suspended, Sweeney continued to represent Carter and continued to collect

9   hundreds of thousands of dollars in  contingency legal fees.  *Id.* at ¶ 38.  But charging

10  double the customary rate for his services was not enough for Sweeney, so he cut

11  himself in on Carter's litigation settlements, without Carter understanding that

12  arrangement, when the actual litigation work was handled by another law firm.  *Id.* at

13  ¶¶ 45-46.

14      When Carter could not resolve a dispute with Cash Money Records, the

15  record company that produced and distributed his recordings, Sweeney counseled him

16  to hire a litigation firm to pursue those claims.  Carter sued Cash Money Records (the

17  "Cash Money Claims"), and later pursued another litigation against Universal Music

18  Group and Sound Exchange (the "UMG Claims").  *Id.* at ¶¶ 48-52.

19      Although no agreement provided Sweeney with the right to share in Carter's

20  litigations, he took a share of those settlements without Carter's knowledge, by

21  redirecting a portion to himself through more deception.  *Id.* at ¶¶ 54-67.  Sweeney

22  negotiated the contingency fee agreement with the litigators for those litigations, but

23  misinformed Carter about Sweeney's contingency legal fee share and the agreement's

24  applicability to future income arising from any settlement.  Sweeney never told Carter

25  that on top of the litigation firm's contingency legal fees, Sweeney planned to take a

26  10% legal fee for himself.  *Id.* at ¶¶ 54, 55, 57, 66.  In fact, in May 2018, Sweeney

27  directed Carter's business managers to pay him that 10% legal fee from Carter's

28

MOTION TO DISMISS

1    settlement recovery, without obtaining Carter's permission to do so. *Id.* at ¶ 66.

2    Carter voided any agreement with Sweeney when he fired him in September

3    2018. *Id.* at ¶¶ 7, 71. But the following month, Sweeney directed Carter's litigation

4    counsel to pay him additional legal fees from the litigation settlements that belonged

5    to Carter. *Id.* at ¶ 72. Sweeney received those legal fees and demanded millions of

6    dollars in contingency legal fees after his firing. *Id.* at ¶¶ 72, 74.

7    Despite violating the laws governing lawyer conduct, Sweeney unlawfully

8    collected approximately $20 million in contingency legal fees from Carter, some of

9    which he unilaterally directed Carter's business managers to pay to Avant Garde, a

10   corporation that has no claim to any legal or other fee. *Id.* at ¶¶ 22, 40-41.

11   **B.    Motions Filed in the NY Action**

12   Sweeney and Avant Garde filed a motion to dismiss the NY Complaint on

13   May 2, 2019 ("Motion to Dismiss") that included an affidavit from Sweeney

14   ("Sweeney Affidavit" or "Sweeney Aff.") in which he acknowledges Carter hired him

15   to provide "*legal services* to [Carter] and his entities on an ongoing basis" and claims

16   to have been paid "10% of the income on deals [he] negotiated or managed on Carter's

17   behalf[.]" Sims Decl., at Ex. B (Sweeney Aff.) at ¶¶ 11, 14 (emphasis added).

18   Attached to Sweeney's Affidavit is a 6-page "written fee agreement[,]" dated

19   January 1, 2016, which Sweeney contends reflects "the terms Carter and [Sweeney]

20   agreed upon in 2005" regarding Sweeney's "*legal counsel* with respect to … [Carter's]

21   activities in the entertainment field" (the "Purported Unsigned Fee Agreement"). Sims

22   Decl., Ex. B (Sweeney Aff.) at ¶ 20 and Ex. 4 thereto at 1 (emphasis added). Under

23   the Purported Unsigned Fee Agreement, Sweeney claims for himself a 10%

24   contingency legal fee for all of his legal work and services. Also, that purported

25   contingency fee agreement limits the post-term period Sweeney is paid a contingency

26   legal fee to no more than 36 months after his termination for "Music Activities" that

27

28

1  he negotiated or substantially negotiated for Carter.  Sims Decl., Ex. B (Sweeney Aff.)
2  at Ex. 4 thereto at 2.

3        Absent from the Purported Unsigned Fee Agreement is any suggestion that
4  Plaintiffs would ever provide any "personal management" services to Carter or his
5  companies.  Sims Decl., Ex. B (Sweeney Aff.) at Ex. 4 *passim*.  The Motion to Dismiss
6  was later withdrawn and re-filed without the Sweeney Affidavit.[5]

7        Months later, Plaintiffs filed another motion to stay proceedings against
8  Avant Garde for 60 days to enable Sweeney to remedy its status as a suspended
9  corporation.  Sims Decl., Exs. C-D.  A stipulation agreeing to the stay was later filed
10  and so ordered by the court in New York.  *Id.* at Ex. E.

11        The parties appeared for an oral argument that began on March 10, 2020, but
12  did not continue as the court directed due to the COVID-19 pandemic.  Last week on
13  April 16, 2021, the court in the NY Action unexpectedly issued its ruling on the Motion
14  to Dismiss, which was granted, in part, leaving open the issue of "what would constitute
15  'a reasonable fee'" and permitting additional briefing on that issue.  *Id.* at Ex. F.  Carter
16  plans to move to reargue the trial court's ruling and will appeal the NY Decision.

17      **C.    Plaintiffs' Allegations in the Federal Action**

18        The California Complaint against Defendants, which was removed to this
19  Court in February (the "CA Action"), omits the facts readily acknowledged by
20  Sweeney in the NY Action.  In Sweeney's retelling of events, he was not a lawyer who
21  provided legal services to Carter for approximately 13 years, and who negotiated
22  entertainment contracts on his behalf.  Instead, Sweeney claims to have been Carter's
23  "manager and close confidante[,]" who managed "his managers … and his lawyers" as
24  well as "over 30 lawsuits."  [Dkt. No. 1-2 (CA Compl.) at ¶ 3; *see also id.* at ¶ 19

---

26  [5] Although Plaintiffs chose to voluntarily withdraw their initial Motion to Dismiss made on *forum*
27  *non conveniens* grounds, the Sweeney Affidavit and its exhibits are available on the docket for the
    NY Action (as Dkt. Nos. 8-13), which is available through the website for the New York State Unified
28  Court System.  *See*, *supra*, at n.3.

MOTION TO DISMISS

1    (referring to "Sweeney's management efforts"); ¶ 24 (referring to "Plaintiffs' virtually
2    limitless management services").]

3          But regardless of the labels used, the California Complaint addresses the
4    same professional relationship alleged in the NY Action.  Both lawsuits concern a 10%
5    contingency fee that was paid to Sweeney for legal services.  Both lawsuits concern
6    monetary settlements from lawsuits that Carter filed against Cash Money Records,
7    Universal Music Group, and SoundExchange.  Both lawsuits concern the scope of the
8    contingency fee that was paid to Plaintiffs, and for which they are claiming a continuing
9    entitlement under an oral arrangement that was never memorialized in a signed writing.
10   And both lawsuits concern whether those settlements are subject to any contingency
11   fee after Sweeney was fired as Carter's lawyer in September 2018.

12         According to Plaintiffs, and despite what is provided in the Purported
13   Unsigned Fee Agreement, Defendants have "failed and refused … to pay Plaintiffs"
14   outstanding "commissions," a 10% share of the proceeds they claim are owed to them
15   "*in perpetuity[]*" from various settlements, and a 10% share of the proceeds "from *the*
16   *sale of any* master recordings owned by the Young Money Label," a purported
17   obligation that also is perpetual.  *Id.* at ¶¶ 28, 45-46 (emphasis added).

## ARGUMENT

## I.    NO PERSONAL JURISDICTION EXISTS OVER DEFENDANTS

### A.    Personal Jurisdiction Standards

21         This action should be dismissed because no personal jurisdiction exists over
22   the Defendants.   Constitutional due process principles require a defendant have
23   sufficient forum contacts to support the exercise of personal jurisdiction.  *Morrill v.*
24   *Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017).  Once challenged, a plaintiff has
25   the burden of proving by a preponderance of the evidence facts sufficient to establish
26   personal jurisdiction.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

27
28

A plaintiff meets its burden of proving a *prima facie* case of personal jurisdiction by producing admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979 (N.D. Cal. 2016) (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

There are two types of personal jurisdiction: general and specific. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (e.g., domicile)." *Walden v. Fiore*, 571 U.S. 277, 283, n.6 (2014). General jurisdiction over an individual is only available *in the state of a person's domicile*. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And, although a corporation's business activities may subject it to general jurisdiction, "[c]onsideration of business activities to find general jurisdiction has not been applied to individuals." *Koch v. Pechota*, 744 Fed. App'x 105, 110 (3d Cir. 2018). In sum, a defendant's forum contacts *must* be "so continuous and systematic as to render [the defendant] essentially *at home* in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (emphasis added) (internal quotations omitted); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Specific jurisdiction or "case-linked" jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-284, and n.6 (internal quotations omitted). In particular, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284; *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (stating specific jurisdiction over an individual exists when: (1) defendant purposefully directed activities at the forum; (2) the action arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice).

In *Walden*, the Supreme Court clarified two aspects of the "necessary relationship" needed to sustain specific jurisdiction. *Walden,* 571 U.S. at 284. "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (emphasis in original) (internal quotation omitted). Contacts with the forum created by the *plaintiff or a third-party* are not attributable to the defendant and "cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* at 285 (internal quotation omitted). Second, courts must look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* It is not sufficient "to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." *Id.* at 286 (internal quotations omitted).

### B. General Jurisdiction Does Not Exist Over Defendants

The California Complaint makes no allegations concerning any activities by Defendants with or in California or that Defendants are California citizens. At all relevant times, Carter was a citizen, permanent resident, and domiciliary of Florida. Carter Decl. ¶¶ 16-23. Carter maintains a Florida driver's license and was never issued one in California. *Id.* at ¶ 18. He also is not and has never been registered to vote in California. *Id.* at ¶ 19. Indeed, Florida is where Carter maintains his permanent home, where he prefers to create music, and where he intends to always return. *Id.* at ¶¶ 19, 23.

Moreover, Carter's recent use of short-term rental properties does not make Carter "essentially at home" in California. *Id.* at ¶¶ 21-23. Carter's stay in California has included multiple interruptions, causing his return to his permanent residence in Florida. *Id.* He does not intend to change his state citizenship, permanent residence, or domicile from Florida to California, and is scheduled to return to his permanent residence in Florida this month. *Id.* at ¶¶ 19, 23-24. And while Carter has purchased a property in California *after* the CA Action was filed, he placed that property in a land

MOTION TO DISMISS

trust for his children, and has never resided there. *Id.* at ¶ 24. Accordingly, Carter is not "at home" in California and therefore not subject to its general jurisdiction. *Daimler AG*, 571 U.S. at 139.

Plaintiffs allege that the Entity Defendants are foreign entities. [Dkt. No. 1-2 (CA Compl.) at ¶¶ 8-12.] None have been operated or managed in California. Carter Decl. ¶ 25-27. Instead, each entity maintains its "nerve center" in Florida, where its activities are directed, controlled, and coordinated by Carter. *Id.*; *see Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (holding corporation's "nerve center" is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"). Carter is the only high level officer for the Entity Defendants. Carter Decl. at ¶ 27.

The California Complaint's vague boilerplate language that Defendants are "doing business" or "licensed to do business" in California is insufficient to establish general jurisdiction. [Dkt. No. 1-2 (CA Compl.) at ¶¶ 8-12]; *Daimler AG*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). And the California Complaint avoids any factual allegation demonstrating, or even suggesting, that California is where any of the "overall direction, control, and coordination" of the Entity Defendants occurred. *Hertz*, 559 U.S. at 96. In fact, the Carter Declaration specifically refutes such assertion. Carter Decl., ¶¶ 25-27. Thus, Defendants are not subject to the general jurisdiction of this Court.

Indeed, a California state court recently found it lacked both general and specific personal jurisdiction over Carter and one of his companies. *Natan v. Carter*, BC 717798, Order (Cal. Superior Ct. Jan. 7, 2021); Sims Decl., Exs. G and H (attaching the Alternative Writ and the January 7, 2021 Order responding thereto).

### C.   Specific Jurisdiction Does Not Exist Over Defendants

Plaintiffs' purported dispute with Defendants arises out of an attorney-client relationship, terminated more than two years ago, that is the very subject of the NY

Action, which Plaintiffs have falsely recharacterized here as a personal management relationship.  Carter Decl., Ex. A.  At all times, Plaintiff Sweeney served only as a lawyer, as demonstrated by his prior statements and conduct.  Carter Decl., ¶¶ 5-15; Sims Decl., Ex. B (Sweeney Aff.) and Ex. 4 thereto.

Thus, this action does not arise out of any suit-related conduct *by Defendants* in California.  *Walden¸* 571 U.S. at 284; *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("What is needed – and what is missing here – is a connection between the forum and the specific claims at issue.").  Any past contacts by Defendants within the state that are not related to this dispute are jurisdictionally irrelevant.  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."); *Brue v. Shabaab*, 54 Cal. App. 5th 578, 592 (2020) (same).  And Sweeney's purported California residency is not a relevant contact.  *Walden*, 571 U.S. at 284.

Plaintiffs fail to allege *any contacts whatsoever* in California between Plaintiffs and Defendants – much less any contacts giving rise to this action.  [*See generally* Dkt. No. 1-2 (CA Compl.).]  Carter always understood that Sweeney was a New York lawyer providing services to him in New York because Sweeney told Carter that Sweeney lived and practiced law in New York City.  Carter Decl. ¶ 7.  Moreover, specific jurisdiction is lacking because none of Plaintiffs' claims have anything to do with Carter's stays at various short-term rentals in California, or his purchase of property for a land trust benefitting his children.

Based on the foregoing, there is no fair or reasonable basis upon which any of the Defendants could have anticipated being haled into court in California concerning a long-ago terminated attorney-client relationship with Sweeney.  Accordingly, there is no specific jurisdiction over Defendants.

MOTION TO DISMISS

## II.      THIS ACTION SHOULD BE DISMISSED UNDER *COLORADO RIVER*

The *Colorado River* doctrine is one predicated on deference to state court jurisdiction that promotes "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *see also R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 977-78 (9th Cir. 2011).  Invoking the doctrine requires "exceptional circumstances" and for the court to "carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'"  *R.R. Street & Co.*, 656 F.3d at 978 (quoting *Colorado River*, 424 U.S. at 818).

This Circuit considers eight factors when assessing the appropriateness of a *Colorado River* stay or dismissal:  (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits;  (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court."  *Id.*

The factors are not applied in a mechanical manner but in a "pragmatic, flexible manner with a view to the realities of the case at hand."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983).  Additionally, irrelevant factors are not weighed in favor of or against retaining jurisdiction over an action.  *See Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989).

Although federal courts often recite that the *Colorado River* doctrine is a narrow exception to the "'virtually unflagging obligation … to exercise the jurisdiction given to them[,]'" this "overstates the law[.]"  *See Nakash*, 882 F.2d at 1415 (quoting *Colorado River*, 424 U.S. at 817).  Indeed, *courts often grant litigants relief* under the

14

doctrine. *See*, *e.g.*, *Morrissey v. City of Los Angeles*, Case No. CV 20-3355-JFW(MAAx), 2020 WL 5983923 (C.D. Cal. Aug. 12, 2020) (granting stay where three factors supported stay and others were irrelevant or neutral)*; Aetna Inc. v. Whatley Kallas, LLP*, Case No. CV 19-3532-JFW(JEMx), 2019 WL 4137614 (C.D. Cal. July 9, 2019) (same); *Barkstrong, LLC v. Texas Farm Prods. Co.*, Case No. CV 19-1286-MWF (MRWx), 2019 WL 6315535 (C.D. Cal. May 6, 2019) (granting dismissal where two factors were neutral, five supported dismissal, and one weighed against dismissal); *Thomas v. Thomas Wylde, LLC*, Case No. LA CV 17-04158-JAK (PJWx), 2017 WL 8238273, at *2 (C.D. Cal. June 29, 2017) (applying doctrine where two cases involved the same parties and disputes arising from their business relationships and most of the claims arose under state law); *see also R.R. Street & Co.*, 656 F.3d 966 (affirming dismissal under doctrine); *Nakash*, 882 F.2d 1411 (affirming stay under doctrine).

Because the eighth factor – whether the state court proceedings will resolve all issues – is considered a threshold question, it is addressed first. *Morrissey*, 2020 WL 5983923, at *4. Under this factor, "exact parallelism" between the actions is not required; the two actions just need to be "substantially similar." *Nakash*, 882 F.2d at 1416. Sufficient similarity exists between actions even when the parties and claims are not identical. *Id.* (calling the "party" argument "disingenuous" because the "only difference [was] the absence of all of the corporate entities owned and operated by the parties"); *see also Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) ("Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.").

Here, the NY Action and CA Action center on common facts and legal questions. The only difference is how the facts are labeled. The actions are between the same putative parties. Carter sued Sweeney and Avant Garde in the NY Action,

MOTION TO DISMISS

1  and Sweeney and Avant Garde sued Carter and his several business entities in the CA

2  Action. That Plaintiffs have sued additional entities controlled by Carter is immaterial.

3         Additionally, the subject matter of the two actions is the same. Both actions

4  concern the services that Sweeney provided to Carter. In both actions, the parties

5  disagree about the validity and scope of a purported oral contingency fee agreement.

6  In the NY Action, Carter seeks to recover contingency legal fees paid to Plaintiffs and

7  to cut off any obligation to pay any further contingency legal fees. In the CA Action,

8  Plaintiffs seek to enforce the oral contingency fee agreement and to recover additional

9  monies they claim to be owed under that voided agreement. Because both actions

10  concern the same disputed contingency fee agreement, the New York court is capable

11  of resolving all issues relating to the parties' professional relationship. Indeed, the

12  court in New York has already set a deadline for additional submissions regarding what

13  would constitute "a reasonable fee" having recognized that Carter voided the

14  contingency fee agreement. Sims Decl., Ex. F. This eighth factor favors invoking the

15  *Colorado River* doctrine in favor of dismissal or a stay.

16         The first factor, which concerns the first court to assume jurisdiction over any

17  property at stake, is irrelevant or neutral because neither action is a proceeding *in rem*.

18         The second factor – the inconvenience of the federal forum (*i.e.*, the relative

19  convenience of the forums) – favors invoking the *Colorado River* doctrine. This action

20  will concern Plaintiffs' deep connections to New York and whether he engaged in the

21  unauthorized practice of law while residing in New York. It is Sweeney's unlawful

22  conduct that has made New York central to the claims and defenses at issue in the NY

23  Action and the CA Action. Because of Sweeney's repeated use of various New York

24  addresses, the witnesses needed to testify about Sweeney's time in New York will be

25  found in the New York area, and will be within the subpoena power of the New York

26  court, and not this Court for trial purposes.

27

28

The third factor – the desire to avoid piecemeal litigation – also favors invoking the *Colorado River* doctrine. Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *R.R. Street & Co.*, 656 F.3d at 979 (quoting *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). The possibility of inconsistent discovery rulings supports abstention as does the possibility that a judgment in one action "may affect the viability" of one party's claims and "moot" them. *Barkstrong, LLC*, 2019 WL 6315535, at *3-4.

The risk of piecemeal litigation is great because both the NY Action and the CA Action concern a purported oral contingency agreement governing Carter's obligation to pay Plaintiffs for Sweeney's services. Because the lawsuits concern the nature of the professional relationship between the parties, litigating them would require two different courts to resolve the same legal issues and facts, and thus would pose a serious risk of conflicting results, whether in matters involving discovery or the ultimate resolution of the parties' claims.

The fourth factor – the order of jurisdiction – favors invoking the *Colorado River* doctrine. This factor "'is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions.'" *Morrissey*, 2020 WL 5983923, at *5 (quoting *Am. Int'l Underwriters (Philippines) Inc.*, 843 F.2d at 1258). The New York state court was the first to obtain jurisdiction over the parties' dispute and is in the midst of resolving Plaintiffs' Motion to Dismiss. In fact, the NY Decision, which granted the motion in part, leaves for resolution what amount (if any) would constitute "a reasonable fee" to Sweeney given that the contingency fee agreement was voided by Carter. Sims Decl., Ex. F at 7.

As a result of the recent NY Decision, the NY Action is much further along in the parties' dispute than the CA Action. The oral contingency legal fee agreement

MOTION TO DISMISS

at issue is being construed by the New York court now. Although the NY Decision will likely be the subject of additional motion practice as well as a prompt appeal, those proceedings will only accelerate the conclusion of the NY Action.

The fifth factor – whether federal law or state law provides the rule of decision on the merits – favors affording deference to the New York state court because there are no federal claims alleged in either the NY Action or the CA Action. Although "routine" state law issues "relating to a breach of contract claim is generally not a valid justification for granting a stay[,]" *Morrissey*, 2020 WL 5983923, at \*5, both actions concern issues far from routine that have far reaching consequences for lawyers practicing law without a license or authorization in New York. These determinations belong in New York because Sweeney's conduct potentially impacts all lawyers in his circumstances.

The sixth factor – whether the state court proceedings can adequately protect the rights of the federal litigants – also favors exercising deference in favor of the NY Action. *See Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1169 (9th Cir. 2017) (explaining if the state court cannot protect the rights of the federal litigant a stay is inappropriate, but when it can, this factor may weigh in favor of a stay). The New York court can protect Plaintiffs' rights. Both the NY Action and the CA Action concern the same disputed professional relationship. And the final adjudication of the Motion to Dismiss in the NY Action, including what, if anything, would constitute a "reasonable fee" for Sweeney's services, addresses the same professional relationship at issue and in the CA Action, and encompasses the relief Plaintiffs seek from Defendants.

The seventh factor – avoiding forum shopping – favors abstention. Forum shopping is "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." Black's Law Dictionary 726 (7th ed. 1999). And to avoid it, the court may consider "the vexatious or reactive nature of either the federal or the state

MOTION TO DISMISS

litigation." *R.R. Street & Co.*, 656 F.3d at 981 (internal quotations omitted). An adverse ruling in the state court is not required to support invoking the *Colorado River* doctrine. *Morrissey*, 2020 WL 5983923, at *6. It is sufficient that permitting Plaintiffs to proceed with the CA Action would "encourage forum shopping." *Id.*

Plaintiffs' decision to file the CA Action occurred *years* after the NY Action was filed and more than a year after Plaintiffs' Motion to Dismiss was submitted. Because Plaintiffs avoided the New York forum rather than file a separate action in New York, which could have been consolidated with the NY Action – a decision that smacks of forum shopping – this factor favors abstention. *See Nakash*, 882 F.2d at 1417 (finding forum shopping where plaintiff sued after years of state court litigation).

All of the factors, when considered together, support dismissal (or at minimum, a stay) of this action under the *Colorado River* doctrine. Dismissal is the appropriate remedy here because Plaintiffs' claims belong in the NY Action so that all of the parties' claims can be resolved by one tribunal.

## III. IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED UNDER THE COURT'S INHERENT POWERS

A court has considerably broader discretion to stay proceedings under its inherent authority than under the *Colorado River* doctrine. *Morrissey*, 2020 WL 5983923, at *6 n.8 (quoting *j2 Global Commc'ns, Inc. v. Protus IP Sols.*, Case No. CV 06-00566 DPP (AJWx), 2008 WL 11338136, *5 (C.D. Cal. Sept. 23, 2008)). The power to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Lands v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

If this Court does not find "exceptional circumstances" to dismiss or stay this action under the *Colorado River doctrine*, then Defendants respectfully request that it

1 invoke its inherent authority and stay this action until the NY Action is fully and finally
2 adjudicated.

3 **IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12**

4 Judgment on the pleadings is proper when the defendant establishes that, even
5 if all material facts in the complaint are true, no material issue of fact remains for trial
6 and the defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 12(c);
7 *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (Rule 12(b)
8 and 12(c) motions are "functionally identical").  Accordingly, where a complaint fails
9 to state a plausible claim, judgment should be granted.  *See Ashcroft v. Iqbal*, 556 U.S.
10 662, 678 (2009); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d
11 1047, 1055 n.4 (9th Cir. 2011).

12 **A.    Plaintiffs' Contract Claim Should Be Dismissed**

13 Under the California Statute of Frauds, an oral contract that "by its terms is
14 not to be performed within a year from the making thereof" is invalid.  Cal. Civ. Code
15 § 1624(a)(1).  *Accord* N.Y. Gen. Oblig. Law 5-701(a)(1).  An oral contract that requires
16 performance "in perpetuity" violates the statute.  *See Winburn v. All Am. Sportswear
17 Co.*, 215 Cal. App. 2d 380 (1963)  ("In a bilateral contract, if the promise of either party
18 cannot be performed within one year, the entire contract falls within the statute of
19 frauds."); *Keller v. Pacific Turf Club*, 192 Cal. App. 2d 189 (1961) (stating that to fall
20 within the statute the "contract itself must contain language whose reasonable
21 interpretation shows a clear intention that it cannot be performed within the year");
22 *accord Webber v. Dash*, 19 Civ. 610 (CM), 2019 WL 1213008, at *6 (S.D.N.Y. Feb.
23 25, 2019) (oral contracts with perpetual obligations are not enforceable); *Baiul v. NBC
24 Sports*, Case No. 15-cv-9920 (KBF), 2016 WL 1587250, at *12 (S.D.N.Y. Apr. 19,
25 2016) (recurring royalties and perpetual obligations violate statute); *Santos v. Medina*,
26 417 F. Supp. 3d 280, 288-289 (S.D.N.Y. 2019) (contracts that continue until breach
27 violate statute).

28

Plaintiffs' claim for breach of an oral contract must be dismissed because the purported contract cannot be performed within one year.  The term of the purported oral contingency agreement requires payments to Plaintiffs "in perpetuity," which violates the statute because it allegedly imposes on Defendants a never-ending payment obligation.  *See* Black's Law Dictionary (2d) (defining "in perpetuity" to mean that a "thing is forever or for all time").

Moreover, the Purported Unsigned Fee Agreement that Sweeney contends reflects the terms of the oral agreement governing the parties' professional relationship contains provisions that differ from what he alleged in the Complaint and are, nevertheless, terms that cannot be performed within one year.  Sims Decl., Ex. B (Sweeney Aff.) at Ex. 4 thereto at 2-3 (including multi-year sunset provision).  Accordingly, Plaintiffs' entire contract claim should be dismissed.

### B.      Plaintiffs' Equitable Claims Should Be Dismissed

Because the Statute of Frauds bars Plaintiffs' contract claim, the unjust enrichment and *quantum meruit* claims must be dismissed.  *See First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992) (allowing quasi-contractual claim against Statute of Frauds challenge where claim is *not* "subterfuge for [action upon a contract]"); *Beard v. Melvin*, 60 Cal. App. 2d 421, 426 (1943) ("The oral contract itself may not be relied upon to support an implied contract.  It is said in 27 C.J. 315 that: 'Whatever the form of the action may be, if the proof of a promise or contract within the statute is essential to maintain it, there can be no recovery unless the statute is satisfied.'"); *accord Zeising v. Kelly,* 152 F. Supp. 2d 335, 345 (S.D.N.Y. 2001) ("Plaintiff cannot simply restate his contract claim, which is barred by the Statute of Frauds, in an attempt to obtain damages in a quasi-contractual claim."); *Thiam v. Am. Talent Agency, Inc.*, Case No. 11 CIV. 1465 GBD, 2012 WL 1034901, at *5 (S.D.N.Y. Mar. 27, 2012) ("a plaintiff may not recover under an unjust enrichment claim when the Statute of Frauds bars the underlying contract [the] claim is predicated on").

Plaintiffs' claims for quasi-contractual relief are based on the same oral contingency fee agreement that violates the Statute of Frauds. Indeed, Plaintiffs' breach of contract claim and other claims seek damages in excess of $20 million, together with payment of future "management" commissions. The unjust enrichment claim does so explicitly, and the *quantum meruit* claims does so implicitly. Accordingly, Plaintiffs' quasi-contractual claims should be dismissed.

If the Court finds that California law applies, then both claims are time-barred under Cal. Civ. Proc. Code § 339(1). *See Wu v. Sunrider Corp.*, Case No. 17-4825 DSF (SSx), 2018 WL 6266577 (C.D. Cal. May 22, 2018) (applying two-year period to unjust enrichment claim under quasi-contract theory); *Reeve v. Meleyco*, 46 Cal. App. 5th 1092, 1100 (2020) (applying two-year period to *quantum meruit*). Because Sweeney was terminated in September 2018 and the California Complaint was not filed until December 2020, Plaintiffs' claims are time-barred.

## C.    **The Fraudulent Inducement Claim Should Be Dismissed**

To plead a claim for fraudulent inducement under California law, a plaintiff must allege: (1) a false representation, concealment, or nondisclosure; (2) the defendant's knowledge of the falsity of its representations or concealments; (3) the defendant's intent to induce reliance by the plaintiff; (4) the plaintiff's justifiable reliance; and (5) resulting injury. *Cronin v. Advanced Fresh Concepts Franchise Corp.*, Case No. 2:20-cv-00816-SVV-JPR, 2020 WL 6391216, at *2 (C.D. July 14, 2020); *accord Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).

In addition, an attorney may not justifiably rely on a client's oral promise to pay a contingency fee absent a signed writing because an attorney is presumed to know that Section 6147 of the Cal. Bus. & Prof. Code requires a signed writing for any contingency fee to be enforceable. *Drum v. Farmers Ins. Exch.*, Case No. B166246, 2004 WL 765960, at *6 (Cal. Ct. App. Apr. 12, 2004), *as modified on denial of reh'g* (May 12, 2004) (citing *Phillippe v. Shapell Industries*, 43 Cal.3d 1247, 1270 (1987)).

It is well-settled that a plaintiff cannot re-label, as here, an ordinary contract claim into a fraud claim by merely alleging that defendant did not intend to perform it. Something more is required because "mere failure to perform a contract does not constitute fraud[.]" *Richardson v. Reliance Nat'l. Indem. Co.*, Case No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000); *see Tanedo v. East Baton Rouge Parish School Bd.*, Case No. SA CV10–01172 JAK, 2012 WL 5447959, at *7 (C.D. Cal. Oct. 4, 2012) ("[S]omething more than nonperformance is required to prove … intent not to perform[.]") (internal quotations omitted); *JMP Secs. LLP v. Altair Nanotechs. Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) (stating "no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise") (internal quotations omitted); *accord Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Otherwise, "every breach of contract claim would support a claim of fraud so long as the [plaintiff] adds … a general allegation" of intended nonperformance. *Tanedo*, 2012 WL 5447959, at *8 (internal quotations omitted); *see*, *e.g.*, *Audigier Brand Mgmt. v. Perez*, Case No. CV 12–5687–CAS (RZx), 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (alleged intent not to perform insufficient).

A complaint alleging a fraud claim must plead the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). A plaintiff pleading fraud must also "differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65. And when asserting a fraud claim against an entity, the plaintiff's burden is even greater. *Johnson v. Country Wide Bank FSB*, Case No. EDCV 10-01819 AG (MANx), 2011 WL 13224824, at *4 (C.D. Cal. Jan. 24, 2011). A plaintiff "must allege the names of the

MOTION TO DISMISS

persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Id.* (internal quotations omitted).

Plaintiffs have failed to plead a plausible fraudulent inducement claim.  They cannot plead *justifiable reliance* as a matter of law because Sweeney cannot falsely recharacterize his legal services to Carter as personal management services to avoid the requirements of Section 6147 on contingency legal fee agreements.  Sweeney is presumed to know that any oral agreement for a contingency legal fee is unenforceable, and neither he nor his company can justifiably rely on any purported oral promise to pay such a legal fee.

Moreover, Plaintiffs' allegations are deficient because they refer to "Defendants" – a term that not only includes Carter and the Entity Defendants, but also the "DOE" Defendants, who are alleged to be "legally responsible and liable for the acts and events referred to in the Complaint."  [Dkt. No. 1-2 (CA Compl.) ¶¶ 13-14.]  Because there are no allegations informing each named defendant of the nature of his or its participation in the fraud, what was allegedly said, who said it, when it was said, and where it was said, and instead lumping them all together, Plaintiffs' fraudulent inducement claim should be dismissed.  *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (dismissing fraud claims because plaintiff improperly lumped defendants together as "Defendants"); *accord Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 247 (S.D.N.Y. 2011).

Lastly, the fraudulent inducement claim should be dismissed because it does no more than convert a purportedly broken promise into a tort.  The breach of oral contract and the fraudulent inducement claims seek recovery of the same damages, *e.g.*, purported "management commissions" from settlements and the sale of master recordings.  [*Compare* Dkt. No. 1-2 (CA Compl.) ¶ 49 (alleging in the contract claim that Defendants breached by not paying Plaintiffs "amounts owed to them," including

"back commissions, the settlements of the Cash Money Action and the Universal/[]SoundExchange Action, and the sale of the Young Money Masters" (a sale that occurred after Sweeney was fired and one he had no involvement as a lawyer)) *with id.* at ¶ 54 (alleging in the fraudulent inducement claim that Defendants harbored a "secret intention not to perform and to deprive Plaintiffs of the benefits of the Agreement, and specifically the benefits associated with receiving 10% of proceeds from the eventual settlement of the Cash Money Action and the Universal/SoundExchange Action, and the sale of the Young Money Masters"); *compare also id.*, *prayer for relief* at ¶ 1 (seeking compensatory damages for the breach of contraction claim of "at least $20 Million") *with id.*, *prayer for relief* at ¶ 2 (seeking compensatory damages for the fraudulent inducement claim of "at least $20 Million").] All Plaintiffs have alleged is that Defendants' purported oral promise to pay a 10% contingency fee was not honored due to a "secret intention not to perform[.]" *Id.* at ¶¶ 54-55. The fraud claim is insufficient as a matter of law.

### D. The Accounting Claim Should Be Dismissed

Because Plaintiffs have no plausible claim to pursue against Defendants, Plaintiffs have no right to an accounting.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant an Order dismissing the California Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Alternatively, Defendants respectfully request an Order dismissing or staying this action under the *Colorado River* doctrine, or staying this action under the Court's inherent powers. Alternatively, Defendants request that the Court enter judgment on the pleadings under Fed. R. Civ. P. 12(c).

Dated: April 30, 2021

**KATTEN MUCHIN ROSENMAN LLP**
By: _/s/ Tami Kameda Sims_____
Attorneys for Defendants

1  Katten Muchin Rosenman LLP
   2029 Century Park East, Suite 2600
2  Los Angeles, California 90067-3012
   Zia F. Modabber (Bar No. 137388)
3  zia.modabber@katten.com
   Tami Kameda Sims (Bar No. 245628)
4  tami.sims@katten.com
   Tel: (310) 788-4400
5  Fax: (310) 788-4471
   *Attorneys for Defendants Dwayne*
6  *Michael Carter, Jr. p/k/a Lil Wayne, Young*
   *Money Entertainment, LLC, Young Money*
7  *Publishing, Inc. Young Money Records,*
   *Inc. Young Money Ventures, LLC, and*
8  *Young Money Touring, Inc.*

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

| | |
|---|---|
| 12  RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation, | Case No.: 2:21-cv-01689-ODW-JC **REMOVED FROM STATE COURT** (Los Angeles Superior Court No. 20STCV47346) |
| 14 |  |
| 15                    Plaintiffs, | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
| 16                    vs. | **DECLARATION OF TAMI KAMEDA SIMS IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |
| 17  DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, |  |
| 23                    Defendants. |  |

- 1 -

## DECLARATION OF TAMI KAMEDA SIMS

I, TAMI KAMEDA SIMS, declare as follows:

1. I am a partner at Katten Muchin Rosenman LLP, attorneys for Defendants Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Carter"), Young Money Entertainment, LLC, Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc. (collectively, "Moving Defendants") in the above-captioned action filed against them by Plaintiffs Ronald E. Sweeney and Avant Garde Management, Inc. (collectively, "Plaintiffs").

2. I am familiar with the matters set forth herein. I submit this declaration in support of Moving Defendants' motion, filed concurrently herewith: (a) to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, or alternatively (b) to dismiss or stay the action due to the prior pending New York lawsuit, or alternatively (c) to grant Moving Defendants judgment on the pleadings and to dismiss the Complaint in its entirety.

3. Attached as Exhibit A is a partially redacted copy of an email and attachment from Ronald E. Sweeney, dated October 14, 2018 that Carter filed in New York Supreme Court against Plaintiffs, *Carter v. Sweeney, et. al.*, Index No. 151067/2019 (the "NY Action"). The email includes a signature block for Sweeney that references the purported law firm Sweeney, Johnson & Sweeney, LLC with the address of 222 Riverside Drive, New York, NY 10025. In his email, Sweeney states that the attached "settlement agreement with letters of direction for [Lil] Wayne to sign … sets forth the terms for ending my professional relationship with Wayne." The settlement agreement attached to the email provides for notices to be directed to Plaintiffs at "222 Riverside Drive, PHA New York, New York 10025," and includes three letters of direction requiring payments to be made to Avant Garde at 222 Riverside Drive, PH5A, New York, New York[.]"

DECLARATION TAMI KAMEDA SIMS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

148749769

4.  Attached as <u>Exhibit B</u> is a copy of the "Affidavit of Ronald E. Sweeney in Support of Defendants' Motion to Dismiss" filed in the NY Action, dated May 2, 2019 (the "<u>Sweeney Affidavit</u>"), along with Exhibit 4 thereto, which is a purported fee agreement that Sweeney contends reflects "the terms Carter and [Sweeney] agreed upon in 2005" regarding Sweeney's "*legal counsel* with respect to … [Carter's] activities in the entertainment field." Sweeney Affidavit, ¶ 20 and Ex. 4 at 1 (emphasis added).

5.  Attached as <u>Exhibit C</u> is a copy of the "Notice of Motion to Stay Proceedings Against Avant Management Inc." filed by Ronald E. Sweeney and Avant Garde Management, Inc. in the NY Action on October 18, 2019.

6.  Attached as <u>Exhibit D</u> is a copy of the "Stipulation to Stay Proceedings" filed by all parties in the NY Action on November 8, 2019.

7.  Attached as <u>Exhibit E</u> is a copy of the Order from the Court in the NY Action granting the motion to stay "on consent of the parties by stipulation" and staying the action for 60 days.

8.  Attached as <u>Exhibit F</u> is a copy of the "DECISION + ORDER ON MOTION" from the Court in the NY Action, dated April 16, 2021.

9.  Attached as <u>Exhibit G</u> is a copy of  the "Alternative Writ of Mandate and Stay Order" (the "<u>Alternative Writ</u>") that the Court of Appeal of the State of California, Second Appellate District, Division Three (the "<u>Court of Appeal</u>") issued to the Superior Court of the State of California for the County of Los Angeles (the "<u>Superior Court</u>") on December 10, 2020 in the writ proceeding *Carter, et al. v. The Superior Court of Los Angeles* County, Case No. B308950.

10. In the Alternative Writ, the Court of Appeal found "based on the record" that it "appear[ed] the respondent trial court erred" when it denied Mr. Carter's and Young Money Touring, Inc.'s  "motion to quash for lack of personal jurisdiction" and noted that "[i]n opposing petitioners' motion, [the] real party in

148749769

interest did not offer evidence sufficient to demonstrate that respondent court may exercise all-purpose, general jurisdiction over petitioners [Carter and Young Money Touring, Inc.] [or] … case-specific jurisdiction over [them]."

11. The Court of Appeal directed the Superior Court to vacate its order "denying petitioners' motion to quash service for lack of personal jurisdiction, and to thereafter enter a new and different order granting the motion, or … SHOW CAUSE before th[e] court … why you have not done so and why a peremptory writ of mandate requiring you do so should not issue."

12. Attached as <u>Exhibit H</u> is a copy of the Superior Court's response to the Alternative Writ filed in *Natan, et al. v. Carter, et al.*, Case No. BC717798. The Superior Court's response included an "Order" that "vacat[ed] [the Superior Court's] Order denying petitioner's [sic] motion to quash service for lack of personal jurisdiction and … enter[ed] a new and different order GRANTING the Motion to Quash."

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of April, 2021, at  Los Angeles, California.


*/s/ Tami Kameda Sims*

_____
TAMI KAMEDA SIMS

DECLARATION TAMI KAMEDA SIMS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

148749769

# EXHIBIT A

Case 1:22-cv-00666-GDW-OC Document 184-1 Filed 06/30/22 Page 79 of 477 Page ID #:079
ID #:994



From: Ron Sweeney <ron.sweeney@sjslawcorp.com<mailto:ron.sweeney@sjslawcorp.com>>
Date: October 14, 2018 at 1:01:29 PM EDT
To: ██████████████████████
<██████████████████ <mailto:██████████████████>>,

Subject: Avant Garde Management Settlement Documents

I have prepared a settlement agreement along with the letters of direction for Wayne to sign. This document sets forth the terms for ending my professional relationship with Wayne. Please review and if all is in order, kindly have Wayne sign so we can put this behind us. If you have any questions, give me a call.

--

Case 1:21-cv-01068-GBD-OTW Document 41-3 Filed 06/30/22 Page 80 of 477 ID #:995

_____

Ronald E. Sweeney
Sweeney, Johnson & Sweeney, LLC
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.

Case 1:21-cv-00068-GDW/CC Document 84-3 Filed 06/30/22 Page 58 of 477 PageID #:
ID #:996

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of October 15, 2018, between Young Money Entertainment, LLC, a Delaware limited liability company, Young Money Records, Inc., Young Money Touring, Inc., Young Money Publishing, Inc. and Dwayne Michael Carter, Jr. p/k/a Lil Wayne (collectively, the "Carter Parties"), on the one hand, and Avant Garde Management, Inc., Sweeney, Johnson, and Sweeney, and Ronald E. Sweeney, on the other hand (collectively, "Sweeney"). This Agreement is entered into with reference to the following matters:



Case 1:21-cv-00665-DLC-OTC Document 84-3 Filed 06/30/22 Page 82 of 477 Page
ID #:997

2:



8.   **Notices**.  Unless otherwise specifically provided in this Agreement, all notices, demands, requests, approvals or other communications (collectively and severally called "Notices") given with respect to this Agreement, shall be in writing, and shall be given at the addresses below by: (1) personal delivery (which form of Notice shall be deemed to have been given upon delivery), (2) or by Federal Express, Express Mail, or private airborne/overnight delivery service (which forms of Notice shall be deemed to have been given upon confirmed delivery by the delivery agency).

**To The Sweeney Parties:**

Ronald E. Sweeney, Esq.
222 Riverside Drive, PHA
New York , New York 10025

**To Carter Parties:**

3

Case 2:20-cv-06590-WJCD Document 41 Filed 04/30/22 Page 1 of 52 Page ID #:084
ID #:999



**With Copies To:**



RONALD E. SWEENEY                    DWAYNE MICHAEL CARTER, JR.

_____          _____

AVANT GARDE MANAGEMENT, INC          YOUNG MONEY ENTERTAINMENT, LLC

By:_____           By:_____

Its_____           Its:_____

SWEENEY, JOHNSON, & SWEENEY          YOUNG MONEY RECORDS, INC.

By:_____           By:_____

Its:_____           Its:_____

YOUNG MONEY PUBLISHING, INC.         YOUNG MONEY TOURING, INC.

By:_____           By:_____

Its:_____           Its:_____

INDEX NO. 151067/2019
Case 1:20-cv-10832-AT-SN Document 841 Filed 06/30/22 Page 88 of 477 ID #:186
ID #:1001
RECEIVED NYSCEF: 08/23/2019

Case 1:21-cv-10865-SDA-JCD Document 41-1 Filed 04/30/22 Page 88 of 477 ID #:087
ID #:1002

YOUNG MONEY TOURING, INC.
f/s/o Dwayne Carter p/k/a "Lil Wayne"
c/o


October 15, 2018



Re:   Letter of Direction for Avant Garde Management, Inc.

Gentlemen:

1. 

2.      Although the Tour Agreement require you to pay the amounts due thereunder directly to us, we hereby irrevocably authorize and direct you to pay Ten Percent (10%) of all sums payable to us on our behalf to Avant Garde Management, Inc., 222 Riverside Drive, PH5A, New York, New York until such time that the total amount paid to Avant Garde Management Inc. is



3.

Very truly yours,

YOUNG MONEY TOURING, INC.

By: _____
         An Authorized Signatory

AGREED AND ACCEPTED:

Case 1:21-cv-01656-DLC Document 41-1 Filed 04/30/22 Page 58 of 47 ID #:188

ID #:1003

_____

Dwayne Carter p/k/a "Lil Wayne"

**YOUNG MONEY ENTERTAINMENT, LLC.**
**YOUNG MONEY RECORDS, INC.**
f/s/o Dwayne Carter p/k/a "Lil Wayne"
c/o 

---

October 15, 2018

Re:   <u>Letter of Direction for Avant Garde Management, Inc.</u>

Gentlemen:



1.

2   (a)   Although both the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ require you to pay the amounts due thereunder either directly to us or directly to the trust account of ▓▓▓▓▓▓▓▓▓ on our behalf, we hereby irrevocably authorize and direct you to pay the following sums on our behalf to Avant Garde Management, Inc., 222 Riverside Drive, PH5A, New York, New York 10025.



(i)

(ii)



3.

Very truly yours,

YOUNG MONEY ENTERTAINMENT, LLC

By: _____
     An Authorized Signatory

**AGREED AND ACCEPTED:**

_____
Dwayne Carter p/k/a "Lil Wayne"

YOUNG MONEY RECORDS, INC.

By: _____
     An Authorized Signatory

FILED: NEW YORK COUNTY CLERK 08/23/2019 09:06 PM
INDEX NO. 151067/2019
NYSCEF DOC. NO. 24
Case 1:21-cv-01659-DLC Document 41-1 Filed 04/08/22 Page 58 of 477 Page ID#:091
ID #:1006
RECEIVED NYSCEF: 08/23/2019

**YOUNG MONEY PUBLISHING, INC.**
f/s/o Dwayne Carter p/k/a "Lil Wayne"
%



October 15, 2018

Re: Letter of Direction for Avant Garde Management Inc.

Gentlemen:

1.



2.  Although the Agreement requires you to pay amounts due thereunder directly to me, I hereby irrevocably authorize and direct Company to pay Ten Percent (10%) of any and all sums and advances payable to me under the terms of the Agreement at the time that such amounts becomes payable, on my behalf to:

Avant Garde Management, Inc.
222 Riverside Drive, PH5A
New York, New York 10025



3.

Case 1:21-cv-10608-DLC Document 41-1 Filed 04/30/22 Page 93 of 477 Page ID #:092
ID #:1007

Very truly yours,

YOUNG MONEY PUBLISHING, INC.

By_____


_____
Dwayne Carter p/k/a "Lil Wayne"

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

DWAYNE MICHAEL CARTER, JR. p/k/a Lil
Wayne,

                Plaintiff,

        -v.-

RONALD E. SWEENEY, d/b/a SWEENEY,
JOHNSON & SWEENEY, a/k/a SWEENEY,
JOHNSON & SWEENEY, LLC, a/k/a LAW
OFFICES OF RONALD E. SWEENEY and
AVANT GARDE MANAGEMENT, INC.,

                Defendants.

-------------------------------------------------------------------X

Index No.: 151067/2019

**AFFIDAVIT OF RONALD E.
SWEENEY IN SUPPORT OF
DEFENDANTS'
MOTION TO DISMISS**

STATE OF CALIFORNIA      )
                         ) SS.
COUNTY OF LOS ANGELES  )

     RONALD E. SWEENEY, being duly sworn, states as follows:

    1. I am an attorney admitted to practice law in California, a partner in the law firm of

Sweeney Johnson & Sweeney, the President of Avant Garde Management, Inc., and a Defendant

in this action. I make this affidavit on the basis of personal knowledge.

    2. I submit this affidavit in support of Defendants' motion to dismiss the First Amended

Complaint filed by Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Carter"). A true and correct

copy of the First Amended Complaint is attached hereto as **Exhibit 1**.

    3. I am a resident of the State of Florida. My permanent residence is at 1425 Brickell

Avenue, Miami, FL 33131.

    4. I became a resident of Florida on May 1, 2018. Attached hereto as **Exhibit 2** is a true

and correct copy of the Declaration of Domicile I filed on June 28, 2018 pursuant to Florida

Statute Section 222.17 stating that my permanent domicile is Miami-Dade County, Florida. I have a Florida driver's license and am registered to vote in Florida.

5.  From approximately 2000 to 2018, my primary residence was 31532 Victoria Point Road, Malibu, CA 90265 and I paid taxes as a resident of California, maintained a California driver's license, and was registered to vote in California. I am a member in good standing of the State Bar of California.

6.  While I also own a condominium at 222 Riverside Drive, PHA, New York, NY 10025, that was never my primary residence at any time from 2000 to present. From at least 2000 forward, I did not vote in New York or maintain a New York driver's license.

7.  From August 2015 to April or May of 2016, I had a serious medical issue that prevented me from walking or traveling. During that time, I had to remain at my New York condominium, and updated my address with the State Bar of California to reflect that fact. After I recovered and was able to travel again, I did not update my address with the California Bar.

8.  I worked for Carter for approximately 14 years from late 2004 or early 2005 until September 2018. During that time, I brought to bear my years of experience as a businessperson, lawyer, personal manager, and record company executive in service of Carter and Carter's business and personal interests.

9.  I was originally hired by Carter's then-personal manager, Melissa Philipian, in late 2004 or early 2005 to get Carter out of a contractual arrangement with Cash Money Records. I successfully renegotiated Carter's agreement with Cash Money.

10. Attached hereto as **Exhibit 3** is a true and correct copy of the agreement I negotiated for Carter, which has an effective date of January 20, 2005.

2

11. Shortly after successfully renegotiating Carter's agreement with Cash Money Records, Carter sought to retain me to provide broad-based managerial, business, strategic, and legal services to him and his entities on an ongoing basis.

12. In exchange for my services, Carter and I agreed that I would receive 10% of the income on any deals I negotiated or managed on Carter's behalf. During the 14 years I worked for Carter, I was available 24 hours a day and handled whatever work was necessary regardless of whether it involved some potential financial benefit to Carter. During that time, my efforts generated tens if not hundreds of millions in revenue for Carter and Carter's businesses.

13. At the time I was hired by Carter and at all times during the negotiation of **Exhibit 3**, I was an attorney in good standing admitted to practice law in California.

14. I was paid the agreed-upon 10% of the income on deals I negotiated or managed on Carter's behalf without complaint throughout the entire period I worked for Carter.

15. In or around the end of 2005 or beginning of 2006, Cortez Bryant ("Bryant") began serving as Carter's personal manager. Bryant, as well as Jermaine Preyan p/k/a Mack Maine ("Preyan"), who serves as the President of Carter's company, Young Money Entertainment, LLC ("Young Money"), are childhood friends of Carter.

16. Bryant is a resident of Georgia, and frequently travels to Carter's residence in Miami, Florida, for his work as Carter's personal manager.

17. Preyan is a resident of Miami-Dade County, Florida.

18. Except during a period when Carter was imprisoned at Riker's Island, I did not regularly meet with Carter in New York. Carter has never been to or seen my condominium in New York or any office that I maintained in New York or California. Like other high-profile clients, I

3

traveled to meet Carter either in Florida or wherever he was performing. During those visits to Florida, I also regularly met with Bryant and/or Preyan.

19. I never suggested to Carter, Bryant, or Preyan at any time that I was admitted to practice law in New York or otherwise held myself out as a New York lawyer. Aside from some collateral matters involving litigation in which Carter was involved in New York, I did not transact business on Carter's behalf in New York. I have never appeared in a New York court and do not engage in the practice of law as if I were a lawyer admitted in New York.

20. In January 2016, I sent Carter and Bryant a written fee agreement reflecting the terms Carter and I had agreed upon in 2005. A true and correct copy of that agreement is attached hereto as **Exhibit 4.** The return address listed on **Exhibit 4** is "Sweeney, Johnson & Sweeney, LLC 152 W. 57th Street, 8th Floor, New York, New York 10019."

21. At the time **Exhibit 4** was sent, and at all times during which my firm maintained a New York office, a lawyer or lawyers admitted to practice law in New York were associated with my firm. When **Exhibit 4** was sent, and at relevant times during my representation of Carter, my email signature contained the disclaimer "*Licensed in California."

22. My firm no longer maintains an office in New York, and the relevant records from my work for Carter are not located in New York.

23. After I was terminated by Carter in September 2018, I discovered that Bryant and Preyan had conspired to have me fired by making false and misleading statements to Carter about me and my work.

24. As a result of those actions, I filed suit against Bryant and Preyan in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida seeking to recover damages for

4

Bryant's and Preyan's tortious interference and defamation. That case, *Sweeney v. Preyan, et al.*, is pending.

25. Attached hereto as **Exhibit 5** is a true and correct copy of the complaint filed in *Sweeney v. Preyan, et al.*

26. Finally, Carter has sued Avant Garde, a California company of which I am an officer, on the grounds that it received money Carter sent to me from Florida. Avant Garde is not based in New York, does not do business in New York and is not subject to personal jurisdiction in New York. Nor is it a law firm, as Carter alleges, that can be sued under New York law.

RONALD E. SWEENEY

Sworn to before me this
2nd day of May, 2019

_____
NOTARY PUBLIC

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☐ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

_____          _____
*Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

AARON MICHAEL CONSTANTE
Notary Public · California
Los Angeles County
Commission # 2276162
My Comm. Expires Jan 31, 2023

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this _second_ day of _May_, 20_19_,
    *Date*       *Month*    *Year*

by

(1) _____

(and 2) _Ronald E. Sweeney_____.
    *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
    *Signature of Notary Public*

――――――――――― OPTIONAL ―――――――――――

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit of Ronald E. Sweeney in support of defendants' Motion to Dismiss_

Document Date: _5/2/19_ _____ Number of Pages: _6 JC_

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

M1304-08 (09/17)

Case 2:17-cv-06882-DMG-JC Document 51-3 Filed 06/30/22 Page 27 of 80 Page ID #:1015

Exhibit 4

Case 2:21-cv-00695-DWJC Document 41-3 Filed 09/22/21 Page 2 of 31 PageID: 001
ID #:1016

# Sweeney, Johnson & Sweeney, LLC

152 W. 57th Street, 8th Floor
New York, New York 10019
Phone: (212) 262-5003
Fax: (917) 591-0323

January 1, 2016

Dwayne Carter p/k/a "Lil Wayne"
c/o Jeffrey Turner, CPA
Provident Financial Management
2850 Ocean Park, Blvd., Suite #300
Santa Monica, CA 90405

      Re:     Retainer Agreement

Gentlepersons:

This will set forth the arrangements, to which Dwayne Carter p/k/a "Lil Wayne" ("Artist") (hereinafter referred to herein as, "you" and "your") for yourself and on behalf of any other entities controlled by you, and we have agreed, regarding our firm's acting as legal counsel with respect to those of your activities in the entertainment field. For ease of reference, certain capitalized terms used in this agreement have the following meanings:

A.     "All Your Activities" means all your activities in the entertainment field, including your Music Activities and your Film and Other Activities, for which you ask us to represent you.

B.     "Film and Other Activities" means activities in the areas of film, television, live stage, interactive media, publishing (other than music publishing), merchandising (except as related to Music Activities), commercials and advertisements, and any other non-music entertainment activities. Please note that our services in connection with your Film and Other Activities will not include any production work in connection with any type of film, television, live stage, or other audiovisual production; without limiting the foregoing, our services will not include the negotiation or preparation of contracts with persons providing goods or services for any such film, television, live stage, or other audiovisual production.

C.     "Music Activities" means activities in the areas of recording, songwriting, music publishing, and live concert appearances, as well as merchandising, sponsorship and endorsements related to or arising from activities in those areas. Please note that our services in connection with your Music Activities will include day-to-day legal services necessary to operate your record label, if any, or other music businesses; without limiting the foregoing, our services will include negotiation or preparation of contracts with persons

signed to, or providing goods or services to, your record label or other music businesses.

**This fee agreement is not set by law; it is subject to negotiation between you and us.**

1. **Percentage Fee Arrangement.** Our fee arrangement is ten percent (10%) of your Gross Compensation arising from your entertainment activities in connection with All Your Activities) that you receive as a result of agreements and arrangements in which we represent you. The particulars of that calculation differ somewhat between (A) Music Activities, and (B) Film and Other Activities. We want to explain precisely how your fees will be calculated depending on the category of activity involved.

    (a)    **Music Activities.** The fee for our services relating to your Music Activities shall be an amount equal to:

        i.    10% of Gross Compensation in respect of your Music Activities paid to you or on your behalf while we represent you. For the sake of clarity, this means that our 10% fee also applies to Gross Compensation that you receive as a result of agreements or arrangements for Music Activities made prior to the time we begin to represent you if you ask us to represent you in connection with such agreements or arrangements (by way of example only, in a renegotiation or providing other advice or counsel).

        ii.    In the event our professional relationship with you terminates, we are also entitled to 10% of Gross Compensation in respect of your Music Activities paid to you or on your behalf within thirty six (36) months after such termination, if such compensation is earned pursuant to (A) agreements for which you asked us to render services and which were entered into while we represent you, or (B) agreements for which you asked us to render services and which were substantially negotiated while we represent you, or (C) agreements entered into prior to the time we begin to represent you, if you asked us to represent you in connection with such agreements.

        iii.    You hereby acknowledge that you have an outstanding balance of legal fees payable to our firm in the amount of $1,586,832 as of October 13, 2015.

    (b)    **Film, Television and all other Activities:** The fee for our services relating to your Film and Other Activities shall be an amount equal to:

        (1) 10% of Gross Compensation in respect of your Film and Other Activities, whenever received or earned by you or on your behalf, with respect to any project, production, or arrangement (or with respect to any increases from a renegotiation) substantially negotiated during the term of our representation.

This differs from our fee arrangement with respect to your Music Activities because our fee for your Film and Other Activities will only apply to those projects, etc., that begin <u>during</u> the term of our representation and <u>not before</u> (unless the project involves a renegotiation of an existing agreement, in which case our fee applies only to the improvements of that agreement).

(ii) In the event our professional relationship with you terminates, we will continue to be entitled to 10% of Gross Compensation received or earned by you or on your behalf from projects, etc., that were initiated during the term of our representation for so long as such projects continue to generate Gross Compensation.

This differs from our fee arrangement with respect to your Music Activities because our fee for your Film and Other Activities, post-termination, does not end after thirty six (36) months.

(c) **Gross Compensation.** "Gross Compensation" means all income of any kind derived from any of your activities in the entertainment business, including all "Gross Compensation" of any production company owned or controlled by you, without the deduction of any cost or expense incurred by you, except as specifically set forth to the contrary below. As used herein, the term "entertainment business" shall include without limitation any and all aspects of the entertainment, motion picture, television, music, recording, publishing, interactive, nightclub, literary and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using your name, photograph, voice, sound effects, likeness, caricatures, biography, talents or materials (collectively, "Name and Likeness"). The term "activities" shall include, without limitation, your activities in any capacity whatsoever in the entertainment business, and shall also include the use of your Name and Likeness. When your Gross Compensation includes consideration other than money, including but not limited to stock options or other equity interests, our share of such interests which are fully vested and freely transferable should be transferred to us as quickly as practicable and you shall pay us 10% of the amounts realized by you (less any carrying costs, option exercise price, costs of registration or sale) with respect to any other interest, whenever in your sole discretion you exercise any options or otherwise convert any such interest into money or any equivalent. Our fee will apply to monies earned by you or by any corporation or other entity through which you may operate, without any doubling up, of course.

2. **Payment.** While we will bill you for our expenses (as described below), we will not ordinarily bill you for our percentage compensation. Rather, we will rely on you to pay our percentage fee promptly after your receipt of compensation without our invoicing you. In this regard, we would like to discuss with you arranging for payment directly from your business manager. Notwithstanding the foregoing, you shall send any third party owing or who may in the future owe you Gross Monies of which our fee applies hereunder an irrevocable letter of direction instructing such third party to pay our fees directly to us. You hereby agree to execute any additional documents that are deemed necessary by any third party engaging your services for such direct payment.

Case 2:21-cv-01668-DWJC Document 11-3 Filed 03/22/21 Page 1 of 84 PageID #: 104
ID #:1019

3.    **Calendar Items.** You understand that agreements entered into by you with third parties may require you to give notice, exercise your rights, or make other decisions within certain time periods (for example, granting an approval or consent. or auditing a record or publishing company or motion picture studio to verify the accuracy of royalty statements, or option, extension and exercise dates for rights acquisition agreements). You understand and agree that we shall not be responsible for monitoring those time periods, or any dates or calendar items, on your behalf.

4.    **Excluded Services.** Our firm is not responsible for and will not render legal services with respect to: taxes and tax planning (including ERISA and related matters); securities work; litigation (including injunctions or any other remedies requiring the order of a court); arbitration, administrative, or other similar proceedings; divorce; criminal matters; trademark; bankruptcy; real estate: estate planning or probate; or other matters which are outside our areas of expertise. At your request, we will recommend other counsel to advise you with respect to any such matter; you shall be responsible for all attorneys' fees and costs for such advice (and any such fees and costs paid by you shall not reduce the gross compensation which is subject to the percentage fee arrangement and shall not otherwise reduce the amount owed to us as attorneys' fees). If we are required to assist in any litigation matter, our fee for such assistance will be charged at an hourly rate of $750/hr for Ronald Sweeney; $400/hr for Brandie Johnson; and $250/hr for Justin Sweeney. Any assistance that we provide in connection with any litigation matter shall be subject to          your          request          and          approval.

5.    **Disclaimer of Guarantee.** We have made no promise or guarantees to you about the results of the legal services we perform. Any statements we may make regarding the likely or probable outcome of the services we perform are our good faith estimate of such result, and represent a statement of opinion only, and are not to be construed or interpreted as a promise or guarantee to you. WE CANNOT AND WILL NOT BE RESPONSIBLE FOR ANY PROBLEMS THAT MAY ARISE IN CONNECTION WITH OUR LACK OF KNOWLEDGE OF FACTS, TERMS, PROVISIONS, CONDITIONS, LIMITATIONS, RESTRICTIONS, RIGHTS OR OBLIGATIONS (COLLECTIVELY, "PRIOR INFORMATION") CONTAINED IN AGREEMENTS OR DOCUMENTS OF WHICH WE ARE UNAWARE OR WHICH HAVE NOT BEEN FURNISHED TO US. YOU HEREBY AGREE NOT TO ASSERT ANY CLAIM AGAINST US ARISING OUT OF PRIOR INFORMATION WHICH YOU ALLEGE WAS OR SHOULD HAVE BEEN KNOWN BY US IF AND TO THE EXTENT SUCH PRIOR INFORMATION IS CONTAINED IN ANY AGREEMENTS OR DOCUMENTS OF WHICH WE ARE UNAWARE OR WHICH HAVE NOT BEEN FURNISHED TO US.

6.    **Termination.** Either you or we may terminate this agreement at any time, subject to your obligation to pay our fees as described above; however, if you desire us to do so, we will continue our services with regard to any matter as to which our compensation continues. If our relationship with you terminates, then with respect to any of your files which have not been delivered to you, or to others pursuant to your instructions, we may, at the expiration of five (5) years after such termination, notify you to remove same, at your expense. If you fail to do so within sixty (60) days after such notice, we may destroy all such files. Our notice will be deemed duly given if sent to you, postage prepaid. at your last address furnished to us.

7.    **Arbitration and Waiver of Jury Trial.** Any dispute between you and us (including, without limitation, any individual attorney at our firm) shall be subject to binding and confidential arbitration. This means, among other things, that any dispute (whether in contract, tort or otherwise) based upon, arising out of or relating to this agreement or to the relationship of the parties, our

engagement and/or our performance or failure to perform services is subject to binding and confidential arbitration. Our agreement to arbitrate disputes includes, without limitation (a) disputes relating to legal fees, costs and billing; (b) disputes relating to claims for breach of duty, professional negligence or malpractice; and (c) questions regarding the arbitrability of the underlying dispute, including whether we have agreed to arbitrate the dispute. In respect of any fee disputes, this agreement to binding arbitration is in addition to and is not intended to abrogate either party's right to require a non-binding fee arbitration pursuant to the California Business & Professions Code §§ 6200-06.

The following are the procedural particulars that apply to the arbitration of any dispute between you and us:

iv. The arbitrator shall be a retired California Superior or Appellate Court Judge or Federal Court Judge. All parties are agreeing to pay an equal portion of the arbitrator's fees.

v. The arbitration shall be held in the County of Los Angeles. You and we consent to personal jurisdiction in California and venue in Los Angeles. Any petition to compel arbitration and/or to enforce an arbitration award shall be filed in a competent court in Los Angeles County.

vi. The arbitrator shall determine what, if any, discovery shall be permitted. In this regard, discovery (if any) shall be limited and shall be permitted only upon a showing of good cause.

vii. The arbitration proceedings shall take place in a private (as opposed to public) forum and shall be kept confidential to the greatest extent possible.

viii. Judgment on the arbitrator's award shall be final and binding, and may be entered in any competent court.

AS A PRACTICAL MATTER, BY AGREEING TO ARBITRATE, ALL PARTIES ARE WAVING JURY TRIAL. BY AGREEING TO ARBITRATE, ALL PARTIES ACKNOWLEDGE THAT AN APPEAL OR CHALLENGE OF AN ARBITRATOR'S AWARD MAY OCCUR ONLY UNDER LIMITED CIRCUMSTANCES. THIS AGREEMENT TO ARBITRATE SHALL SURVIVE THE TERMINATION OF OUR REPRESENTATION OR OF THIS AGREEMENT.

8. **Start Date.** This fee arrangement will be effective as of the date hereof. Notwithstanding the foregoing, you hereby acknowledge that the terms set forth herein are the same terms that have applied to our business relationship since our firm first began representing you on or about January 1, 2005.

9. **Conflict of Interests.** Artist hereby acknowledges that we represent other persons and firms engaged in the field of entertainment, and that from time to time conflicts of interest may arise between our clients. If a conflict arises, we will discuss with you at that time an appropriate resolution, which may require you and/or the other client to engage other legal counsel.

The California Rules of Professional conduct also require us to advise you of various existing legal, business, professional and personal relationships which the firm and its attorneys have with executives of companies in the entertainment industry. In this regard, we represent high level executives at companies in the motion picture, television, recording, commercial and other

Case 2:17-cv-06882-DMG-JC Document 41-3 Filed 05/22/21 Page 106 of 477 Page ID #:1021

entertainment related industries in their personal negotiations with their employers, . We also represent other actors, recording artists, songwriters, music producers, motion picture producers, television executive producers, directors, writers and other talent, some of whom may from time to time be involved in the same project as you. If we feel we cannot appropriately represent you due to the nature of our relationship with an executive or other party, we will notify you and withdraw from such matter. Your signature on this letter will constitute your informed written consent to our representation of you notwithstanding our representation of industry executives and other talent.

We encourage you to consult with independent legal counsel, or other advisors of your choice, to assist you in reviewing this fee arrangement and evaluating the significance of our representation of industry executives and other actors, recording artists and the like. If you or your advisors have any questions or would like any additional information about these matters, we welcome your call.

If you are agreeable to our fee arrangement, please sign and return two copies of this letter to us in the envelope provided for your convenience. If you have any questions or comments, please contact us as soon as possible. You acknowledge that this letter supersedes any other fee agreement between you and us dated as of the date of this letter.

We look forward to working with you, and to a close and rewarding relationship in the years to come.

Cordially,

**Sweeney, Johnson & Sweeney, LLC**

By: _____
      An Authorized Signatory

ACCEPTED AND AGREED:

_____
Dwayne Carter p/k/a "Lil Wayne"

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X

DWAYNE MICHAEL CARTER, JR., p/k/a Lil Wayne

        Plaintiff,

    -v.-

RONALD E. SWEENEY and AVANT GARDE MANAGEMENT, INC.,

        Defendants.

-------------------------------------------------------------X

Index No.: 151067/2019

**NOTICE OF MOTION TO STAY PROCEEDINGS AGAINST AVANT GARDE MANAGEMENT INC.**

    **PLEASE TAKE NOTICE** that upon: (1) the First Amended Complaint ("Complaint") filed by Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Carter") on March 22, 2019, (2) the accompanying memorandum of law in support of Defendants Ronald E. Sweeney ("Sweeney") and Avant Garde Management, Inc.'s ("Avant Garde") Motion to Stay Proceedings Against Avant Garde, and (3) the accompanying Affidavit of Ronald E. Sweeney dated October 18, 2019, with the exhibits thereto, Mr. Sweeney and Avant Garde, by their attorneys, Frankfurt Kurnit Klein & Selz, P.C. will move the Supreme Court, New York County, 60 Centre Street, Room 130, New York, NY, at 9:30 A.M. on November 8, 2019 or as soon thereafter as counsel can be heard, for an order:

1. Pursuant to CPLR Section 2201 to stay proceedings concerning all claims brought against Avant Garde in the FAC.

2. Granting such other and further relief as the Court deems just and proper.

    **PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214(b), answering papers, if any, are requested to be served upon the undersigned counsel at least seven (7) days before the return date of this motion.

Case 2:19-cv-06893-DW-JC Document 41-3 Filed 11/30/22 Page 2 of 89 Page ID #:1024

Dated: New York, New York
October 18, 2019

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: ___*/s/ Edward H. Rosenthal*_____
Edward H. Rosenthal
John B. Harris
William C. Lawrence
488 Madison Avenue, 10th Floor
New York, NY 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175

*Attorneys Defendants Ronald E. Sweeney and Avant
Garde Management, Inc.*

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- x
DWAYNE MICHAEL CARTER, JR.,       :
p/k/a LIL WAYNE,                             :    Index No. 151067/2019
                                                  :
                    Plaintiff,           :     Hon. James d'Auguste
                                                    :
                -against-             :     **STIPULATION**
                                                    :     **TO STAY PROCEEDINGS**
RONALD E. SWEENEY, d/b/a SWEENEY,     :
JOHNSON & SWEENEY, a/k/a SWEENEY,    :
JOHNSON & SWEENEY, LLC, a/k/a LAW OFFICES :
OF RONALD E. SWEENEY, and AVANT GARDE   :
MANAGEMENT, INC.,                            :
                                                    :
                    Defendants.         :
-------------------------------------------------------------------- x

      WHEREAS, Defendant Avant Garde Management, Inc. ("Avant Garde") has moved, pursuant to CPLR 2201, for an order to stay proceedings in the above-captioned action for 60 days concerning all claims Plaintiff Dwayne Michael Carter, Jr. ("Plaintiff") has alleged against Avant Garde, a suspended California corporation, to allow it to reinstate its corporate status and defend itself;

      WHEREAS, Plaintiff and Defendant Ronald E. Sweeney do not oppose a stay of the action to permit Avant Garde to reinstate its corporate status;

      WHEREAS, Plaintiff does not admit or otherwise acknowledge any of the allegations, contentions, or assertions made by Avant Garde against Plaintiff in its moving papers; and

      WHEREAS, for purposes of judicial economy and efficiency, all parties agree that the action should also be stayed as to Defendant Ronald E. Sweeney ("Sweeney") while Defendant Avant Garde seeks reinstatement of its corporate status;

ACCORDINGLY, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel for Plaintiff, on the one hand, and Defendants Avant Garde and Sweeney, on the other hand, as follows:

1. The parties jointly consent to a stay of all proceedings in the above-captioned action for 60 days from the date of this stipulation.

2. This stipulation can be signed in counterparts, and facsimile/PDF signatures shall be deemed originals for the purpose of this stipulation.

Dated:  November 8, 2019
       New York, New York

JONATHAN D. DAVIS, P.C.

By:_____
Jonathan D. Davis (jdd@jddavispc.com)
Derek A. Williams (daw@jddavispc.com)
Milton E. Otto (meo@jddavispc.com)
10 Rockefeller Plaza, Suite 1015
New York, NY 10020
Tel: (212) 687-5464
Fax: (212) 697-2521
*Attorneys for Plaintiff Dwayne Michael Carter,*
*Jr. p/k/a Lil Wayne*

FRANKFURT, KURNIT KLEIN & SELZ, P.C.

By:_____
John B. Harris (jharris@fkks.com)
Edward H. Rosenthal (erosenthal@fkks.com)
William C. Lawrence (wlawrence@fkks.com)
28 Liberty Street, 36th Floor
New York, New York 10005
Tel: (212) 980-0120
Fax: (212) 593-9175
*Attorneys for Defendants Ronald E. Sweeney*
*and Avant Garde Management, Inc.*

So Ordered:

_____
J.S.C.

2

# EXHIBIT E

Case 2:21-cv-06893-DMG-JC Document 1-3 Filed 08/27/21 Page 114 of 477 Page ID #:1029

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: _____ JAMES E. d'AUGUSTE
                                                    JSC                    PART 55

_____
                        *Justice*

Index Number : 151067/2019                                    INDEX NO. _____
CARTER, JR., DWAYNE M.
vs.                                                           MOTION DATE _____
SWEENEY, RONALD E.
SEQUENCE NUMBER : 003                                         MOTION SEQ. NO. _____
STAY PROCEEDINGS

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is granted on consent of the parties by stipulation (NYSCEF Doc. No. 45). The action is stayed for 60 days from November 8, 2019.

Dated: 12/2/19                                    _____ , J.S.C.
                                                        JAMES E. d'AUGUSTE
                                                                JSC

1. CHECK ONE: .................................................. ☐ CASE DISPOSED        ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: .......................MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................. ☐ SETTLE ORDER        ☐ SUBMIT ORDER

                                                    ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

# EXHIBIT F

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. JAMES EDWARD D'AUGUSTE**          PART          **IAS MOTION 55EFM**

*Justice*

-------------------------------------------------------------------X

DWAYNE CARTER,                                      INDEX NO.          151067/2019
                                                   MOTION SEQ. NO.          002
                              Plaintiff,

                    - v -

RONALD SWEENEY, AVANT GARDE MANAGEMENT,             **DECISION + ORDER**
INC.                                               **ON MOTION**

                              Defendant.

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 18, 19, 21, 22, 23,
24, 25, 26, 27, 28, 29, 30, 31, 32, 36, 37, 42, 47

were read on this motion to/for                          DISMISS                          .

        This action arises after the end of a 13-year relationship, in which defendant Ronald

Sweeney (Sweeney, or Defendant) acted as the transactional attorney for plaintiff Dwayne

Michael Carter, Jr., p/k/a Lil Wayne (Carter). The relationship ended when Carter fired Sweeney

on September 18, 2018.  Now, Carter brings this action, seeking to recoup the legal fees that he

paid Sweeney throughout those 13 years.  Defendants move to dismiss the first amended

complaint (Complaint).

        Carter is a resident of Florida.  Sweeney is a resident of New York.  He is licensed to

practice law in California, but his license was suspended from September 16, 2005 to March 20,

2007, and again from July1, 2008 to July 9, 2008.  Avant Garde Management, Inc. is a

corporation created by Sweeney.

        The Complaint, which seeks, among other, nonmonetary, relief, the recovery of all the

legal fees that Carter payed Sweeney in the course of 13 years, alleges the following 10 causes of

action: (1) fraudulent inducement, (2) legal malpractice, (3) breach of fiduciary duty, (4) unjust

**151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.**          Page 1 of 7
**Motion No.  002**

1 of 7

enrichment, against both defendants, (5) violation of California Business and Professional Code
§ 6147, (6) violation of California Business and Professional Code § 6148, (7) violation of
California Business and Professional Code §§17200-17219, (8) violation of N.Y. General
Business Law (GBL) §349, against both defendants, (9) violation of N.Y. Judiciary Law § 487,
against both defendants, and (10) a request for a declaratory judgment.

The first cause of action alleges that Sweeney fraudulently induced Carter to pay him for
legal services by representing that he was "an attorney authorized to provide legal services to
Carter on an ongoing basis," and that "he held himself out . . . as a practicing attorney with an
office in New York." Complaint, §§ 77-78. It is undisputed that: except for the two periods
when his license was suspended, Sweeney was, in fact, a practicing attorney authorized to
provide legal services to Carter. It is also undeniable that Sweeney customarily used his
Manhattan apartment as an office. Plainly, any claim about the periods during which Sweeney's
California license was suspended are time-barred. The complaint alleges no fact to show that
Carter was harmed by the fact that Sweeney was licensed in California, rather than in New York.
The Complaint alleges neither that Carter requested advice, nor that Sweeney offered advice
about, any matter of New York law.

The limitations period within which a claim for fraud must be brought is six years,
although that period can be extended when, for certain reasons, the fraud cannot be discovered
within that limitations period. CPLR 213 (4). Here, Sweeney's membership in the California
bar, the times when that membership were suspended, and Sweeney's non membership in the
New York bar, were all readily ascertainable from publicly available records. Accordingly,
Carter's claim that he was fraudulently induced to retain Sweeney lacks merit, as well as being
plainly time-barred.

**151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.**
**Motion No.  002**

**Page 2 of 7**

2 of 7

Case 2:21-cv-01889-DMW-CC Document 41-3 Filed 04/30/22 Page 45 of 58 Page ID #:1033

It is established that a plaintiff alleging legal malpractice must show that such malpractice "proximately caused actual and ascertainable damages." *Rudolph v Shayne, Dachs, Stanisci, Corker &Sauer,* 8 NY3d 438, 443 (2007). The Complaint, instead, alleges the same $20,000,000 in damages that it alleges with regard to multiple other causes of action. It is also established that, in order to make a prima facie case of legal malpractice, the plaintiff must show that he or she would have prevailed in underlying litigation, but for the attorney's negligence. *Davis v Klein,* 88 NY2d 1008, 1009-1010 (1996); *Schorsch v Moses & Singer, L.L.P.,* 60 AD3d 557, 557 (1st Dept 2009). The Complaint alleges that, when Carter and one of his companies were sued by their New York litigation counsel over their nonpayment of legal fees, Sweeney negotiated a settlement for Carter, but, after Carter failed to pay the negotiated sum, and a second action was commenced to recover the fees, Sweeney, although notified of that action, negligently failed to act, thereby allowing the New York firm to obtain a default judgment "for hundreds of thousands of dollars." These allegations fail to specify "ascertainable damages," *Rudolph* at 443, and it is no more than "an insufficient speculation" (*Rodriguez v Lipsig, Shapey, Manus & Moverman, P,C.,* 81 AD3d 551, 557 [1st Dept 2011]) that Carter, who had failed to pay his New York counsel, and then failed to pay a settlement of that counsel's claim, would have prevailed in that counsel's subsequent suit.

For the rest, this claim repeats many of the allegations raised in the first cause of action and, inexplicably, faults Sweeney for "breaching his duty of care by his advice concerning the California litigation firm's written contingency fee agreement." NYSCEF Doc, No. 5, ¶94. The Complaint discloses that "[i]n March 2018, the California litigation firm negotiated a settlement of [two matters] . . . which required certain payments to Carter and [his record label]. NYSCEF

151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.                    Page 3 of 7
Motion No.  002

3 of 7

Doc. No. 5, ¶ 60. If Carter was dissatisfied with that settlement, he fails to explain either why he was dissatisfied, or how Sweeney might have been at fault, in connection with the matter.

A cause of action alleging breach of fiduciary duty is governed by a three-year limitations period if the plaintiff seeks monetary damages, but to a six-year period, if the plaintiff seeks only equitable relief. Here, Carter's claim to a return of the attorney's fees that he paid Sweeney is a claim for damages, and the three-year rule applies. *Access Point Med. LLC v Mandell,* 106 AD3d 40, 44 *(*1st Dept 2013); *see also IDT Corp. v Morgan Stanley Dean Witter & Co.,* 12 NY3d 132, 139 (2009) (applying three-year limitations period to breach of fiduciary duty claim, where relief sought was primarily money); *see Jemima O. v Schwartzapfl, P.C,* 178 AD3d 474, 475 (1st Dept. 2019), citing *Kaufman v Cohen,* 307 AD2d 113, 118 (1st Dept 2003) (same).

Plaintiff argues that the Statute of Limitations was tolled by the continuous representation doctrine. However, that doctrine imposes a toll "only where the continuing representation pertains specifically to the matter in which the attorney committed the alleged malpractice." *Shumskey v Eisenstein,* 96 NY2d 164, 168 (2002). Moreover, "there must be a mutual understanding of the need for future services in connection with the same subject matter," *Davis v Cohen & Gesser, LLP,* 160 AD3d 484, 486 (1st Dept 2018). Here, to the contrary, the Complaint alleges, as plaintiff himself describes it, "many ongoing acts." Indeed, plaintiff's attempt to recoup the fees that he paid, over a 13-year period, shows that he views every legal service provided to him by Sweeney as an instance of both malpractice and breach of fiduciary duty. Finally, Carter offers no argument, or legal authority, to support the proposition that it is a breach of fiduciary duty for a lawyer to charge more than the going rate.

Unjust enrichment is a quasi-contractual obligation that is:

**151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.**                    **Page 4 of 7**
**Motion No.  002**

4 of 7

"imposed by law where there has been no agreement or expression of assent by word or act on the part of either party involved.  The law creates it . . . to assure a just and equitable result."

*Clark-Fitzpatrick. Inc. v Long Is. R.R. Co.,* 70 NY2d 383, 388-389 (1987); *see also Graciano Corp. v Lamark Group, Inc.,*184 AD3d 435, 435 (1st Dept 2020).  Here, Carter assented by deeds over a 13-year period to the oral agreement between the parties.  Moreover, it follows from Carter's complaint that, if Sweeney received fees totaling $20 million, Carter, during the same 13 years, received payments of $200 million from contracts negotiated by Sweeney.  While Sweeney's fees may have been high by musical industry standards, as the complaint alleges, they were not so high as to require the intervention of equity, especially inasmuch as Carter appears not to have objected to Sweeney's fees until after he fired him, 13 years into their professional relationship.

The fifth and sixth causes of action, both of which allege violation of the California Business and Professional Code, are dismissed, because neither of those provisions gives rise to a private cause of action for damages.   "[A] private right of action exists only if the language of the statute or its legislative history *intended* to create such a right."  *Vikco Ins. Servs., Inc. v Ohio Indemn. Co.*, 70 Cal. App. 4th 55, 63 (Ct. App. 1st District 1999).  Both statutes provide that fee agreements which fail to comply with the terms of the statutes may be voided at the client's option, upon which the attorney may "collect a reasonable fee."  Cal. Bus. & Prof. Code, §§ 6147 (b), 6148 (3) (c).  Neither provides for a cause of action for damages.

The seventh cause of action alleges a violation of California Business and Professional Code §§ 7300-7210.  Like GBL §349, discussed below, the California Unfair Competition Law is applicable "where a defendant's business practice is likely to deceive consumers," *Massachusetts Mutual Life Ins. Co. v Superior Ct. of San Diego County,* 97 Cal App4th 1283,

**151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.**                 **Page 5 of 7**
**Motion No.  002**

5 of 7

1291(Ct. App. 4th District 2002); *see also Downey v Public Storage, Inc.,* 44 Cal. App 5th 1103, 1114 (2020) (applicable where "members of the public are likely to be deceived.")

The Eighth cause of action is dismissed, because GBL §349, which prohibits deceptive acts or practices in the conduct of any business or trade, is not applicable to private disputes that are not "consumer oriented," that is, acts or practices that impact "consumers at large." *Playin v Group Health Incorporated,* 35 NY3d 1, 10 (2020) quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 86 NY2d 20, 25 (1995). The Complaint does not allege even a single fact showing that Sweeney took any action that affected New York consumers at large. *See* NYSCEF Doc. No. 5, 139-140.

Absent deceit directed at a court, Judiciary Law § 487 applies solely when the alleged deceit takes place in the course of a pending judicial proceeding. *US Suite LLC v Baratta, Baratta & Aidala LP,* 171 AD3d 551, 551 (1st Dept 2019) *Maimateas v Carter Ledyard & Millman LLP,* 103 AD3d 643, 643 (1st Dept 2013), *citing iCostalas v Amalfitano,* 305 AD2d 202, 204 (1st Dept 2003). The Complaint does not allege that any deceit, on the part of Sweeney, took place in the course of such a proceeding. Rather, it merely recites that the "course of deceitful conduct," that Carter accuses Sweeney of having engaged in, persisted while litigation, in which Sweeney was not involved, was ongoing. NYSCEF Doc. No. 36, at 36; *see also* NYSCEF Doc. No. 5 at 145-146. That a deceitful act occurs contemporaneously with a pending judicial proceeding does not satisfy the requirement that it take place in the course of such a proceeding.

Because the Judiciary Law § 487 is dismissed as against Sweeney, the court, sua sponte, also dismisses the claim as against Avant Guard Management, INC., because the latter claim depends entirely on the viability of the former claim.

Finally, Carter seeks a declaratory judgment that, for the most part, seeks the same relief

that he seeks in his first nine causes of action, for the same reasons as those put forth in those

causes of action.  Because the first nine causes of action are dismissed, to the extent that the 10th

repeats them, it fares no better.  However, ¶ 149 (d) of the Complaint seeks a declaration

"whether and to what extent Sweeney is entitled to unpaid amounts now or in the future pursuant

to any purported oral contingency agreement."  When Carter fired Sweeney, Carter, at least

implicitly, voided the agreement that had governed their relationship for the preceding 13 years.

Accordingly, there is an issue of what would constitute "a reasonable fee," pursuant to Cal. Bus.

& Prof. Code §§ 6147 (b) and 6148 (3) (c), from the time of Sweeney's termination up to the

present, and for the future.  The parties will be allowed to submit additional briefs on this issue,

not to exceed 15 pages in length, within 30 days of entry of this order.

Accordingly, it is hereby

ORDERED that defendant Ronald E. Sweeney's motion to dismiss the First Amended

Complaint is granted to the extent that the first nine causes of action asserted in that complaint,

as well as subsections a, b, and c of the 10th cause of action are dismissed; and it is further

ORDERED that the parties may submit additional briefing concerning subsection d of the

10th cause of action in a manner consistent with this decision.

| __4/16/2021__ | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **JAMES EDWARD D'AUGUSTE, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | | x | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | x | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |

**151067/2019   CARTER, JR., DWAYNE M. vs. SWEENEY, RONALD E.**                    **Page 7 of 7**
**Motion No.  002**

# EXHIBIT G

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

**COURT OF APPEAL – SECOND DIST.**

# F I L E D

Dec 10, 2020

DANIEL P. POTTER, Clerk

ZClayton                    Deputy Clerk

| | |
|---|---|
| DWAYNE CARTER et al., | B308950 |
| Petitioners, | (Super. Ct. No. BC717798) |
| v. | (Mel Red Recana, Judge) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ALTERNATIVE WRIT OF MANDATE AND STAY ORDER |
| Respondent; | |
| RAMIN NATAN, | |
| Real Party in Interest. | |

TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES:

The court has read and considered the petition for writ of mandate filed on November 20, 2020.

Based on the record before this court, it appears the respondent trial court erred in denying petitioner's motion to quash for lack of personal jurisdiction. The plaintiff has the burden of proving by a preponderance of the evidence the factual bases justifying the exercise of jurisdiction. (*ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 209-210.) In opposing petitioners' motion, real party in interest did not offer evidence sufficient to demonstrate that respondent court may exercise all-purpose, general jurisdiction over petitioners. (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 137; *Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1070.)

In addition, real party in interest did not offer evidence sufficient to demonstrate that respondent court may exercise case-specific jurisdiction over petitioners. "[W]hen no relationship exists between the

defendant's contacts with the forum state and the specific claims at issue, the court may not exercise specific jurisdiction 'regardless of the extent of the defendant's unconnected activities in the State.' " (*Brue v. Shabaab* (2020) 54 Cal.App.5th 578, 592, quoting *Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___, 137 S.Ct. 1773, 1781.)

Based on the above, and good cause appearing therefor, you are directed to:

(a) vacate your November 10, 2020 order denying petitioners' motion to quash service for lack of personal jurisdiction, and to thereafter enter a new and different order granting the motion, or

(b) in the alternative,

SHOW CAUSE before this court, in its courtroom at 300 South Spring Street, Los Angeles, California, on a date and at a time to be determined, why you have not done so and why a peremptory writ of mandate requiring you to do so should not issue.

If the respondent court elects to proceed under alternative (a) above – in the manner provided for in *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1247-1250 & fn. 10 – the respondent court is directed to transmit to this court a copy of the minute order reflecting its action on or before January 8, 2021.

If the respondent court elects not to proceed under alternative (a) above (1) real party may serve and file a written return to the petition on or before January 11, 2021, and (2) petitioner may serve and file a traverse within 15 days after the return is filed.

All further proceedings in this action are hereby stayed, except for any proceedings that may be required for the trial court to proceed under alternative (a) above.  This stay shall remain in effect until further order of this court or until the trial court proceeds under alternative (a) above, whichever occurs first.

By order of this court.

ATTEST my hand and the seal of this court this 10th day of December 2020.

DANIEL P. POTTER, Clerk

By Z. Clayton, Senior Deputy Clerk

ORDER

Let the foregoing writ issue.

EDMON, P. J.          EGERTON, J.          DHANIDINA, J.

# EXHIBIT H

SHERRI R. CARTER
EXECUTIVE OFFICER / CLERK OF COURT

FREDERICK R. BENNETT, ESQ.
COURT COUNSEL
111 NORTH HILL STREET, ROOM 546
LOS ANGELES, CA 90012-3014
E-mail: FBennett@LACourt.org

*Superior Court of California*
*County of Los Angeles*

January 7, 2021

Zaida Clayton
Senior Deputy Clerk, Division Three
Court of Appeal, Second Appellate District
300 S. Spring St.,
Los Angeles, CA 90013

      Re:    Dwayne Carter v. Superior Court (Ramin Natan), 2d App. No. B308950 (Super. Ct. No. BC717798).

Dear Ms. Clayton:

      Please advise the Justices of Division Three of the following:

      Transmitted herewith is the Minute Order and signed Order of the Trial Court issued in response to the Alternative Writ of Mandate filed in this matter.

              Very truly yours,

              Frederick R. Bennett
              Court Counsel

Document received by the CA 2nd District Court of Appeal.

FILED
Superior Court of California
County of Los Angeles

JAN 0 7 2021

Sherri R. Carter, Executive Officer/Clerk

By _Jontaé Marquez_, Deputy
Jontaé M. Marquez

CALIFORNIA SUPERIOR COURT
COUNTY OF LOS ANGELES, CENTRAL DISTRICT
DEPARTMENT 45

RAMIN NATAN VS. DWAYNE CARTER et al
BC 717798

---

ORDER

During the noticed hearing the parties agued why the Court should or should not vacate its November 10, 2020 order denying petitioners' motion to quash for lack of personal jurisdiction. Thereafter, the Court took the matter under submission and now rules:

The Court vacates its Order denying petitioner's motion to quash service for lack of personal jurisdiction and now enters a new and different order GRANTING the Motion to Quash.

It is so ordered.
January 7, 2021

MELRED RECANA
Judge

Document received by the CA 2nd District Court of Appeal.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 45

BC717798
RAMIN NATAN VS ERIC STENGER ET AL

January 7, 2021
8:30 AM

Judge: Honorable Mel Red Recana
Judicial Assistant: J. Marquez
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Philip Anthony Iadevaia (Telephonic)

For Defendant(s): Dwayne Carter Atty: Tami Sims (Telephonic)

**NATURE OF PROCEEDINGS:** Status Conference Re: Writ of Mandate and Stay Order issued by the Court of Appeal

The matter is called for hearing.

The Court and counsel confer regarding the Writ of Mandate and Stay Order issued by the Court of Appeal. After conferring with counsel, the Court rules as follows:

The Court takes the matter under submission.

Notice is waived.

LATER THE SAME DATE:

The Court issues an Order which is signed and filed this date and incorporated by reference herein.

During the noticed hearing the parties argued why the Court should or should not vacate its November 10, 2020 order denying Petitioner's Motion to Quash of personal jurisdiction. Thereafter, the Court took the matter under submission and now rules:

The Court vacates its Order denying Petitioner's Motion to Quash for lack of personal jurisdiction and now enters a new and different order Granting the Motion to Quash.

The clerk is to give notice.

Certificate of Mailing is attached.

Document received by the CA 2nd District Court of Appeal.

Minute Order

Page 1 of 1

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**COURTHOUSE ADDRESS:**
**Stanley Mosk Courthouse**
111 North Hill Street, Los Angeles, CA 90012

**FILED**
Superior Court of California
County of Los Angeles

**01/07/2021**

Sheri R. Carter, Executive Officer / Clerk of Court

By ___ J. Marquez ___ Deputy

**PLAINTIFF/PETITIONER:**
Ramin Natan

**DEFENDANT/RESPONDENT:**
Agency Twelve, Inc. et al

## CERTIFICATE OF MAILING

**CASE NUMBER:**
BC717798

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Status Conference Re: Writ of Mandate and Stay Order issued b...) of 01/07/2021 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Philip Anthony Iadevaia
Law Office of Philip A. Iadevaia
1230 Madera Road, Suite 5-268
Simi Valley, CA 93065-

Tami Sims, Esq.
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA, 90067

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 01/7/2021

By: __J. Marquez__
    Deputy Clerk

Document received by the CA 2nd District Court of Appeal.

## CERTIFICATE OF MAILING

KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Zia F. Modabber (Bar No. 137388)
zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
tami.sims@katten.com
Tel: (310) 788-4400
Fax: (310) 788-4471

*Attorneys for Defendants Dwayne Michael
Carter Jr. p/k/a Lil Wayne, Young Money
Entertainment, LLC, Young Money
Publishing, Inc. Young Money Records,
Inc. Young Money Ventures, LLC, and
Young Money Touring, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation,<br><br>                    Plaintiffs,<br><br>    v.<br><br>DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No.: 2:21-cv-01689-ODW-JC<br>**REMOVED FROM STATE COURT**<br>(Los Angeles Superior Court No. 20STCV47346)<br><br>Assigned to Hon. Otis D. Wright II<br>Courtroom 5D<br><br><br>**DECLARATION OF DWAYNE MICHAEL CARTER, JR. IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |

## <u>DECLARATION OF DWAYNE MICHAEL CARTER, JR.</u>

I, DWAYNE MICHAEL CARTER, JR., declare as follows:

1. I am a performer and recording artist professionally known as "Lil Wayne." I have personal knowledge of, and would be able to testify competently regarding, all of the facts in this declaration, unless stated upon information and belief, and to those matters, I believe them to be true.

2. I, along with several companies I own and operate, have been named as defendants (collectively, "<u>Defendants</u>") in the above-referenced action (the "<u>Action</u>") commenced by Plaintiffs Ronald E. Sweeney ("<u>Sweeney</u>") and Avant Garde Management, Inc. ("<u>Avant Garde</u>") (collectively, "<u>Plaintiffs</u>").

3. I submit this declaration in support of Defendants' motion, filed concurrently herewith: (a) to dismiss the Complaint for lack of personal jurisdiction, or alternatively (b) to dismiss or stay the Action due to a prior pending New York lawsuit, or alternatively (c) to grant Defendants judgment on the pleadings and to dismiss the Complaint in its entirety.

4. This Action actually concerns a dispute over legal fees for legal services – although Plaintiffs call them "commissions" – that Sweeney and Avant Garde claim I purportedly owe them for services they allegedly rendered as a "personal manager".

5. Plaintiffs' allegation that they provided personal management services to me is a bald-faced lie. Neither Sweeney nor Avant Garde ever managed my career. Sweeney's services were solely as my entertainment attorney, which is the subject of my lawsuit against Plaintiffs pending in the Supreme Court of the State of New York titled *Carter v. Sweeney, et. al*., Index No. 151067/2019 (the "<u>NY Action</u>"). A copy of the First Amended Complaint that I filed on <u>March 22, 2019</u> in the NY Action against Plaintiffs is attached as <u>Exhibit A</u>.

6. Beginning in 2005, Sweeney served as my entertainment lawyer until I fired him on or about September 18, 2018. I was personally managed by Cortez Bryant,

a childhood friend, who served as my personal manager from the start of my career as a recording artist and entertainer (except for a brief interruption) until the spring of 2019.

7. Sweeney is purportedly a member/owner of the law firm Sweeney, Johnson & Sweeney, a/k/a Sweeney, Johnson & Sweeney, LLC, a/k/a Law Offices of Ronald E. Sweeney. When he represented me, Sweeney maintained, at different times, offices at multiple New York City addresses, including his penthouse residence on the Upper Westside of Manhattan. I always believed he was a New York lawyer, particularly because he told me he lived, and was practicing law, in New York City during the period he was my lawyer.

8. Upon information and belief, Sweeney is registered and licensed to practice law only in California, and was suspended from the practice of law for significant periods while he was my lawyer. I learned these facts in 2018 not long before I sued him in New York.

9. Upon information and belief, Sweeney resides in New York, despite claiming in this Action that he resides in California.

10. Sweeney unilaterally directed my business managers to pay his legal fees over the years to Avant Garde, which I learned in 2019 is not a law firm. Some of the legal fees paid to Avant Garde were wired at Sweeney's direction to a bank account for Avant Garde in New York.

11. In the NY Action, I have alleged that Sweeney abused his position of trust with me to enrich himself at my expense, extracting tens of millions of dollars in unconscionable and unlawful legal fees over the years.

12. Sweeney performed his legal services on a contingency fee basis, but he did so without obtaining any signed written fee agreement. He charged me an unconscionable legal fee of 10% of every dollar that I made as a recording artist and entertainer – double the customary rate for entertainment lawyers. To add insult to

DECLARATION OF DWAYNE MICHAEL CARTER, JR.
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

injury, he charged me a 10% contingency fee on litigation settlement proceeds that I was entitled to receive, but again, he did so without my written approval.

13. Plaintiffs' false assertion that Sweeney was not acting as my entertainment lawyer, but, instead, as my personal manager, is a desperate attempt to side-step his egregious and unlawful conduct as my lawyer, including his failure to have a written fee agreement with me and his decision to charge what I learned shortly before the filing of the NY Action to be unreasonable and unconscionable fees for his legal services.

14. In this Action, Plaintiffs demand from me and certain of my companies in excess of $20 million in purported unpaid "management" commissions. They were never my managers even for a day.

15. I fired Sweeney as my lawyer in September 2018, as was my right under California law. The NY Action seeks disgorgement of the legal fees I paid to Sweeney and to Avant Garde, at his unilateral direction, and a declaration that Plaintiffs are not entitled to any compensation from me now or in the future.

16. I was born in the United States and am a United States citizen. In addition, I was a citizen, permanent resident, and domiciliary of the State of Florida when the Complaint was filed in the state court action and when it was removed from California state court to the United States District Court for the Central District of California. At all times relevant to the allegations in the Complaint, I was, and still remain, a citizen, permanent resident, and domiciliary of Florida.

17. Plaintiffs neither allege in their Complaint, nor do I recall, ever meeting Sweeney in California to discuss his representation of my legal interests or the legal interests of the other Defendants. If he did anything while in California, he never apprised me of any such work.

18. I do not maintain a California driver's license and have never been issued one. I hold a Florida driver's license.

- 4 -

19. I am not, and have never been, registered to vote in California. Moreover, I have never been, and I have no plans of becoming, a citizen, permanent resident, or domiciliary of the State of California. Florida is and has been my permanent home for years. It is where I reside for the majority of each year, and it is where I intend to return to whenever I am outside of the state.

20. I understand that Plaintiffs plan to claim, as part of an effort to remand this Action to state court, that I spent the last year in California. They are wrong. I spent the majority of 2020 in Florida and intend to do the same in 2021.

21. Beginning in September 2020 and through the present, I have stayed, with multiple interruptions, in short-term rental properties in California for business and personal reasons, including the pandemic. During that time, I have returned to, and spent significant amounts of time at and around my permanent residence in Florida, including during the Christmas/New Year holidays. None of the rental properties where I stayed in California is or was being rented by any of the Defendants in this Action, and my stays have had nothing to do with the claims alleged in this Action.

22. On or about December 1, 2020, when the term for the first rental property ended, I left California and returned to my permanent residence in Florida. During the nearly two months I was at my permanent home, I traveled outside of the state on occasion – including to attend a Green Bay Packers game at Lambeau Field in Green Bay, Wisconsin – and then returned to my permanent residence in Florida.

23. Towards the end of January 2021, I traveled back to California where I have spent time at two different short-term rental properties. I intend to return to my permanent residence in Florida after the end of the rental term for the house where I am currently staying. Although I have been recording music at various times in California, Nevada, and Florida since last September, I prefer using my own studio that is located not far from my permanent residence in Miami.

24. Plaintiffs also will likely claim in their planned remand motion that in March of this year I purchased a property in Hidden Hills, California. That property was transferred by me, as settlor, to a land trust for my children, which is managed by a third-party trustee. I have never resided at the Hidden Hills property, which is currently unoccupied and will be renovated. I have no plans to change my citizenship, permanent residence, or domicile from Florida to California.

25. I am a past and present owner of each of the following entities: Young Money Entertainment, LLC; Young Money Ventures, LLC; Young Money Publishing, Inc.; Young Money Records, Inc.; and Young Money Touring, Inc. (collectively, the "Entity Defendants").

26. The Entity Defendants' activities are directed, controlled, and coordinated by me in Florida.

27. I am the only officer/executive for each of the Entity Defendants, which means that I am the highest level officer/executive responsible for each of their operations and management.

28. Young Money Entertainment, LLC is a single-member Delaware limited liability company.[1] I am the sole member and 100% owner of Young Money Entertainment, LLC, and was the sole member and owner when the Complaint in the state court action was filed and when it was removed to federal court. I own Young Money Entertainment, LLC in my individual capacity.

29. Young Money Ventures, LLC is a single-member Delaware limited liability company. I am, and have always been, the sole member and 100% owner of Young Money Ventures, LLC, which I own in my individual capacity.

---

[1] Plaintiffs erroneously named Young Money Entertainment LLC in the Complaint as being a Florida limited liability company.

30.  Young Money Publishing, Inc. is incorporated in Texas and was a Texas corporation when the Complaint in the state court action was filed and when it was removed to federal court.  Its activities are and have been directed, controlled, and coordinated by me in Florida, its nerve center and principal place of business, for years. I am, and have always been, the sole shareholder and 100% owner of Young Money Publishing, Inc., which I own in my individual capacity.

31.  Young Money Records, Inc. is incorporated in Delaware and was a Delaware corporation when the Complaint in the state court action was filed and when it was removed to federal court.  Before its incorporation in Delaware, Young Money Records, Inc. was incorporated in Nevada.  Its activities are and have been directed, controlled, and coordinated by me in Florida, its nerve center and principal place of business, for years. I am, and have always been, the sole shareholder and 100% owner of Young Money Records, Inc., which I own in my individual capacity.

32.  Young Money Touring, Inc. is incorporated in Florida and was a Florida corporation when the Complaint in the state court action was filed and when it was removed to federal court.  Its activities are and have been directed, controlled, and coordinated by me in Florida, its nerve center and principal place of business, for years. I am, and have always been, the sole shareholder and 100% owner of Young Money Touring, Inc., which I own in my individual capacity.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of April, 2021, at Miami, Florida.

DWAYNE MICHAEL
CARTER, JR.

DECLARATION OF DWAYNE MICHAEL CARTER, JR.
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DWAYNE MICHAEL CARTER JR., p/k/a Lil Wayne, :
                                           :

                    Plaintiff,          : Index No. 151067/2019
                                           : Index No. Purchased: 1/30/19
                                         :

         -against-            : **FIRST AMENDED COMPLAINT**
                                         :

RONALD E. SWEENEY, d/b/a SWEENEY,    :
JOHNSON & SWEENEY, a/k/a SWEENEY,   :
JOHNSON & SWEENEY, LLC, a/k/a LAW OFFICES :
OF RONALD E. SWEENEY, and AVANT GARDE  :
MANAGEMENT, INC.,                  :
                                           :
                  Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Dwayne Michael Carter Jr. p/k/a Lil Wayne, by his undersigned attorneys, for his First Amended Complaint against Defendants Ronald E. Sweeney ("Sweeney"), d/b/a Sweeney, Johnson & Sweeney, a/k/a Sweeney, Johnson & Sweeney, LLC, a/k/a Law Offices of Ronald E. Sweeney, and Avant Garde Management, Inc. ("Avant Garde"), states the following:

## PRELIMINARY STATEMENT

      1.   Carter is one of the most prominent rappers and recording artists in the world today, performing under the name Lil Wayne.  Beginning in 2005, Carter hired Defendant Sweeney as his attorney and entrusted him to serve as his transactional counsel.  Carter was personally managed by Cortez Bryant ("Bryant"), who has continued in that role from the early days of Carter's career to the present time, except for a short interruption.

      2.   Sweeney, who is licensed to practice law only in California, is purportedly a member/owner of a law firm, Sweeney, Johnson & Sweeney, a/k/a Sweeney, Johnson & Sweeney, LLC, a/k/a Law Offices of Ronald E. Sweeney, with an office in New York from which he conducted his legal activities on behalf of Carter.  Upon information and belief, no such law firm

exists under the laws of any state and Sweeney lacked the ability to lawfully provide legal services to Carter in New York. Sweeney fraudulently omitted these and other material facts to induce Carter to hire him. Sweeney directed most of Carter's payments for legal services to be paid to Defendant Avant Garde, an entity in which Sweeney is or was an officer and director, but which is not a law firm.

3.   As an attorney, Sweeney owed his client strict ethical duties to protect Carter's interests and not to take advantage of his lack of knowledge and training. Instead, Sweeney abused his position of trust and authority to enrich himself at Carter's expense, extracting tens of millions of dollars in unconscionable and unlawful fees.

4.   Sweeney performed legal services for Carter on a contingency fee basis, but he did so without obtaining any signed written fee agreement, in violation of Cal. Bus. & Prof. Code §§ 6147 or 6148. In addition, Sweeney charged an unconscionable legal fee of 10% – double the customary rate for attorneys in the music industry – and he even took a 10% contingency fee on litigation settlement proceeds without Carter's written agreement.

5.   Finally, upon information and belief, most, if not all the legal services provided by Sweeney were unlawfully provided in the State of New York, where he resides but is not licensed to practice law or, at times, when his California license was suspended.

6.   Despite this unlawful behavior, Sweeney has continued to seek payment of millions of dollars more in unconscionable fees, which he claims are owed even though he fraudulently induced Carter to hire him as his attorney and was terminated by Carter for cause in September 2018.

7.   Under California law, any fee agreement that does not comply with Cal. Bus. & Prof. Code §§ 6147 or 6148 is voidable at the option of the client. Carter has already voided any

prior agreements with Sweeney, and he now seeks a declaration by this Court declaring that Sweeney and his entities, whether real or fictitious, were not entitled to any compensation from Carter and are not entitled to receive any percentage of Carter's income from any source after he terminated Sweeney.

8.   In addition, Carter demands Sweeney disgorge all legal fees paid to him because of the absence of a written fee agreement between them, Sweeney's fraud, his failure to make mandatory disclosures, and, upon information and belief, his unauthorized practice of law in the State of New York and potentially elsewhere.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over all causes of action asserted herein pursuant to Article VI of the New York Constitution.

10. This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 because Defendants are physically present in New York County, and pursuant to CPLR § 302 because Defendants transacted business in New York County and committed tortious acts within New York County.

11. Venue is proper in this Court pursuant to CPLR § 503 because Sweeney resides in New York County and a substantial part of the events or omissions giving rise to Carter's claims stated herein occurred in New York County.

## THE PARTIES

12. Carter is a natural person residing in the State of Florida.

13. Sweeney is an attorney, who has resided, upon information and belief, in the State of New York since 1996.  He is licensed to practice law in California only and not in any other state.[1]

14. Avant Garde is a corporation organized and existing under the laws of the State of California.[2]  Upon information and belief, Avant Garde is not an entity created for the purpose of practicing law in any state.

## **FACTS**

15. Carter has enjoyed unparalleled critical and commercial success in the music industry.  He was discovered at the age of nine and signed as a recording artist only a few years later.  Since that time, Carter has released a total of twelve studio albums and has sold over 100 million records worldwide.  He has received numerous musical nominations and awards, including five Grammy Awards, fifteen BET Hip Hop Awards, four Billboard Music Awards, and many others.

16. In addition to his own success, Carter has played a significant role in bringing other major artists to prominence through his record label Young Money Entertainment ("Young Money"), including the rappers Nicki Minaj, Drake, and Tyga.

---

[1] Sweeney's "Attorney Licensee Profile" on the State Bar of California website lists his address as "Sweeney, Johnson & Sweeney, 222 Riverside Drive, PHA, New York, New York 10025." *See* http://members.calbar.ca.gov/fal/Licensee/Detail/85322 (last reviewed on 3/18/19).  The California Secretary of State website shows no registration of an entity known as "Sweeney, Johnson & Sweeney," "Law Offices of Ronald E. Sweeney," or any similar name.  *See* https://businesssearch.sos.ca.gov/ (queries for "Sweeney, Johnson & Sweeney" and "Law Offices of Ronald E. Sweeney"; last reviewed on 3/18/19).  The New York Department of State website shows no registration of an entity known as "Sweeney, Johnson & Sweeney," "Law Offices of Ronald E. Sweeney," or any similar name.  *See* https://www.dos.ny.gov/corps/bus_entity_search.html (queries for "Sweeney, Johnson & Sweeney" and "Law Offices of Ronald E. Sweeney"; last reviewed on 3/18/19).

[2] The California Secretary of State website discloses that the corporation's status is "FTB [Franchise Tax Board] Suspended."  *See* https://businesssearch.sos.ca.gov/ (query for "Avant Garde Management"; last reviewed on 3/18/19).

4

17. Like many successful recording artists, Carter has no training in law or accounting and has relied on his closest and most trusted lifelong friends to advise him, including his personal manager Bryant, and the president of Young Money, Jermaine Preyan, p/k/a Mack Maine ("Mack"). Both Bryant and Mack were Carter's childhood friends from New Orleans, Louisiana.

18. In January 2004, Bryant began serving as Carter's personal manager. At the time, Carter had no attorney. Bryant and Carter had few connections in the industry and no knowledge of the customary rates charged by entertainment lawyers. However, Bryant sought recommendations from his colleagues and was referred to Sweeney, who presented himself to Bryant as an entertainment lawyer with years of relevant experience and a law office in New York from which he would provide legal services to Carter.

## I. Sweeney's Oral Agreement Concerning the Carter Representation

19. Sweeney informed Bryant that he would represent Carter in exchange for a contingency fee of 10% of the income from any "deals he closed" for him. This proposal was a contingency fee arrangement because the size of Sweeney's legal fees would be a percentage of Carter's income on the deals Sweeney closed, and was conditioned entirely on Carter's success in the music industry.

20. Sweeney failed to inform Bryant or Carter that the customary rate for lawyers in the music industry was only half that amount, or 5%. He also failed to inform Bryant or Carter that, in order to contract to represent Carter on a contingency fee basis, as a California attorney he was required to provide Carter with a written agreement with prescribed mandatory disclosures, and which was executed by both parties.

21. California Business and Professions Code § 6147 provides:

(a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the

5

client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following:

(1) A statement of the contingency fee rate that the client and attorney have agreed upon.

(2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery.

(3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney.

(4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client.

(5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate.

(b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee.

(c) This section shall not apply to contingency fee contracts for the recovery of workers' compensation benefits.

(d) This section shall become operative on January 1, 2000.

22. Similarly, California Business and Professions Code § 6148 provides:

(a) In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following:

(1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case.

(2) The general nature of the legal services to be provided to the client.

6

(3) The respective responsibilities of the attorney and the client as to the performance of the contract.

(b) All bills rendered by an attorney to a client shall clearly state the basis thereof. Bills for the fee portion of the bill shall include the amount, rate, basis for calculation, or other method of determination of the attorney's fees and costs. Bills for the cost and expense portion of the bill shall clearly identify the costs and expenses incurred and the amount of the costs and expenses. Upon request by the client, the attorney shall provide a bill to the client no later than 10 days following the request unless the attorney has provided a bill to the client within 31 days prior to the request, in which case the attorney may provide a bill to the client no later than 31 days following the date the most recent bill was provided. The client is entitled to make similar requests at intervals of no less than 30 days following the initial request. In providing responses to client requests for billing information, the attorney may use billing data that is currently effective on the date of the request, or, if any fees or costs to that date cannot be accurately determined, they shall be described and estimated.

(c) Failure to comply with any provision of this section renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.

(d) This section shall not apply to any of the following:

(1) Services rendered in an emergency to avoid foreseeable prejudice to the rights or interests of the client or where a writing is otherwise impractical.

(2) An arrangement as to the fee implied by the fact that the attorney's services are of the same general kind as previously rendered and paid for by the client.

(3) If the client knowingly states in writing, after full disclosure of this section, that a writing concerning fees is not required.

(4) If the client is a corporation.

(e) This section applies prospectively only to fee agreements following its operative date.

(f) This section shall become operative on January 1, 2000.

23. Sweeney and Carter never entered into a signed written agreement to memorialize

Sweeney's provision of legal services to Carter.  Sweeney also failed to make any of the mandatory

written disclosures required by Cal. Bus. & Prof. Code §§ 6147 or 6148 concerning the terms of his representation in any contract which was ever reduced to a signed writing.[3]

24. Nonetheless, in 2005, Sweeney began representing Carter and proceeded to do so continuously for more than 13 years based upon nothing more than a purported oral agreement.

25. Although California and New York law render Sweeney's oral agreement voidable at Carter's option, or void *ab initio*, Sweeney failed to inform Bryant or Carter that the agreement was voidable.

26. Instead, Sweeney stated that Carter could fire him at any time. Unbeknownst to Bryant or Carter, Sweeney intended to claim entitlement to a percentage fee on any deals closed by him for so long as income was earned by Carter on those deals, including after Sweeney's termination.

27. Although Bryant and Carter did not know it at the time, if and when in the future Carter elected to void any purported oral agreement with Sweeney, under both California and New York law, any obligation to continue making payments ceased and rendered prior payments subject to disgorgement.

## II. <u>Sweeney's Unauthorized Practice of Law</u>

28. Upon information and belief, in 1996 Sweeney resided in New York and continued to reside there throughout his representation of Carter.

29. At various times before and after 2008, Sweeney used the following email signature:

---

[3] New York law also requires an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client to provide a written letter of engagement before commencing the representation that explains the scope of legal services to be provided, explains the attorney's fees to be charged, expenses and billing practices, and where applicable, provides that the client may have a right to arbitration under Part 137. 22 NYCRR § 1215.1.

8

> Ronald E. Sweeney, Esq.
> Law Offices of Ronald E. Sweeney
> 222 Riverside Drive, PH5A
> New York, NY 10025

30. The above-listed address falsely implies that Sweeney is a New York lawyer with a registered law office at that address. Upon information and belief, no such registered law office existed. In using this email signature, Sweeney unlawfully held himself out as entitled to practice law under the laws of the State of New York.

31. At various times beginning in or around 2009, and continuing thereafter, Sweeney also used the following email signature:

> Law Office of Ronald E. Sweeney
> 1790 Broadway, 10th Floor
> New York, New York 10019

Upon information and belief, no such registered law office existed. This email signature also falsely implies that Sweeney is a New York lawyer practicing in a New York law office.

32. By 2015, Sweeney used the following email signature:

> Ronald E. Sweeney, Esq.
> Sweeney, Johnson & Sweeney, LLC
> 152 W. 57th Street, 8th Floor
> New York, NY 10019

33. This email signature also falsely implies that Sweeney is a New York lawyer practicing in a New York law firm called "Sweeney, Johnson & Sweeney, LLC." Upon information and belief, no such entity existed or exists. In using this email signature, Sweeney continued to unlawfully hold himself out as entitled to practice law under the laws of the State of New York.

34. As recently as this year, Sweeney regularly used the following email signature:

Ronald E. Sweeney
Sweeney, Johnson & Sweeney, LLC
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

35. While the above email signature discloses that Sweeney is licensed in California, it fails to disclose that he is *only* licensed in California, is not licensed in any other state, and is not licensed in New York, where the address and telephone area code indicate that his office is located. In using this email signature, Sweeney unlawfully held himself out as entitled to practice law under the laws of the State of New York.

36. Upon information and belief, 222 Riverside Drive is Sweeney's condominium residential address, and there is no entity registered in New York or California with the name "Sweeney, Johnson & Sweeney," "Sweeney, Johnson & Sweeney, LLC," or "Law Offices of Ronald E. Sweeney."

37. Sweeney failed to inform Bryant or Carter that by representing Carter while Sweeney resided in New York, he was committing the statutory offense of unauthorized practice of law. *See* N.Y. Judiciary Law §§ 478 and 485. Under New York law, any agreement for the provision of legal services constituting the unauthorized practice of law is illegal and unenforceable.

38. Upon information and belief, from September 16, 2005 until March 20, 2007, and for the period July 1 to July 9, 2008, Sweeney's California license to practice law was suspended. During these periods, Sweeney was not licensed to practice law in any jurisdiction, yet he continued to represent Carter and, upon information and belief, received payments of more than $500,000 in legal fees from Carter.

10

39. Upon information and belief, in 2005, 2006, 2007, and 2008, Sweeney failed to inform Bryant or Carter that his license had been suspended.  Sweeney also failed to inform Bryant or Carter that by representing Carter while his California license was suspended, he was committing the statutory offense of unauthorized practice of law.  *See* Cal. Bus. & Prof. Code § 6126; N.Y. Judiciary Law § 486.  Under California law, an attorney who fails to disclose to his client that his license is suspended and performs legal services while not authorized to practice law is not entitled to any legal fees for his services.

40. Despite the above, Sweeney provided legal services to Carter from 2005 until September 2018 and was paid contingency fees at a rate of 10% on numerous deals.  During this period, Sweeney was paid by Carter approximately $20,000,000 in legal fees.

41. In collecting those legal fees, upon information and belief, Sweeney routinely failed to submit detailed, formal invoices to Bryant or Carter for legal services rendered, and he provided no records of hourly time-keeping or itemization of activities performed.  Instead, Sweeney kept track of incoming payments to Carter's and Carter's business accounts administered by his business managers and instructed those business managers to pay the legal fees Sweeney claimed were owed either directly to him or to his company Avant Garde.

42. At times, Bryant, on behalf of Carter, approved fee payments, but did so without knowledge that Sweeney's purported oral agreement with Carter was voidable at any time, that Sweeney was committing the unauthorized practice of law, and that Sweeney's percentage contingency fee was twice the customary rate for attorneys in the music industry.

III.  **Sweeney's Attempts to Claim Even Greater Legal Fees**

43. In 2009 or 2010, apparently not content with the millions of dollars in unconscionable legal fees he had already been paid, Sweeney began seeking out ways to further

11

enrich himself at Carter's expense. Sweeney proposed that, instead of receiving a 10% contingency fee only on deals he closed, he should also receive 10% of all profits earned by Young Money, essentially giving him an interest in all future income streams of Carter's business. Bryant rejected this proposal on Carter's behalf.

44. In 2010, Carter was incarcerated for nine months at Riker's Island. Perhaps sensing an opportunity, Sweeney attempted to pressure his client, Carter, who, while in jail, was vulnerable, frustrated and, most importantly, had limited access to his advisors Bryant and Mack, to agree to pay Sweeney future income streams from Carter's businesses. Carter refused. Sweeney made other overtures to pressure Carter for more legal fees, which were likewise rebuffed by Carter.

45. Although Sweeney was a transactional lawyer, he also sought to claim entitlement to more legal fees by involving himself in Carter's litigated disputes.

46. Sweeney advised Carter to pursue litigation of certain disputes on behalf of himself and Young Money. Sweeney did so intending to claim for himself a 10% contingency fee of any awards or settlements that might be paid to Carter or his entities, even though he was relying on other counsel who were licensed to practice law in the relevant jurisdictions to handle the actual litigation work.

47. However, under the terms of Sweeney's purported oral agreement, particularly given that the terms were never reduced to writing, Sweeney neither had the right to claim legal fees for litigation work being performed by other counsel, nor for "managing" or "directing" that work as his contingency fee arrangement was purportedly based solely on the "deals he closed."

## IV. Sweeney's Taking of a 10% Contingency Fee on Litigation Settlement Proceeds

48. In 2014, Carter had a legal dispute with Cash Money Records ("Cash Money"), the record company that produced and distributed his recordings. Sweeney advised Carter, through Bryant, to hire New York litigation counsel to pursue claims on his and Young Money's behalf against Cash Money in federal court in New York. Those claims were filed in January 2015 and voluntarily dismissed several months later.

49. Carter and Young Money were later sued by their New York litigation counsel in a dispute over the non-payment of legal fees. After that New York action was commenced in federal court, Sweeney negotiated a settlement directly with the plaintiff on behalf of Carter and Young Money, purporting to represent them in a pending action in a court where he was not admitted to practice and had never appeared.

50. Sometime later, Carter's former New York litigation counsel commenced a second action in the same court concerning non-payment of the legal fees negotiated to be paid from the settlement of the first action the New York law firm had commenced. Sweeney was notified of the commencement of the second action, but negligently failed to act, causing Carter and Young Money to fail to timely appear and allowing the New York law firm to obtain a default judgment and writ of execution against Carter for hundreds of thousands of dollars.

51. At or around the time the claims against Cash Money were voluntarily dismissed in federal court in New York, Sweeney advised Carter, through Bryant, to hire Louisiana litigation counsel to pursue the same claims against Cash Money in state court in Louisiana (the "Cash Money Claims"). Those claims were filed in May 2015.

52. As the costs of litigation in Louisiana began to mount, Sweeney advised Carter, through Bryant, to hire a California law firm as litigation counsel (the "California litigation firm")

13

to take over the litigation of the Cash Money Claims (with the ongoing assistance of Louisiana local counsel), and to pursue a separate litigation in federal court in California against Universal Music Group and SoundExchange (the "UMG Claims").

53. In February 2016, Sweeney advised Carter to accept a contingency fee agreement with the California litigation firm. That contingency fee agreement, unlike Sweeney's own purported oral agreement, was provided to Carter in writing. In the event of any recovery, Carter's contingency fee agreement with the California litigation firm required him to pay it twenty-three and one-third percent (23-1/3%) of any recovery from the Cash Money Claims and fifteen percent (15%) of any recovery from the UMG Claims.

54. Sweeney negotiated the fee provisions of the contingency fee agreement with the California litigation firm, and through Bryant, informed Carter that they would not obligate him to continue paying the California litigation firm a share of future income, such as royalties or streaming income, that accrued after the date of settlement.

55. Also, neither Bryant nor Carter were informed at the time the California litigation firm was engaged that Sweeney intended to claim a contingency fee of 10% of any recovery from the Cash Money Claims and the UMG Claims.

56. In fact, Bryant and Carter selected the California litigation firm at Sweeney's urging because the contingency fee percentages offered by the California litigation firm appeared reasonable to them, given the nature of the claims, the inherent risks of litigation, and that often contingency fees are higher.

57. Upon information and belief, Sweeney purposely concealed from Bryant and Carter the true amounts of the legal fees he intended to participate in at Carter's expense. These facts

14

were material and were concealed by Sweeney for the purpose of inducing Carter to agree to hire the California litigation firm.

58. Although Carter signed the written contingency fee agreement, he never met or spoke with anyone at the California litigation firm. Instead, it was Sweeney who communicated with the California litigation firm during the more than two years of its representation of Carter.

59. In March 2016, the California litigation firm filed suit concerning the UMG Claims in federal court in California. In July 2016, that action was stayed pending resolution of the Louisiana state court action concerning the Cash Money Claims.

60. In March 2018, the California litigation firm negotiated a settlement of the Cash Money Claims that also resolved the UMG Claims. The terms of the settlement have not been made public but required certain payments to be made to Carter and Young Money.

## V. Sweeney's Attempts to Manipulate Carter

61. At or around the same time in 2018, Sweeney began to realize that Bryant and Mack would not advise Carter to agree to pay him an unearned windfall in the form of 10% of the substantial amounts due to Carter under the settlement of the Cash Money Claims and UMG Claims.

62. For the previous 13 years, Sweeney had only rarely spoken to Carter directly and had, in most instances, used Bryant as a go-between. But in early 2018, Sweeney asked Bryant for Carter's direct contact information and began communicating directly with Carter on a more frequent basis.

63. Upon information and belief, Sweeney began a manipulative campaign of disparagement against Bryant and Mack to pressure Carter to terminate their services and to rely solely upon him at the same time the settlement negotiations were being finalized by the California

15

litigation firm. Sweeney even proposed that, upon terminating Bryant and Mack, Carter should hire him to serve as both Carter's personal manager and his attorney, despite the clear conflict of interest it would pose.

64. After several weeks of direct communication with Carter, Sweeney briefly succeeded in persuading him to terminate Bryant as his personal manager. Carter and Bryant continued to communicate during this time and regularly discussed Sweeney's proposal to expand his own role. Mack and Bryant also communicated with each other about Sweeney, and both of them emphatically advised Carter to reject Sweeney's offer to serve as both personal manager and attorney.

65. At no time was Sweeney ever authorized to act as Carter's personal manager.

66. In May 2018, the California litigation firm received payments on behalf of Carter pursuant to the settlement of the Cash Money Claims. With Bryant out of the way, having been fired by Carter, Sweeney immediately directed Carter's business managers to pay him 10% of the gross amounts received by the California litigation firm. Carter never authorized any payment to Sweeney from the Cash Money Claims.

67. Upon information and belief, the business managers simply treated Sweeney's self-serving assurances as authorization and paid him as he directed by wiring the money to Sweeney's company, Avant Garde.

68. Although Sweeney continued to try, he could not rid himself of Mack the way he had (temporarily) succeeded in causing Carter to fire Bryant. In September 2018, Mack told Carter that Sweeney had been taking advantage of his position by attempting to drive a wedge between Carter and his most trusted friends and advisors, and that Mack believed Sweeney was claiming

16

entitlement to exorbitant legal fees contrary to Carter's best interests. Carter agreed. On or about September 18, 2018, Carter terminated Sweeney.

69. Throughout Sweeney's legal representation of Carter, Sweeney occupied a position of trust and confidence, and Carter reasonably relied on Sweeney to disclose to Bryant or Carter all material facts concerning his representation and the legal fees he charged.

70. By failing to disclose his misconduct and concealing the facts about his representation and legal fees, Sweeney wrongfully prevented Bryant and Carter from discovering the truth. Carter could not have reasonably discovered Sweeney's wrongful conduct prior to terminating him.

## VI. Sweeney's Post-Termination Fee Claims

71. Although Sweeney's termination voids any and all prior agreements that were not already void *ab initio*, it has not stopped him from trying to claim further entitlement to Carter's monies.

72. In October 2018, after Sweeney's termination, the California litigation firm received an additional payment from the settlement of the Cash Money Claims and UMG Claims. Upon information and belief, Sweeney directed the California litigation firm to pay him a 10% contingency fee, despite knowing that he had already been fired and apparently realizing he would not be authorized to receive any payment if the monies were turned over to Carter's business managers. Indeed, Carter's business managers were instructed not to pay Sweeney this amount or any future amounts.

73. Since Sweeney's firing, Bryant and Carter have also learned that, contrary to Carter's understanding when he signed the California litigation firm's written contingency fee

17

agreement, the California litigation firm has construed the engagement letter to entitle it to more payments in the future.

74. Recently, Sweeney has also made demands for the payment of millions of dollars in contingency fees that he claims are past due (including fees on advances from deals that may or may not yield Carter any profits once recoupable expenses are applied against them) or will be due based on income that Carter has not yet received. Carter has rejected these demands.

75. Even after Carter filed suit against Sweeney in the present action, Sweeney has improperly attempted to circumvent Carter's counsel and communicate directly with Carter – a represented party – to persuade him that he needs Sweeney to continue representing him with respect to the settlement of the Cash Money and UMG Claims.

## FIRST CAUSE OF ACTION
### (Fraudulent Inducement Against Sweeney)

76. Carter incorporates each and every allegation in paragraphs 1 through 75 as if fully set forth herein.

77. In 2005, Sweeney made material representations to Carter for the purpose of inducing Carter to agree to pay Sweeney legal fees in exchange for legal services including, among other things, the representation that Sweeney was an attorney authorized to provide legal services to Carter on an ongoing basis.

78. At the time Sweeney made these representations, he was a resident of New York and knew that he was not authorized to provide legal services in New York. Despite knowing that it was unlawful, Sweeney held himself out to the public – and to Carter – as a practicing attorney with an office in New York.

79. From September 16, 2005 until March 20, 2007, and from July 1 to July 9, 2008, Sweeney's license to practice law in California was suspended.

18

80. During these periods, the first of which was at or around the time Sweeney first offered to represent Carter, Sweeney knew that he was not authorized to practice law in any state.

81. Sweeney had a duty to Carter to disclose all material facts, including the fact that his license to practice law in California was suspended and the fact that he was not licensed in New York where he resided and held himself out as having a law office.

82. Sweeney intentionally omitted disclosing to Carter the foregoing with the intention that Carter rely on the false representations that Sweeney was a lawyer authorized to practice law, even at times when he was prohibited from doing so, and that Sweeney could lawfully provide legal services from a law office in New York.

83. The fact that Sweeney was not authorized to practice law in the place where legal services would be provided was a material omission because Sweeney was offering to provide legal services to Carter in exchange for legal fees.

84. Carter justifiably relied on Sweeney's representations because Sweeney held himself out as having knowledge and expertise as an attorney.

85. Carter was injured by being induced to pay legal fees to Sweeney, which Sweeney was not entitled to receive.

86. Had Sweeney disclosed to Carter that Sweeney was not authorized to practice law in any state during certain times, Carter would have terminated his services and engaged another lawyer capable of lawfully representing his interests.

87. Sweeney continued to represent Carter until he was terminated in September 2018.

88. As a direct and proximate result of the aforesaid fraudulent inducement, Carter is entitled to damages in an amount to be determined at trial, which amount is not less than $20,000,000.

<div align="center">19</div>

## SECOND CAUSE OF ACTION
### (Legal Malpractice Against Sweeney)

89. Carter repeats and realleges each and every allegation in paragraphs 1 through 88 as if fully set forth herein.

90. Sweeney agreed to and did in fact act as Carter's attorney from in or around 2005 until September 2018.

91. As Carter's attorney, Sweeney owed Carter fiduciary duties to use such professional skill, care, competence, prudence, and diligence as other attorneys commonly possess and exercise on behalf of similarly situated clients under similar circumstances in similar communities.

92. Specifically, among other duties, Sweeney was required to: (a) discharge his responsibilities competently and with integrity, objectivity, loyalty, fidelity, due professional care, and a genuine interest in serving his client; (b) remain free from conflicts of interest; (c) offer written disclosure concerning, and obtain informed written consent to, any potential or actual conflict of interest; (d) provide full, frank, candid, and unbiased advice to his client; (e) provide all information to his client that is material to his representation; and (f) perform his professional services with reasonable skill, competence, and diligence, putting the best interests of his client before his own self-interest.

93. Sweeney failed to adhere to the required standards of professional skill, care, competence, prudence, and diligence commonly possessed and exercised by attorneys under similar circumstances in similar communities.

94. Sweeney negligently, carelessly, and recklessly rendered his services to Carter by, among other things: (a) practicing law in New York where to do so was a violation of New York Judiciary Law § 478 and California Rule of Professional Conduct 5.5(a)(1); (b) holding himself

20

out to the public and otherwise representing that he was admitted to practice law in New York, and establishing for himself an office or other systematic and continuous presence in New York for the practice of law, in violation of 22 NYCRR § 523.1; (c) failing to exercise due care to inform Carter of material facts concerning his representation, including the fact that he was not licensed to practice law in the state where he performed legal services for his client, in violation of California Rule of Professional Conduct 1.4; (d) breaching his duty of care by his advice concerning the California litigation firm's interpretation of its written contingency fee agreement, in violation of California Rules of Professional Conduct 1.1 and 1.4; and (e) breaching his duty of care by failing to keep his client reasonably informed and negligently causing his client to default in the federal court action brought by New York litigation counsel concerning a dispute over legal fees, in violation of California Rules of Professional Conduct 1.1, 1.3, and 1.4.

95. The statutory and code violations described above further constitute professional negligence per se, as they show that Sweeney violated New York law, the standard of care set forth by California statutes, and the California Rules of Professional Conduct, which are intended to govern lawyers' obligations to their clients.

96. Sweeney's purported oral agreement to provide legal services was illegal and void as against public policy. And Sweeney is not entitled to any fee for the unauthorized practice of law.

97. As a direct and proximate result of the above-described professional negligence, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Sweeney)

98. Carter repeats and realleges each and every allegation in paragraphs 1 through 97 as if fully set forth herein.

99. At all relevant times herein, a fiduciary relationship existed between Sweeney and Carter.

100. At all relevant times, Carter reasonably relied upon Sweeney's superior knowledge and expertise and trusted that Sweeney would conduct himself in Carter's best interest and not in his own self-interest.

101. The fiduciary relationship between the parties required Sweeney to treat Carter with complete fairness and the highest duty of loyalty and candor, including a duty to disclose to Carter all material facts concerning the legal services Sweeney provided and the fees he charged. It also required Sweeney to disclose all relevant information truthfully and candidly to Carter, and not to misrepresent or conceal any facts in connection with any of the services Sweeney provided and the fees he charged.

102. Sweeney had a duty to refrain from conducting himself in any manner that was in conflict with the best interests of Carter without full written disclosure and informed written consent. Sweeney owed Carter a fiduciary duty to refrain from self-dealing and engaging in undisclosed or unconsented-to conflicts of interest.

103. Sweeney breached his fiduciary duties to Carter by, among other things: (a) taking a 10% contingency fee tied to Carter's variable earnings without having any signed written contingency fee agreement between them; (b) taking an excessive and unconscionable fee of 10% (or double the customary rate for attorneys in the entertainment industry); (c) failing to inform Carter's of material facts concerning his representation and fees, including the fact that his

22

contingency fees were voidable, excessive, and unconscionable; (d) taking a 10% contingency fee on litigation settlement proceeds without disclosing or obtaining written consent from Carter; and (e) directing that Carter's funds be used to pay Sweeney's voided contingency fees without Carter's authorization after Sweeney had been fired for cause and any purported oral agreement concerning Sweeney's contingency fees had been voided.

104. As a direct and proximate result of the above-described breaches of fiduciary duty, Carter has been damaged in an amount to be determined at trial, which amount is not less than $10,000,000.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment Against Sweeney and Avant Garde)

105. Carter repeats and realleges each and every allegation in paragraphs 1 through 104, as if fully set forth herein.

106. Carter's payments to Sweeney and, at Sweeney's direction, Avant Garde for legal services were premised on Sweeney being something he was not – a lawyer authorized to practice law in New York – and Avant Garde being something it was not – a corporation authorized to practice law.

107. Sweeney and, at Sweeney's direction, Avant Garde collected undeserved, impermissible, and voidable contingency fees for legal services without any signed written contingency fee agreement while Sweeney was engaging in the unauthorized practice of law in New York and holding himself out as authorized to practice law in New York.

108. Sweeney and, at his direction, Avant Garde collected these fees from Carter, despite the fact that Sweeney breached his fiduciary duties to his client and failed to disclose material facts concerning his representation and fees.

109.  Carter's payment of legal fees, which Sweeney and Avant Garde were not entitled to receive provided them with an unlawful benefit at Carter's expense, which Sweeney and Avant Garde had no right to receive or retain.

110.  Sweeney and Avant Garde would not have received the unlawful benefit but for their wrongful conduct.

111.  Carter suffered compensatory damages as a proximate result of Sweeney's and Avant Garde's unlawful conduct.

112.  Accordingly, Carter is entitled to restitution from Sweeney and Avant Garde, in addition to all monetary damages due, in an amount to be determined at trial, which amount is not less than $20,000,000.

## <u>FIFTH CAUSE OF ACTION</u>
### (Violation of Cal. Bus. & Prof. Code § 6147 Against Sweeney)

113.  Carter incorporates each and every allegation in paragraphs 1 through 112 as if fully set forth herein.

114.  California Business and Professions Code § 6147 requires all contingency fee arrangements between an attorney and his client to be set forth in a signed written agreement, which must contain statutorily mandated disclosures, including the contingency fee rate, how disbursements and costs will affect the contingency fee and recovery, the extent to which the client may be required to compensate the attorney for related matters, and that the contingency fee is not set by law and is negotiable.

115.  In the absence of a written agreement in conformity with the statute, signed by the attorney and client, the contingency fee arrangement is voidable at the client's election.  Cal. Bus. & Prof. Code § 6147(b).

24

116. At all relevant times, Sweeney served as Carter's attorney and provided to him legal advice and services. Sweeney was paid contingency fees totaling approximately $20,000,000 that were tied to Carter's variable earnings. The amounts paid to Sweeney or, at his direction, Avant Garde constituted an excessive, unreasonable and unconscionable fee.

117. Despite collecting millions of dollars of contingency fees, Sweeney had no statutorily prescribed, signed written agreement with Carter for the provision of legal services.

118. Sweeney's purported oral agreement with Carter did not conform with the requirements of California Business and Professions Code § 6147, and therefore violated the statute. In accordance with § 6147(b), any purported fee arrangement between Sweeney and Carter is voidable at Carter's option, to the extent it was not already void *ab initio* due to illegality.

119. Carter has exercised his option to void any purported contingency fee arrangement with Sweeney.

120. As a direct and proximate result of Sweeney's violation of California Business and Professions Code § 6147, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

### SIXTH CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 6148 Against Sweeney)

121. Carter incorporates each and every allegation in paragraphs 1 through 120 as if fully set forth herein.

122. California Business and Professions Code § 6148 requires fee arrangements between attorney and client that do not fall within § 6147 to be set forth in a signed written agreement, which must contain statutorily mandated disclosures, including the basis of compensation and fees, the nature of the legal services to be provided, and the respective responsibilities of the attorney and client. In the absence of such a written agreement signed by

25

the attorney and client, the fee arrangement is voidable at the client's election.   Cal. Bus. & Prof. Code § 6148(c).

123.  At all relevant times, Sweeney served as Carter's attorney and provided to him legal advice and services.  Sweeney was paid contingency fees tied to Carter's variable earnings totaling approximately $20,000,000.  These amounts paid to Sweeney or, at his direction, Avant Garde constituted an excessive, unreasonable and unconscionable fee.

124.  Despite collecting millions of dollars of contingency fees, Sweeney had no statutorily prescribed, signed written agreement with Carter for the provision of legal services.

125.  To the extent that Sweeney's purported contingency fee arrangement with Carter is not within the scope of California Business and Professions Code § 6147, it was subject to and violated the requirements of § 6148.  Thus, pursuant to § 6148(c), any purported fee arrangement between Sweeney and Carter is voidable at Carter's option, to the extent it was not already void *ab initio* due to illegality.

126.  Carter has exercised his option to void any purported contingency fee arrangement with Sweeney.

127.  As a direct and proximate result of Sweeney's violation of California Business and Professions Code § 6148, Carter has been damaged in an amount to be determined at trial, which amount is not less than $20,000,000.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**(Violation of Cal. Bus. & Prof. Code §§ 17200-17210**
**Against Sweeney and Avant Garde)**

</div>

128.  Carter incorporates each and every allegation in paragraphs 1 through 127 as if fully set forth herein.

<div align="center">26</div>

Case 2:21-cv-01689-ODW-JC Document 1-3 Filed 04/30/22 Page 35 of 455 Page ID #:266
ID #:1081

129.  California's Unfair Competition Law (the "UCL"), which is set forth in California Business and Professions Code §§ 17200-17210, provides that unfair competition shall mean and include any unlawful and unfair business act or practice.

130.  The UCL incorporates violations of other laws and treats them as unlawful practices that are independently actionable.  A cause of action under the UCL may be predicated on unlawful conduct that violates established public policy or is immoral, unethical, oppressive or unscrupulous and causes injury to consumers, which outweighs its benefits.

131.  Sweeney's and Avant Garde's wrongful conduct constitutes unlawful and unfair business acts or practices because Sweeney violated numerous California Rules of Professional Conduct, New York law, and the California Business and Professions Code, and he used Avant Garde, a suspended California corporation not authorized to practice law, as a conduit for the unconscionable legal fees paid to him by Carter.

132.  As alleged above, Sweeney violated, among other things: (a) California Rule of Professional Conduct 5.5(a)(1) by practicing law in New York in violation of New York Judiciary Law § 478; (b) New York Judiciary Law § 478 for the same reason as (a) above; (c) 22 NYCRR § 523.1 by holding himself out as admitted to practice law in New York and establishing for himself an office or other systematic and continuous presence in New York for the practice of law; (d) Cal. Bus. & Prof. Code § 6126 by continuing to practice law, and holding himself out as entitled to practice law, by representing Carter while his California license was suspended; (e) Cal. Bus. & Prof. Code § 6128 by deceiving his client by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (f) California Rule of Professional Conduct 1.5 by agreeing to, charging, and collecting an unconscionable 10% contingency fee; (g) California Business and Professions Code § 6147 or § 6148 by failing to enter into a statutorily

prescribed, signed written contingency fee agreement between Carter and Sweeney for the provision of legal services; (h) California Rule of Professional Conduct 1.4 by failing to inform Carter of material facts concerning his representation and fees, including the fact that his contingency fees were voidable and unconscionable, the fact that he was not licensed to practice law in the state where he performed legal services for Carter, and the fact that his license to practice law in any jurisdiction was at times suspended; (i) California Rule of Professional Conduct 1.4 by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (j) California Rule of Professional Conduct 5.4 by sharing legal fees with Avant Garde, a suspended California corporation not authorized to practice law; (k) California Rules of Professional Conduct 1.1 and 1.4 by negligently advising Carter concerning the California litigation firm's interpretation of its written contingency fee agreement; and (l) California Rules of Professional Conduct 1.1, 1.3, and 1.4 by failing to keep Carter reasonably informed and negligently causing Carter to default in the federal court action brought by New York litigation counsel concerning a dispute over legal fees.

133. Finally, Sweeney's acts and practices, as alleged herein, include, but are not limited to, breaches of fiduciary duty and legal malpractice. These also constitute unlawful and unfair business acts or practices under California Business and Professions Code §§ 17200-17210, because such acts are immoral, unethical, oppressive, or unscrupulous and cause injury to consumers, which outweighs their benefits.

134. As a direct and proximate result of Sweeney's unlawful and unfair business acts and practices, Sweeney and Avant Garde have been unjustly enriched and Carter has suffered monetary harm.

28

135. Carter seeks disgorgement and restitution of all fees paid to Sweeney and Avant Garde in an amount to be determined at trial, which amount is not less than $20,000,000.

### EIGHTH CAUSE OF ACTION
**(Violation of N.Y. Gen. Bus. Law § 349 Against Sweeney and Avant Garde)**

136. Carter incorporates each and every allegation in paragraphs 1 through 135 as if fully set forth herein.

137. Section 349 of the New York General Business Law prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

138. Section 349 applies to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of New York.

139. Sweeney's and Avant Garde's wrongful conduct constitutes deceptive acts or practices because Sweeney violated numerous California Rules of Professional Conduct, New York law, and the California Business and Professions Code, and used Avant Garde, a suspended California corporation not authorized to practice law, as a conduit for legal fees paid to him by Carter.

140. As alleged above, Sweeney committed unlawful deceptive acts by misleading Carter concerning his violations of, among other things: (a) California Rule of Professional Conduct 5.5(a)(1) by practicing law in New York in violation of New York Judiciary Law § 478; (b) New York Judiciary Law § 478 for the same reason as (a) above; (c) Cal. Bus. & Prof. Code § 6126 by continuing to practice law, and holding himself out as entitled to practice law, by representing Carter while his California license was suspended; (d) Cal. Bus. & Prof. Code § 6128 by deceiving Carter by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (e) California Rule of Professional Conduct 1.5 by agreeing to,

29

charging, and collecting an unconscionable 10% contingency fee; (f) California Business and Professions Code § 6147 or § 6148 by failing to provide Carter with a statutorily prescribed, signed written contingency fee agreement between Carter and Sweeney for the provision of legal services; (g) California Rule of Professional Conduct 1.4 by failing to inform Carter of material facts concerning his representation and fees, including the fact that his contingency fees were voidable and unconscionable, the fact that he was not licensed to practice law in the state where he performed legal services for Carter, and the fact that his license to practice law in any jurisdiction was at times suspended; (h) California Rule of Professional Conduct 1.4 by taking a 10% contingency fee on litigation settlement proceeds without Carter's written agreement; (i) California Rule of Professional Conduct 5.4 by sharing legal fees with Avant Garde, a suspended California corporation not authorized to practice law; (j) California Rules of Professional Conduct 1.1 and 1.4 by negligently advising Carter concerning the California litigation firm's interpretation of its written contingency fee agreement; and (k) California Rules of Professional Conduct 1.1, 1.3, and 1.4 by failing to act to keep Carter reasonably informed and negligently causing Carter to default in the federal court action brought by New York litigation counsel concerning a dispute over legal fees.

141. As a direct and proximate result of Sweeney's unlawful deceptive business acts and practices, Sweeney and Avant Garde have been unjustly enriched and Carter has suffered monetary harm.

142. Carter seeks disgorgement and restitution of all fees paid to Sweeney and Avant Garde and attorney's fees in an amount to be determined at trial.

30

## NINTH CAUSE OF ACTION
### (Violation of N.Y. Judiciary Law § 487 Against Sweeney and Avant Garde)

143.  Carter incorporates each and every allegation in paragraphs 1 through 142 as if fully set forth herein.

144.  New York law provides that an attorney who is guilty of any deceit or collusion or consents to any deceit or collusion with intent to deceive his own client forfeits to the party injured treble damages to be recovered in a civil action.

145.  Sweeney intentionally and egregiously deceived Carter over a period of many years, including during the pendency of judicial proceedings within New York and elsewhere, concerning: (a) the lawfulness of Sweeney's activities in providing legal services to Carter, holding himself out as admitted to practice law in New York, and establishing for himself an office or other systematic and continuous presence in New York for the practice of law; (b) the reasonableness of the contingency fee to which Sweeney was paid and continues to demand in exchange for providing legal services; (c) the voidability of the contingency fee agreement to which Sweeney claimed entitlement to legal fees in exchange for providing legal services; and (d) Sweeney's claim to be entitled to continue charging a contingency fee even after termination of his services and voiding of any purported agreement.

146.  In addition, Sweeney intentionally and egregiously deceived Carter throughout the two years of Carter's representation by the California litigation firm concerning Sweeney's claim to a contingency fee for litigation work Sweeney never performed and for which Carter never agreed to pay him.

147.  As a direct and proximate result of the aforesaid deceit, Carter is entitled to treble damages in an amount to be determined at trial, which amount is not less than $60,000,000.

31

## TENTH CAUSE OF ACTION
### (Declaratory Judgment Against Sweeney and Avant Garde)

148.  Carter incorporates each and every allegation in paragraphs 1 through 147 as if fully set forth herein.

149.  An actual controversy relating to the legal rights and duties of the parties exists, including, among other things, the following: (a) whether any valid contingency fee agreement ever existed between Sweeney and Carter or was void *ab initio* and unenforceable due to, among other things, the absence of a written contingency fee agreement and Sweeney's unauthorized practice of law; (b) whether and to what extent Sweeney and Avant Garde are required to disgorge past fees paid to them pursuant to any purported oral contingency fee agreement with Carter, based upon the agreement's illegality and violations of the public policy of New York and California; (c) whether and to what extent Sweeney and Avant Garde are required to disgorge past fees paid to them pursuant to any purported oral contingency fee agreement with Carter, based upon the agreement's noncompliance with California Business and Professions Code § 6147 or § 6148 and the excessive, unreasonable, and unconscionable fee of 10% of Carter's variable income on deals closed by Sweeney; and (d) whether and to what extent Sweeney is entitled to unpaid amounts now or in the future pursuant to any purported oral contingency fee agreement, given: (i) the agreement's noncompliance with California Business and Professions Code § 6147 or § 6148, (ii) the excessive, unreasonable, and unconscionable fee of 10% of Carter's variable income on deals closed by Sweeney, and (iii) Carter's voiding of the agreement.

150. Accordingly, Carter seeks a declaration that any purported contingency fee agreement between him and Sweeney is illegal, contrary to public policy, void, invalid, and unenforceable, and that he is entitled to disgorgement and restitution of all fees paid to Sweeney and Avant Garde based on the breaches of fiduciary duty, legal malpractice, unjust enrichment,

32

violations of California Business & Professions Code §§ 6147 and 6148, violations of 22 NYCRR § 1215.1,  violations of 22 NYCRR § 523.1, violations of California Business & Professions Code § 6126, violations of N.Y. Judiciary Law § 478, violations of California Business & Professions Code §§ 17200-17210, violations of N.Y. General Business Law § 349, violations of California Business & Professions Code § 6128, and violations of N.Y. Judiciary Law § 487, as alleged herein.  In addition, Carter seeks a judgment awarding him damages against Sweeney and Avant Garde in the amount of all contingency fees he paid to them, in an amount to be determined at trial, which amount is not less than $20,000,000.

    **WHEREFORE**, Plaintiff seeks judgment against Defendants as follows:

    A.  On the First Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

    B.  On the Second Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

    C.  On the Third Cause of Action, an award of damages in an amount to be determined at trial, but not less than $10,000,000;

    D.  On the Fourth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

    E.  On the Fifth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

    F.  On the Sixth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

    G.  On the Seventh Cause of Action, an award of damages in an amount to be determined at trial, but not less than $20,000,000;

33

H.  On the Eighth Cause of Action, an award of damages in an amount to be determined at trial;

I.  On the Ninth Cause of Action, an award of damages in an amount to be determined at trial, but not less than $60,000,000;

J.  On the Tenth Cause of Action, a declaration that any purported contingency fee agreement between Plaintiff and Sweeney is illegal, contrary to public policy, void, invalid, and unenforceable, and that Plaintiff is entitled to disgorgement and restitution of all fees paid to Sweeney and Avant Garde for the reasons alleged herein, and an award of damages in an amount to be determined at trial, but not less than $20,000,000;

K.  An award of punitive damages against all Defendants as allowed in an amount not less than $60,000,000;

L.  An award against all Defendants for Plaintiff's interest, costs, and attorney's fees as allowed; and

M. Granting such other and further relief as the Court deems just and proper.

Dated:   March 22, 2019
        New York, New York

JONATHAN D. DAVIS, P.C.

By: */s/* Jonathan D. Davis
    Jonathan D. Davis
    Derek A. Williams
    Milton E. Otto
    10 Rockefeller Plaza, Suite 1015
    New York, New York 10020
    (212) 687-5464

    *Attorneys for Plaintiff Dwayne Michael*
    *Carter Jr. p/k/a Lil Wayne*

34

# EXHIBIT 3

Edwin F. McPherson – State Bar No. 106084
 emcpherson@mcpherson-llp.com
Pierre B. Pine – State Bar No. 211299
 ppine@mcpherson-llp.com
**McPHERSON LLP**
1801 Century Park East
24th Floor
Los Angeles, CA 90067
Tel:(310)553-8833
Fax:(310)553-9233

Attorneys for Plaintiffs RONALD E. SWEENEY
  and AVANT GARDE MANAGEMENT, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation, | CASE NO. 2:21-cv-01689-ODW-JC |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS RONALD E. SWEENEY AND AVANT GARDE MANAGEMENT, INC. IN OPPOSITION TO MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY (2), MOTION TO DISMISS OR STAY THIS ACTION UNDER THE COLORADO RIVER DOCTRINE, OR ALTERNATIVELY (3), MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | Date:   June 7, 2021<br>Time:  1:30 p.m.<br>Ctrm:  5D<br><br>Hon. Otis D. Wright II |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION................................................-7-

     A.   PREFATORY STATEMENT...............................-7-

     B.   STATEMENT OF FACTS................................-7-

          1.   The Parties....................................-7-

          2.   The Agreement.................................-8-

          3.   The NY Action.................................-11-

II.  DISCUSSION...................................................-12-

     A.   LEGAL STANDARDS..................................-12-

          1.   Motion To Dismiss For Lack of Personal Jurisdiction.......-12-

          2.   Motion For Judgment On The Pleadings Under FRCP 12(c)..-13-

     B.   DEFENDANTS' MOTION TO DISMISS, BASED ON LACK OF PERSONAL JURISDICTION, SHOULD BE DENIED..............-15-

          1.   General Jurisdiction Exists Over Defendants...............-15-

          2.   Specific Jurisdiction Exists Oer Defendants................-18-

              (a)   "Purposeful Availment" Factor. .....................-18-

              (b)   "Arises Out Of" Factor. .........................-21-

              (c)   "Reasonableness" Factor...........................-21-

     C.   DEFENDANTS' ALTERNATIVE REQUEST FOR DISMISSAL, OR FOR A STAY, BASED ON THE *COLORADO RIVER* DOCTRINE, SHOULD ALSO BE DENIED.. .................-22-

     D.   DEFENDANTS' ALTERNATIVE MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD ALSO BE DENIED.............-26-

          1.   Plaintiffs' Claim For Breach Of Oral Contract Is Not Barred By The Statute of Frauds.........................-26-

          2.   Plaintiffs' Claims For Unjust Enrichment And Quantum Meruit Are Not Barred By The Statute of Frauds Or Time Barred, And Plaintiffs' Claim For An Accounting Is Proper.....................................-28-

          3.   Plaintiffs' Fraudulent Inducement Claim Is Sufficiently Pled..-29-

III.  CONCLUSION. ................................................-31-

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

Austad v. United States,
    386 F.2d 147 (9th Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Balistreri v. Pacifica Police Dep't,
    901 F. 2d 696 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Ballard v. Savage,
    65 F. 3d 1495 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -21-

Bonilla v. Oakland Scavenger Co.,
    697 F.2d 1297 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Brand v. Menlove Dodge,
    796 F.2d 1070 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-, -19-, -22-

California Pac. Medical Ctr. v. Copy-Mor, Inc.,
    1996 U.S. App. LEXIS 17777, *7 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . -29-

Calix Networks, Inc. v. Wi-LAN, Inc.,
    2010 U.S. Dist. LEXIS 97657, *11 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . -16-

Caruth v. International Psychoanalytical Ass'n,
    59 F.3d 126 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

Cauchi v. Brown,
    51 F. Supp. 2d 1104, (E.D. CA 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Cholakyan v. Mercedes-Benz USA, LLC,
    2011 WL 2682975, *9 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-, -23-

Core-Vent Corp. v. Nobel Industries AB,
    11 F.3d 1482 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Corsican Productions v. Pitchess,
    338 F. 2d 441 (9th Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Data Disc, Inc. v. Systems Technology Assos.,
    557 F.2d 1280 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Doe v. Unocal Corp.,
    248 F. 3d 915 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -18-

Doleman v. Meiji Mutual Life Ins. Co.,
  727 F.2d 1480 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Dorsey v. American Golf Corp.,
  98 F.Supp. 2d 812 (E.D. MI 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

General Conference Corp. Of Seventh Day Adventists v. Seventh Day Adventist
Congregational Church,
  887 F.2d 228 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Gilligan v. Jamco Develop. Corp.
  108 F. 3d 246 (9ᵗʰ Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Graehling v. Village of Lombard, Ill.,
  58 F.3d 295 (7ᵗʰ Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,
  784 F.2d 1392 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
  896 F.2d 1542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -31-

Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,
  328 F.3d 1122, 1129 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Intel Corp. v. Advanced Micro Devices, Inc.,
  12 F.3d 908 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

Irish Lesbian & Gay Org. v. Giulani,
  143 F. 3d 638 (2nd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Jenkins v. Family Health Program,
  214 Cal.App. 3d 440 (Cal. Dist. Ct. App. 1989). . . . . . . . . . . . . . . . . . . . . -27-

Kearns v. Ford Motor Company,
  567 F. 3d 1120 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Kulko v. Superior Ct. Of Cal.,
  436 U.S. 84 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Locke v. Warner Bros., Inc.,
  57 Cal. App. 4th 354 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

LSI Indus. v. Hubbell Lighting, Inc.,
  232 F.3d 1369 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Mattel, Inc. v. Greiner & Hausser GmbH,
  354 F.3d 857 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

McGlinchy v. Shell Chemical Co.,
  845 F.2d 802 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
  84 F.3d 560, 573 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Mitrano v. Hawes,
    377 F.3d 402 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Moore v. Kayport Package Exp., Inc.,
    885 F.2d 531 (9th Cir. 1989), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Morrissey v. City of L.A.,
    2020 U.S. Dist. LEXIS 191327, *13 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . -25-

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-, -25-

Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.,
    578 F.Supp. 2d 1242 (E.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

Nicosia v. De Rooy,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . -12-, -21-

Ochoa v. J.B. Martin & Sons Farms,
    287 F.3d 1182 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

Pac. W. Grp., Inc. v. Real Time Solutions, Inc.,
    321 Fed. Appx. 566 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

Perkins v. Benguet Consolidated Mining Co.,
    342 U.S. 437 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Plumlee v. Pfizer, Inc.,
    2014 U.S. Dist. LEXIS 23172, *15 (N.D. Cal. 2014). . . . . . . . . . . . . . . . . -15-

Plumlee v. Poag,
    150 Cal.App. 3d 541 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

R.R. St. & Co. v. Transp. Ins. Co.,
    656 F.3d 966 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . -22-,-23-, -24-, -25-

Robards v. Gaylord Bros., Inc.,
    854 F.2d 1152 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

Rosenthal v. Fonda,
    862 F.2d 1398 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . -27-, -28-

Sher v. Johnson,
    911 F.2d 1357 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . -21-, -22-

Thompson v. Thompson,
    798 F.2d 1547 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Tuazon v. R.J. Reynolds Tobacco Co.,
    433 F.3d 1163 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

United States v. Redwood City,
    640 F. 2d 963 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

United States v. Toyota Motor Corp.,
    561 F.Supp. 354 (C.D. Cal. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

United States v. White,
    893 F. Supp. 1423 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Walling v. Beverly Enters,
    476 F. 2d 393, 397 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

White Lighting Co. v. Wolfson,
    68 Cal. 2d 336, 343, 438 P.2d 345, 66 Cal.Rptr. 697 (Cal. 1968). . . . . . -26-, -27-, -28-

**STATUTES**

Cal. Civ. Proc. Code § 410.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

**RULES**

Fed. Rules Civ. Proc., Rule 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Fed. R. Civ. Proc., Rule 15(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

**OTHER AUTHORITIES**

5 C. Wright & A. Miller,
Federal Practice and Procedure, §1357, at 598 (1969). . . . . . . . . . . . . . . . . . . . . . . . -14-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A.    PREFATORY STATEMENT

One of the Defendants, having improperly sued Plaintiffs in New York, and essentially having lost that case, is now joining the other Defendants in this case, who are <u>not</u> parties in the New York case, claiming that Plaintiffs should not be allowed to go forward with this case.  Defendants challenge jurisdiction, notwithstanding multiple ties to California (including 8 lawsuits, actions, and/or appeals that Defendants filed in California that Plaintiffs managed for them); they challenge the oral nature of the agreement between the parties on grounds that have been debunked by decades-old cases; and they challenge Plaintiffs' fraud claim with boilerplate arguments, ignoring the Complaint entirely.

Essentially, Defendants arguments boil down to nothing more than that they do not want to be here.  That should not be enough for Defendants to prevail on these motions, and this Court should deny them in their entirety.

### B.    STATEMENT OF FACTS

#### 1.    The Parties

Plaintiff Sweeney is a personal manager, through his entity, Plaintiff Avant Garde Management, Inc. (hereinafter "Avant Garde"), as well as a businessman, strategist, former record executive at Sony Music Entertainment, and a California licensed attorney. Complaint, ¶ 1;  Declaration of Ron Sweeney (hereinafter "Sweeney Decl."), ¶¶ 4-5. Avant Garde is, among other things, a personal management company dedicated to the management of the careers of recording artists and performers, and is a single member corporation founded by Sweeney, first registered with the State of California on or about October 15, 1985.  Complaint, ¶ 6; Sweeney Decl., ¶ 4, Exh. "A."

Dwayne Michael Carter, Jr. p/k/a Lil Wayne (hereinafter "Lil Wayne") is one of the most prominent rappers and recording artists in the world today.  He has released a total of twelve studio albums and has sold over 120 million records worldwide, including

more than 20 million albums and 70 million digital tracks in the United States, making him one of the world's best selling musical artists.  Complaint, ¶ 2; Sweeney Decl., ¶ 6. The Young Money Entities are all owned, directed, and controlled by Lil Wayne, and handle various aspects of Lil Wayne's business.

### 2.   The Agreement

In or about 2005, Sweeney was approached by Lil Wayne's then manager, Melissa Phillian, and met with her and Lil Wayne at the W Hotel, in Westwood, California, about helping Lil Wayne with a terrible contract that he had with Cash Money Records (hereinafter "Cash Money").  Sweeney Decl., ¶ 8.  Sweeney was hired by Lil Wayne at that time, and was extremely successful in this endeavor, completely renegotiating Lil Wayne's deal, and securing for him a new recording agreement, as well as the return of his publishing, merchandising, and touring rights.  Id; Complaint, ¶ 17.

Plaintiffs were initially managing multiple aspects of Lil Wayne's personal day-to-day business affairs.  However, in or about 2008, after the creation of Lil Wayne's own record label, Young Money Entertainment, LLC (hereinafter "YME"), Plaintiffs' duties expanded greatly, and as the only person working for Lil Wayne with experience running a record label, Sweeney was made the manager of YME, and subsequently became the manager of Lil Wayne's other Young Money business entities.  Plaintiffs agreed to perform a number of functions across the managerial, strategic, and business spectrum for Lil Wayne and his entities, in return for 10% of Defendants' gross compensation from all entertainment activities (the "Agreement"), which was Plaintiffs' customary commission for representing high profile artists.  Sweeney Decl., ¶ 9; Complaint, ¶ 18.

At the time that Lil Wayne hired Plaintiffs as Defendants' managers and confidantes, day to day manager was his childhood friend, Cortez Bryant ("Bryant"), who took care of Lil Wayne's personal needs.  Complaint, ¶ 20.  Bryant had no business training, knowledge, or experience as a professional manager, and had no experience in the music industry in general.  Id.  Lil Wayne was also being advised by Jermaine A. Preyan p/k/a Mack Maine ("Maine"), who is also a childhood friend of Lil Wayne, who

also had no prior business or music industry experience or knowledge.  Complaint, ¶ 21.

During Plaintiffs' tenure with Lil Wayne, Plaintiffs essentially acted as the managers of the managers, acting as Lil Wayne's overall protector, protecting him from his record company, his day to day managers, and a vast amount of parasites and others who were trying to take advantage of Lil Wayne.  Complaint, ¶ 23.

In or about late 2013, or beginning of 2014, Plaintiffs met with Lil Wayne and Bryant, at which time Plaintiffs told him that Cash Money had become a serious problem, and that the company did not have any money.  Plaintiffs described their extensive efforts to extract the monies that were owed from Cash Money, and ultimately advised Lil Wayne that the only way that he was ever going to see any more money from Cash Money was to sue the company.  Complaint, ¶ 26.  Due to the financial difficulties that Lil Wayne was experiencing from Cash Money's failure to pay him, which in turn was making it difficult for Lil Wayne to pay anyone, including Plaintiffs, Lil Wayne was justifiably concerned that Plaintiffs would cease their representation of him, and expressed that concern during this meeting.  However, Plaintiffs assured Lil Wayne that they would not abandon him during this difficult time, even if they were not getting paid, but that they did have to be paid out of the proceeds of the lawsuit.  Complaint, ¶ 27.

Lil Wayne made it clear, and specifically represented to Sweeney at that time, that Plaintiffs would receive 10% of the settlement proceeds from the litigation, in perpetuity, as well as 10% of all proceeds from the sale of any master recordings owned by YME (in addition to the 10% of other earnings that Plaintiffs were supposed to receive at that point), in exchange for Plaintiffs' continued management of him. Complaint, ¶ 28. In reliance on the aforementioned representations made by Lil Wayne, Plaintiffs continued their representation of Defendants in good faith, managing everything in Lil Wayne's life, including YME and the litigation, only receiving 2-3 payments from YME during that time, and minimal payments from Lil Wayne.  Complaint, ¶ 29.

In 2014, under Plaintiffs' guidance and counsel, Lil Wayne did sue Cash Money, which turned into a massive legal dispute (hereinafter the "Cash Money Action"), which

involved unpaid revenues that were owed to YME for its share of profits from the world-renowned recording artists, Drake and Nikki Minaj.  Complaint, ¶ 30.  Following Lil Wayne's failure to pay litigation counsel that was originally secured by Sweeney to handle the Cash Money Action on an hourly basis, Lil Wayne instructed Sweeney to find counsel that would handle the Cash Money Action on a contingency fee basis.  Sweeney Decl., ¶ 10.  In that regard, Sweeney found and secured a prominent and highly capable law firm, and persuaded them to agree to handle the cases on Lil Wayne's behalf for well below the standard contingency fee rate of 33% - 40%.  Sweeney Decl., ¶ 11.

In 2016, that same law firm's representation of Lil Wayne in the Cash Money Action expanded to a separate lawsuit against Universal Music Group and SoundExchange (hereinafter the "UMG/SoundExchange Action"), involving unpaid royalties that were owed to Lil Wayne as an artist.  The UMG/SoundExchange Action was filed on behalf of Lil Wayne and YME in this Court (Case No. 2:16-cv-02096).  Sweeney Decl., ¶ 12, Exh. "B."  Plaintiffs continued to manage Lil Wayne and all of his entities, in addition to managing all of the litigation, including the UMG/SoundExchange Action in Los Angeles.  Sweeney Decl., ¶ 13.

In or around May of 2018, through the efforts of the law firm that was secured and managed by Plaintiffs, Lil Wayne and YME were able to settle both the Cash Money Action and the UMG/SoundExchange Action, which resulted in substantial (confidential) settlement payments being paid to them.  Complaint, ¶ 37.  Aside from receiving two commission payments in connection with the the Cash Money Action, and a single payment in connection with the the UMG/SoundExchange Action, Lil Wayne failed to make any further payments to Plaintiffs in connection therewith.  Complaint, ¶ 38.

On March 20, 2018, as part of Plaintiffs' managerial duties, at Lil Wayne's instruction, Sweeney sent an e-mail to Bryant, enclosing a letter signed by Lil Wayne, terminating Bryant's management services.  Sweeney Decl., ¶ 14, Exh "C."  Plaintiffs subsequently agreed to take over Bryant's former day to day duties, in addition to their own management duties, in exchange for an increase in commissions from 10% to 17%,

going forward. Complaint, ¶ 40.

After Plaintiffs followed Lil Wayne's instructions and terminated Bryant's management services, Sweeney believes that Bryant and Maine conspired together to drive a wedge between Lil Wayne and Plaintiffs by, among other things, making false and misleading statements to Lil Wayne about Plaintiffs. Complaint, ¶ 41. Bryant and Maine eventually succeeded in their goal, as, in or about September 2018, Lil Wayne terminated his and his entities' relationship with Plaintiffs. Complaint, ¶ 43.

Subsequent to Plaintiffs' termination, specifically in or about June of 2020, it is Plaintiffs' understanding that Lil Wayne was able to sell the Young Money Masters to Universal Music Group for in excess of $100 Million. Complaint, ¶ 44. Thereafter, Lil Wayne and his entities continued to fail and refuse to pay to Plaintiffs any of the amounts owed to them, including amounts owed by them in connection with back commissions, the settlements of the Cash Money Action and the Universal/ SoundExchange Action, and the sale of the Young Money Masters. Complaint, ¶ 49.

### 3. The NY Action

On or about January 30, 2019, Lil Wayne filed a Complaint against Sweeney and Avant Garde, and on March 22, 2019, filed a First Amended Complaint, in the Supreme Court in the State of New York, asserting claims for relief for: (1) Fraudulent Inducement; (2) Legal Malpractice; (3) Breach of Fiduciary Duty; (4) Unjust Enrichment; (5) Violation of Cal. Bus. & Prof. Code Section 6147; (6) Violation of Cal. Bus. & Prof. Code Section 6148; (7) Violation of Cal. Bus. & Prof. Code Section 17200-17210; (8) Violation of N.Y. Gen. Bus. Law § 349; (9) Violation of N.Y. Judiciary Law § 487; and (10) Declaratory Judgment (hereinafter the "NY Action").[1]

On or about July 19, 2019, Sweeney and Avant Garde filed a motion to dismiss the NY Action. The hearing on the motion was delayed until March 10, 2020, after which the Court took the matter under submission for over a year. On or about April 30, 2021,

[1] See Exh. "A," to Declaration of Dwayne Michael Carter ("Carter Decl.").

the court in the NY Action issued an Order granting Sweeney and Avant Garde's motion to dismiss as to the first nine causes of action in the FAC, as well as to subsections a, b, and c of the tenth cause of action, and ordering the parties to submit additional briefing concerning a sole remaining subsection of the tenth cause of action.[2]  Neither Sweeney nor Avant Garde has asserted any affirmative claims in that case.  Sweeney Dec., ¶ 24.

## II.  DISCUSSION

### A.  LEGAL STANDARDS

#### 1.  Motion To Dismiss For Lack of Personal Jurisdiction

Although the plaintiff generally has the burden of proving that jurisdiction exists, in the preliminary stages of litigation, the plaintiff's burden is light, and disputed facts must be resolved in favor of the plaintiff.  Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) ("In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff must present a prima facie case that personal jurisdiction exists over the defendants . . .  *The court is required to resolve disputed facts in the light most favorable to the plaintiff*.").

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the *plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss* . . . .  That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F. 3d 1495, 1498 (9th Cir. 1995), citing Data Disc, Inc. v. Systems Technology Assos., 557 F.2d 1280 (9th Cir. 1977) ("*Any greater burden - such as proof by a preponderance of the evidence - would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials*.  Accordingly, if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.") (emphasis

---

[2]See Exh. "F," to Declaration of Tami Kameda Sims ("Sims Decl.").

added). "Unless directly contravened, *[plaintiffs'] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.*'" Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (emphasis added).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." Harris Rutsky & Co. Ins. Servs., supra, 328 F. 3d at 1129; citing Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." Id. citing Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); Core-Vent, supra, 11 F.3d at 1484.

"Constitutional due process concerns are satisfied when a nonresident defendant has 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional conceptions of fair play and substantial justice.'" Doe v. Unocal Corp., 248 F. 3d 915, 923 (2001). "Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." Doe, supra, 248 F. 3d at 923; citing Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446 (1952).

Although either general or specific jurisdiction is sufficient to establish personal jurisdiction over a defendant, in this case, as detailed in the sections below, the Court has both general and specific jurisdiction over Defendants.

### 2. Motion For Judgment On The Pleadings Under FRCP 12(c)

Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions are virtually interchangeable, as both permit challenges directed at the legal sufficiency of the parties' allegations, and the same standard applies to both motions. See Irish Lesbian & Gay Org. v. Giulani, 143 F. 3d 638, 644 (2nd Cir. 1998). In fact, Defendants have conceded that motions for judgment on the pleadings under Rule 12(c) are "functionally

identical" to motions to dismiss under Rule 12(b)(6).  (Motion, p. 20:7-8).

"For purposes of the [Rule 12(c)] motion, *the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false*." [Emphasis added].  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989); citing Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984) ["Generally, *district courts have been unwilling to grant a Rule 12(c) dismissal 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law'"*]; see also Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967) ["Only if it appears that, on the facts so admitted, the moving party is clearly entitled to prevail can the motion be granted."].

As with Rule 12(b)(6) motions[3], in a 12(c) motion, "all allegations of fact by the party opposing the motion are accepted as true, and *are construed in the light most favorable to that party*."  General Conference Corp. Of Seventh Day Adventists v. Seventh Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989); citing McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988) ("the motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6): this court may affirm the district court's dismissal '*only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations*.'").

Thus, a Rule 12(c) dismissal, like a 12(b)(6) dismissal, would only be proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F. 2d 696, 699 (9th Cir. 1988); Graehling v. Village of Lombard, Ill., 58 F. 3d 295, 297

---

[3]*"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.*" [Emphasis added].  Gilligan v. Jamco Develop. Corp., 108 F. 3d 246, 249 (9th Cir. 1997).  A 12(b)(6) dismissal is proper only in "extraordinary" cases.  United States v. Redwood City, 640 F. 2d 963, 966 (9th Cir. 1981); citing Corsican Productions v. Pitchess, 338 F. 2d 441, 442 (9th Cir. 1964); 5 C. Wright & A. Miller, Federal Practice and Procedure, §1357, at 598 (1969); *See also*, Cauchi v. Brown, 51 F. Supp. 2d 1014, 1016 (E.D. CA 1999); United States v. White, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995).

(7th Cir. 1995), ["A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim"].

Furthermore, "[a]s with a Rule 12(b)(6) motion to dismiss, a court granting judgment on the pleadings pursuant to Rule 12(c) should grant leave to amend even if no request for leave to amend has been made, ...". Plumlee v. Pfizer, Inc., 2014 U.S. Dist. LEXIS 23172, *15 (N.D. Cal. 2014); citing Pac. W. Grp., Inc. v. Real Time Solutions, Inc., 321 Fed. Appx. 566, 569 (9th Cir. 2008).  In fact, FRCP 15(a) expressly states "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Proc., Rule 15(a).

## B. **DEFENDANTS' MOTION TO DISMISS, BASED ON LACK OF PERSONAL JURISDICTION, SHOULD BE DENIED**.

### 1. **General Jurisdiction Exists Over Defendants**.

"In the context of general jurisdiction, minimum contacts exist where a defendant has 'substantial' or 'continuous and systematic' contacts with the forum state, *even if the case is unrelated to those contacts*." [Emphasis added].  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1170 (9th Cir. 2006).  "The 'minimum contacts' test of *International Shoe* is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." Kulko v. Superior Ct. Of Cal., 436 U.S. 84, 92 (1978).  "In evaluating general jurisdiction, we have not developed a precise checklist or articulated a definitive litany of factors.  We consider, among other factors, '*whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets*, designates an agent for service of process, holds a license, or is incorporated there' . . .  It is the nature and extent of the contacts that determines whether they are 'substantial' or 'continuous and systematic.'  *Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence*." Tuazon, supra, 433 F.3d at 1172 (emphasis added).

Courts have found sufficient minimum contacts to support general jurisdiction in a variety of situations.  See LSI Indus. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed.

Cir. 2000) ["Based on Hubbell's millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains 'continuous and systematic' contacts with Ohio."); see also, Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 573 (2d Cir. 1996) (Sufficient contacts for general jurisdiction where defendant made significant revenue in sales from the forum state, had relationships in-state with dealers and builders, advertised to forum state residents, and deliberately targeted sales prospects in-state). Furthermore, the court may examine contacts with a foreign state "over a period of years before and up to inception of the suit, on a case-by-case basis." Calix Networks, Inc. v. Wi-LAN, Inc., 2010 U.S. Dist. LEXIS 97657, *11 (N.D. Cal. 2010).

In this case, Defendants all have more than sufficient minimum contacts with California for this Court to exercise general jurisdiction. Defendants all have engaged in significant and continuous business dealings and relationships in the State of California prior to the filing of this lawsuit. In or about May-June 2018, Lil Wayne and YME entered into a recording agreement with Universal Music Group ("UMG"), which maintains its entity address and principal place of business in Santa Monica. Sweeney Decl., ¶ 27. Furthermore, since approximately 2005, Lil Wayne and YMP have maintained publishing agreements with Warner Chappell Music, Inc., which maintains its principal place of business in Los Angeles. Sweeney Decl., ¶ 28.

Moreover, Lil Wayne and YMT have a touring[4] agreement with Live Nation Entertainment, which has its entity address and principal office at 9348 Civic Center Drive, Beverly Hills, CA 90210. Sweeney Decl., ¶ 29. Moreover, YMT lists its own

---

[4]Prior to the pandemic, Lil Wayne was touring regularly, including in California, and in 2019 alone, he performed at: North Island Credit Union Amphitheater in Chula Vista, CA on August 7, 2019; The Forum in Inglewood, CA on August 8, 2019; Outside Lands Music & Arts Festival in San Francisco, CA on August 9, 2019; and FivePoint Amphitheater in Irvine, CA on August 27, 2019. Further, in or about February of 2020, Lil Wayne performed and participated on Season 3 of the musical television game show, "The Masked Singer," no doubt pursuant to an agreement entered into with the producer, Fox Alternative Entertainment, which is located in Los Angeles. Sweeney Decl., ¶ 30.

current mailing address and principal place of business as 16000 Ventura Blvd., Ste 600, Encino, CA 91436, on its 2021 Florida Profit Corporation Annual Report.  Id. Exh "F."

Additionally, from approximately 2012 to October, 2018, the business manager for Lil Wayne and the Young Money Entities was Jeffrey Turner, CPA, of Provident Financial Management, whose offices are located in Santa Monica.  Sweeney Decl., ¶ 31, Exh. "G" and "H."  Also, since approximately 2012, Lil Wayne has maintained his primary personal and business bank accounts for all of the Young Money entities at City National Bank, in Beverly Hills.  Sweeney Decl., ¶ 32, Exh. "I" and "J."  Moreover, from in or about 2018 until approximately April 2021, Lil Wayne's contracted booking agency was Creative Artists Agency, which maintains its entity address, agent for service of process, and principal office in Los Angeles.  Sweeney Decl., ¶ 33.

Furthermore, Lil Wayne admits that, at least since "September 2020 [prior to the filing of this lawsuit] and through the present, [he has] stayed ... in short-term rental properties in California for business and personal reasons" (Carter Decl., ¶ 21), from which it can be reasonably concluded that he has entered into multiple contractual lease agreements in the State of California, with residents of California.

Finally, Lil Wayne is one of the world's best selling musical artists, and has sold more than 20 million albums and 70 million digital tracks in the United States alone. Sweeney Decl., ¶ 6.  Although Plaintiffs do not have access to information regarding Defendants' percentage[5] of album sales and streaming revenues generated in California, there can be no dispute that Lil Wayne's music is advertised and sold in California, and given the wide popularity of the hip-hop/rap genre in California, there is little doubt that such sales and revenues are significant.  These facts are more than sufficient to establish general jurisdiction over Lil Wayne and all of the Young Money Entities.

---

[5]Further, a nonresident may be subject to local general jurisdiction even if its forum activities are but a small percentage of its nationwide business.  The relevant inquiry is whether its forum operations are "continuous and systematic" (see Dorsey v. American Golf Corp., 98 F.Supp. 2d 812, 815 (E.D. MI 2000)), which they clearly are in this case.

## 2.   Specific Jurisdiction Exists Over Defendants.

"A court may exercise specific jurisdiction over a defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court.  The question is 'whether the cause of action arises out of or has a substantial connection with that activity.'"  Doe, supra, 248 F. 3d at 923.

"The Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction: (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) The claim must be one which arises out of or results from the defendant's forum-related activities; (3) Exercise of jurisdiction must be reasonable."  Doe, supra, 248 F. 3d at 923.

"Although Ninth Circuit law formerly required a plaintiff to demonstrate each of these three factors to establish specific jurisdiction [citation omitted], *[the Ninth Circuit] has, in light of subsequent Supreme Court precedent, adopted a more 'flexible approach*.' [citation omitted].  *Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate*.'"  Ochoa v. J.B. Martin & Sons Farms, 287 F.3d 1182, 1188, fn 2 (9th Cir. 2002) (emphasis added), quoting Brand v. Menlove Dodge, 796 F.2d 1070, 1074 (9th Cir. 1986); Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  "Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable."  Brand, supra, 796 F.2d at 1074.

### (a)   "Purposeful Availment" Factor

Purposeful availment occurs where a nonresident defendant creates a "substantial connection" with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  For example, where the defendant "'deliberately' has engaged in significant

Opposition of Plaintiffs To Motion to Dismiss

activities within a State" or "has created 'continuing obligations' between himself and residents of the forum," he has availed himself of the privilege of conducting business in the forum. Id. at 475-476. *A foreign defendant purposefully avails itself of business opportunities where it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State*." United States v. Toyota Motor Corp., 561 F.Supp. 354, 359 (C.D. Cal. 1983) (emphasis added). This is the case regardless of the means in which exploitation of the market is carried out, e.g., whether products reach the market through a subsidiary rather than a parent corporation. Id. Further, *contracting parties who "reach out beyond one state to create continuing relationships and obligations with citizens of another state*" may be found to have "purposefully availed" themselves of benefits and protections under the other state's laws. [Emphasis added]. Burger King, supra, 471 U.S. at 474.

Additionally, the Ninth Circuit has long held that prior filing of a related lawsuit in the forum by a nonresident defendant constitutes purposeful availment for purposes of establishing specific jurisdiction. See Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 863 (9th Cir. 2003) [Defendant "performed an act and purposefully availed itself of the privilege of conducting activities in California when it filed the lawsuit against Mattel in 1961."]; Thompson v. Thompson, 798 F.2d 1547, 1549 (9th Cir. 1986) [defendant "*purposely availed herself of the privilege of conducting her activities in California when she invoked the benefits and protections afforded by California law by initiating an action*"]. Further, it is immaterial whether such prior lawsuit was initiated directly by the defendant, or through an authorized agent, even if that agent was the plaintiff. See Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (Where attorney initiated lawsuit locally on behalf of nonresident client, and later sued client for fees for his services in the earlier lawsuit, *client was subject to local personal jurisdiction in the fee action, even if attorney selected the local forum for the initial lawsuit, as client's "knowing continuation of the suit ... demonstrates that his availment of [the state's] legal protections was purposeful*.")

Defendants' numerous business connections to California previously discussed under general jurisdiction clearly demonstrate that Defendants have "created 'continuing [contractual] obligations' between [themselves] and residents of the forum," and that they have purposely availed themselves of business opportunities by delivering Lil Wayne's music (via album sales, streaming, touring, etc.) "into the stream of commerce with the expectation that they will be purchased by consumers in [California]."

Furthermore, beyond those connections already discussed, in or about 2005, Lil Wayne "reached out beyond his state" and traveled to Los Angeles to meet with, and orally agreed to retain the services of, Sweeney, a personal manager and California resident and attorney, and Avant Garde, a California corporation, to, among other things, manage multiple aspects of Lil Wayne's business affairs from California, which subsequently expanded to include managing his record label, YME, as well as the other Young Money Entities, during a nearly 14-year relationship.  Sweeney Decl., ¶¶ 8-9, 17.

Plaintiffs' duties eventually included finding, securing, and directing (Los Angeles) litigation counsel to act on Lil Wayne's behalf, including for the UMG/Sound-Exchange Action[6], involving unpaid royalties, which was filed on behalf of Lil Wayne and YME in the Central District of California (Case No. 2:16-cv-02096).  Sweeney Decl., ¶¶ 10-12, Exh. "B."  The UMG/SoundExchange Action is directly related to this lawsuit because Lil Wayne and YME agreed to pay a percentage of the settlement proceeds from the litigation to Plaintiffs (Complaint, ¶ 28); however, after that lawsuit was settled (along with the Cash Money Action), only a single payment was made, and the failure to make additional payments to Plaintiffs directly led to the filing of this lawsuit.  Sweeney Dec., ¶ 12.  Thus, Lil Wayne and YME *"purposely availed [themselves] of the privilege*

---

[6]Between 2009 and 2016, Lil Wayne and/or one or more of the Young Money Entities, initiated fifteen (15) lawsuits, actions, and/or appeals in the State of California, including nine (9) federal court cases (including UMG/SoundExchange Action).  Plaintiffs were also involved in managing the litigation counsel on Lil Wayne's behalf on the majority of those cases, making them also directly related to Plaintiffs' services and this lawsuit, and establishing Defendants' purposeful availment of the legal protections afforded by California.  Sweeney Dec., ¶ 19, Exh. "E."

*of conducting [their] activities in California when [they] invoked the benefits and protections afforded by California law."*

### (b)    **"Arises Out Of" Factor**

The Ninth Circuit applies the "but for" test to decide whether a defendant meets the second requirement of "arising out of" or "resulting from" forum-related activities. Ballard, supra, 65 F.3d at 1500.  Thus, the question is: but for Defendants' activities and contacts with California, would Plaintiffs' claims have arisen?  See Id.

As detailed in the prior section, "but for" Lil Wayne traveling to Los Angeles to meet with, and orally agreeing to retain the services of, Sweeney, a California resident and attorney, and Avant Garde, a California corporation, to among other things, manage multiple aspects of Lil Wayne's business affairs (including eventually managing all of the Young Money Entities), none of Plaintiffs' claims would have arisen.  Sweeney Decl., ¶¶ 8-9.  These actions, specifically Defendants' continuing business transaction with a California resident and California corporation, gave rise to Plaintiffs' claims; but for Defendants' conduct, Plaintiffs' injuries would not have occurred.

### (c)    **"Reasonableness" Factor**

Finally, once the first two factors (*i.e.*, purposeful availment and "but for" causation) are established, Defendants have the burden of showing unreasonableness by "presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Ballard, supra, 65 F.3d at 1500; citing Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir. 1990) [*once court finds purposeful availment, it must presume that jurisdiction would be reasonable*].  The burden of defending in the forum state is generally considered; however, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Nicosia, supra, 72 F.Supp. 2d at 1100; citing Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995).

The mere fact that local litigation is "inconvenient" is not enough, and "it is not enough that the [defendant] demonstrate that some other forum is more reasonable than

California, it must show a due process violation; *it must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent*.'" Sher, supra, 911 F.2d at 1365; quoting Burger King, supra, 471 U.S. at 478.

Considering that Lil Wayne has admitted that he is the "highest level officer/ executive responsible" for each of the Young Money Entities, and that he is the "sole member and 100% owner" of YME and YMV (Carter Decl., ¶¶ 27 and 28), and that he has admitted to living in "short-term rental properties in California," and that he just "purchased a [$15.4 Million] property in Hidden Hills, California" (Carter Decl., ¶¶ 21 and 24), it is unlikely that any inconvenience here would be unreasonable.  Furthermore, Lil Wayne and the Young Money Entities have already demonstrated, through their involvement and prior purposeful availment of California's legal protections in the UMG/SoundExchange Action, and multiple other lawsuits (Sweeney Dec., Exh. "E"), that they are more than comfortable litigating in this forum.

**C.** **DEFENDANTS' ALTERNATIVE REQUEST FOR DISMISSAL, OR FOR A STAY, BASED ON THE *COLORADO RIVER* DOCTRINE, SHOULD ALSO BE DENIED.**

Defendants admit that "[i]nvoking the [Colorado River] doctrine requires 'exceptional circumstances'." (Motion, at 14:6-7). As set forth in the case relied upon by Defendants "when it comes to non-discretionary actions for damages ... federal courts possess a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 977 (9th Cir. 2011); quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

"Only in *rare cases* will 'the presence of a concurrent state proceeding' permit the district court to dismiss a concurrent federal suit 'for reasons of wise judicial administration.'" R.R. St. & Co., supra, 656 F.3d at 977-978 ["The court has carefully limited *Colorado River*, emphasizing the courts may refrain from deciding an action for damages *only in 'exceptional' cases*, and *only [when] 'the clearest of justifications'*

*support dismissal*."]; <u>Colorado River, supra</u>, 424 U.S. at 818-19.  "To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" <u>Id</u>.

The Ninth Circuit has recognized eight factors for assessing the appropriateness of a Colorado River stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.  <u>Id</u>.

In connection with the eighth factor of "whether the state court proceedings will resolve all issues before the federal court," which the Defendants assert "is considered a threshold question," the Ninth Circuit has required that "the two actions be 'substantially similar'" and that "'the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes' a *Colorado River* stay or dismissal."  <u>R.R. St. & Co.</u>, <u>supra</u>, 656 F.3d at 982.

Contrary to Defendants' assertions, the claims in the NY Action and this action are not "substantially similar."  The primary claims brought by Defendants in the NY Action are for alleged legal malpractice and breach of fiduciary duty, arising out of Lil Wayne's assertion that Sweeney allegedly overcharged Lil Wayne for legal services, and misrepresented himself to be a New York attorney.  (See Carter Decl., Exh. "A").

There is nothing in any of the claims currently pending in the NY Action that address the fees owed to Plaintiffs for the management services that they provided to Lil Wayne and all of the Young Money Entities.  Sweeney Decl., ¶ 25.  In fact, neither Sweeney nor Avant Garde has asserted any affirmative claims in the NY Action, and **the Young Money Entities are not even parties in the NY Action**.  Sweeney Decl., ¶ 24.

Accordingly, the claims, parties, and issues in this case are clearly not the same as those in the NY Action, and any resolution of the NY Action will not resolve all issues before this Court. Consequently, all of the same facts play into the sixth factor, and demonstrate that "the state court proceedings can [not] adequately protect the rights of the federal litigants" in this case.

As conceded by Defendants, in this case the first factor "is irrelevant ... because neither action is proceeding *in rem*." (Motion, p. 16:16-17). In regards to the second factor, Defendants assert that "this action will concern Plaintiffs' deep connections to New York and whether he engaged in the unauthorized practice of law while residing in New York, [and that] the witnesses needed to testify about Sweeney's time in New York will be found in the New York area." (Motion, at 16:19-25). Defendants conveniently ignore the fact that the court in the NY Action already ruled that "*[t]he Complaint [in the NY Action] alleges neither that Carter requested advice, nor that Sweeney offered advice about, any matter of New York law.*" (See Exh. "F," p. 2, to Sims Dec). Defendants also ignore the fact that no party to this action or the NY Action has a direct connection to New York. Sweeney is a California resident, Avant Garde is a California corporation (Sweeney Decl., ¶ 23), Lil Wayne claims that he is a resident of Florida, and that all of the Young Money Entities' activities are coordinated by him in Florida (Carter Decl., ¶¶ 16 and 26). Thus, the Central District is the more logical and convenient forum.

Regarding the third factor, "[t]he mere possibility of piecemeal litigation does not constitute an exceptional circumstance. [citation]. Instead, the case must raise a 'special concern about piecemeal litigation,' ... which can be remedied by staying or dismissing the federal proceeding." R.R. St. & Co., supra, 656 F.3d at 979; quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 20-21 (1983).

As previously discussed, the NY Action does not involve a single affirmative claim by Sweeney or Avant Garde, and Lil Wayne's claims therein do not in any way address the fees owed to Plaintiffs for their management services that were provided to Lil Wayne and all of the Young Money Entities. To the extent that both cases relate to the

professional relationship between Plaintiffs and Lil Wayne, such circumstances do not demonstrate any more than "the mere possibility" of overlapping issues, which "does not constitute an exceptional circumstance."

Regarding the fourth "order of jurisdiction" factor, "[t]he Supreme Court has instructed that instead of taking a mechanical approach, courts must apply this factor 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" R.R. St. & Co., supra, 656 F.3d at 979; quoting Moses H. Cone, 460 U.S. at 21 (*giving little weight to the dates of filing when the same relative progress had been made in the state and federal proceedings*). Accordingly, although the dates of filing, by itself, would seem to weigh in the favor of the NY Action, the fact is that both cases have only proceeded to the motion to dismiss stage, with the NY Action only recently issuing a ruling granting Sweeney and Avant Garde's motion to dismiss, after delaying for well over a year. (See Exh. "F," to Sims Decl.). Thus, the relative progress that has been made in both proceedings is nearly the same, and given the lengthy delays that have already marred the NY Action, it is likely that this case, which appears to be moving in a more timely manner, will soon overtake the NY Action.

Regarding the fifth factor, of "whether federal law or state law provides the rule of decision on the merits," although this factor may be neutral, given that there are no federal claims alleged in either action, as Defendants concede (Motion, p. 18:6-8) "routine" state law issues do not constitute the rare circumstances necessary to dismiss or stay under the Colorado River doctrine. Morrissey v. City of L.A., 2020 U.S. Dist. LEXIS 191327, *13 (C.D. Cal. 2020) ("For example, the presence of issues relating to a breach of contract claim is generally not valid justification for granting a stay under the *Colorado River* doctrine."); citing Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 915 (9th Cir. 1993). Thus, given that almost all of the claims in this case are contractual in nature, this factor does not weigh in favor of dismissal or stay.

Finally, regarding the seventh factor, "the desire to avoid forum shopping," there is nothing to support the assertion by Defendants (who removed this case from state court)

that Plaintiffs engaged in forum shopping when they filed this case.  Once again, Defendants ignore the fact that no party in this action or the NY Action has a direct connection to New York, and that Plaintiffs filed their lawsuit in the proper forum.

Accordingly, with all of the factors considered, there is nothing about this case that would constitute "exceptional circumstances," with "the clearest of justifications," to support Defendants' request for a dismissal or a stay under the Colorado River doctrine; nor is there anything to support Defendants' request that this Court exercise its inherent power to stay this case.  Defendants have already stated that the recent dismissal of the majority of Lil Wayne's claims in the NY Action "will be the subject of a motion to re-argue and, if necessary, a prompt appeal by Carter." (Motion, p. 4:15-16).  Given Defendants clear intention to appeal, Plaintiffs should not be forced to wait for years, while Lil Wayne meanders through the slow and lengthy appellate process in New York, to have these separate claims resolved, which is not fair or equitable to anyone.

### D. DEFENDANTS' ALTERNATIVE MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD ALSO BE DENIED.

#### 1. Plaintiffs' Claim For Breach Of Oral Contract Is Not Barred By The Statute of Frauds.

Defendants' sole argument against Plaintiffs' breach of oral contract claim is that it is purportedly barred by the statute of frauds.  (Motion, at 21:1-2). However, an oral contract is unenforceable under California law *only* if it expressly precludes performance within one year or by its terms cannot possibly be performed within one year.  See White Lighting Co. v. Wolfson, 68 Cal. 2d 336, 343, 438 P.2d 345, 66 Cal.Rptr. 697 (Cal. 1968); Robards v. Gaylord Bros., Inc., 854 F.2d 1152 (9th Cir. 1988).  Moreover, Defendants ignore the fact that, in California, the statute of frauds has been interpreted to exempt contracts that are terminable within one year by either party.

As set forth in Plumlee v. Poag, 150 Cal.App. 3d 541, 550 (1984): "although the majority of jurisdictions have held that a party's option to put an end to a contract within a year does not take it out of the operation of the statute of frauds, on the grounds that to

be discharged from liability under a contract is not to 'perform' it, *the California rule is to the contrary: A contract . . . may be taken out of [the statute of fraud's] operation by the fact that a party (or at least a defendant) may rightfully terminate it within a year*."

Because oral contracts – and particularly *employment* contracts – that may be terminated at will by either party can, by their terms, be "performed" within one year, they are enforceable.  White Lighting, supra, 68 Cal. 2d at 344 ("the statute of frauds does not apply to employment contracts for an indefinite period merely because the contract provides that payment will be forthcoming on termination of the employment contract. . .  Nor does the statute of frauds apply to employment contracts because the compensation for the services is to be measured by their value to the employer over a period of more than one year."; see also Jenkins v. Family Health Program, 214 Cal.App. 3d 440, 445-46 (Cal. Dist. Ct. App. 1989) [if plaintiff employee can terminate at will and defendant employer can terminate for cause, the contract is enforceable].

In fact, the Ninth Circuit, in Rosenthal v. Fonda, 862 F.2d 1398 (9th Cir. 1988), has concluded that an oral management agreement is not barred by the Statute of Frauds. In that case, the plaintiff alleged that actress Jane Fonda had entered into an oral contract with him for a variety of services in exchange for a percentage of income derived from projects that were initiated during his tenure.  Although the court ultimately applied New York law, it concluded that, because the oral contract was terminable at the will of either party, the contract would fall outside California's statute of frauds as a contract capable of being performed within one year.  Id. at 1401; see also, Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc., 578 F.Supp. 2d 1242, 1248 (E.D. Cal. 2008) ["defendant contends that the alleged exclusive broker agreement would be barred by the statute of frauds because plaintiffs seek damages in the form of commissions for the life of the workers compensation program, and as such, the alleged agreement cannot be performed within one year.  Courts have found that contracts providing for the payment of commissions after one year does not violate the statute of frauds."].

In the present case, although the contractual relationship lasted for nearly 14 years,

due in no small part because of the outstanding services provided by Plaintiffs, it is undisputed that Lil Wayne could have discharged Plaintiffs at any time after they began performing services for him and his entities, and in fact did so.  As such, this contract clearly was capable of being performed within one year.  In fact, in his declaration, Lil Wayne specifically states "I fired Sweeney as my lawyer in September 2018, *as was my right under California law*" (See Carter Decl., ¶ 15).

Moreover, that the oral contract in this case calls for the payment of commissions after one year does not cause it to be invalidated by the statute of frauds.  <u>Rosenthal</u>, <u>supra</u>, 862 F.2d at 1401 ["*California's statute of frauds does not invalidate oral employment contracts that call for the payment of commissions after one year or upon termination of the employment relationship*."]; citing <u>White Lighting, supra</u>, 66 Cal.Rptr, at 701-02.  Thus, contrary to Defendants' assertion, Plaintiffs' oral contract with Defendants is not be barred under California's statute of frauds.

### 2. <u>Plaintiffs' Claims For Unjust Enrichment And Quantum Meruit Are Not Barred By The Statute of Frauds Or Time Barred, And Plaintiffs' Claim For An Accounting Is Proper</u>.

Defendants similarly assert that "[b]ecause the Statute of Frauds bars Plaintiffs' contract claim, the unjust enrichment and *quantum meruit* claims must be dismissed." (Motion, at 21:14-15).  However, as detailed above, and for all of the same reasons set forth therein, Plaintiffs oral contract with Defendants would not be barred under California's statute of frauds, and thus Defendants' same argument as to Plaintiffs' claims for unjust enrichment and quantum meruit similarly fails.

Defendants also assert that Plaintiffs' claims for unjust enrichment and quantum meruit are "time-barred under Cal. Civ. Proc. Code § 339(1)" applying the two-year period.  (Motion, p. 22:7-8). Defendants conveniently attempt to measure the two-year statute of limitations period starting when "Sweeney was terminated in September 2018." However, the crux of these claims are Defendants' continued failure and refusal "to pay to Plaintiffs any of the amounts owed to them, including amounts owed by them in

connection with back commissions, the settlements of the Cash Money Action and the Universal/ SoundExchange Action, and the sale of the Young Money Masters" (Complaint, ¶ 49), and <u>not</u> the termination of Plaintiffs' services.

The Complaint also clearly alleges that it was not until "in or about June of 2020, [that] Lil Wayne was able to sell the Young Money Masters to Universal Music Group for in excess of $100 Million." (Complaint, ¶ 44). Accordingly, it was not clear until sometime after June of 2020, when Defendants failed and refused to pay Plaintiffs any of the amounts owed to them in connection with the sale of the Young Money Masters, that Plaintiffs' claims materialized. More importantly, Defendants ignore the fact that on or about April 6, 2020, the California State Judicial Council adopted Emergency Rule 9 in response to the Covid-19 pandemic, which was subsequently amended, and tolled the statute of limitations for all civil causes of action, which, even if measured by the date of Plaintiffs' termination (as Defendants suggest), would make Plaintiffs' claims timely filed. Thus, Plaintiffs filing of the Complaint in December 2020, was well within the two-year statute of limitations period.

Finally, Defendants' sole argument against the accounting claim is that "[b]ecause Plaintiffs have no plausible claim to pursue against Defendants, Plaintiffs have no right to an accounting." (Motion, at 25:16-17). However, as detailed above, Plaintiffs' contractual and equitable claims are not barred by the statute of frauds or time barred.

### 3. <u>Plaintiffs' Fraudulent Inducement Claim Is Sufficiently Pled</u>.

Defendants assert that Plaintiffs are re-labeling their contract claim a *fraud* claim. Defendants cite <u>Richardson v. Reliance Nat'l Indem. Co.</u>, 2000 U.S. Dist. LEXIS 2838, *11 to support their assertion that "mere failure to perform on a contract does not constitute fraud." However, they conveniently omit the second part of the quote, which states that "a promise made *without the intention to perform* can be actionable fraud." <u>Id.</u>, citing <u>Locke v. Warner Bros</u>., Inc., 57 Cal. App. 4th 354, 367 (1997). "California law defines fraud as 'the making of a promise done without an intention of performing the obligation.'" <u>California Pac. Medical Ctr. v. Copy-Mor, Inc.</u>, 1996 U.S. App. LEXIS

17777, *7 (9th Cir. 1996).

Defendants also assert that Plaintiffs have not alleged their fraud claim with sufficient particularity.  Although F.R.C.P. 9(b) "requires that the facts constituting the fraud be pled with specificity," it "does not require nor make legitimate the pleading of detailed evidentiary matter."  Cholakyan v. Mercedes-Benz USA, LLC, 2011 WL 2682975, *9 (C.D. Cal. 2011); citing Moore v. Kayport Package Exp., Inc., 885 F. 2d 531, 540 (9th Cir. 1989).  "All that is necessary is 'identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'"  Cholakyan, supra, 2011 WL at *9; citing Walling v. Beverly Enters, 476 F. 2d 393, 397 (9th Cir. 1973); See also, Kearns v. Ford Motor Company, 567 F. 3d 1120, 1124 (9th Cir. 2009) ["Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"].

Plaintiffs have sufficiently pled all of the necessary elements with particularity to set forth a claim for fraudulent inducement.  Defendants conveniently ignore Plaintiffs' specific allegations that "[i]n or about the end of 2013 or beginning of 2014, Plaintiffs met with Lil Wayne and Bryant at 2:00 a.m., at the Mardarin Hotel, in Atlanta, Georgia" (Complaint, ¶ 26), and that in this meeting, "Lil Wayne made it clear, and specifically represented to Sweeney, that Plaintiffs would receive 10% of the settlement proceeds from the litigation, in perpetuity, as well as 10% of all proceeds from the sale of any master recordings owned by the Young Money Label ("Young Money Masters") (in addition to the 10% of other earnings that Plaintiffs were supposed to receive at that point), in exchange for Plaintiffs' continued management of him."  Complaint, ¶ 28.  The Complaint also properly alleges that Defendants did not intend to perform those promises at the time that such representations were made.  Complaint, ¶¶ 54-55.  Accordingly, contrary to Defendants' assertions, Plaintiffs' allegations do provide the "time, place, and specific content of the false representations" as well as the "identities of the parties to the misrepresentations," and is "specific enough to give defendants notice of the particular

misconduct."

Finally, Defendants assert that Plaintiffs "cannot plead justifiable reliance as a matter of law because Sweeney cannot *falsely* recharacterize his legal services to Carter as personal management services." (Motion, at 24:5-6). However, there are no allegations or claims in Plaintiffs' Complaint regarding legal services, or the recovery of legal fees. Defendants' assertion of false allegations is completely improper, and attempts to present premature evidentiary issues, which are not to be resolved on a motion for judgment on the pleadings, which is simply meant to test the legal sufficiency of the pleadings. See Hal Roach Studios, supra, 896 F.2d at 1550 ["[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."]; citing Fed. Rules Civ. Proc. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982). Plaintiffs have properly pled their claim for fraudulent inducement. However, if the Court should disagree, for any reason, leave should be granted to Plaintiffs to amend any such deficiencies.

### III.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion to Dismiss, or Alternatively, Motion for Judgment on the Pleadings, in its entirety.


Dated: May 17, 2021

Edwin F. McPherson
Pierre B. Pine
**McPHERSON LLP**


By:  ___*/s/ Edwin F. McPherson*___
     EDWIN F. McPHERSON
     Attorneys for Plaintiffs
     RONALD E. SWEENEY
     and AVANT GARDE
     MANAGEMENT, INC.

Edwin F. McPherson – State Bar No. 106084
  emcpherson@mcpherson-llp.com
Pierre B. Pine – State Bar No. 211299
  ppine@mcpherson-llp.com
**McPHERSON LLP**
1801 Century Park East
24th Floor
Los Angeles, CA 90067
Tel:(310)553-8833
Fax:(310)553-9233

Attorneys for Plaintiffs RONALD E. SWEENEY
  and AVANT GARDE MANAGEMENT, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation, | CASE NO. 2:21-cv-01689-ODW-JC |
| Plaintiffs, | **DECLARATION OF RONALD E. SWEENEY IN OPPOSITION TO MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY (2), MOTION TO DISMISS OR STAY THIS ACTION UNDER THE COLORADO RIVER DOCTRINE, OR ALTERNATIVELY (3), MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | |
| | Date:  June 7, 2021 |
| | Time:  1:30 p.m. |
| | Ctrm:  5D |
| Defendants. | Hon. Otis D. Wright II |

## DECLARATION OF RONALD E. SWEENEY

I, RONALD E. SWEENEY, declare as follows:

1.      I am one of the plaintiffs in this action.  I am over the age of 18, and have personal knowledge of the facts set forth herein.  If called upon to testify thereto, could and would competently do so.

2.      This declaration is submitted in support of Plaintiffs' Opposition to the Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, or Alternatively, the Motion to Dismiss Or Stay This Action Under the Colorado River Doctrine, or Alternatively, the Motion for Judgment on the Pleadings of Defendants Dwayne Michael Carter Jr. p/k/a Lil Wayne ("Lil Wayne"), Young Money Entertainment, LLC ("YME"), Young Money Publishing, Inc. ("YMP"), Young Money Records, Inc. ("YMR"), Young Money Ventures, LLC ("YMV"), and Young Money Touring, Inc. ("YMT") (hereinafter collectively "Young Money Entities" or collectively with "Lil Wayne," "Defendants").

3.      I have reviewed Lil Wayne's sworn declaration in support of his Motion to Dismiss, and identified numerous false statements or misstatements of fact therein.  Due to the fact that many of his false statements are irrelevant to the substance of his Motion, I will attempt to limit my Declaration to responding to and refuting the false and incorrect statements that are relevant to Plaintiffs' Opposition.

4.      I am a personal manager, through my entity, Plaintiff Avant Garde Management, Inc. ("Avant Garde").  Avant Garde is, among other things, a personal management company dedicated to the management of the careers of recording artists and performers.  Avant Garde is a single member corporation that I founded, and first registered with the State of California on or about October 15, 1985.  True and correct copies of the California Secretary of State Business Search results for Avant Garde, showing the original Registration Date of "10/15/1985," and the most recent Statement of Information filed on January 8, 2020, are collectively attached hereto as Exhibit "A," and are incorporated herein by this reference as though set forth in full.  Accordingly, Avant Garde is a corporation, organized and existing under the laws of the State of California,

and is licensed to do, and has been doing, business in the State of California, County of Los Angeles.

5.     I am also a businessman, strategist, former record executive at Sony Music Entertainment, and a California licensed attorney.  I am a veteran in the music business, and, in addition to representing Lil Wayne, I have previously represented and/or managed such well known artists and labels as Eazy E and Ruthless Records, Irv Gotti and Murder Inc., and Sean "Puffy" Combs and Bad Boy Records, as well as James Brown, Public Enemy, DMX, JaRule, Colour Me Badd, Morris Day, Klymaxx, Clarence Avant, and many others.

6.     Lil Wayne is one of the most prominent rappers and recording artists in the world today.  He has released a total of twelve studio albums and I am informed and believe that he has sold over 120 million records worldwide, including more than 20 million albums and 70 million digital tracks in the United States, making him one of the world's best selling musical artists.

7.     The Young Money Entities were all created/activated at my direction to handle a different aspect of Lil Wayne's business.  YME is Lil Wayne's main company, joint venture partner of Cash Money, and record label, which he utilizes to enter into various agreements, including his recording agreement with Universal Music Group, and, if necessary, to file lawsuits related to Lil Wayne's interests, including, but not limited to the Cash Money Action and Universal/SoundExchange Action discussed below.  YMR is Lil Wayne's record distribution company and which distributes his records as an artist.  YMP was set up to handle Lil Wayne's music publishing deals and rights.  YMT was created to handle and enter into contracts related to Lil Wayne's touring, and YMV was created and set up to enter into various investment deals on Lil Wayne's behalf.

8.     In or about 2005, I was approached by Lil Wayne's then manager, Melissa Phillian, and first met with her and Lil Wayne at the W Hotel, located in Westwood, California, regarding helping Lil Wayne with a terrible contractual arrangement that he had with Cash Money Records ("Cash Money").  I was retained by Lil Wayne at that

1  time, and was extremely successful in this endeavor, completely renegotiating Lil

2  Wayne's deal, and securing for him a new recording agreement, as well as the return of

3  his publishing rights, merchandising rights, and touring rights.  It was after this

4  successful first representation by me that Lil Wayne thereafter orally agreed to hire me.

5          9.      I was initially handling and managing multiple aspects of Lil Wayne's

6  personal day-to-day business affairs.  However, in or about 2008, after the

7  creation/activation of Lil Wayne's own record label, Young Money Entertainment

8  (hereinafter the "Young Money Label"), my duties expanded greatly, and as the only

9  person working for Lil Wayne with experience running a record label, I became the

10  manager for YME, and subsequently I became the manager of Lil Wayne's other Young

11  Money Entities.  I agreed to perform a number of functions across the managerial,

12  strategic, and business spectrum for Lil Wayne and his entities, in return for 10% of

13  Defendants' gross compensation from all entertainment activities (hereinafter the

14  "Agreement"), which was my customary commission for representing high profile artists.

15          10.     In 2014, Lil Wayne was forced to sue his then record label, Cash Money,

16  which turned into a massive legal dispute (hereinafter the "Cash Money Action"),

17  involving unpaid revenues that were owed to YME for its share of profits from the world-

18  renowned recording artists, Drake and Nikki Minaj.  Following Lil Wayne's failure to

19  pay litigation counsel that I secured to handle the Cash Money Action on an hourly basis,

20  against my advice, he instructed me to find counsel that would handle the Cash Money

21  Action on a contingency fee basis.

22          11.     In that regard, I found and secured a prominent and highly capable law firm,

23  and persuaded them to agree to handle the cases on Lil Wayne's behalf for well below the

24  standard contingency fee rate of 33% - 40%.

25          12.     In 2016, that same law firm's representation of Lil Wayne in the Cash

26  Money Action expanded to a separate lawsuit against Universal Music Group and

27  SoundExchange (hereinafter the "Universal/SoundExchange Action"), involving unpaid

28  royalties that were owed to YME.  The Universal/SoundExchange Action was filed on

behalf of Lil Wayne and Young Money Entertainment, LLC, on March 28, 2016, in Los Angeles, California, in the United States District Court, Central District of California, Western Division (Case No. 2:16-cv-02096). A true and correct copy of the Complaint filed in the Universal/SoundExchange Action in Los Angeles, California, is attached hereto as Exhibit "B," and is incorporated herein by this reference as though set forth in full. The UMG/SoundExchange Action, and settlement thereof, is directly related to this lawsuit because Lil Wayne and YME agreed to pay a percentage of the settlement proceeds from the litigation, in perpetuity to Plaintiffs, but after that lawsuit was settled (along with the Cash Money Action), only a single payment was made in connection therewith (along with 2-3 payments from the Cash Money Action settlement), and the failure to make additional payments to Plaintiffs directly led to the filing of this lawsuit.

13. Lil Wayne's statements in his Motion and Declaration that neither I "nor Avant Garde ever managed [his] career"[1] is absolutely false. Through Avant Garde, I managed Lil Wayne and all of his entities, in addition to which I managed the Cash Money Action and the Universal/Sound Exchange Action in Los Angeles. This included, among other things, helping Lil Wayne manage his various claims from a business perspective, including securing and managing litigation counsel. In fact, I managed all of the litigation so comprehensively, including, but not limited to, the Universal/SoundExchange Action, that Lil Wayne, as was typical of his attitude/dealings with lawsuits, never once met, spoke to, or otherwise communicated with, any of his own litigation attorneys, who took direction from me. Additionally, during my 14 year tenure representing Defendants, all of Defendants' commission payments were paid to Avant Garde.

14. Furthermore, in addition to the numerous examples of managerial duties performed by myself and Avant Garde, set forth in detail in the Complaint, on March 20, 2018, as part of my managerial duties, and at Lil Wayne's instruction, I sent an e-mail to

---

[1] See Declaration of Dwayne Michael Carter, Jr. ("Wayne Dec."), ¶ 5, p. 2:20-21.

1   Cortez Bryant ("Bryant"), who was Lil Wayne's childhood friend, who had been acting

2   as Lil Wayne's day to day manager, enclosing a letter signed by Lil Wayne terminating

3   his management services.  A true and correct copy of this March 20, 2018 e-mail to

4   Bryant is attached hereto as Exhibit "C,"  and is incorporated herein by this reference as

5   though set forth in full.  Thus, Lil Wayne's statement in his declaration that Bryant

6   served as his personal manager "until the spring of 2019" is false.[2]

7       15.    Additionally, a true and correct copy of a status report memo prepared by

8   me, and e-mailed to Lil Wayne, on August 28, 2018, is attached hereto as Exhibit "D,"

9   and is incorporated herein by this reference as though set forth in full.  This status report

10   memo clearly demonstrates that my services to Lil Wayne were very broad and

11   managerial in nature, and that, after the termination of Cortez, my duties expanded even

12   further to include handling and dealing with all of the day-to-day aspects of Lil Wayne's

13   life, including, but not limited to: financial matters, negotiating a deal for a documentary

14   series with YouTube (Google), new record releases, marketing plans, touring, radio

15   interviews, planning Lil Wayne's birthday party and a release party for Lil Wayne's new

16   album, finalizing an immigration application, finding housing (including finding Lil

17   Wayne "a suitable Condo **in Los Angeles"**), and managing ongoing litigation cases.

18       16.    Lil Wayne claims in his Declaration that he "always believed [I] was a New

19   York lawyer, particularly because [I] told [him] [I] lived, and was practicing law, in New

20   York City during the period [I] was [his] lawyer."[3]  This statement is simply not true.

21       17.    Throughout my nearly 14-year tenure with Lil Wayne, I was at all times a

22   California resident, living primarily in Malibu, California.  Although I travel quite a bit

23   for my business, I would estimate that approximately 75% of my time spent managing

24   Defendants was conducted from California (with the exception of when I briefly moved

25   to Florida in 2018, and remained there until the latter part of 2019).  I would generally e-

26

27       [2]See Wayne Dec., ¶ 6, p. 3:2-3.

28       [3]See Wayne Dec., ¶ 7, p. 3:8-10.

mail, speak with, and text with Bryant (acting on Lil Wayne's behalf) multiple times a day, and the majority of the time when I communicated directly with Lil Wayne (or indirectly through Bryant), I was communicating with him from California.

18.     Furthermore, I made Lil Wayne well aware of the fact that I lived in Malibu, California, and that I am a California attorney.  Notably, although Lil Wayne claims to not recall "ever meeting [me] in California to discuss [my] representation"[4] of him, as previously mentioned, our first meeting in or about 2005, took place at the W Hotel in Westwood, California.  Moreover, I would frequently meet with Lil Wayne whenever he was in Los Angeles.  Conversely, the only times I ever met with Lil Wayne in New York were in or about 2010 and 2011, when he was serving a short prison sentence at Riker's Island for criminal possession of a weapon, and I was forced to travel there several times to meet with him, as well as several times to attend his criminal court proceedings.  Lil Wayne never stepped foot in my New York offices during my representation of him.

19.     During my time managing Lil Wayne and his entities, he was involved in well over 30 civil lawsuits and various criminal matters all over the country.  As part of my management duties, I would regularly have to find and retain legal counsel on Lil Wayne's behalf in those various forum states.  Accordingly, I constantly reminded Lil Wayne that I was only authorized to practice law in California, and that, because I am not a ligation or criminal attorney, he would need to hire legal counsel to represent him in those various matters, whom I would then manage as part of my overall management of his affairs.  In fact, between 2009 and 2016, Lil Wayne and/or one or more of the Young Money Entities, initiated fifteen (15) lawsuits, actions, and/or appeals in the State of California, including nine (9) federal court cases.  A true and correct copy of a list of these 15 cases initiated in California by Lil Wayne and/or one or more of the Young Money Entities, is attached hereto as Exhibit "E," and is incorporated by reference as though set forth in full.  I was involved in managing the litigation counsel on Lil Wayne's

---

[4] See Wayne Dec., ¶ 17, p. 4:22-23.

behalf on 8 of these 15 cases.

20.     Although for a period of time during my representation of Lil Wayne, my law firm did maintain an office in New York, which also housed Avant Garde (its name was also on the door), and was staffed and operated by licensed New York attorneys, and I did (and continue to) regularly travel back and forth between Los Angeles and New York, I never told Lil Wayne that I was licensed to practice law in the State of New York. In fact, all of my e-mails that included my New York office address, specifically state underneath my name and address "*Licensed in California."  See Exhs "C" and "D," attached hereto.

21.     The only time that I ever lived in New York on a full time basis was between 1995 and 1999 (well before my involvement with Defendants), when I was working as an executive at Sony Music Entertainment.  However, even then, I continued to keep my home in California.  Although I did briefly move to Florida in 2018, and remained there until the latter part of 2019, Lil Wayne was also aware of this move because I did so when I officially assumed the primary managerial duties for him and his entities.  However, even while living briefly in Florida, I continued to maintain my home in Malibu, California, and I have permanently resided there again since I returned in 2019.

22.     I have never voted in New York.  I have filed and paid taxes in the State of California for the last 20 years, with the sole exception of when I was living in Florida (2018-2019), during which I filed taxes for only part of 2018 in California.

23.     Accordingly, the New York lawsuit that Lil Wayne filed against Avant Garde and me ("NY Action"), simply never should have been filed in New York.  Lil Wayne maintains that he is a Florida resident, and at all relevant times, I am and have been a California resident, and Avant Garde is, and has always been a California corporation.  Further, all of the witnesses that I intend to call with knowledge of my management and handling of all of the day-to-day business for Defendants, including, but not limited to the litigation attorneys who handled the Cash Money Action and Universal/SoundExchange Action, Lil Wayne's former business manager, Jeffrey Turner,

various employees at Universal Music, etc., are all located in Los Angeles.  Furthermore, Bryant and Maine, who besides Lil Wayne, are the only other potential witnesses, and neither of them reside in New York either.

24.     Finally, as detailed in the Order issued by the Supreme Court of the State of New York on April 16, 2021, which is attached to Defendants' Motion[5], my motion to dismiss the NY Action was already granted as to the first nine out of ten causes of action, as well as to subsections a, b, and c of the tenth cause of action.  There only remains a single subsection of the tenth cause of action to be resolved, for which the parties have been ordered to submit additional briefing.  Moreover, regardless of whether Lil Wayne appeals the Order granting my motion to dismiss in order to prolong the NY Action, the claims asserted in this lawsuit will not be resolved in the NY Action, if Defendants are successful in having this action dismissed or stayed, as neither Avant Garde nor I have asserted any affirmative claims for relief in the NY Action.

25.     Furthermore, the primary claims brought by Defendants in the NY Action are for alleged legal malpractice and that I allegedly overcharged Lil Wayne for legal services.  There is absolutely nothing in any of the claims currently pending in the NY Action, which address the fees owed to me for my management services provided to Lil Wayne and all of his Young Money entities.  In fact, the Young Money entities are not even parties to the NY Action.  Accordingly, the claims, parties, and issues in this case are not the same as those in the NY Action.  Moreover, given Defendants clear intention to appeal the recent decision in the NY Action, I (and Avant Garde) should not be forced to potentially wait (possibly years) while Lil Wayne meanders through the slow and lengthy appellate process, to have these separate claims resolved.

26.     Conversely, in regards to this lawsuit, Lil Wayne has artfully attempted to downplay and omit his substantial and continuous activities in California.  While Lil Wayne admits in his declaration that, at least since "September 2020 [prior to the filing of

---

[5]See Exh. "F," to Declaration of Tami Kameda Sims.

this lawsuit] and through the present, [he has] stayed, with multiple interruptions, in short-term rental properties in California for business and personal reasons,"[6] and that he just "purchased a [$15.4 Million] property in Hidden Hills, California,"[7] he claims that he "spent the majority of 2020 in Florida."[8]  However, I am informed and believe that Lil Wayne spent the bulk of 2020 living in a rented Hollywood Hills mansion with his now ex-girlfriend, fashion model Denise Bidot.  Regardless, by his own admission of having stayed in "short-term rental properties in California," it can be concluded that Lil Wayne has entered into multiple contractual lease agreements in the State of California, presumably with residents of California.

27.     Additionally, in regards to the Cash Money Action and Universal/SoundExchange Action, which was filed by Lil Wayne and YME in the Central District of California; on March 30, 2018, Lil Wayne and YME entered into a confidential settlement agreement in connection therewith, with Cash Money and Universal Music Group ("UMG"), which maintains its entity address and principal place of business at 2220 Colorado Ave, Santa Monica, CA 90404.  Thereafter, in or about May-June of 2018, Lil Wayne and YME entered into a recording agreement with UMG.

28.     Furthermore, since approximately 2005, Lil Wayne and YMP have maintained publishing agreements with Warner Chappell Music, Inc., which maintains its entity address and principal office at 777 S. Santa Fe Ave, Los Angeles, CA 90021.

29.     Further, I am informed and believe that Lil Wayne and YMT have a touring agreement with Live Nation Entertainment, which maintains its entity address and principal office at 9348 Civic Center Drive, Beverly Hills, CA 90210. Moreover, YMT lists its own current mailing address and current principal place of business as 16000 Ventura Blvd., Ste 600, Encino, CA 91436, on its 2021 Florida Profit Corporation

---

[6] See Wayne Dec., ¶ 21, p. 5:9-11.

[7] See Wayne Dec., ¶ 24, p. 6:2.

[8] See Wayne Dec., ¶ 20, p. 5:8.

Annual Report. A true and correct copy of YMT's 2021 Florida Profit Corporation Annual Report, is attached hereto as Exhibit "F," and is incorporated herein by this reference as though set forth in full.

30. In addition, prior to the pandemic, Lil Wayne was touring regularly, including in California, and I am informed that, in 2019, he performed at: North Island Credit Union Amphitheater in Chula Vista, CA on August 7, 2019; The Forum in Inglewood, CA on August 8, 2019; Outside Lands Music & Arts Festival in San Francisco, CA on August 9, 2019; and FivePoint Amphitheater in Irvine, CA on August 27, 2019. I am also informed that, in or about February of 2020, Lil Wayne performed and participated on Season 3 of the musical television game show, "The Masked Singer," no doubt pursuant to an agreement entered into with the producer, Fox Alternative Entertainment, which maintains its entity address at 10201 West Pico Blvd., Los Angeles, California, 90035.

31. Additionally, from approximately 2012 to October, 2018, the business manager for Lil Wayne and the Young Money Entities was Jeffrey Turner, CPA, of Provident Financial Management, whose offices are located at 3130 Wilshire Blvd, Suite 600, Santa Monica, CA 90403, and I am informed that Lil Wayne's current business manager is also located in Los Angeles, California. A true and correct copy of a wire transfer sent on January 21, 2014, on behalf of YME by its business manager, Provident Financial Management, located at Santa Monica, CA 90405-6216, to Avant Garde, is attached hereto as Exhibit "G," and is incorporated herein by reference as though set forth in full. Further, a true and correct copy of a redacted W-9 taxpayer form for YMV, showing its address as "c/o Provident Financial Management, P.O. Box 4084, Santa Monica, CA 90411," is attached hereto as Exhibit "H," and is incorporated herein by reference as though set forth in full.

32. Furthermore, since approximately 2012, Lil Wayne has maintained his

///

///

Declaration of Ronald E. Sweeney

1 | primary personal and business bank accounts for the Young Money Entities at City
2 | National Bank, located at 400 North Roxbury Drive, Beverly Hills, CA 90210. A true
3 | and correct copy of an e-mail dated November 3, 2016, from Lil Wayne's then business
4 | manager to me, enclosing wiring instructions for YMV, located at P.O. Box 4084 Santa
5 | Monica, CA 90411, and its bank, City National Bank, located at 400 North Roxbury
6 | Drive, Beverly Hills, CA 90210, is attached hereto as Exhibit "I," and is incorporated
7 | herein by reference as though set forth in full. Further, a true and correct copy of an e-
8 | mail dated September 19, 2017, from Lil Wayne's then business manager and copied to
9 | me, enclosing wiring instructions for YME, located at P.O. Box 4084 Santa Monica, CA
10 | 90411, and its bank, City National Bank, located at 400 North Roxbury Drive, Beverly
11 | Hills, CA 90210, is attached hereto as Exhibit "J," and is incorporated herein by reference
12 | as though set forth in full.

13 |     33.    Further, I am informed that from in or about 2018 until approximately April
14 | 2021, Lil Wayne's contracted booking agency was Creative Artists Agency, which
15 | maintains its entity address, agent for service of process, and principal office at 2000 Ave
16 | of the Stars, Los Angeles, CA 90067, and I am informed that Lil Wayne's current
17 | booking agent is United Talent Agency, which maintains its entity address and principal
18 | office at 9336 Civic Center Drive, Beverly Hills, CA 90210.

19 |     I declare under penalty of perjury, under the laws of the United States of America,
20 | that the foregoing is true and correct.

21 |     Executed this 17 day of May, 2021, at Los Angeles, California.

22 |
23 |                     RONALD E. SWEENEY
24 |
25 |
26 |
27 |
28 |

– 12 –

Declaration of Ronald E. Sweeney

# EXHIBIT "A"



**Dr. Shirley N. Weber**
**California Secretary of State**

# 🔍 Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Sunday, May 16, 2021. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C1354259   AVANT GARDE MANAGEMENT, INC.

| | |
|---|---|
| **Registration Date:** | 10/15/1985 |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Type:** | DOMESTIC STOCK |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | RONALD SWEENEY |
| | 22809 PACIFIC COAST HIGHWAY |
| | MALIBU CA 90265 |
| **Entity Address:** | 22809 PACIFIC COAST HIGHWAY |
| | MALIBU CA 90265 |
| **Entity Mailing Address:** | 6320 CANOGA AVENUE |
| | WOODLAND HILLS CA 91367 |

🛒 **Certificate of Status**

A Statement of Information is due EVERY year beginning five months before and through the end of October.

| Document Type ⬍ | File Date ⬍ | PDF |
|---|---|---|
| SI-COMPLETE | 01/08/2020 | |
| SI-COMPLETE | 07/15/2013 | |
| REGISTRATION | 10/15/1985 | |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**   **New Search**   **Back to Search Results**

# EXH. "A"

-14-

| State of California | **S** |
|---|---|

# State of California
## Secretary of State

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

## GC01703

# FILED

In the office of the Secretary of State
of the State of California

**JAN-08 2020**

1. **CORPORATE NAME**

AVANT GARDE MANAGEMENT, INC.

2. **CALIFORNIA CORPORATE NUMBER**

C1354259

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | | |
| 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |
| JEFFREY TURNER   6320 CANOGA AVENUE, WOODLAND HILLS, CA 91367 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form may not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| RONALD SWEENEY | 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | |
| 8. SECRETARY | | | | |
| RONALD SWEENEY | 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |
| RONALD SWEENEY | 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | | | | |
| RONALD SWEENEY | 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY: 0

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

RONALD SWEENEY

| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 22809 PACIFIC COAST HIGHWAY, MALIBU, CA 90265 | | | |

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

MANAGEMENT SERVICES

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 01/08/2020 | RONALD E SWEENEY | OWNER | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-200 (REV 01/2013) | **Page 1 of 1** | APPROVED BY SECRETARY OF STATE |
|---|---|---|

15

# EXHIBIT "B"

Case 2:21-cv-01689-DWWCC Document 14-1 Filed 05/07/22 Page 17 of 39 Page ID #:1137
Case 2:13-cv-02096-CC Document 1 Filed 03/20/13 Page 1 of 13 Page ID #:23
ID #:1137

1 KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
2 SETH MILLER, ESQ., STATE BAR NO. 175130
SMILLER@KHPSLAW.COM
3 1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
4 TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903
5
Attorneys for Plaintiffs YOUNG MONEY
6 ENTERTAINMENT, LLC and DWAYNE
MICHAEL CARTER, JR.
7

8                    UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

| | |
|---|---|
| 11 YOUNG MONEY<br>ENTERTAINMENT, LLC and<br>12 DWAYNE MICHAEL CARTER, JR. | CASE NO.<br>**COMPLAINT FOR:** |
| 13               Plaintiffs, | **(1) DECLARATORY RELIEF;**<br>**(2) INDUCEMENT TO BREACH** |
| 14        vs. | **CONTRACT;**<br>**(3) AIDING AND ABETTING** |
| 15 UNIVERSAL MUSIC GROUP. INC.,<br>and SOUNDEXCHANGE, INC., | **BREACH OF FIDUCIARY**<br>**DUTY;**<br>**(4) TORTIOUS INTERFERENCE** |
| 16               Defendants. | **WITH ECONOMIC**<br>**ADVANTAGE** |
| 17 | |
| 18 | **DEMAND FOR JURY TRIAL** |

19

20       Plaintiffs, YOUNG MONEY ENTERTAINMENT, LLC, ("Young Money

21 LLC"), and DWAYNE MICHAEL CARTER, Jr. ("Carter" or "Lil Wayne") (Young

22 Money LLC and Carter sometimes collectively referred to as "Plaintiffs"), for their

23 complaint against the Defendants, UNIVERSAL MUSIC GROUP, INC.

24 ("Universal") and SOUNDEXCHANGE, INC. ("SoundExchange") allege as

25 follows:

26 ///

27 ///

28 ///

**EXH. "B"**

# **INTRODUCTION**

1. Ignoring written assurances of ownership of and profits from some of the most successful recordings of the last decade, Universal has diverted tens of millions of dollars of profits owing to Lil Wayne to repay itself some of the more than One Hundred Million Dollars ($100,000,000) it advanced to Cash Money Records, Inc. ("Cash Money").

2. Lil Wayne helped discover, develop, nurture and deliver to a joint venture he formed with Cash Money prolific and successful recording artists Drake, Nicki Minaj and Tyga. For these services, Lil Wayne was to be rewarded by retaining a significant percentage of ownership of the recordings created by these talented artists along with the profits earned. With Universal's knowledge of Lil Wayne's rights to partial ownership and profits from those artists, Universal and Cash Money entered into a series of agreements which, among other things, diverted Lil Wayne's substantial profits to repay debts of Cash Money. As a result, 100% of the profits that should have been paid to Lil Wayne as a result of his ownership of Drake, Nicki Minaj and Tyga records have been seized by Universal to repay debts that were neither incurred by nor were the obligations of Lil Wayne.

# **THE PARTIES**

3. Plaintiff Carter is an internationally acclaimed, Grammy Award winning songwriter, rap artist, producer and entrepreneur. Carter has demonstrated for many years a remarkable talent for discovering and developing new recording artists. Plaintiff Carter is a citizen and resident of the State of Florida.

4. Plaintiff Young Money LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Miami, Florida.

5. Young Money LLC is the owner of the right to furnish to third parties the professional services of Carter, and also owns and controls an ownership interest in a record label joint venture of Carter with Cash Money (the joint venture is

King, Holmes, Paterno & Soriano, LLP

4612.060/1007939.3

2

-18-

1  hereafter described as "Young Money Label"), and an ownership of certain records

2  delivered by Carter to Cash Money for distribution, all more particularly described

3  below.

4      6.    Carter is the sole member of Young Money LLC. By reason of

5  Carter's Florida citizenship, Young Money LLC is a citizen of the State of Florida

6  for diversity jurisdiction purposes.

7      7.    Upon information and belief, Universal is a Delaware corporation, with

8  its principal place of business at 2220 Colorado Avenue, Santa Monica, California

9  90404, in this District. Universal is engaged in the business of recorded music,

10  music publishing and merchandising. Universal is the largest music recording

11  corporation in the world. It maintains offices in over 60 countries, operates over 20

12  record labels, and, among other activities, promotes and markets sound recordings

13  and merchandise from various artists. The acts and omissions of Universal alleged

14  herein, of interfering with Plaintiffs' rights, were committed by high-level officers

15  and employees of Universal acting on behalf of Universal in this District.

16      8.    Upon information and belief, SoundExchange is a Delaware

17  Corporation with its principal place of business at 733 10th Street NW, 10th Floor,

18  Washington, D.C. 20001. The Court has jurisdiction over SoundExchange because

19  it has done business in the Central District, and has purposefully availed itself of the

20  benefits and protections of the State of California, in this District.

21              **JURISDICTION AND VENUE**

22      9.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

23  1338(a) , and alternatively, based upon complete diversity between Plaintiffs and

24  Defendants pursuant to 28 U.S.C. § 1332, as well as supplemental jurisdiction under

25  28 U.S.C. § 1367. The amount in controversy exceeds Seventy Five Thousand

26  Dollars ($75,000), exclusive of interest and costs, and is between citizens of

27  different states. This Court also has federal question jurisdiction in the matter in that

28  the Plaintiffs seek a declaration of rights and other remedies under the Copyright

1 │ Act, 17 U.S.C. § 101 *et seq.*

2 │     10.    Venue is proper in this District under 28 U.S.C. § 1391(b)&(c) and

3 │ 1400(a) because a substantial part of the events and acts giving rise to the claim

4 │ occurred in this District, Universal's principal place of business is in this District,

5 │ both Universal and SoundExchange are corporations deemed to reside in this

6 │ District by reason of being subject to its personal jurisdiction, and the action arises

7 │ under an Act of Congress relating to copyrights.

8 │ <div align="center">**FACTUAL BACKGROUND**</div>

9 │ <u>**1998 Recording Agreement Between Carter and Cash Money**</u>

10 │     11.    In a written agreement dated November 1, 1998, (the "1998 Recording

11 │ Agreement"), Carter agreed to provide exclusive recording services to Cash Money.

12 │ Cash Money is in the business of producing and manufacturing sound recordings

13 │ containing performances of musical compositions and distributing, licensing, selling

14 │ and otherwise exploiting those sound recordings throughout the world in all

15 │ manners and media. The 1998 Recording Agreement contained, *inter alia,* various

16 │ royalty provisions and option periods to extend the term thereof.

17 │     12.    The 1998 Recording Agreement has been amended, including in a

18 │ document dated June 5, 2008 ("2008 Amendment") by which Carter was granted

19 │ joint ownership along with Cash Money (*i.e.,* 50 % each ) in the master recordings

20 │ of records delivered by Carter to Cash Money during the "fourth and fifth option

21 │ periods" under the 1998 Recording Agreement, as amended ("Option Period

22 │ Records").

23 │ <u>**2003 Young Money Label Joint Venture Agreement**</u>

24 │     13.    On or about February 20, 2003, Carter and Cash Money entered into a

25 │ written "Memorandum of Agreement" (the "2003 Label Agreement") for the

26 │ creation of the Young Money Label joint venture. The joint venture was established

27 │ for the mutual purpose of the manufacture, distribution, promotion and exploitation

28 │ of recordings containing the performances of new recording artists who Carter had

1  discovered and would be signed to the Young Money Label following approval by

2  Carter and Cash Money, the sole owners of the joint venture.

3        14.     The 2003 Label Agreement provided, *inter alia*,

4            a.     The profits of the Young Money Label would be divided 51% -

5  49% between Cash Money and Carter, and ownership of all the Young Money Label

6  property, (*e.g.*, master recordings, copyrights, intellectual property, good will)

7  similarly would be owned 51% - 49% between Cash Money and Carter,

8  respectively;

9            b.     Carter and Cash Money jointly shall be responsible for the

10  recording process for the records to be created by it and exploited – including being

11  involved in the specification of all creative and budgetary elements – and that all

12  creative decisions shall be mutually approved by both Carter and Cash Money;

13            c.     The Young Money Label would be "charged with the same net

14  distribution fee charged to Cash Money for Universal Record's distribution services

15  for Cash Money's own non-joint venture records," set out in that agreement as a

16  specified percentage of revenue; and

17            d.     The initial agreement was for a three year term.

18        15.     Cash Money also agreed in the 2008 Amendment that net profits due to

19  Carter pursuant to the 2003 Label Agreement could not be cross-collateralized

20  against any monies that were unrecouped by Cash Money under the 1998 Recording

21  Agreement.

22        16.     The 2003 Label Agreement was amended at various other times, with

23  the final February 5, 2012 amendment ("2012 Amendment") extending the term and

24  expressly providing for that term to end on June 4, 2015. The term has thus ended,

25  and Cash Money has no right to perpetuate the joint venture.

26        17.     The 2012 Amendment also acknowledges that the copyrights in respect

27  of all master recordings delivered under the 2003 Label Agreement shall be

28  registered as jointly owned by Cash Money and Young Money.

KING, HOLMES,
PATERNO &
SORIANO, LLP

**The 2009 Drake Letter Agreement**

18.     The recording artist Aubrey Drake Graham p/k/a "Drake" (hereinafter "Drake") became an artist on the Young Money Label in or around 2009.  Drake entered into an exclusive recording agreement with Aspire Music Group ("Aspire"). In turn, Aspire and Drake entered into a Memorandum of Agreement as of June 26, 2009 with Cash Money/Young Money LLC in which the parties agreed that Aspire would deliver the services of Drake as an exclusive recording artist to the Young Money Label, and that Aspire would retain one third (33-1/3 %) of the ownership of the master recordings delivered to the Young Money Label.

19.     In addition, Cash Money and Young Money LLC executed between them a Letter Agreement also dated as of June 26, 2009 (the "Drake Letter Agreement"), wherein Young Money LLC and Cash Money agreed that Young Money LLC is entitled to one third (1/3) of the ownership of solo recordings of Drake released, and that same percentage of the net profits earned in connection with those records, which would not be cross-collateralized against any advances or other payments otherwise paid or payable to Young Money LLC pursuant to the 2003 Label Agreement, as amended.

20.     All records delivered by Drake, Nicki Minaj and Tyga to Universal for distribution are referred to herein as the "YME Records."

**Carter Interests Assigned To Young Money LLC**

21.     Subsequent to the creation of the Young Money Label, Carter's interests in the Young Money Label, and under the 1998 Recording Agreement as amended, including those held under his earlier "for services of" entity (also named Young Money Entertainment, LLC), were assigned to Plaintiff Young Money LLC. To the extent any of Carter's interests alleged above have not been conveyed or transferred to Young Money, LLC, then Carter is entitled to those interests.

/ / /

/ / /

**SoundExchange's Role**

22.     SoundExchange is an independent nonprofit performance rights organization that collects and distributes digital performance royalties on the behalf of sound recording copyright owners and featured artists for non-interactive digital transmissions, including satellite, Internet radio, and cable television music channels.  Such royalties are mandated under the Digital Millennium Copyright Act of 1998 ("DCMA").  Under the DCMA, fifty percent (50%) of such performance royalties are payable to or for the benefit of artists appearing on recordings ("artists' royalties"), and fifty percent (50%) are payable to the owner of the sound recordings, which typically is the record label, hence the common term of "label performance royalties" for the latter payments.

23.     SoundExchange is designated by Congress as the sole organization authorized to collect royalties paid by services making available ephemeral phonorecords or digital audio transmissions of sound recordings, or both, under the statutory licenses set forth in 17 U.S.C. §§ 112 and 114.  As of January 1, 2003, SoundExchange was designated by the United States Copyright Office to also distribute the collected royalties to copyright owners and performers entitled under and pursuant to 17 U.S.C. § 114(g)(2).  SoundExchange operates, in part, pursuant to Copyright Office regulations set forth in 37 C.F.R. Parts 260, 261, 262, 263, 270 and 384.

24.     By reason of Young Money LLC's ownership in the records described above, Young Money LLC is entitled to payment of its one third share of label performance royalties on Drake records, 49% on other Young Money Label records and 50% on Option Period Records.

25.     Plaintiffs have registered their rights with SoundExchange and entered into contracts with SoundExchange for collection and payment to Plaintiffs of their shares of label performance royalties. Universal is aware of the existence of those registered rights and contracts.

KING, HOLMES,
PATERNO &
SORIANO, LLP

**Universal's Distributor Role**

26.     Upon information and belief, pursuant to an agreement between Universal and Cash Money, Universal provides distribution services of Cash Money records for Cash Money (the "Universal Distribution Agreement"), including records delivered by Carter to Cash Money under the 1998 Recording Agreement, as amended.  Cash Money also provided the Young Money Label-produced records, including those of Drake, to Universal for distribution.

**Universal Has Wrongfully Blocked Payments of Royalties and Profits to Plaintiffs**

27.     Universal's wrongful actions described here have blocked payment by SoundExchange to Carter and Young Money LLC of label performance royalties due Carter and Young Money, LLC.  In communications to SoundExchange, Universal has claimed a right to 100% of the label performance royalties attributed to the YME Records, despite the ownership split of 51% - 49% between Cash Money and Carter/Young Money LLC pursuant to the 2003 Label Agreement, and Plaintiffs' one third ownership share of Drake records owned by Young Money LLC.  Universal has also claimed a right to 100% of Plaintiffs' share of label performance royalties for Option Period Records.

28.     Universal makes claim to the share of label performance royalties due to Young Money LLC and/or Carter, based upon an alleged right of recoupment by Universal against certain advances previously made by Universal to Cash Money, pursuant to Universal's distribution arrangement with Cash Money.  Universal has advanced more than One Hundred Million Dollars ($100,000,000) to Cash Money of which more than Sixty Million Dollars ($60,000,000) is still outstanding.  Neither Carter nor Young Money LLC was or is a party to Universal's distribution agreement with Cash Money, nor are they recipients of any of the One Hundred Million Dollars ($100,000,000) advanced by Universal to Cash Money.  Indeed, Universal refuses to provide Plaintiffs with documentation of such agreement.

KING, HOLMES,
PATERNO &
SORIANO, LLP

1  Universal's contention that it is entitled to obtain 100% of profits earned on records

2  owned by Carter, if it were to be accepted, would render illusory the rights of

3  Plaintiffs under the foregoing contracts; Universal would be at liberty to keep

4  funding Cash Money operations, yet deprive Plaintiffs of any revenues, including

5  label performance royalties, on the massively successful sales of YME Records, and

6  the Option Period Records, claiming entitlement to apply all those proceeds to repay

7  Cash Money's massive debt.

8      29.    Universal's wrongful actions described herein have also prevented

9  payment of profits earned on the sale of records owned by Young Money LLC and

10 the Option Period Records due to Universal's retention of those profits based on the

11 same alleged right of recoupment by Universal against advances previously made to

12 Cash Money, pursuant to Universal's distribution arrangement with Cash Money.

13     30.    Universal is, and has been at all times mentioned, aware of the terms of

14 the contracts between Plaintiffs and Cash Money.

15     31.    Universal is, and since the inception of the 2003 Label Agreement has

16 been, aware that Young Money LLC is a copyright owner, along with Cash Money,

17 of the YME Records.  Universal has been aware since 2008 that Carter was given a

18 joint ownership and corresponding copyright interest in the Option Period Records.

19     32.    Universal was aware of the joint copyright ownership of Carter/Young

20 Money LLC in YME Records and the absence of any right to cross-collateralize

21 record revenues and royalties due Plaintiffs against advances made by Universal to

22 Cash Money.

23     33.    Plaintiffs never agreed to permit Universal to offset, recoup or

24 otherwise collateralize either Carter and/or Young Money LLC's share of label

25 performance royalties collected by SoundExchange and payable to Young Money

26 LLC and/or Carter by SoundExchange, or profits attributable to Plaintiffs'

27 ownership interest in the Option Periods Records or the YME Records.

28 / / /

34.     Universal has no right, nor claim to any of Plaintiffs' share of label performance royalties now being held or hereafter earned.

35.     By letter dated December 4, 2014, Plaintiffs' counsel demanded that Universal withdraw its claim communicated to SoundExchange to Plaintiffs' share of label performance royalties.  Universal refused to withdraw the claim.

36.     Plaintiffs' share of label performance royalties is now being held by SoundExchange based upon Universal's unsupported claims and without the benefit of any judgment, attachment or lien in favor of Universal.  SoundExchange refuses to pay any of the money due to Plaintiffs as a result of the adverse claims made by Universal, until the dispute over those funds is resolved.

**Cash Money Has Acknowledged It Has No Claim to Withhold Label Performance Royalties**

37.     Cash Money has acknowledged to Universal and SoundExchange that it has no right to or interest in the label performance royalties allocable to Plaintiffs.

**Universal's False Registration of Copyrights of Young Money Label and Option Period Records**

38.     Universal submitted applications to the U.S. Copyright Office for registration of YME Records and Option Period Records delivered by Cash Money for distribution.  Despite Universal's awareness of Plaintiffs' ownership interests in those records, the applications submitted by Universal to the U.S. Copyright Office falsely reflect that Cash Money alone is the sole copyright owner of those records. Upon information and belief, Universal falsely registered the copyrights without acknowledgment of Plaintiffs' interests, in order to facilitate Universal's efforts to collect Plaintiffs' share of label performance royalties and to divert Plaintiffs' share of record profits to repayment of Cash Money's debts.

**The New Drake Record Universal Plans to Release**

39.     Upon information and belief, Cash Money recently delivered to Universal a new record performed by Drake, created and owned by the Young

1    Money Label, with Plaintiffs entitled to one third ownership.

2       40.     Universal has been aware at all times material hereto that :

3              a.      The Young Money Label terminated effective June 4, 2015;

4              b.      By reason of the 2003 Label Agreement, as well as the end of the

5 joint venture effective June 4, 2015, Cash Money does not have, and never had,

6 unilateral authority to make disposition of Young Money Label assets, to deliver the

7 new Drake record to Universal, to permit Universal to release and distribute that

8 record, nor to collateralize any of the revenues due Plaintiffs in favor of Universal;

9              c.      In light of Plaintiffs' one third interest in the copyright of the

10 new Drake record, the copyright should be registered by with the U.S. Copyright

11 office reflecting Plaintiffs' ownership interest; and

12              d.      Cash Money owed a fiduciary duty to Plaintiffs with respect to

13 the relationships herein alleged.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment, Against Universal And SoundExchange)

16       41.     Plaintiffs repeat, reallege, adopt and incorporate each and every

17 allegation contained in Paragraphs 1 through 40, inclusive, as though fully set forth

18 herein.

19       42.     SoundExchange refuses to pay any of the money due to Young Money

20 LLC and Carter individually based on Universal's conflicting demand.

21       43.     By reason of the foregoing, an actual, genuine and justiciable

22 controversy exists between the parties that can only be resolved by declaratory

23 relief. In accordance with the provisions of 28 U.S.C. §§ 2201 and 2202, and the

24 terms and provisions of the U.S. Copyright Law, as a result of SoundExchange's

25 refusal to pay any of the monies due to Plaintiffs from their portion of label share of

26 performance royalty income based upon the claims made by Universal, it has

27 become necessary to request that the Court make a declaration as to the rights and

28 other legal relations of the parties.

1  44. Plaintiffs seek a judgment declaring the parties' respective rights with

2 regard to Plaintiffs' share of label performance royalties, including a declaration that

3 Universal is not entitled to recoup against Plaintiffs' share of label performance

4 royalties, or from any monies due Plaintiffs from Cash Money, any amounts that

5 Universal claims to have advanced to Cash Money.

6  <u>**SECOND CLAIM FOR RELIEF**</u>

7  <u>**(Inducement to Breach Contract, Against Universal)**</u>

8  45. Plaintiffs repeat, reallege, adopt and incorporate each and every

9 allegation contained in Paragraphs 1 through 40, inclusive, as though fully set forth

10 herein.

11  46. Plaintiffs have registered and entered into contracts with

12 SoundExchange to collect their shares of label performance royalties, and have not

13 designated any other party other than Carter and/or Young Money LLC to receive

14 those royalties.

15  47. Universal has intentionally caused SoundExchange to breach its

16 contractual and statutory obligation to pay Carter and/or Young Money LLC their

17 share of the label performance royalties on Young Money Label records and the

18 Option Period Records, based upon the claims asserted by Universal.

19  48. Universal has intentionally caused Cash Money to breach its contracts

20 with Plaintiffs. Universal accepts records from Cash Money on which Plaintiffs are

21 to be paid profits by Cash Money, yet Universal knows that while Universal will

22 earn millions of dollars of profits on those records, Universal will retain all the

23 profits, claiming recoupment rights against those profits for advances to Cash

24 Money. Universal knows that Cash Money will not pay Plaintiffs those contracted

25 for payments.

26  49. As a result of the foregoing inducement by Universal of breach by

27 SoundExchange of its contracts and statutory rights with Carter and Young Money

28 LLC, Plaintiffs have suffered damages in the amount of at least Five Million Dollars

1 ($5,000,000), to date, and will continue to incur still further damages.

2       50.    As the result of the foregoing inducement by Universal of breach of the

3 Cash Money contracts, Plaintiffs have suffered damages to date estimated to exceed

4 Twenty Million Dollars ($20,000,000).

5       51.    By reason of Universal's conduct, Universal has been unjustly

6 enriched. Plaintiffs are entitled to disgorgement by Universal of their profits

7 resulting from their wrongful inducement of breach of the contracts and statutory

8 rights of Plaintiffs with SoundExchange.

9       52.    In engaging in the conduct described above, Universal acted with

10 oppression, fraud, or malice, and accordingly, Plaintiffs are entitled to recover

11 punitive damages sufficient to punish and make an example of Universal, in an

12 amount according to proof.

13 <div align="center">**THIRD CLAIM FOR RELIEF**</div>

14 <div align="center">**(For Aiding and Abetting Breach of Fiduciary Duty, Against Universal)**</div>

15       53.    Plaintiffs repeat, reallege, adopt and incorporate each and every

16 allegation contained in Paragraphs 1 through 40.

17       54.    By reason of the Young Money Label joint venture relationship, Cash

18 Money owes a fiduciary duty to Carter, and to Young Money LLC, in respect to the

19 joint venture. That fiduciary duty includes the obligation of Cash Money to deal

20 with Carter and Young Money LLC in good faith and with loyalty, to make full

21 disclosure of joint venture business, to allow Young Money LLC to participate

22 meaningfully in the decisions of operation of the joint venture, to not act against the

23 best interest of the joint venture or the rights and interests of Carter in the Young

24 Money Label, to pay or incur only proper expenses of the joint venture, to not

25 comingle assets or liabilities of the joint venture with those of Cash Money, and to

26 account for and remit to Carter and Young Money LLC their share of profits.

27 ///

28 ///

55. Universal has aided and abetted Cash Money in breach of its fiduciary duty to Carter and Young Money LLC, including by Universal:

a. Registering the copyrights of Young Money Label artist records solely in the name of Cash Money;

b. Funding advances to Cash Money, which Universal knew Cash Money would not share with Plaintiffs under the 2003 Label Agreement or the Drake Letter Agreement or apply to Young Money Label operations, and which advances Universal would then claim it is entitled to recoup against Plaintiffs' share of label performance royalties payable from SoundExchange and Plaintiffs' share of profits from the YME Records and the Option Period Records;

c. Paying directly to Cash Money's favored vendors and service providers, at the urging of Cash Money: (i) the operating and other expenses of Cash Money and its principals, and (ii) the ostensible expenses for Young Money Label artist records, without consultation with or obtaining the consent of Plaintiffs, knowing that Universal would claim that any such payments were recoupable against all compensation due Plaintiffs on YME Records. The effect of this practice by Universal has been to allow and encourage Cash Money to spend extravagant amounts of money, not to the mutual benefit of all Young Money Label owners, in expectation that Cash Money would deliver lucrative and profitable artist records on the Young Money Label, with Universal intending they would assert they were entitled to recoup such advances against Plaintiffs' revenue shares;

d. Failing to render to Plaintiffs, despite their request, accountings of funds advanced to Cash Money and other expenses paid by Universal at Cash Money's instance, allegedly recoupable by Universal against YME Records income; and

e. Failing to involve Plaintiffs in any of the creative and budgetary decision-making regarding Young Money Label affairs as required under the 2003 Label Agreement.

1      56.    By reason of Universal's conduct, Plaintiffs have been damaged in an

2  amount not yet known, but which is estimated to exceed the sum of Twenty Million

3  Dollars ($20,000,000).

4      57.    By reason of Universal's wrongful conduct, Universal has been

5  unjustly enriched, and Universal should be forced to disgorge all profits obtained by

6  its conduct.

7      58.    In engaging in the conduct described above, Universal acted with

8  oppression, fraud, or malice, and accordingly, Plaintiff is entitled to recover punitive

9  damages sufficient to punish and make an example of Universal, in an amount

10  according to proof.

11                    **FOURTH CLAIM FOR RELIEF**

12      **(Tortious Interference with Prospective Advantage, Against Universal)**

13      59.    Plaintiffs repeat, reallege, adopt and incorporate each and every

14  allegation contained in Paragraphs 1 through 40, Paragraphs 46 through 52, and

15  Paragraphs 54 through 58, inclusive, as though fully set forth herein.

16      60.    Plaintiffs enjoyed the economic relationships between them and

17  SoundExchange based upon the registrations and contacts with SoundExchange, and

18  by reason of the statutory rights under the Copyright Act to label performance

19  royalties  pertaining to Young Money Label records and the Option Period Records.

20  Plaintiffs enjoyed the economic relationships between them and Cash Money

21  regarding the 1998 Recording Agreement, as Amended, and the 2003 Label

22  Agreement.

23      61.    Universal has had knowledge of these relationships.

24      62.    Universal has engaged in the wrongful conduct alleged designed above

25  to disrupt these relationships Plaintiff enjoyed.

26      63.    Universal's conduct in interfering with these relations constituted

27  wrongful inducement of breach of contracts with SoundExchange and Cash Money

28  involving Plaintiffs, and aiding and abetting Cash Money in breaches of its fiduciary

duties to Plaintiffs.

64.    The conduct by Universal has caused actual disruption of the relationship with SoundExchange and Plaintiff's rights to label performance royalties, payments due Plaintiffs under the contracts with Cash Money.

65.    As a direct and proximate result of Universal's tortious conduct, Plaintiffs have suffered monetary damages in an amount not presently known, but estimated to exceed Twenty Million Dollars ($20,000,000).

66.    By reason of Universal's wrongful conduct, Universal has been unjustly enriched, and Universal should be forced to disgorge all profits or benefits obtained by its conduct.

67.    In engaging in the conduct described above, Universal acted with oppression, fraud, or malice, and accordingly, Plaintiff is entitled to recover punitive damages sufficient to punish and make an example of Universal, in an amount according to proof.

WHEREFORE, Plaintiffs demand judgment against the Defendants in each cause of action as follows:

1.    On the First Claim for Relief, in accordance with 28 U.S.C. §§ 2201 and 2202, judgment declaring that:

a.    Plaintiffs are entitled to their share of label performance royalty income now being withheld by Defendant SoundExchange, at the insistence of Universal;

b.    Universal has no right to the label performance royalties due Plaintiffs, which Universal has made claim to from SoundExchange;

c.    Plaintiff is entitled to its rightful joint copyright ownership interest to be registered with the U.S. Copyright Office;

d.    Universal has no right to recoup advances it made to Cash Money from royalties and payments due Plaintiffs under their contracts with Cash Money or from label performance royalties collected by SoundExchange; and

e.       SoundExchange is obligated to render accountings to Plaintiffs of moneys collected on Plaintiffs' copyright interests.

2.       On the Second Claim for Relief, a monetary judgment against Universal in an amount to be determined according to proof, but in no event less than Twenty Million Dollars ($20,000,000) and/or disgorgement of Universal's profits, together with punitive damages according to proof.

3.       On the Third Claim for Relief, for a judgment ordering awarding disgorgement of the profits reaped by Universal as the result of aiding and abetting Cash Money in breaching its fiduciary duties to Plaintiffs, and/or money damages in an amount to be according to proof, but in no event less than Twenty Million Dollars ($20,000,000), together with punitive damages according to proof.

4.       On the Fourth Claim for Relief, for damages, disgorgement of Universal's profits and benefits, and for punitive damages according to proof.

5.       The costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as to this Court seems just and proper.

DATED: March 28, 2016            KING, HOLMES, PATERNO &
                                 SORIANO, LLP


                                 By: _____
                                        HOWARD E. KING
                                 Attorneys for Plaintiffs YOUNG MONEY
                                 ENTERTAINMENT, LLC and DWAYNE
                                 MICHAEL CARTER, JR.

/ / /
/ / /
/ / /
/ / /

# **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial of the within action, including the complaint, and any further pleadings.

DATED: March 28, 2016

KING, HOLMES, PATERNO &
SORIANO, LLP

By: _____

HOWARD E. KING

Attorneys for Plaintiffs YOUNG MONEY
ENTERTAINMENT, LLC and DWAYNE
MICHAEL CARTER, JR.

# EXHIBIT "C"

 Gmail

Ron Sweeney <ron.s.weeney@sjslawcorp.com>

## Letter of Termination

**Ron Sweeney** <ron.sweeney@sjslawcorp.com>                    Tue, Mar 20, 2018 at 5:42 PM
To: Cortez Bryant <tezmaverick@gmail.com>
Cc: anita blount <Cartermuzik5@gmail.com>, "Turner, Jeffrey" <Jeffrey.Turner@providentfm.com>

Cortez, please find attached a letter signed by Wayne terminating your management services, effective immediately. Please terminate your use of Wayne's electronic signature and refrain from representing yourself as Wayne's manager to anyone in the entertainment field. I will reach out to you tomorrow to discuss any outstanding issues that need to be addressed. It's Wayne intention to handle this in a way that it doesn't reflect badly on you in the industry. Tomorrow we should talk about a press release that works for both of you.

Ronald E. Sweeney
**Sweeney, Johnson & Sweeney, LLC**
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.

 **897AA5D6-77EC-457A-8DC2-C4CC47DA8102.pdf**
431K

**Ron Sweeney** <Ron.Sweeney@sjslawcorp.com>                    Tue, Mar 20, 2018 at 5:49 PM
To: Brandie Johnson <Brandie.Johnson@sjslawcorp.com>, Justin Sweeney <Justin.Sweeney@sjslawcorp.com>

FYI

 **897AA5D6-77EC-457A-8DC2-C4CC47DA8102.pdf**
431K

# EXH. "C"

# EXHIBIT "D"

 Gmail

Ron Sweeney <ron.sweeney@sjslawcorp.com>

---

## Status Report for Meeting Today

> message

**Ron Sweeney** <ron.sweeney@sjslawcorp.com>
To: anita blount <Cartermuzik5@gmail.com>

Tue, Aug 28, 2018 at 12:29 PM

Please read the attached for our meeting.  Thanks.



Ronald E. Sweeney
**Sweeney, Johnson & Sweeney, LLC**
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*\*Licensed in California*

**This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.**

---

📄 **Wayne Carter V Update.docx**
12K

# EXH. "D"

-38-

Attachment Withheld by Defendants Based on Attorney-Client Privilege.

# EXHIBIT "E"

| | CASE TITLE | CASE NUMBER | DATE FILED | COURT ID |
|---|---|---|---|---|
| 1. | *Young Money Entertainment, LLC, et al. v. Digerati Holdings, LLC, et al.* | EC049512 | 3/23/2009 | State - Los Angeles Superior Court (Glendale) |
| 2. | *Young Money Entertainment, LLC, et al. v. Digerati Holdings, LLC, et al.* | B215765 | 4/21/2009 | CA Court of Appeal - 2nd Appellate District |
| 3. | *Young Money Entertainment, LLC, et al. v. Digerati Holdings, LLC, et al.* | B218639 | 8/21/2009 | CA Court of Appeal - 2nd Appellate District |
| 4. | *Broadcast Music, Inc. et al. v. V3 Club Company, LLC* | 2:2009-cv-08039 | 11/3/2009 | Federal - Central District |
| 5. | *Broadcast Music, Inc. et al. v. Abyss Entertainment Group, Inc. et al.* | 3:2009-cv-05990 | 12/22/2009 | Federal - Northern District |
| 6. | *Broadcast Music, Inc. et al. v. CHWC, Inc. et al.* | 2:2010-cv-01439 | 2/25/2010 | Federal - Central District |
| 7. | *Broadcast Music, Inc. et al. v. Don Anthonys, LLC et al.* | 5:2010-cv-02173 | 5/20/2010 | Federal - Northern District |
| 8. | *Broadcast Music, Inc. et al. v. Ambiente LLC et al.* | 2:2011-cv-01096 | 2/4/2011 | Federal - Central District |
| 9. | *Broadcast Music Inc. et al. v. Old Town Hospitality LLC et al.* | 2:2011-cv-10192 | 12/8/2011 | Federal - Central District |
| 10. | *Broadcast Music Inc. et al. v. SKWS Enterprises Inc et al.* | 2:2012-cv-02137 | 3/13/2012 | Federal - Central District |
| 11. | *Young Money Entertainment LLC et al. v. Digerati Holdings LLC et al.* | 2:2012-cv-07663 | 9/6/2012 | Federal - Central District |
| 12. | *Young Money Entertainment LLC v. Superior Court of Los Angeles County* | B244161 | 9/25/2012 | CA Court of Appeal - 2nd Appellate District |

**EXH. "E"**

-44-

| CASE TITLE | CASE NUMBER | DATE FILED | COURT ID |
|---|---|---|---|
| 13. | *Young Money Entertainment, LLC, et al. v. Digerati Holdings, LLC, et al.* | B246326 | 1/04/2013 | CA Court of Appeal - 2nd Appellate District |
| 14. | *Young Money Entertainment, LLC, et al. v. Digerati Holdings, LLC, et al.* | B248418 | 4/19/2013 | CA Court of Appeal - 2nd Appellate District |
| 15. | *Young Money Entertainment LLC et al. v. Universal Music Group et al.* | 2:2016-cv-02096 | 3/28/2016 | Federal - Central District |

# EXHIBIT "F"

**2021 FLORIDA PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# P05000045896

**FILED**
**Mar 12, 2021**
**Secretary of State**
**9859563345CC**

**Entity Name:** YOUNG MONEY TOURING, INC.

**Current Principal Place of Business:**

16000 VENTURA BLVD,
STE 600
ENCINO, CA 91436

**Current Mailing Address:**

16000 VENTURA BLVD,
STE 600
ENCINO, CA 91436 US

**FEI Number:** 20-2711944

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

ERESIDENTAGENT, INC.
801 US HIGHWAY 1
NORTH PALM BEACH, FL 33408 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: ERIKA EASTER                                                03/12/2021

        Electronic Signature of Registered Agent                    Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | PRESIDENT, TREASURER, SECRETARY, VP |
| Name | CARTER, DWAYNE |
| Address | 16000 VENTURA BLVD, STE 600 |
| City-State-Zip: | ENCINO CA 91436 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DWAYNE CARTER                          PRESIDENT                03/12/2021

        Electronic Signature of Signing Officer/Director Detail                    Date

**EXH. "F"**

-47-

# EXHIBIT "G"



# Wire Transfer Services
## Outgoing Wire Transfer Request

| Today's Date: | Created After Deadline: | | Wells Fargo Reference Number: |
|---|---|---|---|
| 01/21/2014 | No | | ▉ |

| Banker Name: | | | Officer/Portfolio Number: |
|---|---|---|---|
| ▉ | | | ▉ |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| ▉ | ▉ | ▉ | ▉ |

Outgoing wires can only be sent for Wells Fargo customers. Provide the Customer Copy to the customer ensuring you give them the Wire Transfer Agreement on pages 3 and 4. Note: Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See the Wire Transfer Information for explanations of the Mexican CLABE number, the SWIFT BIC, the International Routing Code ("IRC") and the International Bank Account Number ("IBAN").

## Originator's Information

| Customer Name: | Street Address: |
|---|---|
| ▉ | PROVIDENT FINANCIAL MANAGEMENT |

| Primary ID Type: | Primary ID Description: | | Address Line 2: |
|---|---|---|---|
| ▉ | ▉ | | ▉ |

| Primary ID St/Ctry/Prov: | Primary ID Issue Date: | Primary ID Expiration Date: | Address Line 3: |
|---|---|---|---|
| ▉ | ▉ | ▉ | |

| Secondary ID Type: | Secondary ID Description: | | City: | State: |
|---|---|---|---|---|
| | ▉ | | SANTA MONICA | CA |

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: | ZIP/Postal Code: | Country: |
|---|---|---|---|---|
| | | | 90405-6216 | US |

| Business, Trust, or Estate Name: | Home Phone: | Business Phone: |
|---|---|---|
| YOUNG MONEY ENTERTAINMENT LLC | | |

## Wire Amount and Source of Funds

| Create AU: | Amount (US Dollars): | Debit Wells Fargo Account: | Bank/COID: |
|---|---|---|---|
| ▉ | $35,000.00 | ▉ | ▉ |

## Beneficiary/Recipient Information (This is the ultimate recipient of the wire transfer funds)

| Beneficiary/Recipient Name: | Name/Address Line 1: |
|---|---|
| AVANT GARDE MANAGEMENT INC | |

| Beneficiary Account Number/IBAN (Foreign)/CLABE (Mexico): | Name/Address Line 2: |
|---|---|
| ▉ | |

| Information/Comments: | Name/Address Line 3: |
|---|---|
| | |
| | Beneficiary Phone Number: |

## Beneficiary Bank (This is the financial institution where the beneficiary maintains their account.)

| ABA/RTN | SWIFT/BIC: | Beneficiary Bank Name: | |
|---|---|---|---|
| ▉ | | SIGNATURE BANK | |

| Beneficiary Bank Address: | City: | State: |
|---|---|---|
| | NEW YORK | NY |

# EXH. "G"



WTR6603 (11-13 SVP)

-49-

## Wire Fees

Wire transfer fees will be charged to the Originator's Debit Account. Additional fees from intermediary and beneficiary banks may be charged to international transactions.
My signature here indicates agreement to all of the information on this Outgoing Wire Transfer Request and to the terms and conditions of this request. Wells Fargo is authorized to rely
on the information on this Request in making the requested funds transfer.

AU of Originator's Account:        Wells Fargo Wire Fee Amount:

## Customer Signature

Originator Name

Originator Signature

☐ Submit manually

☐ Signature not required

Date:

01/21/2014



WTR6603 (11-13 SVP)

-50-

## Agreement For Outgoing Wire Transfer Requests ("Wire Transfer Agreement")

**Responsibility of Wells Fargo.** The wire transfer described in the Outgoing Wire Transfer Request (Page 1) ("Order") may be sent by wire telegraph, telephone, cable or whatever other transmission method Wells Fargo considers to be reasonable. The wire transfer may be transmitted directly to the Beneficiary Bank (the financial institution designated in the Request as the Beneficiary Bank), or indirectly to the Beneficiary Bank through another bank, government agency, or other third party that Wells Fargo considers to be reasonable. Wells Fargo may utilize any funds transfer system or intermediary bank reasonably selected by Wells Fargo, even if its selection differs from instructions in the request.

**Agent.** Wells Fargo may use agents of its choice to perform all of its obligations.

**Limitation of Liability.** Wells Fargo will not be liable for any loss or damage due to the failure, delay, or error of: (1) the method of transmission selected by Wells Fargo, (2) a third party selected by Wells Fargo to receive the Order, or (3) the Beneficiary Bank. IN NO EVENT WILL WELLS FARGO BE LIABLE FOR DAMAGES ARISING DIRECTLY OR INDIRECTLY IF THE ORDER IS EXECUTED BY WELLS FARGO IN GOOD FAITH AND IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT. REGARDLESS OF THE FORM OR NATURE OF ANY CLAIM OR ACTION, IN NO EVENT WILL WELLS FARGO BE LIABLE FOR PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT WELLS FARGO SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Reliance on Information Provided.** If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary. If a wire transfer request describes a financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.

**International Wire Transfers.** A Payment Order expressed in U.S. Dollars will be sent in U.S. Dollars. Company may request that prior to executing a Payment Order, Wells Fargo convert the amount to be transferred from U.S. Dollars to the currency of a designated foreign government or intergovernmental organization ("Foreign Currency") at Wells Fargo's sell rate for exchange in effect on the date Wells Fargo executes the Payment Order. If the financial institution designated to receive the funds does not pay the beneficiary specified in a Payment Order payable in Foreign Currency and the funds are returned to Wells Fargo, Wells Fargo will not be liable for a sum in excess of the value of the funds after they have been converted from Foreign Currency to U.S. Dollars at Wells Fargo's buy rate for exchange at the time the cancellation of the Payment Order is confirmed by Wells Fargo. Wells Fargo will not be liable for any delay or delay by any financial institution or other third party in the designated foreign country in executing or failing to execute any Payment Order Wells Fargo transmits to a foreign country.

**Refund.** If the Beneficiary Bank does not pay the Beneficiary specified on the Order, a refund will be made only after Wells Fargo has received confirmation of the effective cancellation of the Order and Wells Fargo is in free possession of the funds debited or earmarked in connection with the Order. If the order is payable in Foreign Currency, Wells Fargo will not be liable for a sum in excess of the value of the Order after it has been converted from Foreign Currency to U.S Dollars at Wells Fargo's buying rate for exchange at such time as the cancellation of the Order is confirmed by Wells Fargo.

**Failure to Transfer Proper Amount.** If Wells Fargo is notified that it did not transfer the full amount stated in the Request, Wells Fargo's sole liability will be to promptly execute a second Payment Order in the amount of the stated deficiency. If Wells Fargo executes an instruction in excess of the amount stated in the Request, to the extent that the originator does not receive the benefit of the Order, Wells Fargo will only be liable for any loss of the principal amount transferred in excess of the amount stated in the Request instructions. Additionally, Wells Fargo will be liable for the amount of interest the originator has lost due to the transfer of the excess amount, computed at the then current Federal Funds rate. However, Wells Fargo's liability for loss of interest shall be limited to twenty (20) calendar day's interest. This section sets forth Wells Fargo's complete liability for the order issued under this agreement.

**Finality of orders.** The order will be final and will not be subject to stop payment or recall, except that Wells Fargo may, at the originator's request, make an effort to effect such stop payment or recall. In such case, Wells Fargo will incur no liability for its failure or inability to do so.

**Fees.** In addition to the outgoing wire transfer fee, additional fees may apply. Additional fees can include, but are not limited to: an additional fee for bank initiated transactions, amendment fees, statement fees, fees assessed by beneficiary and intermediary banks, etc. On international outgoing wires, if a SWIFT BIC, IRC, IBAN, or CLABE number is not provided the foreign banks may return the wire or assess a surcharge. Wells Fargo Wire Transfer Fees are disclosed in your most recent Fee and Information Schedule and related amendments.

**Acts of God.** Wells Fargo is excused for delays or failure to execute the Order to the extent that the delay or failure results from a cause beyond the reasonable control of Wells Fargo.

## Wire Transfer Information

**General Information: You can NOT have a bank as the final beneficiary,** unless the wire is a payment to Wells Fargo (i.e.: mortgage, auto loan, etc,). We are required to know who the money is going to, to ensure the funds are not being used to support terrorist or drug activity. We need an account number for the beneficiary OR a complete physical address. No PO Boxes may be used when no account number is provided for the Beneficiary.

**International Wires:** Wires going to foreign countries require different numbers depending on the receiving foreign country. All wire transfer payments destined for Europe should include the SWIFT Bank Identifier Code (SWIFT BIC), International Routing Code (IRC) as applicable, and for participating countries the beneficiary's International Bank Account Number (IBAN). Mexican banks require a CLABE number in addition to the SWIFT BIC.

1. **SWIFT** Bank Identifier Code (SWIFT BIC). The 8 or 11 character SWIFT BIC is a unique series of alpha numeric characters that help to identify a specific financial institution. The SWIFT BIC should be obtained from the beneficiary. To ensure timely delivery please be sure that international outgoing wires include the SWIFT BIC where applicable.

2. **International Routing Code (IRC):** Some countries throughout the international banking community have created international routing codes, which are used in combination with the SWIFT BIC to aid in routing the payment through a main office to a branch. Each country has a specific name for their routing code (i.e., Sort Code in the United Kingdom, Canadian Payments Association Routing Numbers in Canada). Your beneficiary must provide the international routing code to facilitate receipt of an international payment. Sending a wire without the IRC number can delay the wire, or the receiving bank may return the wire when this number is not included in the payment instructions, and additional fees may be assessed.

3. **International Bank Account Number (IBAN):** The IBAN varies by country/institution. Warning! Only the bank servicing an account can provide the correct IBAN of that account and must be obtained from the beneficiary of the wire. Sending a wire to a participating country without the IBAN can delay the wire, or the receiving bank may return the wire when the IBAN is not included in the payment instructions, and additional fees may be assessed.



Customer Copy

WTR6603 (11-13 SVP)

Participating Countries that require an IBAN:

| | | | | | |
|---|---|---|---|---|---|
| Albania | Denmark | Greece | Liechtenstein | Netherlands | Slovak Republic |
| Andorra | Dominican Republic | Guadeloupe | Lithuania | New Caledonia | Slovenia |
| Austria | Estonia | Hungary | Luxembourg | Norway | Spain |
| Bahrain | Finland | Iceland | Macedonia | Poland | Sweden |
| Belgium | France | Ireland (Republic of) | Malta | Portugal | Switzerland |
| Bosnia and Herzegovina | French Guiana | Isle of Man | Martinique | Reunion Island | Tunisia |
| Bulgaria | French Polynesia | Italy | Mauritania | Romania | Turkey |
| Croatia | Georgia | Kazakhstan | Mauritius | San Marino | United Arab Emirates |
| Cyprus | Germany | Kuwait | Monaco | Saudi Arabia | United Kingdom |
| Czech Republic | Gibraltar | Latvia | Montenegro | Serbia | |

4. **Mexico CLABE Account Number:** Mexican banks now require an 18 digit CLABE account number be added to the Beneficiary instructions to ensure payment. The CLABE number is required on all Mexican Peso (MXN) and USD payments sent to Mexico. The CLABE account number must be obtained from the beneficiary. If the beneficiary does not have the CLABE account number, please have the beneficiary contact their bank. Wells Fargo does not provide or calculate the CLABE. Sending a wire without a CLABE account number can delay the wire, or the receiving bank may return the wire if the CLABE is not included in the payment instructions, and additional fees may be assessed.

5. **Wells Fargo recommends** that if you do not have a SWIFT BIC, IBAN, IRC, or Mexican CLABE number, that you contact the beneficiary of the wire. If the beneficiary does not have the needed information, please have the beneficiary contact their bank to obtain the appropriate information. Sending International wires without the required information can cause the wire to be delayed, returned, or assessed additional fees. For International outgoing wires only: When sending in foreign currency, please ensure the beneficiary's account accepts the designated foreign currency. International foreign currency wires are *generally* less expensive to send as compared with International USD wires (the Wells Fargo wire fee is always less when the wire is sent in foreign currency and Wells Fargo does not charge a converting fee; we also offer competitive exchange rates.) For International wires in foreign currency that are equal to or over $100,000 U.S. equivalent, please call your local Foreign Exchange Specialist at 800-786-5593, to obtain a contract number.


Customer Copy

# EXHIBIT "H"

Form **W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

YOUNG MONEY VENTURES LLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ **P**

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

c/o PROVIDENT FINANCIAL MANAGEMENT P.O. BOX 4084

**6** City, state, and ZIP code

SANTA MONICA, CA 90411

Requester's name and address (optional)

**7** List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

**Employer identification number**

██ – ████████

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**    Signature of U.S. person ▶ *[signature]*    Date ▶ 11-3-16

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued), or

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X      Form **W-9** (Rev. 12-2014)

**EXH. "H"** -54-

# EXHIBIT "I"



-----Original Message-----
From: RONALD SWEENEY <res7106@aol.com>
To: Svetlana.Pelikhova@providentfm.com
Cc: tezmaverick@gmail.com; Jeffrey.Turner@providentfm.com
Sent: Thu, Nov 3, 2016 5:54 pm
Subject: Re: Young Money Ventures LLC

Thank you.

-----Original Message-----
From: Pelikhova, Svetlana <Svetlana.Pelikhova@providentfm.com>
To: 'RONALD SWEENEY' <res7106@aol.com>
Cc: tezmaverick <tezmaverick@gmail.com>; Turner, Jeffrey <Jeffrey.Turner@providentfm.com>
Sent: Thu, Nov 3, 2016 2:53 pm
Subject: RE: Young Money Ventures LLC

The wiring instructions:

Beneficiary Name:   YOUNG MONEY VENTURES LLC
Beneficiary Address: P.O. BOX 4084
                     Santa Monica, CA 90411
Beneficiary Bank:    City National Bank
                     400 North Roxbury Drive
                     Beverly Hills, CA  90210
Routing #:
Account #:          ███

**EXH. "I"**

Best regards,
Svetlana Pelikhova

Account Manager
Provident Financial Management
2850 Ocean Park Blvd, Ste. 300
Santa Monica, CA 90405
Direct: (310) 282-5111
Fax: (310) 282-5199
Email: svetlana.pelikhova@providentfm.com
www.providentfm.com

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

**From:** RONALD SWEENEY [mailto:res7106@aol.com]
**Sent:** Thursday, November 03, 2016 2:04 PM
**To:** Turner, Jeffrey
**Cc:** Pelikhova, Svetlana; tezmaverick@gmail.com
**Subject:** Young Money Ventures LLC

Please forward to me the wiring instructions and a W-9 for Young Money Ventures LLC. Thanks.

PRIVILEGED AND CONFIDENTIAL :
This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client, accountant-client, or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me at the above email address.

--

_____
Ronald E. Sweeney
**Sweeney, Johnson & Sweeney**
22809 Pacific Coast Highway
Malibu, California 90265
Phone: (424)346-1263
Cell: (646) 932-2218
*Licensed in California*

**This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.**

# EXHIBIT "J"



-----Original Message-----
From: Pelikhova, Svetlana <Svetlana.Pelikhova@providentfm.com>
To: 'Hayley Fleming' <hayley@aplus.com>
Cc: Brad Westbrook <brad@aplus.com>; Bryan Calhoun <bryancalhoun@gmail.com>; Turner, Jeffrey <Jeffrey.Turner@providentfm.com>; RONALD SWEENEY <res7106@aol.com>; Cortez Bryant <tezmaverick@gmail.com> <tezmaverick@gmail.com>
Sent: Tue, Sep 19, 2017 1:51 pm
Subject: Lil Wayne - YOUNG MONEY ENTERTAINMENT - payments from A SHARP INC

Hi Hayley,

We didn't receive any payments since December 2016.

Please send the payments to us via ACH:

Beneficiary Name:     YOUNG MONEY ENTERTAINMENT LLC
Beneficiary Address:  P.O. BOX 4084
                      Santa Monica, CA 90411
Beneficiary Bank:     City National Bank
                      400 North Roxbury Drive
                      Beverly Hills, California  90210
Routing #:            ▮▮▮▮▮▮
Account #:            ▮▮▮▮▮▮

Please let me know if you need our W-9 form.

Best regards,
Svetlana Pelikhova

**EXH. "J"**

Account Manager
Provident Financial Management
P.O. Box 4084
Santa Monica, CA 90411
Direct: (310) 282-5111
Fax: (310) 282-5199
Email: svetlana.pelikhova@providentfm.com
www.providentfm.com

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

Please note our new address effective Sept. 18, 2017

PRIVILEGED AND CONFIDENTIAL :
This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client, accountant-client, or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me at the above email address.

--

_____
Ronald E. Sweeney
**Sweeney, Johnson & Sweeney**
22809 Pacific Coast Highway
Malibu, California 90265
Phone: (424)346-1263
Cell: (646) 932-2218
*Licensed in California*

**This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.**

# EXHIBIT 4

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, California 90067-3012
Zia F. Modabber (Bar No. 137388)
zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
tami.sims@katten.com
Tel: (310) 788-4400
Fax: (310) 788-4471
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-01689-ODW-JC<br>**REMOVED FROM STATE COURT**<br>(Los Angeles Superior Court No. 20STCV47346)<br><br>Assigned to Hon. Otis D. Wright II<br>Courtroom 5D<br><br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION AND (1) MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY (2), MOTION TO DISMISS OR STAY THIS ACTION UNDER THE *COLORADO RIVER* DOCTRINE, OR ALTERNATIVELY (3), MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  June 7, 2021<br><br>Hearing Time:  1:30 p.m.<br><br>Location:  Courtroom 5D |

# TABLE OF CONTENTS

**Page**

I.    STANDARDS GOVERNING PERSONAL JURISDICTION ......................3

II.   THIS COURT LACKS GENERAL JURISDICTION ...................................3

III.  THIS COURT LACKS SPECIFIC JURISDICTION ....................................4

IV.   AT MINIMUM, DISCOVERY AND A HEARING ARE REQUIRED........6

V.    THIS ACTION SHOULD BE DISMISSED OR STAYED ..........................7

VI.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE
      12(C) ........................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arnall v. Superior Court*,
  190 Cal. App. 4th 360 (2010) ...................................................... 10

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ........................................................ 7

*Brophy v. Almanzar*,
  359 F. Supp.3d 917 (C.D. Cal. 2018) ............................................ 5

*Clinton v. Boladian*,
  No. CV 11-10062-R, 2013 WL 12126107 (C.D. Cal. May 2, 2013).................. 6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................. 3, 4

*Data Disc. Inc. v. Sys. Tech Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ................................................... 6, 7

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) .................................................... 10

*Dickerson v. Kaplan*,
  763 F. Supp. 694 (E.D.N.Y. 1990) ............................................... 10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
  564 U.S. 915 (2011)..................................................................... 3

*Hudson-Munoz, LLC v. U.S. Waffle Co.*,
  No. 19-cv-01960, 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019).................... 3, 6

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
  903 F.3d 896 (9th Cir. 2018) ....................................................... 4

*King v. Bumble Trading, Inc.*,
  No. 18-cv-06868, 2020 WL 663741 (N.D. Cal. Feb. 11, 2020) ................. 4

*Libarian State Bar of Cal.*,
  21 Cal.2d 862 (1943) ................................................................. 1

ii

*Nakash v. Marciano*,
  882 F.2d 1411 (9th Cir. 1989) ............................................................. 8

*Rosenthal v. Fonda*,
  862 F.2d 1398 (9th Cir. 1988) ............................................................. 9

*Roth v. Garcia*,
  942 F.2d 617 (9th Cir. 1991) ............................................................... 5

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ............................................................. 5

*Steel v. United States*,
  813 F.2d 1545 (9th Cir 1987) ............................................................. 4

*Stone v. Advance Am., Cash Advance Centers, Inc.*,
  No. 08cv1549, 2009 WL 765665 (S.D. Cal. Mar. 20, 2009) .............................. 6

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................. 10

*Thomas P Gonzalez Corp. v. Consejo Nacional de Produccion de Costa
  Rica*,
  614 F.2d 1247 (9th Cir. 1980) ............................................................. 5

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ............................................................. 3

*U.S. ex rel. UNITE HERE v. Cintas Corp.*,
  No. C 06-2413, 2008 WL 1767039 (N.D. Cal. Apr. 16, 2008) ......................... 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................... 3, 5

*Webcor Constr., LP v. Zurich Am. Ins. Co.*,
  No. 17-CV-02220-YGR, 2017 WL 5068674 (N.D. Cal. Nov. 3,
  2017) ............................................................................................. 4

*White Lighting Co. v. Wolfson*,
  68 Cal. 2d 336, 438 P.2d 345 (1968) ..................................................... 9

*Young Money Ent. LLC v. Universal Music Group, Inc.*,
  Case No. 16-cv-2096-GHK-JC (C.D. Cal. filed Mar. 28, 2016) ..................... 6

iii

**Statutes**

Cal. Bus. & Prof Code § 6147 ...........................................................................8, 10

**Rules**

Rule 12(c).........................................................................................................9

Plaintiffs' Complaint and Opposition to Defendants' Motion are a fabrication bearing no resemblance to the real facts and the actual attorney-client relationship that existed between Sweeney and Carter from 2005 until 2018. That attorney-client relationship is the only tie that existed between them, and that relationship is before the New York court. The dispute here is the same, but disguised by Plaintiffs as a management relationship to pursue a litigation tactic, which must be stopped.

Plaintiffs never managed Carter. Sweeney was Carter's *entertainment lawyer*, which he has publicly claimed in promoting his legal services. Derek Williams Decl. ¶ 8, Ex. E (Sweeney was "Lil Wayne's longtime attorney"). Sweeney cannot simply avoid his professional responsibilities as Carter's attorney by recasting his services as non-legal. *Libarian State Bar of Cal.*, 21 Cal.2d 862, 865 (1943). Plaintiffs ignored *Libarian*, but it clearly applies. Sweeney is a lawyer and ran a New York law firm while representing Carter. Ronald Sweeney Decl. ¶¶ 5, 18, 20. No contemporaneous records evidence Plaintiffs' claimed service as a personal manager or manager.[1]

Plaintiffs point to an email Sweeney sent Carter's former manager in March 2018 (Sweeney Decl., Ex. C) as an example of "managerial duties." Opp. at 10. But the email is a legal communication Sweeney sent from his law firm address (ron.sweeney@sjslawcorp.com), which includes a signature block for the law firm Sweeney, Johnson & Sweeney, LLC and a confidentiality notice. And the task he performed (terminating Carter's manager, who months later returned) is one commonly performed by a lawyer. *See* Sweeney Decl., Ex. D (improperly filed attorney-client communication detailing Sweeney's work); Theodore Harris Decl. ¶ 4. These and other documents show the CA Action is about legal services Sweeney provided to Carter from New York, which he now disguises as management services to contrive a difference between the lawsuits.

---

[1] Sweeney never became the "manager" of YME or of any Entity Defendant as he claims. Carter is the only officer of those entities; he is the sole member or shareholder; and he is responsible for their management. Carter Decl. ¶¶ 27-32.

REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT

That Sweeney served as Carter's lawyer is not surprising because Carter first hired him in 2005 to "completely *renegotiate[e] Lil Wayne's deal* [with Cash Money Records][.]"  Sweeney Decl. ¶ 8 (emphasis added). But that initial legal assignment, which Sweeney claims arose out of a meeting in Los Angeles with Carter, *has no relationship to the oral contract at issue in the NY Action or the CA Action*. Sweeney admits Carter retained him under the contract at issue *after* that assignment was done.

Sweeney swore in his affidavit in the NY Action that he is an attorney, who owns a condo in Manhattan, "renegotiated Carter's agreement with Cash Money," and was hired to provide legal services in exchange for "10% of the income on any deals [he] negotiated or managed on Carter's behalf." Sims Decl., Ex. B ¶ 12 and at Ex. 4. And the unsigned contingency fee contract Sweeney sent to Carter in 2016 "reflect[ed] the terms Carter and [Sweeney] had agreed upon in 2005[,]" is on Sweeney's law firm letterhead, and describes legal services. Sims Decl., Ex. B ¶ 20 and at Ex. 4.

From the start of their professional relationship until its end, Sweeney's services were unambiguously legal in nature and performed in New York. Sweeney used his home and multiple office addresses on agreements for Carter from 2005 to 2018. Many of those agreements use Sweeney's New York address for notice purposes for Carter. Harris Decl. ¶¶ 6-7, Exs. A-O. And in October 2018, after he was fired, Sweeney prepared a proposed settlement agreement concerning his relationship with Carter that is replete with proof Sweeney served as Carter's attorney in exchange for "ten percent … of any and all deals [that] Sweeney negotiated on its [sic] behalf." Williams Decl. ¶ 9, Ex. F. The draft makes clear Sweeney "negotiated" deals for Carter and "directed [] litigation" for him, and lists Plaintiffs' address as Sweeney's New York condo. *Id.*

In this CA Action, Sweeney claims a 10% commission from Defendants' gross compensation under a purported oral contract between them. That is the *same* commission at issue in the NY Action where Carter sued Sweeney to void the oral contract under which Sweeney claimed a 10% commission on all services he provided,

including a 10% contingency fee on litigation settlements. Carter Decl., Ex. A at 2, 24-25. The New York court voided the oral contract and is now resolving what, if any, fees Sweeney is owed by Carter. Sims Decl., Ex. F. Notably, Sweeney's claimed commission is also the *same* commission Sweeney described in the unsigned 2016 contingency fee contract and in the proposed settlement agreement. Sims Decl., Ex. B, at Ex. 4 (unsigned legal fee contract) ¶ 1(a)-(b); Williams Decl., Ex. F.

Only one dispute must be resolved: what amount, if any, Sweeney may collect under the oral contract, which was voided by Carter in 2018. That issue is squarely before the court in the NY Action, and compels the dismissal or halt of this action.

# I.   STANDARDS GOVERNING PERSONAL JURISDICTION

Plaintiffs have failed to meet their substantial burden to oppose this jurisdictional challenge no matter how "light" they contend it is. *See Hudson-Munoz, LLC v. U.S. Waffle Co.*, No. 19-cv-01960, 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019) (J. Wright). That burden is not limited to establishing a *prima facie* case of jurisdiction. When jurisdictional facts are disputed, this Court may permit discovery and hold a hearing, where Plaintiffs must prove jurisdiction by a preponderance of the evidence.

# II.   THIS COURT LACKS GENERAL JURISDICTION

Plaintiffs argue general jurisdiction exists based on old cases that do not reflect the current law. *See*, *e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163 (9th Cir. 2006). Plaintiffs ignore two 2014 Supreme Court cases that clarified a court's exercise of jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (general jurisdiction); W*alden v. Fiore*, 571 U.S. 277 (2014) (specific jurisdiction). In *Daimler*, the Court stated "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 571 U.S. at 137. It does not exist everywhere a party engages in substantial, continuous business. *Id*. at 138.

General jurisdiction no longer permits a plaintiff to establish jurisdiction through a hodge-podge of contacts. *Daimler*, 571 U.S. at 138; *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 927 (2011) (holding "ties serving to bolster the

1  exercise of specific jurisdiction do not warrant … general jurisdiction"). What matters

2  is affiliations to the forum that are *so continuous and systematic* rendering a party

3  essentially "at home" there. *Daimler*, 571 U.S. at 138-39.

4  The contacts Plaintiffs proffer are irrelevant under *Daimler*. Defendants'

5  purported contracts with others in California (whether for music, bookings,

6  management, or rentals) are not continuous and systematic contacts with the forum.

7  Speculation that Carter earns "significant" money in California cannot confer

8  jurisdiction. If that were so, a party could easily find itself "at home" in every state,

9  which is not the law. Plaintiffs cannot claim that Carter is domiciled in California. Nor

10  do they establish that any Defendant Entity is "at home" in California. A corporation's

11  principal place of business is its "nerve center" where corporate officers direct, control,

12  and coordinate activities, and not merely the place listed on a public filing.  *King v.*

13  *Bumble Trading, Inc.*, No. 18-cv-06868, 2020 WL 663741, at *3 (N.D. Cal. Feb. 11,

14  2020). Carter is a Florida resident/domiciliary and the Entity Defendants have nerve

15  centers there with Carter as their only high-level officer. Carter Decl. ¶¶ 25-27.

16  Nor does Defendants' filing of prior unrelated claims establish general

17  jurisdiction. *Webcor Constr., LP v. Zurich Am. Ins. C*o., No. 17-CV-02220-YGR, 2017

18  WL 5068674, at *3 (N.D. Cal. Nov. 3, 2017) (defendant's filing of two prior unrelated

19  claims in litigation in California did "nothing to establish [its] continuous and

20  systematic activity in California"). Plaintiffs fail to establish general jurisdiction.

21  **III.    THIS COURT LACKS SPECIFIC JURISDICTION**

22  Plaintiffs have failed to make a *prima facie* showing that specific jurisdiction

23  exists over each Defendant. *See InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d

24  896 (9th Cir. 2018); *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir 1987) (due

25  process requires fair warning "when the events that give rise to the suit occurred").

26  Plaintiffs argue that purposeful availment is found here based upon the same

27  purported conduct by Defendants that purportedly supports general jurisdiction. But

28  that conduct is irrelevant. Under *Walden*, specific jurisdiction looks to the relationship

4

with the forum, not persons who happen to reside there. The fact that much of the music industry has offices in and ties to California is the type of third party unilateral activity that cannot satisfy the contacts prong. *Walden*, 571 U.S. at 291; *Brophy v. Almanzar*, 359 F. Supp.3d 917 (C.D. Cal. 2018).

Plaintiffs also argue Carter's purported visit to California in 2005 confers specific jurisdiction. Opp. at 20. As Sweeney's Decl. makes clear, that purported trip had nothing to do with the contract at issue. It was to retain Sweeney for a discrete assignment. It was only *after* that assignment Carter hired Sweeney as his lawyer. Sweeney Decl. ¶ 8. The purported meeting also was not related to Sweeney's claims here and cannot confer specific jurisdiction over a subsequent transaction. *Thomas P Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) (finding visit to forum concerning prior transaction does not constitute purposeful availment for subsequent transaction); *Sher v. Johnson*, 911 F.2d 1357, 1360-63 (9th Cir. 1990) (communications and meetings in forum did not constitute purposeful availment). Even if the contract at issue was made in California, that does not establish purposeful availment. *Roth v. Garcia*, 942 F.2d 617, 621 (9th Cir. 1991).

Further, Sweeney incorrectly contends that Carter knew he resided in and worked from California. To the contrary, Carter understood that Sweeney was based in New York. Carter Decl. ¶ 7. Sweeney's address, including in legal notices required under Defendants' agreements, was consistently listed as in New York. Harris Decl., Exs. A-O. Although Sweeney purports to live in Malibu, publicly available information consistently lists him as being in New York, and his residence in Malibu was listed for a long-term rental. Williams Decl. ¶¶ 3-7, Exs. A-D.

In any event, not just any agreement between the parties can support specific jurisdiction because Plaintiffs are not complaining about conduct in California, but, instead, a failure by Carter to act under a particular contract. Indeed, failure to perform

evidences the lack of activity in the forum. *Husdon-Munoz, LLC*, 2019 WL 3548919, at *4 (no *prima facie* case of forum activities caused claims).

Plaintiffs also erroneously claim that a separate lawsuit Carter filed in California supports specific jurisdiction over Defendants. That lawsuit was filed by two of the Defendants and is not related to this dispute. Moreover, the UMG and SoundExchange action was not principally litigated in this forum. Shortly after the action was filed, the court stayed it under the *Colorado River* doctrine and that stay was never dissolved. *Young Money Ent. LLC v. Universal Music Group, Inc.*, Case No. 16-cv-2096-GHK-JC (C.D. Cal. filed Mar. 28, 2016). A prior litigation can only support specific jurisdiction where it was "based on the same transaction or ar[ose] out of the same nucleus of operative facts." *Clinton v. Boladian*, No. CV 11-10062-R, 2013 WL 12126107, at *1 (C.D. Cal. May 2, 2013). In other words, when the prior action was a "but for" cause of plaintiff's purported injury. *See Stone v. Advance Am., Cash Advance Centers, Inc.*, No. 08cv1549, 2009 WL 765665 at *7 (S.D. Cal. Mar. 20, 2009).

Here, Plaintiffs have failed to describe how the prior lawsuits involve the same oral contract. The underlying facts of the prior cases are not the "but for" cause of Plaintiffs' injury. Rather, Plaintiffs assert they did not get paid a fee *after* the prior litigation ended. Even if Plaintiffs could satisfy their burden, specific jurisdiction is unreasonable here because the same dispute is being litigated in the NY Action.

## IV.   AT MINIMUM, DISCOVERY AND A HEARING ARE REQUIRED

Absent a jurisdictional dismissal of this action or under the *Colorado River* doctrine, this Court should permit discovery to resolve the dispute over personal jurisdiction. Denying Defendants' motion will not resolve the Defendants' jurisdictional challenge. *Data Disc. Inc. v. Sys. Tech Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977) (plaintiff must establish jurisdiction at trial).

Ordering an evidentiary hearing is within this Court's broad discretion and appropriate here. Otherwise, the parties will be forced to litigate their dispute twice:

1   once in the NY Action and again in the CA Action under the cloud of Defendants'

2   jurisdictional challenge, which if later sustained will prohibit this Court from rendering

3   an enforceable final judgment. *See id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th

4   Cir. 2008) ("[J]urisdictional discovery may be appropriately granted where pertinent

5   facts bearing on the question of jurisdiction are controverted or where a more

6   satisfactory showing of the facts is necessary."). Litigating the same issues not only

7   wastes valuable resources, but substantially prejudices Defendants, who could be

8   subject to a declaration in the NY Action entitling Sweeney to a reasonable legal fee

9   under a voided contract, while Plaintiffs pursue an alternative theory here for the same

10   monies, creating the potential for a double recovery.

11        To obtain jurisdictional discovery, only more than a hunch is needed. *Boscheto*,

12   539 F.3d at 1020. Plaintiffs assert that personal jurisdiction over Defendants exists

13   because Sweeney allegedly worked for Defendants from California. Defendants,

14   however, have presented ample evidence that Sweeney lived and worked from New

15   York, and thus, any purported contract between the parties was substantially

16   performed in New York. At the very least, Defendants should be granted discovery

17   and a hearing.

18   **V.**     **THIS ACTION SHOULD BE DISMISSED OR STAYED**

19        Plaintiffs argue that the *Colorado River* doctrine is inapplicable because the NY

20   Action is not substantially similar to the CA Action. There is no support for this

21   proposition. The NY Action and CA Action concern the same business relationship

22   and the amount of fees, if any, Sweeney is owed. No documents exist showing that

23   Sweeney was anything but Carter's lawyer. Many of the agreements Sweeney

24   negotiated for Carter name Sweeney as a lawyer and use his New York addresses.

25   Plaintiffs received payments from Carter's former business manager, Provident

26   Financial, whom Sweeney hired, which were all documented as legal fees. Beth

27   Sabbagh Decl. ¶¶ 10-19, Ex. A. Those payments are consistent with Sweeney's

28   attempt to obtain from Carter a contingent legal fee contract in 2016, which he wrote

reflected "the same terms" as when he began representing him in "January 1, 2005." Sims Decl., Ex. B at Ex. 4 ¶ 8.

It makes no difference that the NY Action does not characterize the business relationship between the parties in the same way as the CA Action. The actions are substantially similar because the purported oral contract in both litigations concerns the services Sweeney provided to Carter. It is unimportant that the NY Action does not name all the parties Plaintiffs have sued here. Plaintiffs' decision to name additional parties and to mischaracterize the parties' relationship is irrelevant. Exact parallelism between actions is not required and substantial similarity cannot be defeated by tacking on additional defendants. *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989). That there are contradictory allegations reflects a dispute exists, which should be resolved by a New York court and jury. This eighth factor favors invoking the doctrine.

The parties agree that the first factor is irrelevant. As for the second factor, Plaintiffs make the startling statement that no party has a direct connection to New York. This statement is disproven by documentary evidence before this Court showing Sweeney and his purported law firms consistently operated in New York; he lived in a condo he owned in New York while representing Carter; and his fees were paid to a New York bank account belonging to Avant Garde. Sweeney Decl., Ex. G.

The third factor, addressing piecemeal litigation, supports invoking the doctrine. Although Plaintiffs have yet to file a claim in the NY Action, the New York court is already preparing to consider what, if any, monies Plaintiffs are owed under the parties' voided oral contract. Because Sweeney cannot escape being a lawyer, his claims for fees will be addressed in the NY Action under Cal, Bus, & Prof Code § 6147.  If both actions continue, there is a substantial risk of inconsistent rulings.

The fourth, fifth, sixth, and seventh factors support invoking the doctrine. Plaintiffs' argument concerning the fourth factor, *i.e.*, that the CA Action will overtake the NY Action, is unfounded speculation. Even if the fifth factor were "neutral," as

Plaintiffs contend, granting a dismissal or stay would still be appropriate. Plaintiffs make no discernible argument regarding the sixth factor, and there is no reason the New York court cannot adequately protect Plaintiffs' rights. While Plaintiffs contend that forum-shopping (factor seven) is absent because none of the parties has any connection to New York, that is factually incorrect.

In sum, the factors support dismissal or a stay of this action. And Plaintiffs impliedly conceded that this case should be stayed under this Court's inherent powers.

## VI.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(C)

Plaintiffs' voided oral contract is unenforceable under New York and California law. In New York, "a commission sales arrangement that extends beyond the employee's termination or that has no specific time frame has repeatedly been held to be one that cannot be performed within one year." *Rosenthal v. Fonda*, 862 F.2d 1398, 1401 (9th Cir. 1988) (citing cases); Mot. at 20. Sweeney claims a commission in perpetuity. Thus, the contract is within the Statute of Frauds.[2]

Plaintiffs incorrectly assert that their contract falls under the employment at-will exception under California law. *White Lighting Co. v. Wolfson*, 68 Cal. 2d 336, 344, 438 P.2d 345, 350 (1968). But in *White Lighting*, the court emphasized that had the employee been terminated at one year, he would have "completely performed" and the employer's performance would have "consisted of nothing more than compensating [the employee]." *Id.* at 344. Here, it would be impossible for the parties to perform within one year because the alleged terms spanned over ten years. According to Plaintiffs, the oral contract began in 2005, but its terms required

---

[2] To the extent California and New York law differs, New York law applies because that is where the contract was substantially performed. *See Rosenthal*, 862 F.2d at 1401 (finding New York Statute of Frauds applied where Fonda sought out a New York lawyer, and he performed the bulk of the work in New York); Carter Decl. ¶ 7 (Sweeney told Carter he lived and practiced law in New York).

Plaintiffs to manage lawsuits that were not filed until 2014.  CA Compl. ¶¶ 4, 28, 37. Further, Plaintiffs' alleged compensation was tied to Defendants' *contingent* success in external events concerning Carter's entertainment career. Because none of Plaintiffs' case precedents involve *contingent* compensation, but rather, compensation for services provided within one year, Plaintiffs' contract is barred by the Statute of Frauds. Plaintiffs concede that their equitable claims rise and fall with their contract claim, Opp. at 28, thus, they cannot be based on the same unenforceable oral contract.

Plaintiffs incorrectly contend they pled fraudulent inducement by merely alleging "Defendants had no intention of performing [their] promises." CA Compl. ¶ 55. That is not the law. To state fraud, "a plaintiff must allege facts sufficient to show that the defendant never intended to honor the terms of the contract." *Dickerson v. Kaplan*, 763 F. Supp. 694, 701 (E.D.N.Y. 1990); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Courts dismiss fraud claims where, as here, mere intentional nonperformance is alleged. *See*, *e.g.*, *U.S. ex rel. UNITE HERE v. Cintas Corp.*, No. C 06-2413, 2008 WL 1767039, at *9 (N.D. Cal. Apr. 16, 2008).

Finally, Plaintiffs' conclusory allegation of intentional nonperformance lumps all Defendants together and omits necessary details. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Plaintiffs also cannot show justifiable reliance. Mot. at 22. According to Plaintiffs, section 6147 is inapplicable because they provided "management services." Opp. at 31. But the CA Complaint demonstrates that Plaintiffs' rendered legal services. CA Compl. ¶¶ 1, 24, 33. And section 6147 broadly encompasses all "contingent fee arrangements regarding litigation and transactional matters," and provides no exception.  *See Arnall v. Superior Court*, 190 Cal. App. 4th 360, 368 (2010).  Plaintiffs' fraudulent inducement claim must fail.

Dated:  May 24, 2021

**KATTEN MUCHIN ROSENMAN LLP**

By:   /s/ Tami Kameda Sims
Tami Kameda Sims
Attorneys for Defendants

1 | Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
2 | Los Angeles, California 90067-3012
Zia F. Modabber (Bar No. 137388)
3 | zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
4 | tami.sims@katten.com
Tel: (310) 788-4400
5 | Fax: (310) 788-4471
*Attorneys for Defendants Dwayne*
6 | *Michael Carter, Jr. p/k/a Lil Wayne, Young*
*Money Entertainment, LLC, Young Money*
7 | *Publishing, Inc. Young Money Records,*
*Inc. Young Money Ventures, LLC, and*
8 | *Young Money Touring, Inc*

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

| | |
|---|---|
| 12 RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, 13 INC., a California corporation, | Case No.: 2:21-cv-01689-ODW-JC **REMOVED FROM STATE COURT** (Los Angeles Superior Court No. 20STCV47346) |
| 14 Plaintiffs, | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
| 15 vs. | |
| 16 DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; 17 YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; 18 YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG 19 MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY 20 VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY 21 TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | **DECLARATION OF THEODORE HARRIS IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |
| 22 Defendants. | |

23

24

25

26

27

28

DECLARATION OF THEODORE HARRIS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

## DECLARATION OF THEODORE HARRIS

I, THEODORE HARRIS, declare as follows:

1.  I am a partner at Grubman Shire Meiselas & Sacks, P.C. (the "Grubman Firm"), attorneys for Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Mr. Carter") and his business entities, including Young Money Entertainment, LLC, Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc. (collectively, "Moving Defendants").

2.  I am familiar with the matters set forth herein.  I submit this declaration in support of Moving Defendants motion in the above-captioned action, which was filed against them by Plaintiffs Ronald E. Sweeney ("Mr. Sweeney") and Avant Garde Management, Inc. ("Avant Garde" and collectively with Sweeney, "Plaintiffs"), for the following: (a) to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, or alternatively (b) to dismiss or stay the action due to the prior pending New York lawsuit, or alternatively (c) to grant Moving Defendants judgment on the pleadings and to dismiss the Complaint in its entirety.

3.  The Grubman Firm was engaged as Mr. Carter's entertainment lawyers in the Third Quarter of 2018, after Mr. Sweeney was fired as Mr. Carter's entertainment lawyer.

4.  To the best of knowledge, we requested, but did not receive, any of the legal files that Mr. Sweeney created and maintained during his approximately fourteen-year representation of Mr. Carter's personal and business interests.  What files we obtained came from Mr. Carter's managers.  Cortez Bryant was terminated as Mr. Carter's manager in March 2018, but he returned the same year.  During his absence, Jermaine A. Preyan p/k/a Mack Maine managed Mr. Carter alone and then together with Mr. Bryant when he returned.

DECLARATION OF THEODORE HARRIS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

5.  The Grubman Firm maintains copies of Mr. Carter's legal files as part of its normal and regular course of business in serving as Mr. Carter's entertainment lawyers.

6.  From my work as Mr. Carter's entertainment lawyer, I recognize his signature.  Copies of the agreements that we received from Mr. Bryant contain Mr. Carter's signature.

7.  Attached as Exhibits A through O are the pertinent pages from various complete agreements that we received from Mr. Bryant's files, which were either signed or circulated, between the years 2005 and 2018, and in which the listed address for those agreements for Mr. Sweeney or Avant Garde is in New York City:

**Exhibit A** – Amendment between Warner-Tamerlane Publishing Corp. and Dwayne Carter p/k/a Lil Wayne, dated September 2, 2005, designating Mr. Carter's address as "c/o Ron Sweeney, Esq., 222 Riverside Drive, Penthouse 5A, New York, NY 10025."

**Exhibit B** – Inducement Letter, dated October 20, 2008, designating Young Money Entertainment LLC's address as "c/o Law Offices of Ronald E. Sweeney, 222 Riverside Drive, PH5A, New York, New York 10025 Attention: Ronald E. Sweeney, Esq," which is attached to Agreement, dated October 20, 2008, between Young Money Entertainment and Dirty Money Records.

**Exhibit C** – Amendment between Warner-Tamerlane Publishing Corp. and Dwayne Carter p/k/a Lil Wayne d/b/a Young Money Publishing (BMI), dated November 3, 2009, designating Mr. Carter's address as "c/o

DECLARATION OF THEODORE HARRIS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Ron Sweeney, Esq., 222 Riverside Drive, Penthouse 5A, New York, NY 10025."

**Exhibit D** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne d/b/a Young Money Publishing (BMI), dated June 25, 2010, designating Mr. Carter's address as "c/o Ron Sweeney, Esq., 222 Riverside Drive, Penthouse 5A, New York, NY 10025."

**Exhibit E** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne, d/b/a Young Money Publishing (BMI), dated December 7, 2010, designating Mr. Carter's address as "c/o Ron Sweeney, Esq., 222 Riverside Drive, Penthouse 5A, New York, NY 10025."

**Exhibit F** – License of Trademark and Merchandising Rights, dated July 1, 2011, between Bravado International Group Merchandising Services, Inc. and Young Money Merchandising, Inc. designating Young Money Merchandising, Inc.'s  address as "c/o Ronald E. Sweeney, Esq., 1790 Broadway, 10th Floor, New York, New York 10019 Attn: Ronald E. Sweeney, Esq."

**Exhibit G** – Producer Agreement, dated November 15, 2011, between Young Money Entertainment, LLC f/s/o of Dwayne Carter and Timbaland Productions, Inc. f/s/o Timothy Mosley p/k/a Timbaland, designating Young Money Entertainment, LLC's address as "c/o Sweeney, Johnson & Scates, LLC, 152 West 57th Street, 8th Floor, New York, NY 10019."

- 4 -

DECLARATION OF THEODORE HARRIS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

**Exhibit H** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne, d/b/a Young Money Publishing (BMI), dated May 31, 2013, designating Mr. Carter's address as "c/o Sweeney, Johnson & Scates, LLC, 152 West 57th Street, 8th Floor, New York, NY 10019."

**Exhibit I** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne, d/b/a Young Money Publishing (BMI), dated September 27, 2016, designating Mr. Carter's address as "Sweeney, Johnson & Sweeney LLC, 152 West 57th Street, 8th Floor, New York, New York 10019."

**Exhibit J** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne, dated December 21, 2016, designating Mr. Carter's address as "Sweeney, Johnson & Scates, LLC, 152 West 57th Street, 8th Floor, New York, New York 10019."

**Exhibit K** – Operating Agreement of YMROC, LLC between Young Money ROC, LLC and Young Money Ventures, LLC, dated November 8, 2016, designating that copies of notices for Young Money Ventures, LLC be delivered to "Ronald E. Sweeney, Esq., Sweeney, Johnson & Sweeney LLC, 152 West 57th Street, 8th Floor, New York, New York 10019."

**Exhibit L** – Amendment between Warner-Tamerlane Publishing Corp. and Young Money Publishing, Inc. f/s/o Dwayne Carter p/k/a Lil Wayne,

dated March 24, 2017, designating Mr. Carter's address as "Sweeney, Johnson & Scates, LLC, 152 West 57th Street, 8th Floor, New York, New York 10019."

**Exhibit M** – Lil Wayne Distribution Agreement, dated March 30, 2018, between Republic Records, a division of UMG Recordings, Inc. and Young Money Records, Inc., designating Young Money Records, Inc.'s address as "c/o Sweeney, Johnson & Sweeney LLC, 222 Riverside Drive, PH5A, New York, NY 10025."

**Exhibit N** – Settlement Agreement, dated April _, 2018, between Young Money Entertainment, LLC and Dwayne Michael Carter, Jr., on the one hand, and SoundExchange, Inc., on the other, designating the address for Young Money Entertainment, LLC and Mr. Carter as "c/o Ronald E. Sweeney, Esq., 222 Riverside Drive, PHA, New York, NY 10025."

**Exhibit O** – Email chain from Ron Sweeney, dated May 16, 2018, showing an office address at "222 Riverside Drive, New York, New York 10025," and attaching four settlement agreements between Young Money Entertainment, LLC, on the one hand, and the following parties, on the other: The Soundkillers, LLC, Dreshan Smith, Nappy Boy Productions, LLC, and b.I.G.F.A.C.E. Entertainment, Inc. f/s/o Lavell Crump p/k/a David Banner. The latter three agreements designate the address of Young Money Entertainment, LLC as "c/o Ronald E. Sweeney, Esq., Sweeney Johnson & Sweeney, LLC, 222 Riverside Drive, New York, New York 10025."

1     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the

2     foregoing is true and correct.

3     Executed this 24th day of May, 2021, at New York, New York.

4

5

6                                                        _____

7                                                        THEODORE HARRIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THEODORE HARRIS
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

# EXHIBIT A

Case 2:21-cv-01589-CDW-JLC   Document 441-3   Filed 05/24/22   Page 287 of 477 PageID #:1202
SEP-02-05   1:10   From:                                                T-000   P 02/05   Job-162

# WARNER-TAMERLANE PUBLISHING CORP.

c/o Warner/Chappell Music, Inc.
1290 Avenue of the Americas
Twenty-Third Floor
New York, NY 10019

Dated: September 2, 2005

**DWAYNE CARTER p/k/a LIL' WAYNE**
d/b/a _____ (BMI)
c/o Ron Sweeney, Esq.
222 Riverside Drive, Penthouse 5A
New York, NY 10025

Dear Dwayne:

 The following, when signed by you and us, shall constitute an amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (the "Agreement"):



C:\Temp\Windows\August2005 amdv2.doc

# EXHIBIT B

AN AGREEMENT made this 20th day of October, 2008, between Young Money Entertainment, a joint venture between Dwayne Carter and Cash Money Records, Inc. (hereinafter referred to as "Cash Money), located at 1111 Lincoln Rd. 4th Fl, Miami Beach, Florida 33139 (hereinafter referred to as "YME") and Dirty Money Records, Inc c/o Hart Law Group, LLC, 224 West 30th Street, Suite 1210, New York, NY 10001, Attention: Rose Mead Hart (hereinafter collectively and individually referred to as "you").



Date: October 20, 2008


Young Money Entertainment, LLC
c/o Law Office of Ronald E. Sweeney
222 Riverside Drive, PH5A
New York, New York 10025
Attention: Ronald E. Sweeney, Esq.



EXHIBIT C

# WARNER-TAMERLANE PUBLISHING CORP.

c/o Warner/Chappell Music, Inc.
75 Rockefeller Plaza
Eighth Floor
New York, NY 10019

Dated: November 3, 2009

**DWAYNE CARTER p/k/a LIL' WAYNE**
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
222 Riverside Drive, Penthouse 5A
New York, NY 10025

Dear Dwayne:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



LilWayne Nov2009 amdv2.wpd

EXHIBIT D

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
75 Rockefeller Plaza
Eighth Floor
New York, NY 10019

Dated: June 25, 2010

ORIGINAL

**YOUNG MONEY PUBLISHING, INC.**
f/s/o **DWAYNE CARTER p/k/a LIL' WAYNE**
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
222 Riverside Drive, Penthouse 5A
New York, NY 10025

Dear Dwayne:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



Very truly yours,

**WARNER-TAMERLANE PUBLISHING CORP.**

By: _____
SCOTT FRANCIS
President, Warner/Chappell Music &
Chairman & CEO Warner/Chappell Music, U.S.

AGREED AND ACCEPTED:

**YOUNG MONEY PUBLISHING, INC.**

By: _____
An authorized signatory

The undersigned hereby assents to the execution of the foregoing amendment and agrees to be bound thereby, as though he were a party thereto.

AGREED AND ACCEPTED:

By: _____
DWAYNE CARTER p/k/a LIL' WAYNE

LilWayne June 2010 amdV2.wpd

EXHIBIT E

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
75 Rockefeller Plaza
Eighth Floor
New York, NY 10019

ORIGINAL

Dated: December 7, 2010

**YOUNG MONEY PUBLISHING, INC.**
f/s/o **DWAYNE CARTER** p/k/a **LIL' WAYNE**
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
222 Riverside Drive, Penthouse 5A
New York, NY 10025

Gentlemen:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



LilWayne Dec 2010 amdv2.wpd

# EXHIBIT F

LICENSE OF TRADEMARK AND MERCHANDISING RIGHTS

Agreement made as of the 1st day of July, 2011 by and between BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., at 245 Fifth Avenue, 8th Floor, New York, New York 10016 ("BRAVADO") and Young Money Merchandising, Inc. at c/o Law Office of Ronald E. Sweeney, 1790 Broadway, 10th Floor, New York, NY 10019 Attn: Ronald E. Sweeney, Esq. ("Grantor") f/s/o Dwayne Michael Carter, Jr. p/k/a "Lil Wayne" ("Artist").



Bender/Lil Wayne

g11-1316



9.04. All notices required to be given to BRAVADO shall be sent to BRAVADO at its address first mentioned herein, and all royalties, royalty statements and payments and any and all notices to Grantor shall be sent to Grantor at its address first mentioned herein, or such other address as each party respectively may hereafter designate by notice in writing to the other. All notices sent under this agreement shall be in writing and, except for royalty statements shall be sent by registered or certified mail, return receipt requested, and the day of mailing of any such notice shall be deemed the date of the giving thereof (except notices of change of address, the date of which shall be the date of receipt by the receiving party). All notices to BRAVADO shall be served upon BRAVADO to the attention of the CEO with copies to the Vice President, Business and Legal Affairs.



Bender/Lil Wayne                                            g11-1316

# EXHIBIT G

PRODUCER AGREEMENT

AGREEMENT made and entered into as of this 15th day of November, 2011, by and between Young Money Entertainment, LLC ("Company"), f/s/o Dwayne Carter p/k/a "Lil Wayne" ("Artist") c/o Sweeney, Johnson & Scates, LLC, 152 West 57th Street, 8th Floor, New York, NY 10019 and Timbaland Productions, Inc. f/s/o Timothy Mosley p/k/a "Timbaland" ("you" or "Producer"), c/o Davis Shapiro Lewit & Hayes, LLP, 150 South Rodeo Drive, Suite 200, Beverly Hills, CA 90212, Attn: Damien Granderson, Esq.

The parties hereby agree as follows:



1



19.    Notices.

All notices to be given by either party hereunder shall be in writing and shall be delivered by hand or by United States certified mail, postage prepaid, return receipt requested, to the address of each party as first set forth above until notice of a new address shall be duly given. Royalty statements and any payments due hereunder, shall be sent to you at such address by regular mail.

YOUNG MONEY ENTERTAINMENT, INC

By: _____ natory

TIMBALAND PRODUCTIONS, INC.

By: _____
         An Authorized Signatory

10

# EXHIBIT H

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
75 Rockefeller Plaza
Eighth Floor
New York, NY 10019

Dated: May 31, 2013

**YOUNG MONEY PUBLISHING, INC.**
f/s/o DWAYNE CARTER p/k/a LIL' WAYNE
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
Sweeney, Johnson & Scates, LLC
152 W. 57th Street, 8th Floor
New York, NY 10019

Gentlemen:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



1:\Wayne May 2013 amd v2.wpd

# EXHIBIT I

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
1633 Broadway
New York, NY 10019

Dated: September 27, 2016

**YOUNG MONEY PUBLISHING, INC.**
f/s/o **DWAYNE CARTER p/k/a LIL' WAYNE**
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
Sweeney, Johnson & Scates, LLC
152 W. 57th Street, 8th Floor
New York, NY 10019

Gentlemen:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



Very truly yours,

**WARNER-TAMERLANE PUBLISHING CORP.**

By: _____
    Scott McDowell
    Executive Vice President, Head of Legal & Business
    Affairs
    Warner/Chappell Music, Inc.

AGREED AND ACCEPTED:

**YOUNG MONEY PUBLISHING, INC.**

By: _____
    An authorized signatory

The undersigned hereby assents to the execution of the foregoing amendment and agrees to be bound thereby, as though he were a party thereto.

AGREED AND ACCEPTED:

By: _____
    DWAYNE CARTER p/k/a LIL' WAYNE

LilWayne Sept 2016 amd.wpd

EXHIBIT J

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
1633 Broadway
New York, NY 10019

Dated: December 21, 2016

**YOUNG MONEY PUBLISHING, INC.**
f/s/o DWAYNE CARTER p/k/a LIL' WAYNE
d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
Sweeney, Johnson & Scates, LLC
152 W. 57th Street, 8th Floor
New York, NY 10019

Gentlemen:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



Very truly yours,

**WARNER-TAMERLANE PUBLISHING CORP.**

By: _____
Scott McDowell
Executive Vice President, Head of Legal & Business Affairs
Warner/Chappell Music, Inc.

AGREED AND ACCEPTED:

**YOUNG MONEY PUBLISHING, INC.**

By: _____
An authorized signatory

The undersigned hereby essents to the execution of the foregoing amendment and agrees to be bound thereby, as though he were a party thereto.

AGREED AND ACCEPTED:

By: _____
DWAYNE CARTER p/k/a LIL' WAYNE

LilWayne Dec 2016 amd.wpd

# EXHIBIT K

OPERATING AGREEMENT

OF

YMROC, LLC

A DELAWARE LIMITED LIABILITY COMPANY

# OPERATING AGREEMENT
## OF YMROC, LLC
### A DELAWARE LIMITED LIABILITY COMPANY

**OPERATING AGREEMENT** of YOUNG MONEY ROC, LLC (the "**Company**") dated as of November 8, 2016 (the "**Effective Date**") by and between Roc Nation Ventures LLC ("**Ventures**") and Young Money Ventures, LLC  providing the services of Dwayne Michael Carter Jr. p/k/a Lil Wayne ("**LW**").





If to RN:

Roc Nation Records LLC
1411 Broadway
New York, NY 10018
Attn: President

with a copy to:



If to LW:

> Young Money Ventures, LLC
> c/o Provident Financial Management
> 2850 Ocean Park Blvd, #300
> Santa Monica, California 90405

with a copy to:

> Ronald E. Sweeney, Esq.
> Sweeney, Johnson & Sweeney LLC
> 152 West 57th Street, 8th Floor
> New York, New York 10019



# EXHIBIT L

**WARNER-TAMERLANE PUBLISHING CORP.**
c/o Warner/Chappell Music, Inc.
1633 Broadway
New York, NY 10019

Dated: March 24, 2017

**YOUNG MONEY PUBLISHING, INC.**
 f/s/o DWAYNE CARTER p/k/a LIL' WAYNE
 d/b/a YOUNG MONEY PUBLISHING (BMI)
c/o Ron Sweeney, Esq.
Sweeney, Johnson & Scates, LLC
152 W. 57th Street, 8th Floor
New York, NY 10019

Gentlemen:

The following, when signed by you and us, shall constitute a further amendment to the exclusive co-publishing agreement, between you and us, dated as of January 1, 2005 (as amended)(the "Agreement"):



Very truly yours,

**WARNER-TAMERLANE PUBLISHING CORP.**

By: _____
 Scott McDowell
 Executive Vice President,
 Head of Legal & Business Affairs
 Warner/Chappell Music, Inc.

AGREED AND ACCEPTED:

**YOUNG MONEY PUBLISHING, INC.**

By: _____
 An authorized signatory

The undersigned hereby assents to the execution of the foregoing amendment and agrees to be bound thereby, as though he were a party thereto.

AGREED AND ACCEPTED:

By: _____
 DWAYNE CARTER p/k/a LIL' WAYNE

LilWayne March 2017 amd.wpd

# EXHIBIT M

**EXHIBIT A**

**LIL WAYNE DISTRIBUTION AGREEMENT**

This distribution agreement ("**Agreement**") is dated March 30, 2018 (the "**Effective Date**"), and is between Republic Records, a division of UMG Recordings, Inc., at 1755 Broadway, 6th Floor, New York, NY 10019 ("**Republic**" or "**us**"); and Young Money Records, Inc., to furnish the Recordings by Dwayne Carter p/k/a "Lil Wayne" at c/o Sweeney, Johnson & Sweeney LLC, 222 Riverside Drive, PH5A, New York, NY 10025 ("**Artist**" and "**you**").





10. **MISCELLANEOUS**

10.01   All notices given hereunder must be sent to the address for the receiving party first mentioned herein or to such other address designated in a notice delivered in accordance with this paragraph 10.01. All notices to Republic must be addressed to the attention of the EVP, Business and Legal Affairs. To be effective, all notices must be in writing, addressed to the proper party specified above and must be sent by: (a) personal delivery or (b) registered or certified mail (return receipt requested), or (c) receipted courier service. Facsimile and email transmissions will not constitute valid notices hereunder, whether or not actually received. Notices will be deemed given when personally delivered, deposited with the courier service or mailed, all charges prepaid, except that notices of change of address will be effective only after actual receipt.



Ex. A – Lil Wayne Distribution Agreement

# EXHIBIT N

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of April __, 2018, between Young Money Entertainment, LLC, a Delaware limited liability company, and Dwayne Michael Carter, Jr. p/k/a Lil Wayne (collectively, the "Carter Parties" or "YML"), on the one hand, and SoundExchange, Inc., a not-for-profit organization incorporated in Delaware ("SoundExchange"), on the other hand (collectively, "the Parties"). This Agreement is entered into with reference to the following matters:





9.      **Notices.**  Unless otherwise specifically provided in this Agreement, all notices, demands, requests, approvals or other communications (collectively and severally called "Notices") given with respect to this Agreement, shall be in writing, and shall be given at the addresses below by: (1) personal delivery (which form of Notice shall be deemed to have been given upon delivery), (2) or by Federal Express, Express Mail, or private airborne/overnight delivery service (which forms of Notice shall be deemed to have been given upon confirmed delivery by the delivery agency).

**To The Carter Parties:**
Ronald E. Sweeney, Esq.
222 Riverside Drive, PHA
New York , New York 10025

# EXHIBIT O



From: **Ron Sweeney** <ron.sweeney@sjslawcorp.com>
Date: Wed, May 16, 2018 at 10:51 AM
Subject: Fwd: Young Money/Cash Money Producer Settlement Agreements
To: ████████ │ ████████████████████ >
Cc: ████████ │ ██████████████  ████████████████  ███████████

Steve, who should we speak with the arrange for the payment of the attached settlement agreements?

---------- Forwarded message ----------
From: **Ron Sweeney** <ron.sweeney@sjslawcorp.com>
Date: Thu, Apr 5, 2018 at 3:05 PM

Subject: Young Money/Cash Money Producer Settlement Agreements

To: ██████ █ ███████, ██████████, ██████,
█████████ █, ████████████ ████████████

Alasdair, attached please find four (4) proposed settlement agreements that my office negotiated to settle the unpaid producer claims and/or lawsuits related to prior Carter albums. ████████████████████████████
██████████████████████████████████████ I plan to have my client sign each of them unless Universal has an issue. ███████████

--

_____

Ronald E. Sweeney
**Sweeney, Johnson & Sweeney, LLC**
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.

--

_____

Ronald E. Sweeney
**Sweeney, Johnson & Sweeney, LLC**
222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.

--

_____

Ronald E. Sweeney
**Sweeney, Johnson & Sweeney, LLC**

222 Riverside Drive
New York, NY 10025
Phone: (646) 932-2218
*Licensed in California*

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system.

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made and entered into as of this 30th day of March 2018 by and between The Soundkillers, LLC and its members, officers, representatives, agents, principals, partners, independent contractors, attorneys and employees (all collectively referred to as "Plaintiff") and Young Money Entertainment, LLC and its members, officers, representatives, agents, principals, partners, independent contractors, attorneys, employees (all collectively referred to as "Defendant").







The Soundkillers, LLC                    Young Money Entertainment, LLC
("Plaintiff")                            ("Defendant")


By: _____          _____
     *Authorized Representative*              *Authorized Representative*

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (the "Settlement Agreement"), dated as of March 23, 2018 (the "Effective Date") is entered into by and between Dreshan Smith ("Smith"), c/o Brian D. Caplan, Esq., Reitler Kailas & Rosenblatt LLC, 885 Third Avenue, 20th Floor, New York, New York 10022, on the one hand, and Young Money Entertainment LLC ("Young Money"), c/o Ronald E. Sweeney, Esq., Sweeney, Johnson & Sweeney, LLC, 222 Riverside Drive, New York, New York 10025, on the other hand (each a "*Party*" and collectively, the "*Parties*").







YOUNG MONEY ENTERTAINMENT, LLC

_____
DRESHAN SMITH

By: _____

Accepted and Agreed to solely with respect to paragraphs 1(a) and (b) hereof:

UNIVERSAL MUSIC GROUP, INC.

_____

By: _____

3

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT** ("the Settlement Agreement"), dated as of March 23, 2018 (the "Effective Date") is entered into by and between Nappy Boy Productions, LLC (hereinafter "Nappy Boy"), c/o Brian D. Caplan, Esq., Reitler Kailas & Rosenblatt LLC, 885 Third Avenue, 20th Floor, New York, New York 10022 on the one hand, and Young Money Entertainment LLC ("Young Money"), c/o Ronald E. Sweeney, Esq., Sweeney, Johnson & Sweeney, LLC, 222 Riverside Drive, New York, New York 10025, on the other hand. Nappy Boy and Young Money are each a "Party" and collectively, the "Parties."









4

NAPPY BOY PRODUCTIONS, LLC          YOUNG    MONEY    ENTERTAINMENT, LLC

_____          _____

By:                                 By:



                                    ACCEPTED AND AGREED TO SOLELY WITH RESPECT TO PARAGRAPH 2(B) HEREOF:

                                    UNIVERSAL MUSIC GROUP, INC.


                                    _____

                                    By:

5

## Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NAPPY BOY PRODUCTIONS, LLC,      :    Index No. 6566741/2017

               Plaintiff,      :

       -against-      :

YOUNG MONEY ENTERTAINMENT, LLC,      :

           Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF DISCONTINUANCE WITH PREJUDICE

       **PLEASE TAKE NOTICE** that the above-entitled action be and the same is hereby

discontinued with prejudice, without costs to any party against the other.

Dated: March __, 2018

                 REITLER KAILAS & ROSENBLATT LLC

                 By:    _____
                       Brian D. Caplan, Esq.
                 885 Third Avenue, 20th floor
                 New York, New York 10022
                 (212) 209-3050
                 *Attorneys for Plaintiff*

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT** ("the Settlement Agreement"), dated as of March 23, 2018 (the "Effective Date") is entered into by and between b.I.G.F.A.C.E. Entertainment, Inc. f/s/o Lavell Crump p/k/a David Banner (hereinafter "Plaintiff"), c/o Brian D. Caplan, Esq., Reitler Kailas & Rosenblatt LLC, 885 Third Avenue, 20th Floor, New York, New York 10022 on the one hand, and Young Money Entertainment LLC ("Defendant"), c/o Ronald E. Sweeney, Esq., Sweeney, Johnson & Sweeney, LLC, 222 Riverside Drive, New York, New York 10025, on the other hand. Plaintiff and Defendant are each a "Party" and collectively, the "Parties."



Case 2:21-cv-01689-ODW-JC Document 24-1 Filed 04/22/21 Page 61 of 65 Page ID #:556







4

b.I.G.f.a.c.e. ENTERTAINMENT, INC.

_____

By:

YOUNG MONEY ENTERTAINMENT, LLC

_____

By:

ACCEPTED AND AGREED TO SOLELY WITH RESPECT TO PARAGRAPH 2(B) HEREOF:

UNIVERSAL MUSIC GROUP, INC.

_____

By:

5

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
b.I.G.f.a.c.e. ENTERTAINMENT, INC. f/s/o LAVELL
CRUMP p/k/a DAVID BANNER,

                   Plaintiff,

    v.

YOUNG MONEY ENTERTAINMENT, LLC,

                   Defendant.
-------------------------------------------------------------------x

15 CV 5878 (LTS) (FM)

**SATISFACTION OF JUDGMENT**

       WHEREAS, a default judgment was entered in the above-captioned action on September 30, 2016 in favor of plaintiff b.I.G.f.a.c.e. Entertainment, Inc. f/s/o Lavell Crump p/k/a David Banner and against Defendant Young Money Entertainment, LLC, in the amount of $238,367.73; and

       WHEREAS, said judgment with interest and costs thereon having been fully paid, and it is hereby certified that there are no outstanding executions with any Sheriff or Marshall.

       THEREFORE, satisfaction of said judgment is hereby acknowledged and the Clerk of the Court is hereby authorized and directed to make an entry of the full and complete satisfaction on the docket of said judgment.

Dated: New York, New York
      March __, 2018             REITLER KAILAS & ROSENBLATT LLC

                       By:   _____
                            Brian D. Caplan, Esq.
                     885 Third Avenue, 20th floor
                     New York, New York 10022
                     (212) 209-3050
                     *Attorneys for Plaintiff/Judgment Creditor*

6

1  Katten Muchin Rosenman LLP
   2029 Century Park East, Suite 2600
2  Los Angeles, California 90067-3012
   Zia F. Modabber (Bar No. 137388)
3  zia.modabber@katten.com
   Tami Kameda Sims (Bar No. 245628)
4  tami.sims@katten.com
   Tel: (310) 788-4400
5  Fax: (310) 788-4471
   *Attorneys for Defendants Dwayne*
6  *Michael Carter, Jr. p/k/a Lil Wayne, Young*
   *Money Entertainment, LLC, Young Money*
7  *Publishing, Inc. Young Money Records,*
   *Inc. Young Money Ventures, LLC, and*
8  *Young Money Touring, Inc*

9           **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11               **WESTERN DIVISION**

| | |
|---|---|
| 12 RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, 13 INC., a California corporation, | Case No.: 2:21-cv-01689-ODW-JC **REMOVED FROM STATE COURT** (Los Angeles Superior Court No. 20STCV47346) |
| 14 Plaintiffs, | |
| 15 vs. | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
| 16 DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; 17 YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; 18 YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG 19 MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY 20 VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY 21 TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | **DECLARATION OF BETH SABBAGH IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |
| 22 | |
| 23 Defendants. | |

## __DECLARATION OF BETH SABBAGH__

I, BETH SABBAGH, declare as follows:

1. I am a partner at David Weise & Associates ("DWA"), a division of NKSFB, LLC, in Encino, California.

2. I have personal knowledge of, and would be able to testify competently regarding, all of the facts in this declaration, unless stated upon information and belief, and to those matters, I believe them to be true.

3. DWA offers business management and accounting services to businesses and individuals primarily engaged in the entertainment business. DWA offers a range of concierge-style services to meet the lifestyle management needs of enterprising individuals, including some of the world's top artists, performers, athletes, and entrepreneurs, including international performer and recording artist Dwayne Carter, Jr., p/k/a Lil Wayne.

4. I have been employed by DWA for 15 years, and have been a partner since January 2009, which was a date prior to DWA becoming a division of NKSFB, LLC. I became a Certified Public Accountant in 1997, and I have remained in good standing throughout my accounting career. I have worked with legendary musicians and actors to small bands and independent film producers, along with their professional advisers.

5. As a partner, I provide or supervise a range of services, including: (a) managing cash flow; (b) budgeting and projection of expenses; (c) keeping of financial records; (d) depositing of all income sources; (e) managing and monitoring check receipts and bill payments; (f) preparing and filing tax returns; (g) assisting with risk management; and (h) providing estate and debt planning services.

6. Since October 2018, DWA has been responsible for providing business management and accounting services to Mr. Carter and his companies, including Young Money Entertainment, LLC, Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc.

- 1 -

DECLARATION OF BETH SABBAGH
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

7. DWA replaced Provident Financial Management ("Provident"), a recognized business management and accounting firm in New York, Tennessee, and California. Upon information and belief, since approximately 2005, Provident served as Mr. Carter's business management and accounting firm. According to its website, Provident "oversees business and personal financial affairs," providing consultation and advice "in all financial areas including the required day-to-day recordkeeping and bill paying, income collection, investment management, budgeting."

8. When Mr. Carter's business management and accounting work was placed with DWA, Provident turned over to DWA as part of the orderly and expected transition, substantially all of the books, records, and other financial papers that Provident had in its possession concerning Mr. Carter and his businesses. The records DWA received from Provident covered the period between 2005 and part of 2018.

9. I have reviewed the sworn declaration of Ronald E. Sweeney, dated May 17, 2021 ("Sweeney Decl."). In his declaration, Mr. Sweeney states that he "[t]hrough Avant Garde … managed Lil Wayne and his entities" as well as several litigations. Sweeney Decl. at ¶¶ 13, 19. He further states that during his "14 year tenure representing [Mr. Carter and his companies], all of [their] commission payments were paid to Avant Garde." *Id.* at ¶ 13.

10. Under my direction and supervision, I caused a member of DWA's accounting staff to review the books and records prepared by Provident during its tenure as Mr. Carter's business managers and accountants to determine the nature, purpose, and extent of payments Mr. Carter caused to be made to Mr. Sweeney, Avant Garde Management, Inc., or any other person or entity on Mr. Sweeney's behalf.

11. Mr. Sweeney has incorrectly claimed that all payments were made to Avant Garde Management, Inc., and that the purpose of each of those payments was for the rendering of management services on behalf of Mr. Carter and his companies.

DECLARATION OF BETH SABBAGH
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

12.   Between 2005 and 2018, Mr. Carter and his businesses made numerous payments to Mr. Sweeney, Avant Garde, Inc., and Avant Garde Management, Inc.  The payments to those parties were coded with the following descriptions:  "legal fees per agreement," "legal fee commissions," "legal commission" or "legal services" in connection with, among other things, various events, projects, and contracts.

13. Mr. Sweeney apparently contends that because those payments were made by Mr. Carter and his businesses to Avant Garde, Inc. or Avant Garde Management, Inc., that proves the payments were for management services.

14. However, according to his declaration, Mr. Sweeney was "handling and managing multiple aspects of Lil Wayne's personal day-to-day business affairs[,]" which role expanded beginning in 2008.  Sweeney Decl. at ¶ 9.  Thus, assuming these statements to be true, Mr. Sweeney likely directed Provident where to make payments for his services on behalf of Mr. Carter and his business entities.

15.  Little can be determined by merely knowing the recipient of the payment.  Mr. Sweeney's conclusion that the "payee" is proof of the nature of the services is incorrect.  What actually matters is how Provident's accountants coded the payments to Mr. Sweeney and then expensed them on the books, records, and tax returns.

16. Based on DWA's review of all such records, Mr. Sweeney's payments were expensed as legal services between 2005 to 2018, which is consistent with the 10% contingency legal fee that Mr. Sweeney sought to memorialize in a January 1, 2016 unsigned contingency fee contract.  *See* Exhibit A.

17.  That unsigned contingency fee contract states that the terms therein are "the same terms that have applied to our business relationship since our firm first began *representing* you on or about January 1, 2005[.]"  *Id*. at ¶ 8 (emphasis added.)  The conclusion to be drawn from this unsigned contract and the other business records is that Mr. Sweeney was paid only for providing legal services on behalf of Mr. Carter and his business entities.

DECLARATION OF BETH SABBAGH
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

18.  In contrast to the treatment of Mr. Sweeney's payments for legal services, DWA's review of the books, records, and tax returns identified an expense category for management services, which monies were paid to Cortez Bryant and/or Jermaine A. Preyan p/k/a Mack Maine.  Those payments tie out to the management expense deduction taken on the tax returns between 2005 to 2018.

19. DWA has never paid on behalf of Mr. Carter or any of his business entities any management fees of any kind to Mr. Sweeney, Avant Garde, or any entity in which Mr. Sweeney owns or controls.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th  day of May 2021, at  Los Angeles, California.

_____

BETH SABBAGH

DECLARATION OF BETH SABBAGH
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

# EXHIBIT A

Case 1:19-cv-01653-VSB Document 42-3 Filed 05/24/22 Page 2 of 330 PageID #: 667
ID #:1265

# Sweeney, Johnson & Sweeney, LLC

152 W. 57th Street, 8th Floor
New York, New York 10019
Phone: (212) 262-5003
Fax: (917) 591-0323

January 1, 2016

Dwayne Carter p/k/a "Lil Wayne"
c/o Jeffrey Turner, CPA
Provident Financial Management
2850 Ocean Park, Blvd., Suite #300
Santa Monica, CA 90405

Re:     Retainer Agreement

Gentlepersons:

This will set forth the arrangements, to which Dwayne Carter p/k/a "Lil Wayne" ("Artist") (hereinafter referred to herein as, "you" and "your") for yourself and on behalf of any other entities controlled by you, and we have agreed, regarding our firm's acting as legal counsel with respect to those of your activities in the entertainment field. For ease of reference, certain capitalized terms used in this agreement have the following meanings:

A.      "All Your Activities" means all your activities in the entertainment field, including your Music Activities and your Film and Other Activities, for which you ask us to represent you.

B.      "Film and Other Activities" means activities in the areas of film, television, live stage, interactive media, publishing (other than music publishing), merchandising (except as related to Music Activities), commercials and advertisements, and any other non-music entertainment activities. Please note that our services in connection with your Film and Other Activities will not include any production work in connection with any type of film, television, live stage, or other audiovisual production; without limiting the foregoing, our services will not include the negotiation or preparation of contracts with persons providing goods or services for any such film, television, live stage, or other audiovisual production.

C.      "Music Activities" means activities in the areas of recording, songwriting, music publishing, and live concert appearances, as well as merchandising, sponsorship and endorsements related to or arising from activities in those areas. Please note that our services in connection with your Music Activities will include day-to-day legal services necessary to operate your record label, if any, or other music businesses; without limiting the foregoing, our services will include negotiation or preparation of contracts with persons

Case 2:21-cv-01639-ODW-JC Document 44-3 Filed 05/24/22 Page 351 of 477 Page
ID #:1266

signed to, or providing goods or services to, your record label or other music businesses.

**This fee agreement is not set by law; it is subject to negotiation between you and us.**

1. **Percentage Fee Arrangement.** Our fee arrangement is ten percent (10%) of your Gross Compensation arising from your entertainment activities in connection with All Your Activities) that you receive as a result of agreements and arrangements in which we represent you. The particulars of that calculation differ somewhat between (A) Music Activities, and (B) Film and Other Activities. We want to explain precisely how your fees will be calculated depending on the category of activity involved.

    (a)    **Music Activities.** The fee for our services relating to your Music Activities shall be an amount equal to:

        i.    10% of Gross Compensation in respect of your Music Activities paid to you or on your behalf while we represent you. For the sake of clarity, this means that our 10% fee also applies to Gross Compensation that you receive as a result of agreements or arrangements for Music Activities made prior to the time we begin to represent you if you ask us to represent you in connection with such agreements or arrangements (by way of example only, in a renegotiation or providing other advice or counsel).

        ii.    In the event our professional relationship with you terminates, we are also entitled to 10% of Gross Compensation in respect of your Music Activities paid to you or on your behalf within thirty six (36) months after such termination, if such compensation is earned pursuant to (A) agreements for which you asked us to render services and which were entered into while we represent you, or (B) agreements for which you asked us to render services and which were substantially negotiated while we represent you, or (C) agreements entered into prior to the time we begin to represent you, if you asked us to represent you in connection with such agreements.

        iii.    You hereby acknowledge that you have an outstanding balance of legal fees payable to our firm in the amount of $1,586,832 as of October 13, 2015.

    (b)    **Film, Television and all other Activities:** The fee for our services relating to your Film and Other Activities shall be an amount equal to:

        (1) 10% of Gross Compensation in respect of your Film and Other Activities, whenever received or earned by you or on your behalf, with respect to any project, production, or arrangement (or with respect to any increases from a renegotiation) substantially negotiated during the term of our representation.

Case 2:21-cv-01636-JDW Document 442-3 Filed 05/24/22 Page 1 of 382 PageID #: 569
ID #:1267

This differs from our fee arrangement with respect to your Music Activities because our fee for your Film and Other Activities will only apply to those projects, etc., that begin <u>during</u> the term of our representation and <u>not before</u> (unless the project involves a renegotiation of an existing agreement, in which case our fee applies only to the improvements of that agreement).

(ii) In the event our professional relationship with you terminates, we will continue to be entitled to 10% of Gross Compensation received or earned by you or on your behalf from projects, etc., that were initiated during the term of our representation for so long as such projects continue to generate Gross Compensation.

This differs from our fee arrangement with respect to your Music Activities because our fee for your Film and Other Activities, post-termination, does not end after thirty six (36) months.

(c) **Gross Compensation.** "Gross Compensation" means all income of any kind derived from any of your activities in the entertainment business, including all "Gross Compensation" of any production company owned or controlled by you, without the deduction of any cost or expense incurred by you, except as specifically set forth to the contrary below. As used herein, the term "entertainment business" shall include without limitation any and all aspects of the entertainment, motion picture, television, music, recording, publishing, interactive, nightclub, literary and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using your name, photograph, voice, sound effects, likeness, caricatures, biography, talents or materials (collectively, "Name and Likeness"). The term "activities" shall include, without limitation, your activities in any capacity whatsoever in the entertainment business, and shall also include the use of your Name and Likeness. When your Gross Compensation includes consideration other than money, including but not limited to stock options or other equity interests, our share of such interests which are fully vested and freely transferable should be transferred to us as quickly as practicable and you shall pay us 10% of the amounts realized by you (less any carrying costs, option exercise price, costs of registration or sale) with respect to any other interest, whenever in your sole discretion you exercise any options or otherwise convert any such interest into money or any equivalent. Our fee will apply to monies earned by you or by any corporation or other entity through which you may operate, without any doubling up, of course.

2. **Payment.** While we will bill you for our expenses (as described below), we will not ordinarily bill you for our percentage compensation. Rather, we will rely on you to pay our percentage fee promptly after your receipt of compensation without our invoicing you. In this regard, we would like to discuss with you arranging for payment directly from your business manager. Notwithstanding the foregoing, you shall send any third party owing or who may in the future owe you Gross Monies of which our fee applies hereunder an irrevocable letter of direction instructing such third party to pay our fees directly to us. You hereby agree to execute any additional documents that are deemed necessary by any third party engaging your services for such direct payment.

Case 2:21-cv-00268-DWA-JC Document 41-1 Filed 05/29/21 Page 1 of 353 PageID Page 570
ID #:1268

3.      **Calendar Items.** You understand that agreements entered into by you with third parties may require you to give notice, exercise your rights, or make other decisions within certain time periods (for example, granting an approval or consent. or auditing a record or publishing company or motion picture studio to verify the accuracy of royalty statements, or option, extension and exercise dates for rights acquisition agreements). You understand and agree that we shall not be responsible for monitoring those time periods, or any dates or calendar items, on your behalf.

4.      **Excluded Services.** Our firm is not responsible for and will not render legal services with respect to: taxes and tax planning (including ERISA and related matters); securities work; litigation (including injunctions or any other remedies requiring the order of a court); arbitration, administrative, or other similar proceedings; divorce; criminal matters; trademark; bankruptcy; real estate; estate planning or probate; or other matters which are outside our areas of expertise. At your request, we will recommend other counsel to advise you with respect to any such matter; you shall be responsible for all attorneys' fees and costs for such advice (and any such fees and costs paid by you shall not reduce the gross compensation which is subject to the percentage fee arrangement and shall not otherwise reduce the amount owed to us as attorneys' fees). If we are required to assist in any litigation matter, our fee for such assistance will be charged at an hourly rate of $750/hr for Ronald Sweeney; $400/hr for Brandie Johnson; and $250/hr for Justin Sweeney. Any assistance that we provide in connection with any litigation matter shall be subject to        your        request        and        approval.

5.      **Disclaimer of Guarantee.** We have made no promise or guarantees to you about the results of the legal services we perform. Any statements we may make regarding the likely or probable outcome of the services we perform are our good faith estimate of such result, and represent a statement of opinion only, and are not to be construed or interpreted as a promise or guarantee to you. WE CANNOT AND WILL NOT BE RESPONSIBLE FOR ANY PROBLEMS THAT MAY ARISE IN CONNECTION WITH OUR LACK OF KNOWLEDGE OF FACTS, TERMS, PROVISIONS, CONDITIONS, LIMITATIONS, RESTRICTIONS, RIGHTS OR OBLIGATIONS (COLLECTIVELY, "PRIOR INFORMATION") CONTAINED IN AGREEMENTS OR DOCUMENTS OF WHICH WE ARE UNAWARE OR WHICH HAVE NOT BEEN FURNISHED TO US. YOU HEREBY AGREE NOT TO ASSERT ANY CLAIM AGAINST US ARISING OUT OF PRIOR INFORMATION WHICH YOU ALLEGE WAS OR SHOULD HAVE BEEN KNOWN BY US IF AND TO THE EXTENT SUCH PRIOR INFORMATION IS CONTAINED IN ANY AGREEMENTS OR DOCUMENTS OF WHICH WE ARE UNAWARE OR WHICH HAVE NOT BEEN FURNISHED TO US.

6.      **Termination.** Either you or we may terminate this agreement at any time, subject to your obligation to pay our fees as described above; however, if you desire us to do so, we will continue our services with regard to any matter as to which our compensation continues. If our relationship with you terminates, then with respect to any of your files which have not been delivered to you, or to others pursuant to your instructions, we may, at the expiration of five (5) years after such termination, notify you to remove same, at your expense. If you fail to do so within sixty (60) days after such notice, we may destroy all such files. Our notice will be deemed duly given if sent to you, postage prepaid. at your last address furnished to us.

7.      **Arbitration and Waiver of Jury Trial.** Any dispute between you and us (including, without limitation, any individual attorney at our firm) shall be subject to binding and confidential arbitration. This means, among other things, that any dispute (whether in contract, tort or otherwise) based upon, arising out of or relating to this agreement or to the relationship of the parties, our

Case 2:21-cv-06859-DMG-JC Document 24-1 Filed 05/29/22 Page 1 of 154 Page ID #:1269

engagement and/or our performance or failure to perform services is subject to binding and confidential arbitration. Our agreement to arbitrate disputes includes, without limitation (a) disputes relating to legal fees, costs and billing; (b) disputes relating to claims for breach of duty, professional negligence or malpractice; and (c) questions regarding the arbitrability of the underlying dispute, including whether we have agreed to arbitrate the dispute. In respect of any fee disputes, this agreement to binding arbitration is in addition to and is not intended to abrogate either party's right to require a non-binding fee arbitration pursuant to the California Business & Professions Code §§ 6200-06.

The following are the procedural particulars that apply to the arbitration of any dispute between you and us:

iv. The arbitrator shall be a retired California Superior or Appellate Court Judge or Federal Court Judge. All parties are agreeing to pay an equal portion of the arbitrator's fees.

v. The arbitration shall be held in the County of Los Angeles. You and we consent to personal jurisdiction in California and venue in Los Angeles. Any petition to compel arbitration and/or to enforce an arbitration award shall be filed in a competent court in Los Angeles County.

vi. The arbitrator shall determine what, if any, discovery shall be permitted. In this regard, discovery (if any) shall be limited and shall be permitted only upon a showing of good cause.

vii. The arbitration proceedings shall take place in a private (as opposed to public) forum and shall be kept confidential to the greatest extent possible.

viii. Judgment on the arbitrator's award shall be final and binding, and may be entered in any competent court.

AS A PRACTICAL MATTER, BY AGREEING TO ARBITRATE, ALL PARTIES ARE WAVING JURY TRIAL. BY AGREEING TO ARBITRATE, ALL PARTIES ACKNOWLEDGE THAT AN APPEAL OR CHALLENGE OF AN ARBITRATOR'S AWARD MAY OCCUR ONLY UNDER LIMITED CIRCUMSTANCES. THIS AGREEMENT TO ARBITRATE SHALL SURVIVE THE TERMINATION OF OUR REPRESENTATION OR OF THIS AGREEMENT.

8. **Start Date.** This fee arrangement will be effective as of the date hereof. Notwithstanding the foregoing, you hereby acknowledge that the terms set forth herein are the same terms that have applied to our business relationship since our firm first began representing you on or about January 1, 2005.

9. **Conflict of Interests.** Artist hereby acknowledges that we represent other persons and firms engaged in the field of entertainment, and that from time to time conflicts of interest may arise between our clients. If a conflict arises, we will discuss with you at that time an appropriate resolution, which may require you and/or the other client to engage other legal counsel.

The California Rules of Professional conduct also require us to advise you of various existing legal, business, professional and personal relationships which the firm and its attorneys have with executives of companies in the entertainment industry. In this regard, we represent high level executives at companies in the motion picture, television, recording, commercial and other

entertainment related industries in their personal negotiations with their employers, . We also represent other actors, recording artists, songwriters, music producers, motion picture producers, television executive producers, directors, writers and other talent, some of whom may from time to time be involved in the same project as you. If we feel we cannot appropriately represent you due to the nature of our relationship with an executive or other party, we will notify you and with-draw from such matter. Your signature on this letter will constitute your informed written consent to our representation of you notwithstanding our representation of industry executives and other talent.

**We encourage you to consult with independent legal counsel, or other advisors of your choice, to assist you in reviewing this fee arrangement and evaluating the significance of our representation of industry executives and other actors, recording artists and the like.** If you or your advisors have any questions or would like any additional information about these matters, we welcome your call.

If you are agreeable to our fee arrangement, please sign and return two copies of this letter to us in the envelope provided for your convenience. If you have any questions or comments, please contact us as soon as possible. You acknowledge that this letter supersedes any other fee agreement between you and us dated as of the date of this letter.

We look forward to working with you, and to a close and rewarding relationship in the years to come.

Cordially,

**Sweeney, Johnson & Sweeney, LLC**

By: _____
An Authorized Signatory

ACCEPTED AND AGREED:

_____
Dwayne Carter p/k/a "Lil Wayne"

1   Katten Muchin Rosenman LLP
    2029 Century Park East, Suite 2600
2   Los Angeles, California 90067-3012
    Zia F. Modabber (Bar No. 137388)
3   zia.modabber@katten.com
    Tami Kameda Sims (Bar No. 245628)
4   tami.sims@katten.com
    Tel: (310) 788-4400
5   Fax: (310) 788-4471
    *Attorneys for Defendants Dwayne*
6   *Michael Carter, Jr. p/k/a Lil Wayne, Young*
    *Money Entertainment, LLC, Young Money*
7   *Publishing, Inc. Young Money Records,*
    *Inc. Young Money Ventures, LLC, and*
8   *Young Money Touring, Inc*

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

12  | RONALD E. SWEENEY, an individual; | Case No.: 2:21-cv-01689-ODW-JC |
    | AVANT GARDE MANAGEMENT, | **REMOVED FROM STATE COURT** |
13  | INC., a California corporation, | (Los Angeles Superior Court No. 20STCV47346) |
14  | Plaintiffs, | |
15  | vs. | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
16  | DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; | **DECLARATION OF DEREK A. WILLIAMS IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |
17  | YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; | |
18  | YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG | |
19  | MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY | |
20  | VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY | |
21  | TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | |
22  | Defendants. | |

23
24
25
26
27
28

## DECLARATION OF DEREK A. WILLIAMS

I, Derek A. Williams, declare as follows:

1.  I am counsel at Jonathan D. Davis, P.C., attorneys for Defendant Dwayne Michael Carter, Jr. p/k/a Lil Wayne ("Carter") in the lawsuit filed by Carter in January 2019 against Plaintiffs Ronald E. Sweeney ("Sweeney") and Avant Garde Management, Inc. ("Avant Garde" and together with Sweeney, "Plaintiffs") in New York state court (the "New York Action").

2.  I am familiar with the matters set forth herein. I submit this declaration in support of Carter's motion in the above-captioned action: (a) to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, or alternatively (b) to dismiss or stay the action due to the prior pending New York Action, or alternatively (c) to grant judgment on the pleadings and to dismiss the Complaint in its entirety.

3.  In connection with the New York Action, in or around March 2019, I supervised a former associate lawyer employed by Jonathan D. Davis, P.C., who conducted Internet searches on whether Sweeney maintained a New York residence. The search yielded the following documents, true and correct copies of which are attached hereto as Exhibit A, all of which were publicly available on the Internet, which files were then saved and maintained as part of the case files for the New York Action:

- A copy of an Indenture made October 1, 1996, between Kristina Flannagan and Ronald E. Sweeney, for the premises known as 222 Riverside Drive, Unit PH5A, New York, New York 10025;

- A copy of the Notice Under the Condominium Act for Unpaid Common Charges, dated August 26, 2004, identifying Ronald E. Sweeney, as the record owner of Unit PH5A, 222 Riverside Drive, New York, New York 10025;

- A copy of a document from the Office of the City Register showing a lien of common charges on Unit PH5A, 222 Riverside Drive, New York, New York 10025, identified with Ronald E. Sweeney.

- 1 -

DECLARATION OF DEREK A. WILLIAMS

4.   In connection with the New York Action, in or around August 2019, I supervised a former associate lawyer at the firm, who conducted Internet searches on Sweeney.  The search yielded the following screenshots, true and correct copies of which are attached hereto as <u>Exhibit B</u>, all of which were publicly available on the Internet, which files were then saved and maintained as part of the case files for the New York Action (they were also filed as Exhibit F to the declaration of Jonathan Davis, Esq. in the New York Action on August 23, 2019):

- The first screenshot shows a publicly available webpage on the lawyer directory service Avvo for "Ronald Eugene Sweeney" with the location "New York, NY";
- The second screenshot shows the results from the lawyer directory service FindLaw for Ronald E. Sweeney, showing his location as "222 Riverside Dr,  New York NY 10025-6809";
- The third screenshot shows the results of a Google Internet search for Ronald E. Sweeney showing his address as "Riverside Drive, PH5A, New York, New York";
- The fourth screenshot shows a publicly available webpage on the website LinkedIn for "Ron Sweeney, Esq.", listing his location as the "Greater New York City Area" and the affiliation with "Avant Garde Management Inc."

5.   On or about May 23, 2021, I reviewed Sweeney's listing on the California State Bar website showing his address as "31532 Victoria Point Rd, Malibu, CA 90265-2638."  A true and correct copy of the publicly available webpage is attached hereto as <u>Exhibit C.</u>

6.   On or about May 23, 2021, I reviewed the publicly available real estate listings for the Malibu property "31532 Victoria Point Rd, Malibu, CA 90265-2638." True and correct copies of the publicly available listings from the websites realtor.com and Compass.com are attached hereto as <u>Exhibit D</u>.

DECLARATION OF DEREK A. WILLIAMS

7. As reflected in the real estate listings, the Malibu property listing remains "Active," meaning that it is available for rent. Page 2 of the Compass listing states that the "Lease Term" is "1+year." In addition, the Compass listing includes a section titled "Property History for 31532 Victoria Point Road." As reflected in the Compass listing, the residence was also listed for rent in 2019 and 2020 (*see* page 6 of the Compass listing).

8. Attached as <u>Exhibit E</u> is a true and correct copy of a BILLBOARD article, dated August 24, 2019, which recognizes "Ron Sweeney Partner, Sweeney Johnson & Sweeney," as a "Top Music Lawyer 2019[,]" stating: "Lil Wayne's *longtime attorney* … negotiated the rapper's career-changing settlement with Cash Money Records last year …." Ex. E (emphasis added.)

9. Attached as <u>Exhibit F</u> is a true and correct copy of a redacted proposed settlement agreement, prepared by Sweeney, in or around October 2018. Sweeney contended that the proposed document "sets forth the terms for ending my professional relationship with Wayne."

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of May, 2021, at New York, New York.

_____
DEREK A. WILLIAMS

DECLARATION OF DEREK A. WILLIAMS

# EXHIBIT A

REEL 2383 1079

Standard N.Y.B.T.U. Form 8002-8001 — Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (single sheet)
**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY**

**THIS INDENTURE,** made the 1st day of October, nineteen hundred and ninety six

**BETWEEN** Kristina Flanagan, residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

party of the first part, and   Ronald E. Sweeney, residing at
222 Riverside Drive, NY, NY 10025

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

See Schedule A annexed
hereto

From 222 Riverside Dr
Unit 5 A

This is a residential one family dwelling.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

Kristina Flanagan
By Marcia E. Fokas
her attorney in fact

Kristina Flanagan
by Marcia E. Fokas
her attorney in fact



STATE OF NEW YORK, COUNTY OF                    ss:

On the        day of        19       , before me
personally came

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged that
        executed the same.

STATE OF NEW YORK, COUNTY OF                    ss:

On the        day of        19       , before me
personally came

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged that
        executed the same.

STATE OF NEW YORK, COUNTY OF                    ss:

On the        day of        19       , before me
personally came
to me known, who, being by me duly sworn, did depose and
say that    he resides at No.

that    he is the
of
                    , the corporation described
in and which executed the foregoing instrument; that    he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that    he signed h    name thereto by like order.

STATE OF NEW YORK, COUNTY OF                    ss:

On the        day of        19       , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that    he resides at No.

that    he knows
                            to be the individual
described in and who executed the foregoing instrument;
that    he, said subscribing witness, was present and saw
        execute the same; and that    he, said witness,
at the same time subscribed h    name as witness thereto.

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTOR'S ACTS

TITLE NO.    24 599 004

KRISTINA FLANAGAN

TO

RONALD E. SWEENEY

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

*Distributed by*

THE JUDICIAL TITLE INSURANCE AGENCY, INC.
550 MAMARONECK AVENUE
HARRISON, N.Y. 10528
914-381-6700

LOC. VER.
BY ADDRESS

SECTION    4

BLOCK    1253

LOT    1186  1119

COUNTY OR TOWN   NY

Recorded at Request of
CHICAGO TITLE INSURANCE COMPANY

Return by Mail to

Robert Murray, Esq.
270 Madison Ave
NY, NY

Zip No.   10016



JUN 04 '96   09:44 AM   AIRCAST Flanssen   +787 783 6578   Page 1

## SCHEDULE "A"

The Unit designated as Unit No. PHN-5 (hereinafter called "The Unit") in the Building situate at 222 Riverside Drive, Borough of Manhattan, County of New York, City and State of New York, and also designated and described as Unit No. PHN-5 in the Declaration and any amendments thereto establishing THE 222 RIVERSIDE DRIVE CONDOMINIUM (hereinafter called the "Property"), made by the Sponsor under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated May 11, 1989, recorded in the Office of the Register of the City of New York on the 14th day of July 1989, in Reel 1599, Page 829, (hereinafter called the "Declaration") and designated as Block 1253 and Lot 1119 on the tax map of the City of New York and on the Floor Plans of the Building, certified by Frank P. Parisella, Certified Architect, on the 30th day of March, 1989, and filed simultaneously with the Declaration as Map No. 4811 and also filed in the City Registers Office as Condominium Plan Number 847;

The land on which the Building containing the Unit is located and described is set forth on the sheet annexed;

TOGETHER with an undivided 2.0114   percent interest in the common elements of the property (hereinafter called the "Common Elements");

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City of New York, County of New York, State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of West 94th Street with the easterly side of Riverside Drive;

RUNNING thence easterly along the northerly side of West 94th Street, 139 feet 0 inches;

THENCE northerly parallel with the westerly side of West End Avenue, 100 feet 9 inches (100' 0-1/2 inches block standard) to the center line of the block;

THENCE westerly along said center line of block, 50 feet;

THENCE southerly parallel with the westerly side of West End Avenue, 25 feet 1/8 inches (25 feet 2 inches, block standard);

THENCE westerly parallel with the northerly side of West 94th Street, 68 feet 1/2 inches;

THENCE southerly, 1-1/4 inches;

THENCE westerly and again parallel with the northerly side of West 94th Street, 31 feet 3-3/4 inches to the easterly side of Riverside Drive;

THENCE southerly and on a curve to the left having a radius of 500 feet along the easterly side of Riverside Drive, 76 feet 1-3/4 inches (76 feet 1-1/2 inches, block standard) to the corner formed by the intersection of the northerly side of West 94th Street with the easterly side of Riverside Drive, at the point or place of BEGINNING.

REEL 2383 PG 1081

JUN-03-1996  13:42          +787 763 6570          72%          P.01



REEL 2383 PG 1082

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK)


On the 1ST Jay of $OcT$ 1996 before me personally came Marcia E. Fokas, known to me
to be the attorney-in-fact of Kristina Flanagan, the individual described in and who by her said
attorney-in-fact executed the foregoing instrument, and duly acknowledged before me that she
executed the same as the act and deed of Kristina Flanagan therein described, and for the purpose
therein mentioned, by virtue of a power-of-attorney duly executed by the said Kristina Flanagan,
dated June 6, 1996. WHICH POWER WILL BE RECORDED IN THE OFFICER OF THE
REGISTER OF NEW YORK COUNTY SIMULTANEOUSLY HERU WITH.

NOTARY PUBLIC

ROBERT A. FITZGERALD
Notary Public, State of New York
No. 01FI5063558
Qualified in Queens County
Commission Expires 7/22/98





## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2004083000298001001EDBC5

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2004083000298001    Document Date: 08-26-2004    Preparation Date: 08-30-2004
Document Type: LIEN OF COMMON CHARGES
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| BRIDGE SERVICE CORP. | TERI EGAN, LEGAL ASSISTANT |
| 277 BROADWAY, SUITE 510 | KAUFMAN FRIEDMAN PLOTNICKI & GRUN, |
| NEW YORK, NY 10007 | LLP |
| 193-952 | 300 E. 42ND ST. |
|  | NEW YORK, NY 10017 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1253 | 1119 | Entire Lot | PH5A | 222 RIVERSIDE DRIVE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year _____ Reel ___ Page _____ *or* File Number_____

### PARTIES

| PARTY ONE/DEBTOR: | PARTY TWO/SECURED PA: |
|---|---|
| RONALD E. SWEENEY | 222 RIVERSIDE DRIVE CONDOMINIUM |
| 222 RIVERSIDE DRIVE, UNIT PH5A | 222 RIVERSIDE DRIVE |
| NEW YORK, NY 10025 | NEW YORK, NY 10025 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | |
| NYCTA: | $ | 0.00 | Recorded/Filed          09-14-2004 10:48 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2004000570159** | |

Rochelle Patrios

*City Register Official Signature*

BLOCK 1253
LOT 1119

## NOTICE UNDER THE CONDOMINIUM ACT
## FOR UNPAID COMMON CHARGES

To the Clerk of the County of New York, State of New York, and all others whom it may concern:

**PLEASE TAKE NOTICE** that The Board of Managers of 222 Riverside Drive Condominium, located at 222 Riverside Drive, New York, New York, on behalf of the unit owners, as lienor, has and claims, upon information and belief, a lien on the condominium unit described as follows:

(1)  The name and address of the property is:
222 Riverside Drive Condominium, 222 Riverside Drive
New York, New York;  10025

(2)  The reel and page of record of the declaration is:
reel 1599, page 929;

(3)  The name of the record owner of the unit is:
Ronald E. Sweeney;

(4)  The unit designation is: Unit PH5A, Block 1253,
Lot 1119, 222 Riverside Drive, New York,
New York 10025;

(5)  The amount and purpose for which due is:
$21,341.44 for common charges, assessments and late charges due for the period through and including August 1, 2004, plus interest at the highest legal rate from the various due dates;

(6)  The date when due is: from various due dates.

Dated: New York, New York
August 26, 2004

The Board of Managers of 222 Riverside Drive
Condominium, Lienor

By: _____
Ursula Dobson, Assistant Secretary

193-952

## VERIFICATION

STATE OF NEW YORK   )
                    ss.:

COUNTY OF NEW YORK )

Ursula Dobson, being duly sworn, deposes and says:

I am the Assistant Secretary of the Board of Managers of 222 Riverside Drive Condominium.  I
have read the foregoing Notice Under The Condominium Act For Unpaid Common Charges and
I know the contents thereof, and the same is true to my own knowledge, except as to the matters
therein stated to be alleged on information and belief, and as to those matters I believe it to be
true.

The reason why I submit this verification is that I am the Assistant Secretary of the Board of
Managers of 222 Riverside Drive Condominium, and I am familiar with the facts and
circumstances herein.

_____
Ursula Dobson

Sworn to before me on
the 26 day of August 2004

_____
NOTARY PUBLIC

MARTIN G. BROOKS
Notary Public, State of New York
No. 01BR5026965
Qualified in Westchester County
Commission Expires April 25, 2006

STATE OF NEW YORK   )
                    )
COUNTY OF NEW YORK  )

On the ___ day of August in the year 2004 before me, the undersigned, a Notary Public in and

for said State, personally appeared Ursula Dobson, personally known to me or proved to me on

the basis of satisfactory evidence to be the individual whose name is subscribed to the within

instrument and acknowledged to me that she executed the same in her capacity, and that by her

signature on the instrument, the individual, or the person upon behalf of which the individual

acted, executed the instrument.

_____

NOTARY PUBLIC

**MARTIN G. BROOKS**
Notary Public, State of New York
No. 01BR5026955
Qualified in Westchester County
Commission Expires April 25, 2006

New York City Department of Finance
**Office of the City Register**

HELP
[Click help for additional instructions]
Selecting a help option will open new window

**Current Search Criteria:**

**Name:** RONALD E SWEENEY *
**Date:** To Current Date
**Party Type:** All Parties
**Borough/County:** MANHATTAN / NEW YORK
**Document Class:** All Document Classes

# Detailed Document Information

| | | | | | |
|---|---|---|---|---|---|
| **DOCUMENT ID:** | 2004083000298001 | **CRFN:** | 2004000570159 | **COLLATERAL:** | N/A |
| **# of PAGES:** | 4 | **REEL-PAGE:** | N/A-N/A | **EXPIRATION DATE:** | N/A |
| **DOC. TYPE:** | LIEN OF COMMON CHARGES | **FILE NUMBER:** | N/A | **ASSESSMENT DATE:** | N/A |
| **DOC. DATE:** | 8/26/2004 | **RECORDED / FILED:** | 9/14/2004 10:48:08 AM | **SLID #:** | N/A |
| **DOC. AMOUNT:** | $0.00 | **BOROUGH:** | MANHATTAN | | |
| **% TRANSFERRED:** | N/A | **RPTT #:** | N/A | **MAP SEQUENCE #:** | N/A |
| **MESSAGE:** | N/A | | | | |

**PARTY 1**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| SWEENEY, RONALD E | 222 RIVERSIDE DRIVE, UNIT PH5A | | NEW YORK | NY | 10025 | US |

**PARTY 2**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| 222 RIVERSIDE DRIVE CONDOMINIUM | 222 RIVERSIDE DRIVE | | NEW YORK | NY | 10025 | US |

**PARTY 3/Other**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| | | | | | | |

**PARCELS**

| BOROUGH | BLOCK | LOT | PARTIAL | PROPERTY TYPE | EASEMENT | AIR RIGHTS | SUBTERRANEAN RIGHTS | PROPERTY ADDRESS | UNIT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| MANHATTAN / NEW YORK | 1253 | 1119 | ENTIRE LOT | SINGLE RESIDENTIAL CONDO UNIT | N | N | N | 222 RIVERSIDE DRIVE | PH5A | |



| REFERENCES | | | | | | | | REMARKS |
|---|---|---|---|---|---|---|---|---|
| CRFN | DOCUMENT ID | BOROUGH | YEAR | REEL | PAGE | FILE NBR | | |
| | | | | | | | | |

Print    View Document    Search Results    Search Options    Main Options

Go To: Finance Home Page | NYC.gov Home Page | Contact Us | Privacy Policy | Terms of Use

# EXHIBIT B





Google

Ronald E. Sweeney

All    Images    News    Maps    Shopping    More     Settings    Tools

Sign in

About 10,500,000 results (0.46 seconds)

**Ronald E. Sweeney, Esq. | Discography & Songs | Discogs**
https://www.discogs.com › artist › 2532502-Ronald-E-Sweeney-Esq
Explore releases and tracks from **Ronald E**. **Sweeney**, Esq. at Discogs. Shop for Vinyl, CDs and more from **Ronald E**. **Sweeney**, Esq. at the Discogs Marketplace.

**Ron Sweeney | Discography & Songs | Discogs**
https://www.discogs.com › artist › 1776676-Ron-Sweeney ▾
Shop for Vinyl, CDs and more from Ron Sweeney at the Discogs Marketplace. ... **Ronald E**. **Sweeney**, Esq., Ronald Sweeney, Ronald Sweeney, Inc. More Less.

**Ronald E. Sweeney - a New York, New York (NY) Lawyer**
https://pview.findlaw.com › view ▾
Jul 3, 2018 - Sweeney, Ronald E - New York, NY. #Ph5a222 Riverside DrNew York, NY 10025-6809. **Ronald E**. **Sweeney**. Past client? Leave a review.

**Ronald E Sweeney - Property Records Search | RealtyHop**
https://www.realtyhop.com › property-records › search › q=ronald+e+sweeney
Search property records for **Ronald E Sweeney**. Find deeds, titles, and mortgages for individuals.

**How Attorney Ron Sweeney Took Lil Wayne's Career From Legal ...**
https://www.forbes.com › sites › ogdenpayne › 2018/11/13 › inside-the-bu... ▾
Nov 13, 2018 - Attorney **Ron Sweeney** was the spokesperson for Lil Wayne during and ... representing top-tier talent including Eazy **E** and Ruthless Records, ...

**Ronald E Sweeney | Facebook**
https://www.facebook.com › ronald.e.sweeney
**Ronald E Sweeney** is on Facebook. Join Facebook to connect with **Ronald E Sweeney** and others you may know. Facebook gives people the power to share ...

# EXHIBIT C



# The State Bar *of California*

**Ronald Eugene Sweeney #85322**
License Status: Active

Address: Ron Sweeney and Company, 31532 Victoria Point Rd, Malibu, CA 90265-2638
Phone: 646-932-2218 | Fax: Not Available
Email: Ron@RonSweeney.com | Website: Not Available

## More about This Attorney ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|------------------|--------------|-------------------------|
| Present | Active | | |
| 7/9/2008 | Active | | |
| 7/1/2008 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 7/1/2008 | Not eligible to practice law in CA | | Admin Inactive/MCLE noncompliance |
| 3/20/2007 | Active | | |
| 9/16/2005 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 9/16/2005 | Not eligible to practice law in CA | | Admin Inactive/MCLE noncompliance |
| 12/8/2003 | Active | | |
| 9/16/2003 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 10/7/2002 | Active | | |
| 9/4/2002 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 10/19/2001 | Active | | |
| 9/1/2001 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 1/7/2000 | Active | | |
| 8/12/1996 | Not eligible to practice law in CA | | Admin Inactive/MCLE noncompliance |
| 5/17/1979 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2021 The State Bar of California

  

# EXHIBIT D

# realtor.com®

Log In

Sign Up

Advertise

Buy

Sell

Rent

Mortgage

Find Realtors®

My Home

News & Insights

Advertise

‹ | Malibu, CA | ✖ | 🔍 |

By **Tony Mark** with **COMPASS**





VR Tour 

## $35,000 /mo


Map

| **4** beds | **4.5** baths | **3,362** sq ft |

Commute Time  31532 Victoria Point Rd, Malibu, CA 90265

---

 Add Note     Hide    ⇗ Share

Request Details

##  Open House

Due to COVID-19, open house information is uncertain in some areas. Please verify COVID-19 restrictions on open houses with your real estate agent, and local and state mandates.

None at this time

Request a Private Showing

##  Property Details


Type

### Single Family Home

A true oceanfront retreat in the coveted gated community of Victoria Point! This custom home features jaw-dropping 180-degree ocean views from nearly every room and is an idyllic blend of grand entertaining areas, lavish bedrooms, and peaceful spaces to unwind. Incredible indoor/outdoor flow out onto 2 massive decks over sparkling blue waters
Read More ⌄

### Property Features

**Bedrooms**

- Bedrooms: 4

**Bathrooms**

- Total Bathrooms: 5.00

- Full Bathrooms: 4
- 1/2 Bathrooms: 1

**Other Rooms**

Bar, Dining Area, Family Room, Library, Patio Open, Powder, Service Entrance, Sun

See More ⌄

Email Agent

**Local Home Services**
Advertisement

Cable and Internet

Moving? Keep your TV & Internet connected.

PRES


See Offers Now

Financial Services

US Military & Veterans $100K Home Giveaway. See Off. Rules

PRES


Veterans & US Military $100k Homebuyer Giveaway

Moving

Need a Mover? Get Free Moving Quotes and a Cost Estimate

PRES




Get Moving Quotes

✧ Want to buy a home, but can't secure a loan? **Learn about a new path to homeownership**

# $$ Homes for sale with similar monthly payment in 90265







Est. $34,248

32453 Pacific Coast Hwy
7 bd · 9+ ba · 11,001 sq ft



Est. $37,349

23515 Malibu Colony Rd
5 bd · 5 ba · 3,033 sq ft



Est. $34,094

32597 Pacific Coast Hwy
5 bd · 5+ ba · 9,695 sq ft

Approximate monthly payment is an estimate calculated with 20% down and 30 year fixed ⓘ

## Similar rental homes you may like in 90265

$3,395

22147 Pacific Coast Hwy
1 bd · 1 ba · 800+ sq ft

$11,000

3517 Shoreheights Dr
4 bd · 3 ba · 2,564+ sq ft

New

$4,295

20202 Pacific Coast Hwy A|
0 bd · 1 ba

## 🎓 Nearby Schools

Rating*    School Name

7    Juan Cabrillo Elementary School

8    Malibu High School

8    Santa Monica High School

See More ⌄

* School data provided by National Center for Education Statistics, Pitney Bowes, and GreatSchools. Intended for reference only. The
GreatSchools Rating is based on a variety of school quality indicators, including test scores, college readiness, and equity data. To verify
enrollment eligibility, contact the school or district directly.

## Neighborhood

Sponsored by 

31532 Victoria Point Rd is located in the city of Malibu, CA.

$19,000

Median Rental Price

$3,400,000

Median Listing Price

Email Agent

**Explore The Neighborhood**

📞 (855) 928-3308

## Contact this property

Your Name

Email

Phone

Desired move-in date 📅

I'm interested in 31532 Victoria Point Rd

☑ Send me news, tips and promos from realtor.com® using my email.

Email Agent

By proceeding, you consent to receive calls and texts at the number you provided, including marketing by autodialer and prerecorded and artificial voice, and email, from realtor.com and others about your inquiry and other home-related matters, but not as a condition of any purchase. More...

Presented by:

Tony Mark

Brokered by:

COMPASS

(310) 230-5744

| Broker Location: | Malibu, CA |
| --- | --- |
| Data Source: | CLAW |
| Source's Property ID: | 20-643464 |
| Data Source Copyright: | ©1995-2021 The MLS™ All rights reserved. |

# Rentals with Gyms in 90265

New

New

New

23244 W Paloma Blanca Dr, Malibu, CA 90265

23901 Civic Center Way Apt 113, Malibu, CA 90265

3619 Malibu Country 90265

**$35,000**

**$3,900**

**$16,000**

23244 W Paloma Blanca Dr
7 bd • 9 ba • 10,000 sq ft

23901 Civic Center Way Apt 113
2 bd • 2 ba • 1,200 sq ft

3619 Malibu Country Dr
4 bd • 4 ba • 4,168 sq ft

## Pet-Friendly Rentals in 90265



22147 Pacific Coast Hwy, Malibu, CA 90265

23244 W Paloma Blanca Dr, Malibu, CA 90265



Kanan Dume Rd, Ma

**$3,395**

**$35,000**

**$1,800**

Malibu Cove
1 bd • 1 ba • 800+ sq ft

23244 W Paloma Blanca Dr
7 bd • 9 ba • 10,000 sq ft

Kanan Dume Rd
1 bd • 1 ba • 1,100 sq ft

Additional Information About 31532 Victoria Point Rd, Malibu, CA 90265

31532 Victoria Point Rd, Malibu, CA 90265 is going to be the perfect home rental for someone out there, maybe even you! With all the information here on realtor.com®, it is easy to tell if 31532 Victoria Point Rd is the right home for rent for you. However, if you find that 31532 Victoria Point Rd doesn't meet your needs, just keep browsing the listings here on realtor.com®. With thousands of listings across the nation, it is easy to find the house for rent that is perfectly suited for you.

ABOUT US          CAREERS          FEEDBACK          MEDIA ROOM

AD CHOICES          ADVERTISE WITH US          AGENT SUPPORT

PRIVACY / WEBSITE TERMS OF USE          SITEMAP

DO NOT SELL MY PERSONAL INFORMATION

©1995-2021 National Association of REALTORS® and Move, Inc. All rights reserved.

realtor.com® is the official site of the National Association of REALTORS® and is operated by Move, Inc., a subsidiary of News Corp.

Listed By Compass



**$35,000**
Price

| 4 | 4 | 1 | 3,362 |
|---|---|---|---|
| Beds | Baths | 1/2 Bath | $125 / Sq. Ft. |

**31532 Victoria Point Road**
Malibu, CA 90265

| Save | Share |
|------|-------|

## Property Details for 31532 Victoria Point Road

| Status | Active |
|--------|--------|
| MLS # | 20 643464 |

Contact Agent(s)

| | |
|---|---|
| Available Date | - |
| Lease Term | 1+Year |
| Furnished | - |
| Compass Type | Rental |
| MLS Type | Residential Lease |
| Year Built | 1979 |
| Lot Size | 0.21 AC / 9,256 SF |
| County | [Los Angeles County](#) |
| Zoning | LCR1* |
| Style | See Remarks |
| Year Built Numeric | 1979 |

# Listing Agents

**Tony Mark**
Listing Agent
Compass
DRE #01205648

tonymark@compass.com
P: 310.457.6275

**Russell Grether**
Alternative Listing Agent
Compass
DRE #01836632

russell@compass.com
P: 310.994.4247

Email All Agents

# Location

Malibu ‣ 90265 ‣ Malibu Beach ‣ 31532 Victoria Point Road

Contact Agent(s)

Listing Courtesy of Compass, Tony Mark, DRE #01205648; Compass, Russell Grether, DRE #01836632

## Description

A true oceanfront retreat in the coveted gated community of Victoria Point! This custom home features jaw-dropping 180-degree ocean views from nearly every room and is an idyllic blend of grand entertaining areas, lavish bedrooms, and peaceful spaces to unwind  Incredible indoor/outdoor flow out onto 2 massive decks over sparkling blue waters with a heated spa and direct access to the sand on a very private stretch of western Malibu. The incredible master suite boasts an expansive bathroom with a...

Continue Reading ▾

## Building Information for 31532 Victoria Point Road

| Building/Complex | 31532 Victoria Point Rd |
|---|---|
| Floor | - |
| Stories | 3 |
| Residences | - |
| Pet Policy | - |
| Year Built | 1979 |
| Lot Size | 0.21 AC / 9,256 SF |

Contact Agent(s)

## Summary

### Location and General Information

- · Directions: PCH to Broad Beach Road to Victoria Point Road to Address.
- · Year Built Source: Vendor Enhanced
- · Zip 4: 2638
- · View Description: **White Water, Ocean**
- · View: Yes
- · City: Malibu
- · Zip Code: 90265
- · County Or Parish: Los Angeles
- · Street Number Numeric: 31532
- · Street Name: Victoria Point
- · State: CA

### Parking

- · Covered Parking: 2
- · Parking Garage: **Attached, Garage - 2 Car**

## Property

### Property and Assessments

- · Assessor Parcel Number: 4470-017-030
- · Disclosures: As Is
- · Source Living Area: Vendor Enhanced
- · Source Lot Size Area: Vendor Enhanced
- · Source Lot Size Dimensions: Vendor Enhanced
- · Number Of Photos: 41

### Lot Information

- · Building Type: Detached
- · Area: Malibu Beach (C32)
- · Lot Acreage: 0.2125
- · Lot Size Dimensions: 63x150
- · Service Level: Full Service
- · Living Area: 3362
- · Lot Size Area: 9256

Contact Agent(s)

## Utilities

· Amenities: None
· Laundry: Individual Room
· Pool Description: None

## Interior and Exterior Features

### Exterior Features

· Den: No
· Pool: No

### Interior Features

· Bath One Quarter: 0
· Baths Total: 5.0
· Bath Three Quarter: 0.0
· Common Walls: Detached/No Common Walls
· Cooling: Air Conditioning
· Equipment: **Dishwasher, Freezer, Range/Oven, Refrigerator**
· Flooring: **Tile, Wood**
· Furnished: Furnished
· Heating: Central
· Number Of Stories: 3
· Number of Full Bathrooms: 4
· Number of Half Bathrooms: 1
· Beds Total: 4

### Room Information

· Guest House: None
· Maids Room: false
· Fireplace Rooms: **Family Room, Master Bedroom**
· Family Room: 1
· Dining Room: 0
· Rooms: **Bar, Dining Area, Family Room, Library, Patio Open, Powder, Service Entrance, Sun**

## Multi Family

Contact Agent(s)

**Rental**

**Rental Information**
- ·   Lease Option: false
- ·   Tenant Pays: Cable TV, Electricity, Gas, Trash Collection, Water
- ·   Pets Allowed: Call

## Property History for 31532 Victoria Point Road

| Date | Event & Source | Price |
| --- | --- | --- |
| 10/07/2020 | Listed (Active) CLAW #20-643464 | $35,000 |
| 10/07/2020 | Listed (Active) CRMLS #20643464 | $35,000 |
| 12/01/2019 | Expired CRMLS #19473436 | $39,950 |

View More ▾

For completeness, Compass often displays two records for one sale: the MLS record and the public record.

## Schools near 31532 Victoria Point Road

| All | Elementary | Middle | High |
| --- | --- | --- | --- |

Juan Cabrillo Elementary School
K-5, 2.0 mi, Public      7

Malibu High School
6-12, 2.1 mi, Public      8

Contact Agent(s)

Santa Monica-Malibu Adult

22.1 mi, Public

**View more** ▾

School ratings and boundaries are provided by GreatSchools.org and Pitney Bowes. This information should only be used as a reference. Proximity or boundaries shown here are not a guarantee of enrollment. Please reach out to schools directly to verify all information and enrollment eligibility.

## More information about 31532 Victoria Point Road, Malibu, CA 90265

31532 Victoria Point Road is available for rent in Malibu, CA 90265. This property was listed on October 7, 2020 by Compass at $35,000. This listing's school district is Santa Monica-Malibu Unified School District. Nearby schools include Juan Cabrillo Elementary School, Malibu High School and Santa Monica Alternative (K-8) School. 31532 Victoria Point Road is a 4-bed, 4.5-bath, 3,362 sqft a property built in 1979. This address can also be written as 31532 Victoria Point Rd.

All data, including all measurements and calculations of area, is obtained from various sources, is approximate, and has not been, and will not be, verified by broker or MLS. All information should be independently reviewed and verified for accuracy. No guarantee, warranty or representation of any kind is made regarding the completeness or accuracy of such measurements and Compass expressly disclaims any liability in connection with such measurements.
Listing Courtesy of Compass, Tony Mark, DRE #01205648; Compass, Russell Grether, DRE #01836632
Based on information from one of the following Multiple Listing Services: CRMLS, CLAW, I-Tech, ROWMLS, GPSMLS, SDMLS, VCRDS/PFAR, Idyllwild Association of Realtors and/or AVMLS. Information being provided is for the visitor's personal, noncommercial use and may not be used for any purpose other than to identify prospective properties visitor may be interested in purchasing. The data contained herein is copyrighted by CRMLS, CLAW, I-Tech, ROWMLS, GPSMLS, SDMLS, VCRDS/PFAR, Idyllwild Association of Realtors and/or AVMLS is protected by all applicable copyright laws. Any dissemination of this information is in violation of copyright laws and is strictly prohibited. Property information referenced on this web site comes from the Internet Data Exchange (IDX) program of the MLS. This web site may reference real estate listing(s) held by a brokerage firm other than the broker and/or agent who owns this web site. For the avoidance of doubt, the accuracy of all information, regardless of source, is deemed reliable but not guaranteed and should be personally verified through personal inspection by and/or with the appropriate professionals.

Company

Explore

Mobile Apps

About Us

Concierge

Compass iOS App

Contact Agent(s)

Contact Us

Offices

Agent Experience

Newsroom

Find an Agent

Mortgage Calculator

Compass Academy

Compass Cares

Neighborhood Guides

New Development

Commercial

Sports & Entertainment

Market Research

Collections

Terms of Service, Privacy Policy, Responsible Disclosure, Notice for California Applicants, and California COVID-19 Rules of Entry

COMPASS, the Compass logo, and other various trademarks, logos, designs, and slogans are the registered and unregistered trademarks of Compass, Inc. dba Compass in the U.S. and/or other countries.

Corporate Responsibility, Privacy & Legal Notices: Compass is a licensed real estate broker, licensed to do business as Compass RE in Delaware, New Jersey, Pennsylvania and Tennessee, and Compass Real Estate in Washington, DC. California License # 01991628, 1527235, 1527365, 1356742, 1443761, 1997075, 1935359, 1961027, 1842987, 1869607, 1866771, 1527205, 1079009, 1272467. No guarantee, warranty or representation of any kind is made regarding the completeness or accuracy of descriptions or measurements (including square footage measurements and property condition), such should be independently verified, and Compass expressly disclaims any liability in connection therewith. No financial or legal advice provided. Equal Housing Opportunity. © Compass 2021. 212-913-9058.

Texas Real Estate Commission Information About Brokerage Services
Texas Real Estate Commission Consumer Protection Notice

New York State Fair Housing Notice

Sitemap | Recently Sold Homes

Contact Agent(s)

# EXHIBIT E

## BACKSTAGE PASS / Top Music Lawyers 2019

### Stephen E. Sessa
**Co-chair of the entertainment and media group, Reed Smith**
WHITTIER LAW SCHOOL



### Ed Shapiro
**Partner, Reed Smith**
BROOKLYN LAW SCHOOL

Shapiro, 42, helped negotiate Rihanna's groundbreaking partnership with luxury goods company LVMH, including her Savage X Fenty Lingerie line and Fenty Beauty. He also counts Mariah Carey, SZA, Lord Huron, Romeo Santos and Kesha among his clients. When big music publishing song-catalog deals happen, Sessa, 51, is often involved. One example: He shopped the Stargate catalog of writer-producers Tor Erik Hermansen and Mikkel Eriksen, a deal believed to be worth $65 million. His other corporate clients include Concord Music, Round Hill, Roc Nation and the three major music publishers, while creative clients include Meek Mill, Lil Uzi Vert, Kesha, James Fauntleroy, Linda Perry, Blackpink/YG Entertainment, Glen Ballard, Neal Schon and songwriting duo Cynthia Weil and Barry Mann.

### Simran Singh
**Founder/managing partner, Singh Singh & Trauben**
UNIVERSITY OF MIAMI SCHOOL OF LAW

Singh, 40, who began his career as an intern at Universal Music Group (and later became an in-house counsel at UMG in Miami), now works closely with established and up-and-coming Latin urban acts, including Daddy Yankee, Anuel AA, Natti Natasha and Chris Jeday, as well as mainstream artists like Missy Elliott and Tyga. "I am most proud [of] representing the movement of Latino music culture," he says, "and negotiating unprecedented deals for my Latin clients in both the music and motion picture industries."

**FREE LEGAL ADVICE**
"Do not be dependent on other people to make you a star. Do it yourself, and build a strong team around you. My most successful clients did it that way."

### Rachel Stilwell
**Founder, Stilwell Law**
LOYOLA LAW SCHOOL

A former radio promotion executive, Stilwell, 52, has come full circle in her work on behalf of the coalitions musicFIRST and Future of Music, fighting against further radio ownership deregulation. Shrinking playlists resulting from broadcast chain consolidation is not in the public interest, says Stilwell, whose clients also include The Latin Recording Academy, the RIAA, the American Association of Independent Music (A2IM), the American Federation of Musicians and SAG-AFTRA. "It's the [Federal Communication Commission's] responsibility to promote viewpoint diversity, including viewpoints by musicians," she says. "We're here to make sure that happens."

**RECENT MEMORABLE CONCERT**
"The Grammy Salute to Music Legends. Lalah and Kenya Hathaway knocked it out of the park in their musical tribute to their father, Donny Hathaway. Seeing Parliament-Funkadelic was amazing."

### Jonathan Sperling
**Partner, Covington & Burling**
HARVARD LAW SCHOOL

"We now represent every major record label and every major music publisher," says Sperling, 48, who recently marked 20 years as a trial lawyer.



Sessa

Shapiro

Singh

Stilwell

Sperling

Sweeney

On behalf of over 50 labels and publishers, Sperling in March led the copyright infringement suit against Charter Communications, an internet service provider, and defended Sony Music in a class-action suit led by Ricky Nelson's estate challenging how the label calculates royalties for its artists.

**DEAL POINT HE WOULD LIKE TO SEE**
"Who gets to monetize the data from an artist's website or a streaming service's data with respect to user preferences and activity around music that copyright holders own? Data rights are not thought about enough. The music industry overall is a bit behind on that."

### Ron Sweeney
**Partner, Sweeney Johnson & Sweeney**
UNIVERSITY OF SOUTHERN CALIFORNIA GOULD SCHOOL OF LAW

Lil Wayne's longtime attorney, Sweeney, 65, negotiated the rapper's career-changing settlement with Cash Money Records last year, which also secured him ownership of his own music moving forward, as well as his stake in his Young Money imprint, to which Drake and Nicki Minaj are signed. "The whole lawsuit wasn't just Lil Wayne and Tha Carter V. It was really about the Young Money assets," says Sweeney. "The settlement is going to be written in the history books because of the magnitude of the whole thing."

**FREE LEGAL ADVICE**
"Learn how to count. Yes, you want to be a star, but this is a business. So you should learn how to count, and make sure you've got people around you that know how to count. That's going to make the difference."

### Alex Weingarten
**Partner, Venable**
GEORGETOWN UNIVERSITY LAW CENTER

Weingarten, 45, represented Tom Petty's daughters Adria Petty and Annakim Violette in a dispute with Petty's widow, Dana York Petty, over management of the late rocker's estate. He worked with Woodstock co-founder Michael Lang in various efforts to "keep the legendary festival alive," he says, after its financial backer, the live-event division of advertising giant Dentsu Aegis, announced in April it was canceling the 50th-anniversary event.

**DEAL POINT HE WOULD LIKE TO SEE**
"A clear definition of the fiduciary relationship between the artist and 'manager' in a 360 deal. The lines have blurred between manager and label, and now labels are taking more and more money from artists for wearing different hats."

### Leslie Zigel
**Chairman, entertainment, media and technology group; Greenspoon Marder**
UNIVERSITY OF MIAMI SCHOOL OF LAW

Zigel, 56, represented longtime client Pitbull in his investment and branding partnership with new boxing fitness chain GRIT BXING and in a voice-over deal for the animated film UglyDolls. He negotiated the reunion tour for Wisin & Yandel and a role in Empire for R&B star Mario. And Zigel found time to play more than 20 gigs with Spiral Light, his Grateful Dead tribute band.

**FREE LEGAL ADVICE**
"Perform live as much and as often as possible, and tour whenever you can. Connecting with fans live accomplishes two things: It engages your fan base to be invested in your career, and it improves your performance chops, which are necessary for a long-term career."





Singh (right) with client Brytiago outside Capitol Records in Hollywood.

### Adam Zia
**Partner, The Zia Firm**
FORDHAM UNIVERSITY SCHOOL OF LAW

Zia, 40, this year marked the fifth anniversary of his firm and last year celebrated client Starrah's ASCAP songwriter of the year honor, as the co-writer of two Hot 100 No. 1 hits, Camila Cabello's "Havana" and Maroon 5's "Girls Like You." "I've worked with Starrah since the start of her career," says Zia, who also represents French Montana, Rich the Kid and Tierra Whack. "Watching Starrah evolve into a songwriting superstar is why I got into this business."

**FREE LEGAL ADVICE**
"Find a team you can trust unconditionally — from your manager to [your] lawyer to [your] business manager to your friends. It's a tough business, but if you have people behind you that you trust and value their opinion, it can relieve some of the stress of the business side of it." ◉



Weingarten



Zigel

Zia

*Contributors* Rich Appel, Steve Baltin, Jeff Benjamin, Dean Budnick, Ed Christman, Leila Cobo, Danica Daniel, Camille Dodero, Thom Duffy, Adrienne Gaffney, Gary Graff, Andrew Hampp, Cherie Hu, Hannah Karp, Gil Kaufman, Steve Knopper, Carl Lamarre, Robert Levine, Geoff Mayfield, Matt Medved, Taylor Mims, Gail Mitchell, Melinda Newman, Paula Parisi, Chris Payne, Bryan Reesman, Craig Rosen, Claudia Rosenbaum, Dan Rys, Richard Smirke, Eric Spitznagel, Colin Stutz, Andrew Unterberger, Deborah Wilker, Nick Williams

Methodology: Billboard's Top Music Lawyers for 2019 were chosen by editors based on factors including, but not limited to, nominations by peers, colleagues and superiors at selected major music companies, law firms and music publishers, law schools, and in addition to nominations, editors weigh impact on consumer behavior as measured by such metrics as chart, sales and streaming performance from Nielsen Music; social media impressions; career trajectory; and overall impact on the music industry, using data available as of May 13. Top Music Law Schools are chosen from among those with the most alumni included on the Top Music Lawyers list.

EXHIBIT F

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of October 15, 2018, between Young Money Entertainment, LLC, a Delaware limited liability company, Young Money Records, Inc., Young Money Touring, Inc., Young Money Publishing, Inc. and Dwayne Michael Carter, Jr. p/k/a Lil Wayne (collectively, the "Carter Parties"), on the one hand, and Avant Garde Management, Inc., Sweeney, Johnson, and Sweeney, and Ronald E. Sweeney, on the other hand (collectively, "Sweeney").  This Agreement is entered into with reference to the following matters:

## **RECITALS**

A.      On or about February 1st, 2005, the Carter Parties retained the services of Ronald E. Sweeney to represent all of their entertainment activities in the music and entertainment business.  Sweeney has continuously represented the Carter Parties for over thirteen (13) years.

B.      The Carter Parties agreed to pay, as compensation to Sweeney the sum of ten percent (10%) of any and all deals in which Sweeney negotiated on its behalf.  It was understood that the Carter Parties could terminate the agreement at any time but Sweeney would be paid for the balance of any deals entered into prior to the termination of his services.  In addition to negotiating the deals, Sweeney handled the day to day affairs of the Carter Parties including coordination of litigation matters and Sweeney has been paid in this manner for the last thirteen (13) years.

C.      On September 18th, 2018, the Carter Parties notified Sweeney that it was terminating his services.  As part of ending the relationship, certain deals that Sweeney negotiated requires payments to be made in the future.  Additionally, past unpaid commissions, that are payable to Sweeney are also at issue
.
D.      During 2013, the Carter Parties entered into a contractual dispute with Cash Money Records.  Sweeney on behalf of the Carter Parties directed the litigation against Cash Money and after four (4) years the Carter Parties entered into a settlement on March 30, 2018 with Cash Money and Universal, a copy of which is attached hereto and made a part hereof.

E.      The Carter Parties simultaneously also entered into a settlement agreement with SoundExchange as a part of the overall settlement with Cash Money and Universal Music.

F.       Sweeney also negotiated a tour deal with Live Nation and a publishing deal with WarnerChappell Music for the Carter Parties.

G.      The Parties mutually desire to enter into this Agreement pursuant to which the Parties, finally or forever settle their claims and disputes, except as reserved herein.

1

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated herein as if recited in full and made a part of this Agreement, and in consideration of the terms, conditions and covenants set forth herein, and other good and valuable consideration, receipt of which is hereby acknowledged, the Parties hereto agree as follows:

1.    **Distribution of Past Commissions and Costs.**  The total past due commissions due Sweeney is 

2.    **Young Money Cash Money Settlement and Distribution Agreement.**  The Carter Parties acknowledge that Sweeney is entitled to ten percent (10%) of any and all monies otherwise due The Carter Parties under the terms of the settlement and distribution agreements.

3.    **SoundExchange Settlement.** The Carter Parties acknowledge that Sweeney is entitled to ten percent (10%) of any and all monies otherwise due the Carter Parties under the terms of the SoundExchange Settlement agreement.

4.    **Live Nation/Al Haymon Tour Deal.** The Carter Parties acknowledge that Sweeney is entitled to ten percent (10%) of the next tour advance per the touring agreement that he negotiated on behalf of the Carter Parties.  The amount is

5.    **Young Money/WarnerChappell Publishing Deal.**  The Carter Parties acknowledge that Sweeney is entitled to ten percent (10%) of any and all monies payable under the publishing deal until 24 months after the release of Carter VI.

6.    **General Release of Claims.**  As of the effective date of this Agreement, the Carter Parties and Sweeney each hereby release and discharge the other and each of its/their principals, heirs, executors, agents, accountants, employees, attorneys, administrators,

affiliates, divisions, officers, directors, subsidiaries, licensees, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever in law or equity, which either has or may have against the other, or its principals, heirs, executors, agents, employees, attorneys, administrators, successors and assigns ever had, now have or hereafter have or hereafter can, shall or may have for, upon, or by reason of, arising out of or related to the claims asserted, or which could have been asserted in, without limitation, the Actions from the beginning of the world to the date of this Agreement.

7.      **Release of Unknown Claims.**  As of the effective date of this Agreement, the Carter Parties and Sweeney intend that the releases herein shall be effective as a bar to any and all claims of every character, nature and kind, known or unknown, suspected or unsuspected.  In furtherance of this intention, the Parties expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code, which provides as follows:

**CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Accordingly, if the facts relating in any manner to this Agreement are found hereafter to be other than or different from the facts now believed to be true, the release of claims contained herein shall be effective as to all unknown claims.

8.      **Notices.**  Unless otherwise specifically provided in this Agreement, all notices, demands, requests, approvals or other communications (collectively and severally called "Notices") given with respect to this Agreement, shall be in writing, and shall be given at the addresses below by: (1) personal delivery (which form of Notice shall be deemed to have been given upon delivery), (2) or by Federal Express, Express Mail, or private airborne/overnight delivery service (which forms of Notice shall be deemed to have been given upon confirmed delivery by the delivery agency).

**To The Sweeney Parties:**
Ronald E. Sweeney, Esq.
222 Riverside Drive, PHA
New York , New York 10025

**To Carter Parties:**

3



**With Copies To:**

9.    **Waiver, Modification and Amendment.** No provision of this Agreement may be waived until it is done so in writing and signed by all Parties hereto. Waiver of any one provision herein shall not be deemed to be a waiver of any other provision herein. This Agreement may be modified or amended only by a written agreement executed by all of the Parties.

10.    **Applicable Law, Jurisdiction and Enforcement.** This Agreement shall be construed in accordance with, and governed by the laws of the State of California without giving effect to the choice of law principles of California or of any other jurisdiction, and the exclusive forum for adjudication of any disputes arising under or regarding the provisions, meaning or intent of this Agreement, or between the Parties, shall be the state or federal courts in Los Angeles County, California, and all Parties agree to submit to the jurisdiction of such courts.

11.    **Titles and Captions.** Paragraphs, titles and captions contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision herein.

12.    **Construction of Agreement.** The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against either of the Parties. The Parties acknowledge that each was represented by counsel in the negotiation of this Agreement and that this Agreement was drafted jointly by such counsel, and accordingly no provision shall be construed against the interest of a Party on the basis that such provision was proposed or drafted in any iteration of the drafting of the Agreement by any particular Party.

13.    **Severability.** Should any provision of this Agreement be declared or held invalid, the invalidity as to that one provision shall not affect the validity of the remaining provisions, which shall be deemed to remain in full force and effect.

14.    **Entire Agreement.** This Agreement, and any and all prior discussions, negotiations, commitments and understandings related to the matters addressed here are hereby merged herein. No representations or assurances, oral or otherwise, expressed or implied, other than

4

those contained herein have been made by any Party hereto. No other agreements between the parties not specifically referred to herein, oral or otherwise shall be deemed to exist or to bind any of the Parties hereto.

15.     **Execution.** This Agreement may be executed in counterparts, all of which taken together shall represent one document. All counterparts when executed shall constitute one agreement binding on all Parties. This Agreement may be executed by facsimile signature or by signature transmitted by e-mail (*e.g.,*pdf), each of which shall be deemed an original signature. A faxed or digital copy (*e.g.,*pdf) of this Agreement shall have the same force and effect as an original.

IN WITNESS WHEREOF, the undersigned hereby agree to the terms, conditions and covenants set forth above by their respective signatures in the appropriate spaces below, as of the date first above-written.

RONALD E. SWEENEY                         DWAYNE MICHAEL CARTER, JR.

_____                 _____

AVANT GARDE MANAGEMENT, INC               YOUNG MONEY ENTERTAINMENT, LLC

By:_____                By:_____

Its_____                Its:_____


SWEENEY, JOHNSON, & SWEENEY               YOUNG MONEY RECORDS, INC.

By:_____                By:_____

Its:_____               Its:_____


YOUNG MONEY PUBLISHING, INC.              YOUNG MONEY TOURING, INC.

By:_____                By:_____

 Its:_____              Its:_____

# EXHIBIT 5

1   Edwin F. McPherson – State Bar No. 106084
      emcpherson@mcpherson-llp.com
2   Pierre B. Pine – State Bar No. 211299
      ppine@mcpherson-llp.com
3   **McPHERSON LLP**
    1801 Century Park East
4   24th Floor
    Los Angeles, CA 90067
5   Tel:(310)553-8833
    Fax:(310)553-9233
6
    Attorneys for Plaintiffs RONALD E. SWEENEY
7     and AVANT GARDE MANAGEMENT, INC.

8

9                **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  RONALD E. SWEENEY, an individual;    )   CASE NO. 2:21-cv-01689-ODW-JC
    AVANT GARDE MANAGEMENT,              )
13  INC., a California corporation,      )
                                         )   **JOINT RULE 26(f) REPORT OF THE**
14            Plaintiffs,                )   **PARTIES**
                                         )
15       v.                             )
                                         )   **Scheduling Conference**
16  DWAYNE MICHAEL CARTER JR.            )   Date:  June 21, 2021
    p/k/a LIL WAYNE, an individual;      )   Time: 1:30 p.m.
17  YOUNG MONEY ENTERTAINMENT            )   Crtrm: 5D
    LLC, a Florida limited liability company; )
18  YOUNG MONEY PUBLISHING INC., a)         Hon. Otis D. Wright II
    Delaware corporation; YOUNG MONEY )
19  RECORDS INC., a Delaware             )
    corporation; YOUNG MONEY             )
20  VENTURES, LLC, a Delaware limited    )
    liability company; YOUNG MONEY       )
21  TOURING, INC., a Florida corporation; )
    and DOES 1 through 100, inclusive,   )
22                                       )
              Defendants.                )
23                                       )
    _____ )
24

25        Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1,

26  the Court's Standing Order, and the Court's Order Setting Scheduling Conference [Dkt.

27  9], the parties to this litigation ("Parties"), by and through their respective counsel,

28  submit the following Joint Rule 26(f) Report.

– 1 –

## I.   STATEMENT OF THE CASE

*Plaintiffs' Statement* - This is an action for breach of oral contract, fraudulent inducement, unjust enrichment, quantum meruit, and accounting, in connection with an oral management agreement that was originally entered into between Plaintiff Ronald Sweeney (hereinafter "Sweeney") and Plaintiff Avant Garde Management, Inc. (hereinafter "Avant Garde" or collectively with Sweeney referred to as "Plaintiffs"), on the one hand, and Defendant Dwayne Michael Carter Jr. p/k/a Lil Wayne (hereinafter "Carter"), on the other hand.

Sweeney is a personal manager, through his entity, Avant Garde, as well as a businessman, strategist, former record executive at Sony Music Entertainment, and a California licensed attorney.  Avant Garde is, among other things, a personal management company dedicated to the management of the careers of recording artists and performers.

Beginning in 2005, until in or about September 2018, Plaintiffs worked tirelessly as manager and close confidante for Carter for nearly 14 years, managing his managers, all of his entities, his "friends," his enemies, and his lawyers.  Plaintiffs were initially managing multiple aspects of Carter's personal day-to-day business affairs.  However, in or about 2008, after the creation/activation of Carter's own record label, Defendant Young Money Entertainment, LLC (hereinafter "YME"), Plaintiffs' duties expanded greatly, and as the only person working for Carter with experience running a record label, Sweeney was made the manager of YME, and subsequently became the manager of Carter's other Young Money business entities, Defendants Young Money Publishing Inc. (hereinafter "YMP"); Young Money Records Inc. (hereinafter "YMR"); Young Money Ventures, LLC (hereinafter "YMV"); and Young Money Touring, Inc. (hereinafter "YMT") (collectively referred to as "Young Money Entities").

In fact, in the last four years of Plaintiffs' representation of Carter and the Young Money Entities, Plaintiffs managed over 30 lawsuits, including a lawsuit against Carter's former label, Cash Money Records ("Cash Money Action") and against Universal Music

Group and SoundExchange ("UMG/SoundExchange Action"), both of which brought in a substantial amount of money for Carter, for which Plaintiffs received very little compensation. Based upon Carter's false representations that Plaintiffs would receive a percentage of the settlement proceeds from the Cash Money Action and UMG/Sound Exchange Action, as well as from the proceeds of the sale of the Young Money Masters (in addition to the 10% of other earnings that Plaintiffs were supposed to receive at that point), Plaintiffs worked virtually for free during the last four years of their representation of Defendants.

However, Carter (and the Young Money Entities), after having relied on Plaintiffs in connection with almost every professional and personal aspect of his life, failed and refused to pay Plaintiffs the promised percentage of the recovery from the two lawsuits, or the promised percentage of the sale of master recordings owned by YME, or the 10% – and then 17% (commencing in May of 2018) – in general commissions that Defendants owe to Plaintiffs in connection with Plaintiffs' day to day management activities.

*Defendants' Statement* - Defendants filed a motion to dismiss Plaintiffs' Complaint (the "Motion"). That Motion seeks dismissal of the Complaint based on a lack of personal jurisdiction over Carter and the Young Money Entities under Fed. R. Civ. P. 12(b)(2). It also seeks dismissal or a stay of this action under the *Colorado River* doctrine because the same business relationship that is at issue in this action has been, and continues to be, the subject of a lawsuit filed in January 2019 by Dwayne Michael Carter, Jr. against Ronald E. Sweeney and Avant Garde Management, Inc., which is pending in the Supreme Court of the State of New York, County of New York ("New York Action"). Lastly, the Motion seeks judgment on the pleadings and a dismissal of the Complaint under Fed. R. Civ. P. 12(c).

Defendants respectfully request the Court accept the discovery and trial schedule Defendants have proposed rather than the schedule proposed by Plaintiffs. Defendants' schedule attempts to find the balance between this action proceeding or not proceeding before this Court. Plaintiffs' proposed schedule makes no such allowance and seeks to

proceed at a rate much faster than more ordinary cases before this Court.  Defendants' proposed schedule is intended to seek judicial economy and fairness to all Parties to ensure that they can obtain all necessary discovery in the most expedient and cost-effective manner.

This action involves a dispute between Carter and Sweeney, his former entertainment lawyer, who represented Carter's individual interests (and the interests of various business entities Mr. Carter owns and controls) from Sweeney's home and law offices in New York under an oral contingency fee contract Carter voided on September 18, 2018, when he fired Sweeney as his lawyer.

This lawsuit only belongs in New York because that is where personal jurisdiction exists and where the material transactions and occurrences that are at issue between the Parties occurred. Carter fired Sweeney and voided the oral contingency fee agreement after he discovered, among other things, that Sweeney negligently handled legal matters entrusted to him, charged him an unconscionable fee (one that was double the contingency legal fee customarily charged by entertainment lawyers), and was paid legal fees without Carter's consent.  Carter also discovered that Sweeney had fraudulently induced him to retain Sweeney's legal services by, among other things, holding himself out as a New York lawyer, when he was not one.  Sweeney is only admitted to practice law in California, and at times he was even ineligible to practice law in the state of his admission.  At no time was Sweeney ever Carter's personal manager.  Carter hired and paid other persons and professionals to manage his career as an entertainer and to operate the businesses that Carter created to pursue his career and entertainment endeavors.

Under Cal. Bus. & Prof. Code § 6147 ("section 6147"), Carter's voiding of the oral contingency fee agreement, under which Carter paid Plaintiffs approximately $20,000,000 for Sweeney's services, nullified that agreement, permitting Sweeney the entitlement to recover, at most, a "reasonable fee" only for his unpaid services rendered up until the date of his firing on September 18, 2018, and limited by the applicable statute of limitations.  But to avoid the statutory bar of failing to comply with section 6147,

Sweeney filed this improper action in California that falsely recharacterizes the only professional relationship that existed between the Parties as a "personal management" relationship – rather than the attorney-client relationship it always was.  By doing so, Sweeney is attempting to avoid his fiduciary and professional duties as a lawyer to his client in order to obtain a windfall payment that is not based on fact and which is undeserved.

But no matter what Sweeney labels his entitlement to purported "fees," this action is the same attorney's fee dispute now being actively litigated in the New York Action. Regardless of whether Sweeney considers himself Carter's personal manager – which is contrary to his statements and conduct – or his lawyer, he must comport himself as a lawyer and follow the rules that apply to lawyers.  *Libarian v. State Bar of California*, 21 Cal.2d 862, 865 (1943).

Sweeney's attempt to ignore the New York Action that Carter filed more than two years ago, which concerns the identical professional relationship at issue here shows why this action should be New York, and should not be permitted.  The Judge in the New York Action just months ago ruled, among other things, that the oral contingency fee agreement between Sweeney and Carter, is void.  Because of Sweeney's unlawful conduct and because Carter voided the oral contingency fee agreement, that agreement is incapable of being enforced.  The Judge in New York has ordered more briefing on the issue of what constitutes a "reasonable fee," which further binds and commits the dispute between the Parties to New York.

Defendants respectfully submit that Plaintiffs have no viable claim to pursue against Defendants in this forum under any theory, and even if they did, the Court lacks personal jurisdiction over Defendants.

///

///

///

///

## II.    <u>SUBJECT MATTER JURISDICTION</u>

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), in that it is a civil action in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Defendants removed this action from the Superior Court for the County of Los Angeles on February 23, 2021.

## III.    <u>LEGAL ISSUES</u>

*Plaintiffs' Position* - This action is for breach of oral contract, fraudulent inducement, unjust enrichment, quantum meruit, and accounting.  At this time, Plaintiffs do not anticipate any unusual substantive, procedural, or evidentiary issues.  Plaintiffs anticipate the primary legal issues to involve (1) whether Defendants breached their oral agreement with Plaintiffs by failing and refusing to pay to Plaintiffs the promised percentage of the recovery from the Cash Money Action and UMG/SoundExchange Action, the promised percentage of the sale of master recordings owned by YME, and the 10% – and then 17% (commencing in May of 2018) – in general commissions in connection with Plaintiffs' day to day management activities; and (2) whether Defendants represented to Plaintiffs that they would pay the aforementioned commissions to Plaintiffs, and whether, in doing so, they fraudulently induced Plaintiffs to continue providing their management services.

*Defendants' Issues* -  This case involves numerous complex issues that strike at the heart of the multi-jurisdictional practice of law, and the unauthorized practice of law by Sweeney, a lawyer only licensed in California, who held himself out to be a New York lawyer, and who practices law using multiple addresses in New York.

The legal issues in this case include:  (1) whether this Court has personal jurisdiction over Defendants given the limitations placed on the scope of general and specific jurisdiction; (2) whether this Court should dismiss or stay this action under the *Colorado River* doctrine because of the currently pending New York Action that Carter filed in 2019, which concerns the same business relationship between Plaintiffs and

Defendants at issue in this  action; (3) whether this Court should grant Defendants

judgment on the pleadings under Fed. R. Civ. P. 12(c) and dismiss the Complaint; (4)

whether Sweeney, who served as Carter's entertainment lawyer for approximately 14

years, may avoid the consequences of California law and the requirements it imposes on

fee agreements between a lawyer and a client by attempting to mischaracterize the

Parties' attorney-client relationship as a personal management relationship; (5) whether

Sweeney, as a California-licensed lawyer, is bound by the ethical and legal obligations

that California law imposes on all lawyers or whether he may pick and choose which

rules and laws apply to him; (6) whether Carter's decision to exercise his rights under

section 6147 to void the oral contingency fee agreement at issue permits Sweeney to

recover from Carter more than the statute allows, i.e., a "reasonable fee" for any unpaid

work he performed for Defendants up until the time he was fired on September 18, 2018;

(7) whether the approximately $20,000,000 that Carter has already paid for the services

that Sweeney provided constitutes a "reasonable fee" up until the date of his firing, or

whether that amount is greater than a "reasonable fee"; (8) whether some or all of the fees

that Plaintiffs have received from Defendants are subject to disgorgement given

Sweeney's unlawful conduct in violation of New York and California law; and (9)

whether and to what extent, if any, the determinations in the New York Action affect the

determinations of this Court.


**IV.   REQUIREMENTS UNDER FRCP 26(f)**

(1)   <u>Timing of Initial Disclosures</u>: Pursuant to FRCP 26(f), the Parties have

agreed to exchange their initial disclosures on or before June 28, 2021.

(2)   <u>Discovery Plan</u>

      A.   *<u>Plaintiffs' Plan</u>* - Plaintiffs have yet to engage in discovery, but

             anticipate serving written discovery, including special interrogatories,

             requests for admission, and requests for production within the next 30

             days on numerous subjects, including: (1) the original and

subsequently added terms of the oral agreement between the Parties;
(2) the extent and nature of the services provided by Plaintiffs; (3) the
representations made by Defendants to Plaintiffs in or about
2013/2014 to secure the continued services provided by Plaintiffs; and
(4) the amounts recovered by Carter and YME in connection with,
among other things, the Cash Money Action and
UMG/SoundExchange Action, and the sale of the Young Money
Masters.  Plaintiffs also anticipate noticing the deposition of
Defendant Carter within the next 30 days, and subpoenaing
documents from third-party witnesses, including Carter's former
business manager/accountant, Provident Financial Management, and
King, Homes, Paterno, & Soriano, LLP, Carter's litigation counsel for
the Cash Money Action and UMG/SoundExchange Action, for all
documents evidencing, among other things, Plaintiffs' management
services provided to Defendants, and the extent thereof.  Further,
within the next 60-90 days, Plaintiffs intend to subpoena the
deposition of numerous third-party witnesses, including: (1) Jeffrey
Turner of Provident Financial Management, Carter's former business
manager/accountant; (2) Vernon Brown of V Brown and Company;
(3) Derrick Lawrence; (4) Scott McDowell, Head of Business Affairs
of Warner Chappell Music Publishing; (5) Al Haymon; (6) Michael
Kramer of Michael Kramer and Associates; (7) Howard King and
Rich Purich of King, Homes, Paterno, & Soriano, LLP; (8) Jermaine
A. Preyan p/k/a Mack Maine; and (9) Cortez Bryant; all of whom
have knowledge of, among other things, Plaintiffs' management
services provided to Defendants, and the extent thereof.

*Defendants' Plan* - Defendants anticipate serving document requests,
interrogatories, deposition notices, requests to admit, and third-party

subpoenas.

The subjects of discovery will address numerous issues, including the following:

- The business relationship between Plaintiffs and Defendants, and how Sweeney acquired Defendants as clients.

- The relationship among/between Sweeney, his various purported law firms, and Avant Garde.

- The terms of any purported agreement between any Plaintiff and any Defendant.

- Where and when Sweeney, his various purported law firms, and Avant Garde provided services to Defendants.

- The actual services that Sweeney, his various purported law firms, and Avant Garde performed for Defendants from 2005 until Sweeney was fired on September 18, 2018.

- What services Sweeney provided to Defendants when his license to practice law in California was suspended.

- What compensation Plaintiffs received for any and all services provided to Defendants.

- What communications did Sweeney or his purported law firms have with Defendants' former business management firm regarding the fees paid to Plaintiffs and how and why they were directed to each Plaintiff.

- What communications did Sweeney or his purported law firms have with any counter-party to any of the purported contracts Sweeney or his purported law firms negotiated on behalf of Defendants.

///

///

– 9 –

1          -      What communications did Sweeney or his purported law firms

2               have with any other law firm or lawyer representing Carter or

3               his business interests.

- Whether the compensation Plaintiffs received was a
  "reasonable fee" for the services they purportedly provided up
  until Sweeney was fired on September 18, 2018, when the
  contingent fee agreement was voided.
- The identity of Plaintiffs' clients and Plaintiffs' billing and
  record keeping practices.
- The damages and harm caused to Defendants by Sweeney's
  misrepresentation and other negligent or unlawful conduct.
- Whether some or all of the compensation Plaintiffs received
  must be disgorged.

      B.   <u>Discovery Cut-Off</u> -

           <u>*Plaintiffs*</u> - Based upon a proposed trial date of March 29, 2022, the
Plaintiffs propose that fact discovery, including hearing of all
discovery motions, should be completed by December 13, 2021.
<u>*Defendants*</u> - Defendants propose that fact discovery should be
completed by February 21, 2022.

    (3)   <u>Disclosure of Electronically Stored Data</u>: The Parties are not aware of any
issues about disclosure, discovery, or preservation of electronically stored information
("ESI"), including the form in which it should be produced.  The Parties agree to work
cooperatively with each other to ensure that ESI is produced in an electronic format
capable of being used by and compatible with the needs of the receiving Party.  The
Parties agree to work in good faith to establish an ESI protocol to assist them in the
collection and/or production of ESI materials.

(4)     Issues Relating To Privilege:

     *Plaintiffs* - In regards to any claim of attorney-client privileged communications or documents that Carter claims to exist, it is Plaintiffs position that to the extent any such privilege existed between Carter and Sweeney, Carter waived such privilege when he filed suit against Sweeney for legal malpractice, among other claims, in New York, on January 30, 2019.

     *Defendants* - The Parties appear to have different views on whether documents created by Sweeney and/or communications between Sweeney and Defendants are covered by the attorney-client privilege, given Defendants' assertion that Sweeney provided services to Defendants solely as their entertainment lawyer, as compared with Plaintiffs' assertion that Sweeney provided services to Defendants as a personal manager.  Because Defendants are the holder of the privilege, the production of documents and/or communications by Plaintiffs to Defendants cannot waive the attorney-client privilege.  Defendants hope that the Parties can work in good faith to reach an agreement under Fed. R. Evid. 502 concerning the effect of disclosure of documents in this action concerning the privileged and/or protected nature of the documents produced by each party.


(5)     Changes To Limitations On Discovery:

     *Plaintiffs* - Plaintiffs do not seek any changes to, or limitations on discovery, and do not believe that if the Court concludes jurisdictional discovery is necessary to resolve Defendants' Motion, that it should be conducted before the Parties engage in any other discovery.

     *Defendants* - Defendants respectfully submit that if the Court concludes jurisdictional discovery is necessary to resolve the Motion, such discovery should be conducted before the Parties engage in any discovery focused on the merits of the Parties' dispute.

///

– 11 –

(6)   <u>Other Orders</u>:

  <u>*Plaintiffs*</u> - To the extent that it becomes necessary for any of the Parties to discover financial records, or other confidential business or proprietary information, the Plaintiffs agree to, at that time, negotiate and submit a proposed stipulated protective order for the Court's approval.

  <u>*Defendants*</u> - Defendants recognize that the documents likely to be produced in this action will concern matters of a confidential nature that are typically protected by a confidentiality agreement and/or protective order.  Defendants have agreed to work in good faith to negotiate and submit a proposed protective order for the Court's approval.

## V. <u>ADDITIONAL REQUIREMENTS UNDER THE COURT'S SCHEDULING CONFERENCE ORDER</u>

(1) <u>A Listing and Proposed Schedule of Written Discovery, Depositions, and A Proposed Discovery Cut-Off Date</u>:

  <u>*Plaintiffs*</u> - As detailed in the prior section, Plaintiffs have yet to engage in discovery, but anticipate serving written discovery, including special interrogatories, requests for admission, and requests for production within the next 30 days.  Plaintiffs also anticipate noticing the deposition of Defendant Carter within the next 30 days, and subpoenaing third parties, including Carter's prior business manager/accountant, his other managers, his transactional attorneys, and his litigation counsel for the Cash Money Action and UMG/SoundExchange Action, for testimony and all documents evidencing, among other things, Plaintiffs' management services provided to Defendants, and the extent thereof.  Based upon a proposed trial date of March 29, 2022, the Plaintiffs propose that fact discovery cut-off, including hearing of all discovery motions, should be December 13, 2021.

  <u>*Defendants*</u> - Defendants object to the Plaintiffs' desire to depose Mr. Carter within the next 30 days before any written discovery is propounded, before written responses and objections are due, and before documents are exchanged.  Plaintiffs'

1    proposal seeks to bypass the discovery process by deposing the most important witness

2    for Defendants before any discovery has been exchanged, and is inconsistent with the

3    requirement that the rules be administered by the Parties to secure the just determination

4    of the action.

5         Defendants anticipate serving document requests, interrogatories, deposition

6    notices, requests to admit, and subpoenas, and propose the following schedule:

7         First set of document requests shall be served by no later than **August 2, 2021**.

8         First set of interrogatories shall be served by no later than **August 2, 2021**.

9         Depositions of Parties and third-parties should begin after the Parties have

10   completed their respective responses to interrogatories and document productions, and

11   may continue through and including the fact-discovery deadline.  Defendants anticipate

12   that the Parties should be able to commence depositions beginning on or after **November

13   1, 2021.**

14        Requests to admit may be served any time during the fact discovery period so long

15   as any motion challenging a party's response allows sufficient time for the party to

16   provide an adequate response before the fact discovery deadline if the motion is granted.

17        Any additional document requests and interrogatories may be served any time

18   during the fact discovery period so long as any motion challenging a party's response

19   allows sufficient time for the party to provide an adequate response before the fact

20   discovery deadline if the motion is granted.

21        Defendants' propose that the fact discovery deadline should be **February 21,**

22   **2022**.

23

24        (2)    A Listing And Proposed Schedule of Law And Motion Matters, And A

25               Proposed Dispositive Motion Cut-off Date:

26               *Plaintiffs* - Based upon a proposed trial date of March 29, 2022, the

27   Plaintiffs propose that the hearing cut-off for all dispositive Motions should be February

28   7, 2022.

*Defendants* - Defendants propose that the last day for hearing on dispositive motions should be July 18, 2022.

    (3)    <u>Statement of What Efforts Have Been Made To Settle or Resolve The Case to Date and What Settlement Procedure Is Recommended Pursuant to Local Rule 16-15.4</u>:

*Plaintiffs* - The Parties have yet to engage in any settlement discussions. Plaintiffs recommend utilizing a mandatory settlement conference before the magistrate or district judge to attempt to resolve this case (Local Rule 16-15.4(1)). Plaintiffs do not believe that anything other than a mandatory settlement conference before the magistrate or district judge will be effective in resolving this particular case, with this particular defendant.

*Defendants* - Since the filing of this action, counsel for the Parties have yet to engage in any meaningful settlement discussions. However, before any litigation between the Parties were filed, there were settlement communications between the Parties that were unproductive. Part of the settlement communications included a proposed settlement agreement provided by Sweeney to Carter. The Parties jointly and respectfully recommend that the Court employ ADR Procedure No. 1 for this action (Local Rule 16-15.4(1)). Because the oral contingency fee agreement has been determined void by the Court, and the Judge in the New York Action will be considering the issue of what constitutes a "reasonable fee", it may allow for the Parties to engage in settlement discussions in the not too distant future.

    (4)    <u>Trial Estimate and Proposed Date for Final Pre-Trial Conference and Trial</u>:

*Plaintiffs* - Plaintiffs estimate that trial will last 3 days. Plaintiffs propose a trial date of March 29, 2022, with a final pre-trial conference date of March 7, 2022.

*Defendants* - Defendants estimate a 5-7 day trial, and believe that a more accurate estimate can be provided once the scope of the lawsuit has been determined. Defendants propose a trial date of September 27, 2022, with a final pre-trial conference

date of September 6, 2022.

     (5)    <u>Other Parties Likely To Be Added</u>:

        The Parties do not anticipate adding any additional parties at this time.

     (6)    <u>Trial By Jury Or Court</u>:

        The Parties have requested a trial by jury in this action.

     (7)    <u>Any Other Issues Affecting Status or Management of Case</u>:

        *Plaintiffs* - The Plaintiffs do not anticipate any other issues affecting the status or management of the case at this time.

        *Defendants* - Other than the issues raised in Defendants' Motion, which may terminate this case or stay it, Defendants do not anticipate any other issues affecting the status or management of the case at this time.  Defendants respectfully submit that if the Court concludes jurisdictional discovery is necessary to resolve the Motion, such discovery should be conducted before the Parties engage in any discovery focused on the merits of the Parties' dispute.

     (8)    <u>Severance Or Bifurcation</u>:

        *Plaintiffs* - Plaintiffs do not have any proposals at this time regarding severance, bifurcation or other ordering of proof.

        *Defendants* - Defendants respectfully submit that if the Court concludes jurisdictional discovery is necessary to resolve the Motion, such discovery should be conducted before the Parties engage in any discovery focused on the merits of the Parties' dispute.

///

///

///

///

///

///

///

1        (9)     <u>A Statement of Whether Pleadings Are Likely To Be Amended</u>:

2       The Parties do not presently intend to amend their respective pleadings.

3

4   Dated: June 14, 2021                  Edwin F. McPherson

                                       Pierre B. Pine

5                                      **McPHERSON LLP**

6

                                        */s/ Edwin F. McPherson*

7                           By:_____

                                        EDWIN F. McPHERSON

8                                       Attorneys for Plaintiffs

                                      RONALD E. SWEENEY

9                                       and AVANT GARDE

                                      MANAGEMENT, INC.

10

11  Dated: June 14, 2021                 Zia F. Moddaber

                                        Tami Kameda Sims

12                                      **KATTEN MUCHIN ROSENMAN LLP**

13

                                        */s/ Tami Kameda Sims*

14                         By:_____

                                      TAMI KAMEDA SIMS

15                                     Attorneys for Defendants

                                      DWAYNE MICHAEL CARTER

16                                     JR. p/k/a LIL WAYNE, YOUNG

                                    MONEY ENTERTAINMENT,

17                                     LLC, YOUNG MONEY

                                    PUBLISHING, INC., YOUNG

18                                     MONEY RECORDS, INC.,

                                    YOUNG MONEY VENTURES,

19                                     LLC, and YOUNG MONEY

                                    TOURING, INC.

20

21

22       Pursuant to Local Rule 5-4.3.3(a)(2)(i), counsel for Plaintiffs RONALD E.

23 SWEENEY and AVANT GARDE MANAGEMENT, INC. certifies that counsel for the

24 Parties have consented to and authorized the filing of this document with their electronic

25 signatures.

26

27

28

# EXHIBIT A - SCHEDULE OF PRE-TRIAL AND TRIAL DATES

Ronald E. Sweeney, et al. v. Dwayne Michael Carter Jr. p/k/a Lil Wayne, et al.

Case No. 2:21-cv-01689-ODW-JC

| Event | Plaintiffs' Request | Defendants' Request |
|---|---|---|
| Jury Trial (Tuesday) Estimated Length:<br><br>    Plaintiffs:    3 days;<br><br>    Defendants:  5 to 7 days | March 29, 2022 | September 27, 2022 |
| Last Date to File Final Trial Exhibit Stipulation | March 24, 2022 | September 20, 2022 |
| Hearing on Motions in Limine | March 21, 2022 | September 12, 2022 |
| Pretrial Conference at 1:30 p.m. Deadline to File:<br><br>  - Motions in Limine | March 7, 2022 | September 6, 2022 |
| Deadline to File:<br>- Memoranda of Contentions of Fact and Law<br>- Joint Witness List<br>- Joint Exhibit List<br>- Proposed Verdict Forms<br>- Proposed Jury Instructions<br>- Proposed Voir Dire Questions<br>- Joint Statement of Case<br>- Joint Report re: Settlement | February 28, 2022 | August 29, 2022 |
| Last Date for Hearing Motions | February 7, 2022 | July 18, 2022 |
| Last Date to Conduct Settlement Conference | January 31, 2022 | July 11, 2022 |
| Expert Discovery Cutoff | December 27, 2021 | May 16, 2022 |
| Percipient/Fact Discovery Cutoff | December 13, 2021 | February 21, 2022 |
| Expert Disclosures (Rebuttal) | November 29, 2021 | April 18, 2022 |
| Expert Disclosures (Initial) | November 8, 2021 | March 28, 2022 |
| Last Date to Hear Motions to Amend Pleadings or Add Parties | September 13, 2021 | October 11, 2021 |

Joint Rule 26(f) Report

# EXHIBIT 6

1 | Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
2 | Los Angeles, California 90067-3012
Zia F. Modabber (Bar No. 137388)
3 | zia.modabber@katten.com
Tami Kameda Sims (Bar No. 245628)
4 | tami.sims@katten.com
Tel: (310) 788-4400
5 | Fax: (310) 788-4471
*Attorneys for Defendants Dwayne Michael*
6 | *Carter Jr. p/k/a Lil Wayne, Young Money*
*Entertainment, LLC, Young Money*
7 | *Publishing, Inc. Young Money Records,*
*Inc. Young Money Ventures, LLC, and*
8 | *Young Money Touring, Inc.*

9

# UNITED STATES DISTRICT COURT

10

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

### WESTERN DIVISION

| | |
|---|---|
| 12 RONALD E. SWEENEY, an individual; AVANT GARDE MANAGEMENT, INC., a California corporation, | Case No.: 2:21-cv-01689-ODW-JC **REMOVED FROM STATE COURT** (Los Angeles Superior Court No. 2OSTCV47346) |
| 13 | |
| 14 Plaintiffs, | Assigned to Hon. Otis D. Wright II COURTROOM 5D |
| 15 v. | |
| 16 DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE, an individual; YOUNG MONEY ENTERTAINMENT LLC, a Florida limited liability company; YOUNG MONEY PUBLISHING INC., a Delaware corporation; YOUNG MONEY RECORDS INC., a Delaware corporation; YOUNG MONEY VENTURES, LLC, a Delaware limited liability company; YOUNG MONEY TOURING, INC., a Florida corporation; and DOES 1 through 100, inclusive, | **OBJECTIONS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE TO PLAINTIFFS' NOTICE OF DEPOSITION AND THE REQUESTS FOR PRODUCTION OF DOCUMENTS IN EXHIBIT "A"** |
| 17 | |
| 18 | Date: August 24, 2021 Time: 10:00 am. EDT Place: Wolfe Law Miami 175 SW 7 Street Latitude One Offices Suite 2410 Miami, FL 33130 |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 Defendants. | |
| 24 | |

25

26

27

28

---

Defendant DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE ("Defendant" or "Carter"), by his undersigned counsel, hereby objects to Notice of Deposition of Carter ("Notice") and the requests for the production of documents in Exhibit "A" (collectively, the "Requests," and individually, a "Request") as follows:

## OBJECTIONS TO THE NOTICE OF DEPOSITION

Defendant objects to the Notice on the grounds that the date of the deposition was set unilaterally by Plaintiffs' counsel. Defendant is unavailable on the scheduled date and therefore will not appear. Defendant's counsel will meet and confer on alternative available dates. Defendant reserves all rights to challenge the Notice including reserving the right to file a motion to quash the Notice and for a protective order on the grounds including, but not limited to, the fact that the Notice is premature given that the Court has not yet ruled on Defendant's motion to dismiss, and Defendant's position is that the Court does not have jurisdiction over this matter, and that Defendant is not subject to personal jurisdiction in California where this action is pending.

## DEFINITIONS

A. "Burdensome" or "Burdensomeness" means that the Request seeks information or documents that contain information obtainable from another source that is more convenient or less expensive, or that the Request exposes Defendant to undue burden or expense in relation to its likely benefit, taking into account the needs of the case, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving those issues.

B. "Confidential" or "Confidentiality" means that the Request seeks information or documents that contain the kind of confidential, proprietary, financial, or personal information that shall be provided only under the terms of a protective order/confidentiality agreement governing the disclosure and use thereof.

- 1 -
OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

C.  "Duplicative" or "Duplicativeness" means that the Request is unreasonably cumulative or duplicative of another Request, that the requested information or documents have been previously provided, or that the requested information or documents can be obtained from some other source that is more convenient, less burdensome, or less expensive.

D.  "Irrelevant" or "Irrelevance" means that the Request is not reasonably calculated to lead to the discovery of admissible or relevant evidence.

E.  "Overbroad" or "Overbreadth" means that the Request is not reasonably particular, or seeks information or documents merely tangential to the matters at issue in the case, or is not limited to a particular period or geographic region.

F.  "Privilege" or "Privileged" means that the Request seeks information or documents that are protected by the attorney-client privilege, work product doctrine, or any applicable testimonial or other privilege.

G.  "Vague," "Vagueness," or "Ambiguous" means that the wording of the Request is vague, confusing, or ambiguous including, without limitation, due to the use of undefined terms.

H.  "Premature" means that the Request is not timely, requires the production of documents too early and/or that cannot be produced at the present time, or seeks documents and information about Defendant's expert witness(es) that will be disclosed at a later time.

I.  "Young Money Entities" refers to Young Money Entertainment, LLC, Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc.

## **GENERAL OBJECTIONS**

1.  Defendant objects to the Requests to the extent they must be interpreted by him.  In order to provide a response in good faith, Defendant has made such interpretations where necessary, and has objected accordingly.  Defendant's interpretations may, in some or all cases, be different from what Plaintiffs intended.

2.   Defendant objects to the Requests to the extent they seek to impose greater burdens on Defendant than are required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California (the "Local Rules"), or any other applicable rules, practices, or court orders.

3.   Defendant objects the definitions in the Requests to the extent they include the phrase "or other persons acting or purporting to act on" behalf of a defined person without specifically identifying the persons who "purported" to act on behalf of another person.

4.   Defendant objects to the definition of "RELATING TO" to the extent that it requires Defendant to make a determination regarding whether a document is "legally" or "logically" related to the "stated subject matter."  Defendant will not engage in any legal or logical determination before concluding that a document is responsive to a Request.

5.   Defendant objects to any Request that includes the phrase "may provide evidence of" to the extent that it requires Defendant to perform any legal analysis before determining responsiveness.

6.   Defendant objects to the Requests to the extent they seek the production of "any," "each," "every," or "all" documents of a specific nature or type when a limited amount of documents would be sufficient to provide the requested information. Where appropriate, Defendant will provide sufficient information or produce sufficient documents to answer a Request.  Defendant further objects to each Request to the extent there is no limitation on the time period for which the disclosure of documents is sought.

7.   Defendant objects to each Request to the extent it seeks documents and information which is subject to the attorney-client privilege; documents and information prepared in anticipation of litigation and not discoverable under the attorney work product doctrine, investigative privilege, the party communication privilege, or any other applicable privilege or immunity otherwise protected from

1   disclosure under the Federal Rules of Civil Procedure and relevant case law.  The

2   inadvertent disclosure of any privileged information or documents shall not constitute

3   a waiver of any privilege or any other ground for the objection to discovery at any

4   time.

5       8.   Defendant objects to each Request to the extent it seeks materials prepared

6   in anticipation of litigation or for trial, or which seeks the discovery of the mental

7   impressions, conclusions, opinions, or legal theories of counsel or any other

8   representative of Defendant concerning this litigation.  The inadvertent disclosure of

9   any such information or documents shall not constitute a waiver of any privilege or

10  any other ground for the objection to such discovery at any time.

11      9.   Defendant objects to each Request to the extent it seeks documents

12  containing sensitive personal information, confidential or proprietary information,

13  trade secrets, or other confidential financial, private, personal, and/or competitively

14  sensitive information of Defendant or third-parties under any applicable federal, state,

15  local, or foreign law.  Defendant further objects to the Requests to the extent they

16  seek documents and information that Defendant is under an obligation imposed by a

17  third-party, a court, tribunal, legislature, or any other body with authority to impose

18  or enforce an agreement, statute, regulation, or order to maintain in confidence or not

19  disclose it.  The inadvertent disclosure of such privileged or protected information

20  shall not be construed to waive any applicable privilege or protection in any respect.

21      10.  Defendant objects to each Request to the extent it calls for or assumes a

22  legal conclusion, or incorporates and seeks information based on erroneous

23  interpretations or statements of law.  Defendant further objects to the Requests to the

24  extent Defendant would have to draw a legal conclusion in order to produce

25  documents.  Any production is not to be construed as an agreement with any such

26  erroneous interpretation or statement of law.

27      11.  Defendant objects to each Request to the extent that it seeks documents and

28  information that are not relevant to any party's claim or defense and not proportional

- 4 -

1   to the needs of this action in that the burden or expense of the proposed discovery
2   outweighs its likely benefit, considering the importance of the issues at stake in the
3   action, the amount in controversy, the parties' relative access to relevant information,
4   the parties' resources, and the importance of the discovery in resolving the issues.

5        12. Defendant objects to each Request to the extent it seeks documents and
6   information that are not within the possession, custody, or control of Defendant, or
7   seeks documents and information that are not maintained by Defendant in the
8   requested form or format.  Defendant's agreement to produce documents that may be
9   responsive to a Request does not obligate Defendant to produce documents outside of
10  his possession, custody, or control.

11       13. Defendant objects to each Request to the extent that it seeks documents and
12  information that are solely within the possession, custody, or control of another party
13  or third party or which are more readily identifiable and retrievable by such party or
14  third party from its own records.

15       14. Where Defendant has objected on the grounds that a Request is Overbroad,
16  Burdensome, Vague, Premature, or Duplicative or seeks Privileged, Confidential, or
17  Irrelevant documents or information, Defendant may nevertheless provide responsive
18  information, such as summaries, or documents that he considers to be sufficient for
19  the purposes of the Request.  The fact that Defendant has provided such responsive
20  information or documents is not a waiver of his objections or of any other right.

21       15. Defendant has not concluded his investigation.  Accordingly, documents
22  containing information responsive to the Requests may exist that Defendant does not
23  yet have knowledge of or has not yet located, identified, or reviewed.  All of the
24  following responses are therefore based on such information or documents containing
25  information currently known to Defendant after a reasonable inquiry.  Defendant
26  reserves the right to alter, amend, or supplement his responses to the Requests.

27
28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

16. Defendant does not waive any objections as to the admissibility of any documents produced in response to the Requests or the right to object to any other requests involving or relating to the subject matter hereof.

17. Nothing contained in any response to any Request shall be construed as an admission by Defendant relative to the existence or non-existence of any documents, and no such response shall be construed as an admission with respect to the relevance or admissibility of any document, or the truth or accuracy of any statement or characterization contained in any Request.

18. Defendant is continuing to investigate to what extent he possesses any responsive electronic documents.  Defendant reserves all rights regarding the format of any electronic documents produced in response to the Requests.

19. Defendant objects to the Requests to the extent they require Defendant to collect and produce documents from his attorneys.  No documents will be produced from attorneys' files in response to the Requests.

20. The General Objections are incorporated in every individual response set forth below, whether referenced specifically or not.  And to the extent the General Objections are not raised in the particular response, Defendant does not waive those objections.

## REQUESTS FOR PRODUCTION

**REQUESTS FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of YOUR first meeting with SWEENEY in or about 2005, including, but not limited to, any COMMUNICATIONS related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Confidential, and Privileged information.

1   Subject to and without waiving the foregoing specific objections and the

2   General Objections, Defendant will produce responsive, non-privileged, non-

3   confidential documents, if any, in his possession, custody, or control concerning

4   Defendant's "first meeting" with Ronald E. Sweeney ("Sweeney").

5   Defendant's investigation is ongoing, but at this time, the production of

6   responsive, non-privileged, non-confidential documents will be made as requested,

7   and Defendant does not intend to withhold responsive, non-privileged, non-

8   confidential documents pursuant to his objections to this Request.

9   **REQUEST FOR PRODUCTION NO. 2:**

10   Any and all DOCUMENTS that are, constitute, memorialize, concern,

11   mention, relate to, refer to, or may provide evidence of any and all

12   COMMUNICATIONS between YOU and SWEENEY, between January, 2005 and

13   December, 2012, that RELATES TO any oral agreement for SWEENEY to provide

14   any services to YOU.

15   **RESPONSE:**

16   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

17   Vague, and seeks Irrelevant, Confidential, and Privileged information.  Moreover,

18   because the Request fails to define the nature of the "services" being inquired about,

19   Defendant's interpretation of the Request may be different from what Plaintiffs

20   intended.  In addition, to the extent the Request seeks documents about "services" for

21   the specified period that were never discussed with Carter or undertaken by Sweeney

22   on Carter's behalf, then no documents would exist.

23   Subject to and without waiving the foregoing specific objections and the

24   General Objections, Defendant will produce responsive, non-privileged, non-

25   confidential documents, if any, in his possession, custody, or control, but will not

26   produce documents concerning any payments or money earned or received by

27   Defendant or any of his companies beyond the applicable statutes of limitations for

28   the claims asserted, or after September 2018 when Sweeney was fired by Defendant

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    and the agreement between Sweeney and Carter was voided, and will supplement his
2    production as necessary if additional documents are discovered.

3        Defendant's investigation is ongoing, but at this time, the production of
4    responsive, non-privileged, non-confidential documents will be made as limited by
5    this response.

6    **REQUEST FOR PRODUCTION NO. 3:**

7        Any and all DOCUMENTS that are, constitute, memorialize, concern,
8    mention, relate to, refer to, or may provide evidence of any and all
9    COMMUNICATIONS between YOU and SWEENEY, between January, 2005 and
10   December, 2012, that RELATES TO any oral agreement for SWEENEY to provide
11   any services to any of the YOUNG MONEY ENTITIES.

12   **RESPONSE:**

13       Defendant objects to this Request to the extent it is Burdensome, Overbroad,
14   Vague, and seeks Irrelevant, Confidential, and Privileged information.  Moreover,
15   because the Request fails to define the nature of the "services," Defendant's
16   interpretation of the Request may be different from what Plaintiffs intended. In
17   addition, to the extent the Request seeks documents about "services" during the
18   specified period that were never discussed with Carter or undertaken by Sweeney for
19   the Young Money Entities, then no documents would exist.

20       Subject to and without waiving the foregoing specific objections and the
21   General Objections, Defendant will produce responsive, non-privileged, non-
22   confidential Documents, if any, in his possession, custody, or control, but will not
23   produce documents concerning any payments or money earned or received by
24   Defendant or any of his companies beyond the applicable statutes of limitations for
25   the claims asserted, or after September 2018 when Sweeney was fired by Defendant
26   and the agreement between Sweeney and Carter was voided, and will supplement his
27   production as necessary if additional documents are discovered.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    Defendant's investigation is ongoing, but at this time, the production of

2    responsive, non-privileged, non-confidential documents will be made as limited by

3    this response.

4    **REQUEST FOR PRODUCTION NO. 4:**

5    Any and all DOCUMENTS that are, constitute, memorialize, concern,

6    mention, relate to, refer to, or may provide evidence of any and all

7    COMMUNICATIONS between YOU and SWEENEY, between January, 2013 and

8    September, 2018, that RELATES TO any oral agreement for SWEENEY to continue

9    providing any services to YOU.

10   **RESPONSE:**

11   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

12   Vague, and seeks Irrelevant, Confidential, and Privileged information. Moreover,

13   because the Request fails to define the nature of the "services," which were

14   purportedly to "continue," Defendant's interpretation of the Request may be different

15   from what Plaintiffs intended. In addition, to the extent the Request seeks documents

16   about "services" that were purportedly to "continue" during the specified period that

17   were never discussed with Carter or undertaken by Sweeney on Carter's behalf, then

18   no such documents would exist.

19   Subject to and without waiving the foregoing specific objections and the

20   General Objections, Defendant will produce responsive, non-privileged, non-

21   confidential documents, if any, in his possession, custody, or control concerning, but

22   will not produce documents concerning any payments or money earned or received

23   by Defendant or any of his companies beyond the applicable statutes of limitations

24   for the claims asserted, or after September 2018 when Sweeney was fired by

25   Defendant and the agreement between Sweeney and Carter was voided, and will

26   supplement his production as necessary if additional documents are discovered.

27

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any and all COMMUNICATIONS between YOU and SWEENEY, between January, 2013 and September, 2018, that RELATES TO any oral agreement for SWEENEY to continue providing any services to any of the YOUNG MONEY ENTITIES.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services," which were purportedly to "continue," Defendant's interpretation of the Request may be different from what Plaintiffs intended. In addition, to the extent the Request seeks documents about "services" that were purportedly to "continue" during the specified period that were never discussed with Carter or undertaken by Sweeney on Carter's behalf, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential Documents, if any, in his possession, custody, or control, but will not produce documents concerning any payments or money earned or received by Defendant or any of his companies beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    Defendant's investigation is ongoing, but at this time, the production of

2    responsive, non-privileged, non-confidential documents will be made as limited by

3    this response.

4    **REQUEST FOR PRODUCTION NO. 6:**

5    Any and all DOCUMENTS that are, constitute, memorialize, concern,

6    mention, relate to, refer to, or may provide evidence of any and all services provided

7    by SWEENEY to YOU, between January, 2005 and September, 2018, including, but

8    not limited to any COMMUNICATIONS related thereto.

9    **RESPONSE:**

10   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

11   Vague, and seeks Irrelevant, Confidential, Duplicative, and Privileged information.

12   Moreover, because the Request fails to define the nature of the "services,"

13   Defendant's interpretation of the Request may be different from what Plaintiffs

14   intended.  In addition, to the extent the Request seeks documents about "services"

15   during the specified period that were never discussed with Carter or undertaken by

16   Sweeney on Carter's behalf, then no such documents would exist.

17   Subject to and without waiving the foregoing specific objections and the

18   General Objections, Defendant will produce responsive, non-privileged, non-

19   confidential documents, if any, in his possession, custody, or control, but will not

20   produce documents concerning any payments or money earned or received by

21   Defendant or any of his companies beyond the applicable statutes of limitations for

22   the claims asserted, or after September 2018 when Sweeney was fired by Defendant

23   and the agreement between Sweeney and Carter was voided, and will supplement his

24   production as necessary if additional documents are discovered.

25   Defendant's investigation is ongoing, but at this time, the production of

26   responsive, non-privileged, non-confidential documents will be made as limited by

27   this response.

28

- 11 -

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any and all services provided by SWEENEY to any of the YOUNG MONEY ENTITIES, between January, 2005 and September, 2018, including, but not limited to any COMMUNICATIONS related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Confidential, Duplicative, and Privileged information. Moreover, because the Request fails to define the nature of the "services," Defendant's interpretation of the Request may be different from what Plaintiffs intended.  In addition, to the extent the Request seeks documents about "services" during the specified period that were never discussed with Carter or undertaken by Sweeney for the Young Money Entities, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, but will not produce documents concerning any payments or money earned or received by Defendant or any of his companies beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of SWEENEY ever stating to

YOU that he was licensed to practice law in New York, including, but not limited to any COMMUNICATIONS related thereto.

**RESPONSE**:

Defendant object to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as requested, and Defendant does not intend to withhold responsive, non-privileged, non-confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of SWEENEY ever advising YOU in connection with New York law, including, but not limited to any COMMUNICATIONS related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as requested,

1    and Defendant does not intend to withhold responsive, non-privileged, non-

2    confidential documents pursuant to his objections to this Request.

3    **REQUEST FOR PRODUCTION NO. 10**:

4        Any and all DOCUMENTS that are, constitute, memorialize, concern,

5    mention, relate to, refer to, or may provide evidence of any and all payments for

6    services made by YOU to SWEENEY, between January, 2005 and September, 2018.

7    **RESPONSE:**

8    Defendant objects to this Request to the extent it is Burdensome, Overbroad,

9    Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

10   Moreover, because the Request fails to define the nature of the "services,"

11   Defendant's interpretation of the Request may be different from what Plaintiffs

12   intended. In addition, to the extent the Request seeks documents about "services"

13   during the specified period that were never discussed or performed by Sweeney for

14   Defendant, then no such documents would exist.

15       Subject to and without waiving the foregoing specific objections and the

16   General Objections, Defendant will produce responsive, non-privileged, non-

17   confidential documents, if any, in his possession, custody, or control sufficient to

18   show payments for services that Defendant has made to Sweeney, but will not

19   produce documents concerning any payments or money beyond the applicable

20   statutes of limitations for the claims asserted, or after September 2018 when Sweeney

21   was fired by Defendant and the agreement between Sweeney and Carter was voided,

22   and will supplement his production as necessary if additional documents are

23   discovered.

24       Defendant's investigation is ongoing, but at this time, the production of

25   responsive, non-privileged, non-confidential documents will be made as limited by

26   this response.

27

28

**REQUEST FOR PRODUCTION NO. 11:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any and all payments for services made by any of the YOUNG MONEY ENTITIES to SWEENEY, between January, 2005 and September, 2018.

**RESPONSE**:

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services," Defendant's interpretation of the Request may be different from what Plaintiffs intended. In addition, to the extent the Request seeks documents about "services" during the specified period that were never discussed or performed by Sweeney for Defendant, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show payments for services that any of the Young Money Entities have made to Sweeney, but will not produce documents concerning any payments or money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any and all payments for

1    services made by YOU to AVANT GARDE, between January, 2005 and September,

2    2018.

3    **RESPONSE:**

4        Defendant objects to this Request to the extent it is Burdensome, Overbroad,

5    Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

6    Moreover, because the Request fails to define the nature of the "services,"

7    Defendant's interpretation of the Request may be different from what Plaintiffs

8    intended. In addition, to the extent the Request seeks documents about "services"

9    during the specified period that were never discussed or performed by Sweeney for

10   Defendant, then no such documents would exist.

11       Subject to and without waiving the foregoing specific objections and the

12   General Objections, Defendant will produce responsive, non-privileged, non-

13   confidential documents, if any, in his possession, custody, or control sufficient to

14   show payments for services Defendant has made to Avant Garde Management, Inc.

15   ("Avant Garde"), but will not produce documents concerning any payments or money

16   beyond the applicable statutes of limitations for the claims asserted, or after

17   September 2018 when Sweeney was fired by Defendant and the agreement between

18   Sweeney and Carter was voided, and will supplement his production as necessary if

19   additional documents are discovered.

20       Defendant's investigation is ongoing, but at this time, the production of

21   responsive, non-privileged, non-confidential documents will be made as limited by

22   this response.

23   **REQUEST FOR PRODUCTION NO. 13:**

24       Any and all DOCUMENTS that are, constitute, memorialize, concern,

25   mention, relate to, refer to, or may provide evidence of any and all payments for

26   services made by any of the YOUNG MONEY ENTITIES to AVANT GARDE,

27   between January, 2005 and September, 2018.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services," Defendant's interpretation of the Request may be different from what Plaintiffs intended. In addition, to the extent the Request seeks documents about "services" during the specified period that were never discussed or performed by Sweeney for Defendant, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show payments for services that any of the Young Money Entities have made to Avant Garde, but will not produce documents concerning any payments or money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and SWEENEY, between January, 2005 and September, 2018.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1  Defendant also objects to the phrase "direct messages" because that term is not

2  defined.

3      Subject to and without waiving the foregoing specific objections and the

4  General Objections, Defendant will produce responsive, non-privileged, non-

5  confidential documents, if any, in his possession, custody, or control, and will

6  supplement his production as necessary if additional documents are discovered.

7      Defendant's investigation is ongoing, but at this time, the production of

8  responsive, non-privileged, non-confidential documents will be made as requested,

9  and Defendant does not intend to withhold responsive, non-privileged, non-

10 confidential documents pursuant to his objections to this Request.

11 **REQUEST FOR PRODUCTION NO. 15:**

12      Any and all COMMUNICATIONS, including, but not limited to, e-mails,

13 direct messages, and text messages, between YOU and Cortez Bryant, RELATING

14 TO SWEENEY, between January, 2005 and the present.

15 **RESPONSE**:

16      Defendant objects to this Request to the extent it is Burdensome, Overbroad,

17 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

18 Defendant also objects to the phrase "direct messages" because that term is not

19 defined, and because the Request arguably seeks documents that have no connection

20 to services that Sweeney provided to Defendant or to any of his companies.

21      Subject to and without waiving the foregoing specific objections and the

22 General Objections, Defendant will produce responsive, non-privileged, non-

23 confidential documents, if any, in his possession, custody, or control, and will

24 supplement his production as necessary if additional documents are discovered.

25      Defendant's investigation is ongoing, but at this time, the production of

26 responsive, non-privileged, non-confidential documents will be made as requested,

27 and Defendant does not intend to withhold responsive, non-privileged, non-

28 confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and Jermaine A. Preyan p/k/a Mack Maine, RELATING TO SWEENEY, between January, 2005 and the present.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Defendant also objects to the phrase "direct messages" because that term is not defined. In addition, Defendant objects to this Request because it arguably seeks documents that have no connection to services that Sweeney provided to Defendant or to any of his companies.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as requested, and Defendant does not intend to withhold responsive, non-privileged, non-confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and Jeffrey Turner, RELATING TO SWEENEY, between January, 2005 and the present.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Defendant also objects to the phrase "direct messages" because that term is not defined. In addition, Defendant objects to this Request because it arguably seeks

1  documents that have no connection to services that Sweeney provided to Defendant
2  or to any of his companies.

3      Subject to and without waiving the foregoing specific objections and the
4  General Objections, Defendant will produce responsive, non-privileged, non-
5  confidential documents, if any, in his possession, custody, or control, and will
6  supplement his production as necessary if additional documents are discovered.

7      Defendant's investigation is ongoing, but at this time, the production of
8  responsive, non-privileged, non-confidential documents will be made as requested,
9  and Defendant does not intend to withhold responsive, non-privileged, non-
10 confidential documents pursuant to his objections to this Request.

11 **REQUEST FOR PRODUCTION NO. 18**:

12      Any and all COMMUNICATIONS, including, but not limited to, e-mails,
13 direct messages, and text messages, between YOU and Derrick Lawrence,
14 RELATING TO SWEENEY, between January, 2005 and September, 2018.

15 **RESPONSE**:

16      Defendant objects to this Request to the extent it is Burdensome, Overbroad,
17 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.
18 Defendant also objects to the phrase "direct messages" because that term is not
19 defined.  In addition, Defendant objects to this Request because it arguably seeks
20 documents that have no connection to services that Sweeney provided to Defendant
21 or to any of his companies.

22      Subject to and without waiving the foregoing specific objections and the
23 General Objections, Defendant will produce responsive, non-privileged, non-
24 confidential documents, if any, in his possession, custody, or control, and will
25 supplement his production as necessary if additional documents are discovered.

26      Defendant's investigation is ongoing, but at this time, the production of
27 responsive, non-privileged, non-confidential documents will be made as requested,

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

and Defendant does not intend to withhold responsive, non-privileged, non-confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and any PERSON working for Provident Financial Management, RELATING TO SWEENEY, between January, 2005 and the present.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Defendant also objects to the phrase "direct messages" because that term is not defined. In addition, Defendant objects to this Request because it arguably seeks documents that have no connection to services that Sweeney provided to Defendant or to any of his companies.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered. Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as requested, and Defendant does not intend to withhold responsive, non-privileged, non-confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and Cortez Bryant, RELATING TO AVANT GARDE, between January, 2005 and the present.

1  **RESPONSE:**

2      Defendant objects to this Request to the extent it is Burdensome, Overbroad,

3  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

4  Defendant also objects to the phrase "direct messages" because that term is not

5  defined.

6      Subject to and without waiving the foregoing specific objections and the

7  General Objections, Defendant will produce responsive, non-privileged, non-

8  confidential documents, if any, in his possession, custody, or control, and will

9  supplement his production as necessary if additional documents are discovered.

10     Defendant's investigation is ongoing, but at this time, the production of

11 responsive, non-privileged, non-confidential documents will be made as requested,

12 and Defendant does not intend to withhold responsive, non-privileged, non-

13 confidential documents pursuant to his objections to this Request.

14 **REQUEST FOR PRODUCTION NO. 21:**

15     Any and all COMMUNICATIONS, including, but not limited to, e-mails,

16 direct messages, and text messages, between YOU and Jermaine A. Preyan p/k/a

17 Mack Maine, RELATING TO AVANT GARDE, between January, 2005 and the

18 present.

19 **RESPONSE:**

20     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

21 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

22 Defendant also objects to the phrase "direct messages" because that term is not

23 defined.

24     Subject to and without waiving the foregoing specific objections and the

25 General Objections, Defendant will produce responsive, non-privileged, non-

26 confidential documents, if any, in his possession, custody, or control, and will

27 supplement his production as necessary if additional documents are discovered.

28

- 22 -

1    Defendant's investigation is ongoing, but at this time, the production of

2   responsive, non-privileged, non-confidential documents will be made as requested,

3   and Defendant does not intend to withhold responsive, non-privileged, non-

4   confidential documents pursuant to his objections to this Request.

5   **REQUEST FOR PRODUCTION NO. 22:**

6    Any and all COMMUNICATIONS, including, but not limited to, e-mails,

7   direct messages, and text messages, between YOU and Jeffrey Turner, RELATING

8   TO AVANT GARDE, between January, 2005 and the present.

9   **RESPONSE:**

10   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

11   Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

12   Defendant also objects to the phrase "direct messages" because that term is not

13   defined.

14   Subject to and without waiving the foregoing specific objections and the

15   General Objections, Defendant will produce responsive, non-privileged, non-

16   confidential documents, if any, in his possession, custody, or control, and will

17   supplement his production as necessary if additional documents are discovered.

18   Defendant's investigation is ongoing, but at this time, the production of

19   responsive, non-privileged, non-confidential documents will be made as requested,

20   and Defendant does not intend to withhold responsive, non-privileged, non-

21   confidential documents pursuant to his objections to this Request.

22   **REQUEST FOR PRODUCTION NO. 23:**

23   Any and all COMMUNICATIONS, including, but not limited to, e-mails,

24   direct messages, and text messages, between YOU and Derrick Lawrence,

25   RELATING TO AVANT GARDE, between January, 2005 and September, 2018.

26

27

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1  **RESPONSE:**

2      Defendant objects to this Request to the extent it is Burdensome, Overbroad,

3  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

4  Defendant also objects to the phrase "direct messages" because that term is not

5  defined.

6      Subject to and without waiving the foregoing specific objections and the

7  General Objections, Defendant will produce responsive, non-privileged, non-

8  confidential documents, if any, in his possession, custody, or control, and will

9  supplement his production as necessary if additional documents are discovered.

10      Defendant's investigation is ongoing, but at this time, the production of

11  responsive, non-privileged, non-confidential documents will be made as requested,

12  and Defendant does not intend to withhold responsive, non-privileged, non-

13  confidential documents pursuant to his objections to this Request.

14  **REQUEST FOR PRODUCTION NO. 24:**

15      Any and all COMMUNICATIONS, including, but not limited to, e-mails,

16  direct messages, and text messages, between YOU and any PERSON working for

17  Provident Financial Management, RELATING TO AVANT GARDE, between

18  January, 2005 and the present.

19  **RESPONSE:**

20      Defendant objects to this Request to the extent it is Burdensome, Overbroad,

21  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

22  Defendant also objects to the phrase "direct messages" because that term is not

23  defined.

24      Subject to and without waiving the foregoing specific objections and the

25  General Objections, Defendant will produce responsive, non-privileged, non-

26  confidential documents, if any, in his possession, custody, or control, and will

27  supplement his production as necessary if additional documents are discovered.

28

- 24 -

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    Defendant's investigation is ongoing, but at this time, the production of

2    responsive, non-privileged, non-confidential documents will be made as requested,

3    and Defendant does not intend to withhold responsive, non-privileged, non-

4    confidential documents pursuant to his objections to this Request.

5    **REQUEST FOR PRODUCTION NO. 25:**

6    Copies of the Complaints for any and all lawsuits managed by SWEENEY on

7    YOUR behalf and/or on behalf of any YOUNG MONEY ENTITIES, between

8    January, 2005 and September, 2018.

9    **RESPONSE:**

10    Defendant objects to this Request to the extent it is Burdensome, Overbroad,

11    and Vague.  Defendant also objects to this Request to the extent that it uses the word

12    "managed" to state, imply, or suggest that Sweeney provided any management

13    services – as opposed to legal services – to Defendant or to any of the Young Money

14    Entities.  Neither Sweeney nor Avant Garde provided any management services to

15    Defendant or to any of his companies.  Sweeney provided legal services to Defendant

16    and his companies.  Accordingly, the production of any documents in response to this

17    Request is not an admission that this Request has properly characterized the services

18    that Sweeney provided Defendant or to the Young Money Entities.

19    Subject to and without waiving the foregoing specific objections and the

20    General Objections, Defendant will produce responsive, non-privileged, non-

21    confidential documents, if any, in his possession, custody, or control, and will

22    supplement his production as necessary if additional documents are discovered.

23    Defendant's investigation is ongoing, but at this time, the production of

24    responsive, non-privileged, non-confidential documents will be made as requested,

25    and Defendant does not intend to withhold responsive, non-privileged, non-

26    confidential documents pursuant to his objections to this Request.

27

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**REQUEST FOR PRODUCTION NO. 26:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any all settlement amounts to be received by YOU, RELATING TO the CASH MONEY ACTION, including, but not limited to, any agreements related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the settlement payments, if any, that Defendant has received under the settlement for the Cash Money Action from the execution of any such settlement to the date Sweeney was fired, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any all settlement amounts to be received by any of the YOUNG MONEY ENTITIES, RELATING TO the CASH MONEY ACTION, including, but not limited to, any agreements related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-

confidential documents, if any, in his possession, custody, or control sufficient to show the settlement payments, if any, that Defendant has received under the settlement for the Cash Money Action from the execution of any such settlement to the date Sweeney was fired, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any all settlement amounts to be received by YOU, RELATING TO the UMG/SOUNDEXCHANGE ACTION, including, but not limited to, any agreements related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the settlement payments, if any, that Defendant has received under the settlement for the Cash Money Action from the execution of any such settlement to the date Sweeney was fired, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**REQUEST FOR PRODUCTION NO. 29:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any all settlement amounts to be received by any of the YOUNG MONEY ENTITIES, RELATING TO the UMG/SOUNDEXCHANGE ACTION, including, but not limited to, any agreements related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the settlement payments, if any, that Defendant has received under the settlement for the UMG/SoundExchange Action from the execution of any such settlement to the date Sweeney was fired, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any all monetary amounts to be received by YOU, RELATING TO the sale of the YOUNG MONEY MASTERS, including, but not limited to, any agreements related thereto.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. This Request is also objectionable because it concerns a transaction that occurred after Sweeney was fired as the transactional lawyer for Defendant and his companies.

1   Subject to and without waiving the foregoing specific objections and the
2 General Objections, Defendant will not produce any documents in response to this
3 Request.

4 **REQUEST FOR PRODUCTION NO. 31:**

5   Any and all DOCUMENTS that are, constitute, memorialize, concern,
6 mention, relate to, refer to, or may provide evidence of any all monetary amounts to
7 be received by any of the YOUNG MONEY ENTITIES, RELATING TO the sale of
8 the YOUNG MONEY MASTERS, including, but not limited to, any agreements
9 related thereto.

10 **RESPONSE:**

11   Defendant objects to this Request to the extent it is Burdensome, Overbroad,
12 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.
13 This Request is also objectionable because it concerns a transaction that occurred after
14 Sweeney was fired as the transactional lawyer for Defendant and his companies.

15   Subject to and without waiving the foregoing specific objections and the
16 General Objections, Defendant will not produce any documents in response to this
17 Request.

18 **REQUEST FOR PRODUCTION NO. 32:**

19   Any and all DOCUMENTS that are, constitute, memorialize, concern,
20 mention, relate to, refer to, or may provide evidence of money received or earned by
21 or on behalf of YOU, derived from personal appearances by YOU from January, 2005
22 to September, 2018, including all advances, whether recouped or unrecouped.

23 **RESPONSE:**

24   Defendant objects to this Request to the extent it is Burdensome, Overbroad,
25 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

26   Subject to and without waiving the foregoing specific objections and the
27 General Objections, Defendant will produce responsive, non-privileged, non-
28 confidential documents, if any, in his possession, custody, or control sufficient to

1  show the amount of money, if any, that Defendant has received or earned from

2  personal appearances, but will not produce documents concerning any such money

3  beyond the applicable statutes of limitations for the claims asserted, or after

4  September 2018 when Sweeney was fired by Defendant and the agreement between

5  Sweeney and Carter was voided, and will supplement his production as necessary if

6  additional documents are discovered.

7      Defendant's investigation is ongoing, but at this time, the production of

8  responsive, non-privileged, non-confidential documents will be made as limited by

9  this response.

10 **REQUEST FOR PRODUCTION NO. 33:**

11     Any and all DOCUMENTS that are, constitute, memorialize, concern,

12 mention, relate to, refer to, or may provide evidence of money received or earned by

13 or on behalf of any of the YOUNG MONEY ENTITIES, derived from personal

14 appearances by YOU from January, 2005 to September, 2018, including all advances,

15 whether recouped or unrecouped.

16 **RESPONSE:**

17     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

18 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information

19     Subject to and without waiving the foregoing specific objections and the

20 General Objections, Defendant will produce responsive, non-privileged, non-

21 confidential documents, if any, in his possession, custody, or control sufficient to

22 show the amount of money, if any, that any of the Young Money Entities have

23 received or earned from Defendant's personal appearances, but will not produce

24 documents concerning any such money beyond the applicable statutes of limitations

25 for the claims asserted, or after September 2018 when Sweeney was fired by

26 Defendant and the agreement between Sweeney and Carter was voided, and will

27 supplement his production as necessary if additional documents are discovered.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1   Defendant's investigation is ongoing, but at this time, the production of

2   responsive, non-privileged, non-confidential documents will be made as limited by

3   this response.

4   **REQUEST FOR PRODUCTION NO. 34:**

5   Any and all DOCUMENTS that are, constitute, memorialize, concern,

6   mention, relate to, refer to, or may provide evidence of money earned by or on behalf

7   of YOU, derived from touring engagements by YOU from January, 2005 to

8   September, 2018, including all advances, whether recouped or unrecouped.

9   **RESPONSE:**

10   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

11   Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

12   Subject to and without waiving the foregoing specific objections and the

13   General Objections, Defendant will produce responsive, non-privileged, non-

14   confidential documents, if any, in his possession, custody, or control sufficient to

15   show the amount of money, if any, that Defendant has earned from touring

16   engagements, but will not produce documents concerning any such money beyond

17   the applicable statutes of limitations for the claims asserted, or after September 2018

18   when Sweeney was fired by Defendant and the agreement between Sweeney and

19   Carter was voided, and will supplement his production as necessary if additional

20   documents are discovered.

21   Defendant's investigation is ongoing, but at this time, the production of

22   responsive, non-privileged, non-confidential documents will be made as limited by

23   this response.

24   **REQUEST FOR PRODUCTION NO. 35:**

25   Any and all DOCUMENTS that are, constitute, memorialize, concern,

26   mention, relate to, refer to, or may provide evidence of money earned by or on behalf

27   of any of the YOUNG MONEY ENTITIES, derived from touring engagements by

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1  YOU from January, 2005 to September, 2018, including all advances, whether

2  recouped or unrecouped.

3  **RESPONSE**:

4      Defendant objects to this Request to the extent it is Burdensome, Overbroad,

5  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

6      Subject to and without waiving the foregoing specific objections and the

7  General Objections, Defendant will produce responsive, non-privileged, non-

8  confidential documents, if any, in his possession, custody, or control sufficient to

9  show the amount of money, if any, that any of the Young Money Entities have earned

10 from touring engagements, but will not produce documents concerning any such

11 money beyond the applicable statutes of limitations for the claims asserted, or after

12 September 2018 when Sweeney was fired by Defendant and the agreement between

13 Sweeney and Carter was voided, and will supplement his production as necessary if

14 additional documents are discovered.

15     Defendant's investigation is ongoing, but at this time, the production of

16 responsive, non-privileged, non-confidential documents will be made as limited by

17 this response.

18 **REQUEST FOR PRODUCTION NO. 36**:

19     Any and all DOCUMENTS that are, constitute, memorialize, concern,

20 mention, relate to, refer to, or may provide evidence of money received or earned by

21 or on behalf of YOU, from publishing deals entered into by YOU and/or any of the

22 YOUNG MONEY ENTITIES, from January, 2005 to September, 2018, including all

23 advances, whether recouped or unrecouped.

24 **RESPONSE**:

25     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

26 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

27     Subject to and without waiving the foregoing specific objections and the

28 General Objections, Defendant will produce responsive, non-privileged, non-

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that Defendant has received or earned from publishing deals entered by Defendant or any of the Young Money Entities, but will not produce documents concerning any such money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 37:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf any of the YOUNG MONEY ENTITIES, from publishing deals entered into by YOU and/or any of the YOUNG MONEY ENTITIES, from January, 2005 to September, 2018, including all advances, whether recouped or unrecouped.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that any of the Young Money Entities have received or earned from publishing deals entered by Defendant or any of the Young Money Entities, but will not produce documents concerning any such money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and

1   Carter was voided, and will supplement his production as necessary if additional
2   documents are discovered.

3       Defendant's investigation is ongoing, but at this time, the production of
4   responsive, non-privileged, non-confidential documents will be made as limited by
5   this response.

6   **REQUEST FOR PRODUCTION NO. 38:**

7       Any and all DOCUMENTS that are, constitute, memorialize, concern,
8   mention, relate to, refer to, or may provide evidence of money received or earned by
9   or on behalf of YOU, from merchandising deals entered into by YOU and/or any of
10  the YOUNG MONEY ENTITIES, from January, 2005 to September, 2018, including
11  all advances paid with respect thereto, whether recouped or unrecouped.

12  **RESPONSE:**

13      Defendant objects to this Request to the extent it is Burdensome, Overbroad,
14  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

15      Subject to and without waiving the foregoing specific objections and the
16  General Objections, Defendant will produce responsive, non-privileged, non-
17  confidential documents, if any, in his possession, custody, or control sufficient to
18  show the amount of money, if any, that Defendant has received or earned from
19  merchandising deals entered by Defendant or any of the Young Money Entities, but
20  will not produce documents concerning any such money beyond the applicable
21  statutes of limitations for the claims asserted, or after September 2018 when Sweeney
22  was fired by Defendant and the agreement between Sweeney and Carter was voided,
23  and will supplement his production as necessary if additional documents are
24  discovered.

25      Defendant's investigation is ongoing, but at this time, the production of
26  responsive, non-privileged, non-confidential documents will be made as limited by
27  this response.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**REQUEST FOR PRODUCTION NO. 39:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf any of the YOUNG MONEY ENTITIES, from merchandising deals entered into by YOU and/or any of the YOUNG MONEY ENTITIES, from January, 2005 to September, 2018, including all advances paid with respect thereto, whether recouped or unrecouped.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that any of the Young Money Entities have received or earned from merchandising deals entered by Defendant or any of the Young Money Entities, but will not produce documents concerning any such money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 40:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf of YOU, derived from sponsorship deals entered into by YOU and/or

1  any of the YOUNG MONEY ENTITIES, from January, 2005 to September, 2019,
2  including all advances, whether recouped or unrecouped.

3  **RESPONSE:**

4    Defendant objects to this Request to the extent it is Burdensome, Overbroad,
5  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

6    Subject to and without waiving the foregoing specific objections and the
7  General Objections, Defendant will produce responsive, non-privileged, non-
8  confidential documents, if any, in his possession, custody, or control sufficient to
9  show the amount of money, if any, that Defendant has received or earned from
10 sponsorship deals entered by Defendant or any of the Young Money Entities, but will
11 not produce documents concerning any such money beyond the applicable statutes of
12 limitations for the claims asserted, or after September 2018 when Sweeney was fired
13 by Defendant and the agreement between Sweeney and Carter was voided, and will
14 supplement his production as necessary if additional documents are discovered.

15   Defendant's investigation is ongoing, but at this time, the production of
16 responsive, non-privileged, non-confidential documents will be made as limited by
17 this response.

18 **REQUEST FOR PRODUCTION NO. 41:**

19   Any and all DOCUMENTS that are, constitute, memorialize, concern,
20 mention, relate to, refer to, or may provide evidence of money received or earned by
21 or on behalf of any of the YOUNG MONEY ENTITIES, derived from sponsorship
22 deals entered into by YOU and/or any of the YOUNG MONEY ENTITIES, from
23 January, 2005 to September, 2019, including all advances, whether recouped or
24 unrecouped.

25 **RESPONSE:**

26   Defendant objects to this Request to the extent it is Burdensome, Overbroad,
27 Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    Subject to and without waiving the foregoing specific objections and the

2    General Objections, Defendant will produce responsive, non-privileged, non-

3    confidential documents, if any, in his possession, custody, or control sufficient to

4    show the amount of money, if any, that any of the Young Money Entities have

5    received or earned from sponsorship deals entered by Defendant or any of the Young

6    Money Entities, but will not produce documents concerning any such money beyond

7    the applicable statutes of limitations for the claims asserted, or after September 2018

8    when Sweeney was fired by Defendant and the agreement between Sweeney and

9    Carter was voided, and will supplement his production as necessary if additional

10   documents are discovered.

11   Defendant's investigation is ongoing, but at this time, the production of

12   responsive, non-privileged, non-confidential documents will be made as limited by

13   this response.

14   **REQUEST FOR PRODUCTION NO. 42:**

15   Any and all DOCUMENTS that are, constitute, memorialize, concern,

16   mention, relate to, refer to, or may provide evidence of money received or earned by

17   or on behalf of YOU, in the form of royalties from any recording agreements entered

18   into by YOU and/or any of the YOUNG MONEY ENTITIES, from January, 2005 to

19   September, 2020, including all advances, whether recouped or unrecouped.

20   **RESPONSE:**

21   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

22   Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

23   Subject to and without waiving the foregoing specific objections and the

24   General Objections, Defendant will produce responsive, non-privileged, non-

25   confidential documents, if any, in his possession, custody, or control sufficient to

26   show the amount of money, if any, that Defendant has received or earned as royalties

27   from any recording agreement entered by Defendant or any of the Young Money

28   Entities, but will not produce documents concerning any such money beyond the

applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 43:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf of any of the YOUNG MONEY ENTITIES, in the form of royalties from any recording agreements entered into by YOU and/or any of the YOUNG MONEY ENTITIES, from January, 2005 to September, 2020, including all advances, whether recouped or unrecouped.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that any of the Young Money Entities have received or earned as royalties from any recording agreement entered by Defendant or any of the Young Money Entities, but will not produce documents concerning any such money or royalties beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 44:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf of YOU, from any record distribution agreements entered into by YOU and/or any of the YOUNG MONEY ENTITIES, from January, 2005 to September, 2020, including all advances, whether recouped or unrecouped.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that Defendant has received or earned as royalties from any record distribution agreements entered by Defendant or any of the Young Money Entities, but will not produce documents concerning any such money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 45:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by

1  or on behalf of any of the YOUNG MONEY ENTITIES, from any record distribution
2  agreements entered into by YOU and/or any of the YOUNG MONEY ENTITIES,
3  from January, 2005 to September, 2020, including all advances, whether recouped or
4  unrecouped.

5  **RESPONSE:**

6      Defendant objects to this Request to the extent it is Burdensome, Overbroad,
7  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

8      Subject to and without waiving the foregoing specific objections and the
9  General Objections, Defendant will produce responsive, non-privileged, non-
10  confidential documents, if any, in his possession, custody, or control sufficient to
11  show the amount of money, if any, that any of the Young Money Entities have
12  received or earned as royalties from any record distribution agreements entered by
13  Defendant or any of the Young Money Entities, but will not produce documents
14  concerning any such money beyond the applicable statutes of limitations for the
15  claims asserted, or after September 2018 when Sweeney was fired by Defendant and
16  the agreement between Sweeney and Carter was voided, and will supplement his
17  production as necessary if additional documents are discovered.

18      Defendant's investigation is ongoing, but at this time, the production of
19  responsive, non-privileged, non-confidential documents will be made as limited by
20  this response.

21  **REQUEST FOR PRODUCTION NO. 46:**

22      Any and all DOCUMENTS that are, constitute, memorialize, concern,
23  mention, relate to, refer to, or may provide evidence of money received or earned by
24  or on behalf of YOU from January, 2005 to September, 2020, including, without
25  limitation, all contracts entered into by or on behalf of YOU and all payments made
26  to or for the benefit of YOU.

27
28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that Defendant has received or earned, but will not produce documents concerning any such money beyond the applicable statutes of limitations for the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 47:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of money received or earned by or on behalf of any of the YOUNG MONEY ENTITIES from January, 2008 to September, 2020, including, without limitation, all contracts entered into by or on behalf of any of the YOUNG MONEY ENTITIES and all payments made to or for the benefit of any of the YOUNG MONEY ENTITIES.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control sufficient to show the amount of money, if any, that any of the Young Money Entities have

1  received or earned, but will not produce documents concerning any such money

2  beyond the applicable statutes of limitations for the claims asserted, or after

3  September 2018 when Sweeney was fired by Defendant and the agreement between

4  Sweeney and Carter was voided, and will supplement his production as necessary if

5  additional documents are discovered.

6      Defendant's investigation is ongoing, but at this time, the production of

7  responsive, non-privileged, non-confidential documents will be made as limited by

8  this response.

9  **REQUEST FOR PRODUCTION NO. 48:**

10     Copies of YOUR Federal Income Tax Returns for the years 2005 through 2020.

11 **RESPONSE:**

12     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

13 and seeks Duplicative and Confidential information. No documents will be produced

14 in response to this Request.

15 **REQUEST FOR PRODUCTION NO. 49:**

16     Copies of YOUR State Income Tax Returns for the years 2005 through 2020.

17 **RESPONSE:**

18     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

19 and seeks Duplicative and Confidential information. No documents will be produced

20 in response to this Request.

21 **REQUEST FOR PRODUCTION NO. 50:**

22     Copies of the Federal Income Tax Returns for all of the YOUNG MONEY

23 ENTITIES for the years 2008 through 2020.

24 **RESPONSE:**

25     Defendant objects to this Request to the extent it is Burdensome, Overbroad,

26 and seeks, Duplicative and Confidential information. No documents will be produced

27 in response to this Request.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    **REQUEST FOR PRODUCTION NO. 51:**

2         Copies of the State Income Tax Returns for all of the YOUNG MONEY

3    ENTITIES for the years 2008 through 2020.

4    **RESPONSE:**

5         Defendant objects to this Request to the extent it is Burdensome, Overbroad,

6    and seeks Duplicative and Confidential information.  No documents will be produced

7    in response to this Request.

8    **REQUEST FOR PRODUCTION NO. 52:**

9         Any and all DOCUMENTS that are, constitute, memorialize, concern,

10   mention, relate to, refer to, or may provide evidence of any and all services provided

11   to YOU by SWEENEY, RELATING TO Cash Money Records.

12   **RESPONSE:**

13        Defendant objects to this Request to the extent it is Burdensome, Overbroad,

14   Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

15   Moreover, because the Request fails to define the nature of the "services" being

16   inquired about, Defendant's interpretation of the Request may be different from what

17   Plaintiffs intended.  In addition, to the extent the Request seeks documents about

18   "services" during the specified period that were never discussed with Carter or

19   undertaken by Sweeney for the Young Money Entities, then no such documents

20   would exist.

21        Subject to and without waiving the foregoing specific objections and the

22   General Objections, Defendant will produce responsive, non-privileged, non-

23   confidential documents, if any, in his possession, custody, or control, but will not

24   produce documents concerning any such services beyond the applicable statutes of

25   limitations for the claims asserted, or after September 2018 when Sweeney was fired

26   by Defendant and the agreement between Sweeney and Carter was voided, and not

27   otherwise covered by any prior Request, and will supplement his production as

28   necessary if additional documents are discovered.

1   Defendant's investigation is ongoing, but at this time, the production of

2   responsive, non-privileged, non-confidential documents will be made as limited by

3   this response.

4   **REQUEST FOR PRODUCTION NO. 53:**

5   Any and all COMMUNICATIONS, including, but not limited to, e-mails,

6   direct messages, and text messages, between YOU and any PERSON working for

7   Cash Money Records, RELATING TO any services performed by SWEENEY.

8   **RESPONSE:**

9   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

10  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

11  Moreover, because the Request fails to define the nature of the "services" being

12  inquired about, Defendant's interpretation of the Request may be different from what

13  Plaintiffs intended.  In addition, to the extent the Request seeks documents about

14  "services" during the specified period that were never discussed with Carter or

15  undertaken by Sweeney for the Young Money Entities, then no such documents

16  would exist.  Defendant also objects to the phrase "direct messages" because that term

17  is not defined.

18  Subject to and without waiving the foregoing specific objections and the

19  General Objections, Defendant will produce responsive, non-privileged, non-

20  confidential documents, if any, in his possession, custody, or control, as limited by

21  the applicable statutes of limitations for the claims asserted, but excluding any period

22  after September 2018 when Sweeney was fired by Defendant and the agreement

23  between Sweeney and Carter was voided, and will supplement his production as

24  necessary if additional documents are discovered.

25  Defendant's investigation is ongoing, but at this time, the production of

26  responsive, non-privileged, non-confidential documents will be made as limited by

27  this response.

28

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**REQUEST FOR PRODUCTION NO. 54:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of any and all services provided to YOU by SWEENEY, RELATING TO Warner Chappell Music, Inc., including, but not limited to, in connection with any publishing agreements therewith.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services" being inquired about, Defendant's interpretation of the Request may be different from what Plaintiffs intended. In addition, to the extent the Request seeks documents about "services" during the specified period that were never discussed with Carter or performed by Sweeney for the Young Money Entities, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, as limited by the applicable statutes of limitations for the claims asserted, but excluding any period after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 55:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and any PERSON working for

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1  Warner Chappell Music, Inc., including, but not limited to, Scott McDowell,
2  RELATING TO any services performed by SWEENEY.

3  **RESPONSE:**

4      Defendant objects to this Request to the extent it is Burdensome, Overbroad,
5  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.
6  Moreover, because the Request fails to define the nature of the "services" being
7  inquired about, Defendant's interpretation of the Request may be different from what
8  Plaintiffs intended.  In addition, to the extent the Request seeks documents about
9  "services" during the specified period that were never discussed with Carter or
10  undertaken by Sweeney for the Young Money Entities, then no such documents
11  would exist.

12      Subject to and without waiving the foregoing specific objections and the
13  General Objections, Defendant will produce responsive, non-privileged, non-
14  confidential documents, if any, in his possession, custody, or control, as limited by
15  the applicable statutes of limitations for the claims asserted, but excluding any period
16  after September 2018 when Sweeney was fired by Defendant and the agreement
17  between Sweeney and Carter was voided, and will supplement his production as
18  necessary if additional documents are discovered.

19      Defendant's investigation is ongoing, but at this time, the production of
20  responsive, non-privileged, non-confidential documents will be made as limited by
21  this response.

22  **REQUEST FOR PRODUCTION NO. 56:**

23      Any and all DOCUMENTS that are, constitute, memorialize, concern,
24  mention, relate to, refer to, or may provide evidence of any and all services provided
25  to YOU by SWEENEY, RELATING TO Universal Music Group, Inc.

26  **RESPONSE:**

27      Defendant objects to this Request to the extent it is Burdensome, Overbroad,
28  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

- 46 -

Moreover, because the Request fails to define the nature of the "services" being inquired about, Defendant's interpretation of the Request may be different from what Plaintiffs intended.  In addition, to the extent the Request seeks documents about "services" during the specified period that were never discussed with Carter or undertaken by Sweeney for the Young Money Entities, then no such documents would exist.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, as limited by the applicable statutes of limitations for the claims asserted, but excluding any period after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, but excluding any period after September 2018 when Sweeney was fired by Defendant, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 57:**

Any and all COMMUNICATIONS, including, but not limited to, e-mails, direct messages, and text messages, between YOU and any PERSON working for Universal Music Group, Inc., RELATING TO any services performed by SWEENEY.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services" being inquired about, Defendant's interpretation of the Request may be different from what Plaintiffs intended.  In addition, to the extent the Request seeks documents about

1  "services" during the specified period that were never discussed with Carter or

2  undertaken by Sweeney for the Young Money Entities, then no such documents

3  would exist.

4        Subject to and without waiving the foregoing specific objections and the

5  General Objections, Defendant will produce responsive, non-privileged, non-

6  confidential documents, if any, in his possession, custody, or control as limited by the

7  applicable statutes of limitations for the claims asserted, but excluding any period

8  after September 2018 when Sweeney was fired by Defendant and the agreement

9  between Sweeney and Carter was voided, and will supplement his production as

10  necessary if additional documents are discovered.

11       Defendant's investigation is ongoing, but at this time, the production of

12  responsive, non-privileged, non-confidential documents will be made as limited by

13  this response.

14  **REQUEST FOR PRODUCTION NO. 58:**

15       Any and all DOCUMENTS that are, constitute, memorialize, concern,

16  mention, relate to, refer to, or may provide evidence of YOUR contention that Cortez

17  Bryant "served as [YOUR] personal manager from the start of [YOUR] career as a

18  recording artist and entertainer (except for a brief interruption) until the spring of

19  2019," as set forth in paragraph 6 of YOUR Declaration in support of YOUR Motion

20  to Dismiss, including, but not limited to, any written management agreements

21  between YOU and Cortez Bryant.

22  **RESPONSE:**

23       Defendant objects to this Request to the extent it is Burdensome, Overbroad,

24  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

25       Subject to and without waiving the foregoing specific objections and the

26  General Objections, Defendant will produce responsive, non-privileged, non-

27  confidential documents, if any, in his possession, custody, or control, and will

28  supplement his production as necessary if additional documents are discovered.

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

1    Defendant's investigation is ongoing, but at this time, the production of

2    responsive, non-privileged, non-confidential documents will be made as requested,

3    and Defendant does not intend to withhold responsive, non-privileged, non-

4    confidential documents pursuant to his objections to this Request.

5    **REQUEST FOR PRODUCTION NO. 59:**

6    Any and all DOCUMENTS that are, constitute, memorialize, concern,

7    mention, relate to, refer to, or may provide evidence of YOUR contention that

8    SWEENEY "told [YOU] he lived, and was practicing law, in New York City during

9    the period he was [YOUR] lawyer," as set forth in paragraph 7 of YOUR Declaration

10   in support of YOUR Motion to Dismiss.

11   **RESPONSE:**

12   Defendant objects to this Request to the extent it is Burdensome, Overbroad,

13   Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

14   Subject to and without waiving the foregoing specific objections and the

15   General Objections, Defendant will produce responsive, non-privileged, non-

16   confidential documents, if any, in his possession, custody, or control, and will

17   supplement his production as necessary if additional documents are discovered.

18   Defendant's investigation is ongoing, but at this time, the production of

19   responsive, non-privileged, non-confidential documents will be made as requested,

20   and Defendant does not intend to withhold responsive, non-privileged, non-

21   confidential documents pursuant to his objections to this Request.

22   **REQUEST FOR PRODUCTION NO. 60:**

23   Any and all DOCUMENTS that are, constitute, memorialize, concern,

24   mention, relate to, refer to, or may provide evidence of YOUR contention that

25   "Sweeney unilaterally directed [YOUR] business managers to pay his legal fees over

26   the years to Avant Garde," as set forth in paragraph 10 of YOUR Declaration in

27   support of YOUR Motion to Dismiss.

28

- 49 -

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as requested, and Defendant does not intend to withhold responsive, non-privileged, non-confidential documents pursuant to his objections to this Request.

**REQUEST FOR PRODUCTION NO. 61:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence of YOUR contention that SWEENEY "charged [YOU] an unconscionable legal fee," as set forth in paragraph 12 of YOUR Declaration in support of YOUR Motion to Dismiss, including, but not limited to any expert opinion reports prepared and/or expert analyses of the services provided to YOU by SWEENEY.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, Premature, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.  Moreover, because the Request fails to define the nature of the "services" being inquired about, Defendant's interpretation of the Request may be different from what Plaintiffs intended.

In addition, to the extent the Request seeks any documents from or created, in whole or in part, by any expert witness for Defendant, including, but not limited to, expert opinion reports or expert analyses, such documents will not be produced in response to this Request, but shall be disclosed, to the extent required, in accordance

- 50 -

1   with the Federal Rules of Civil Procedure and the Scheduling and Case Management
2   Order (Doc. No. 37) (the "SCMO").   The SCMO provides a deadline for the
3   completion of expert discovery and the service of expert reports and rebuttal reports.

4   Subject to and without waiving the foregoing specific objections and the
5   General Objections, Defendant will produce responsive, non-privileged, non-
6   confidential documents, if any, in his possession, custody, or control, and will
7   supplement his production as necessary if additional documents are discovered.

8   Defendant's investigation is ongoing, but at this time, the production of
9   responsive, non-privileged, non-confidential documents will be made as limited by
10  this response.

11  **REQUEST FOR PRODUCTION NO. 62:**

12  Any and all COMMUNICATIONS, messages, and text messages, between
13  YOU and any PERSON (other than YOUR legal counsel), RELATING TO any
14  discussion that SWEENEY was allegedly overcharging YOU for his services.

15  **RESPONSE:**

16  Defendant objects to this Request to the extent it is Burdensome, Overbroad,
17  Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.
18  Moreover, because the Request fails to define the nature of the "services" being
19  inquired about, Defendant's interpretation of the Request may be different from what
20  Plaintiffs intended.

21  In addition, to the extent the Request seeks any documents from or created, in
22  whole or in part, by any expert witness for Defendant, including, but not limited to,
23  expert opinion reports or expert analyses, such documents will not be produced in
24  response to this Request, but shall be disclosed, to the extent required, in accordance
25  with the Federal Rules of Civil Procedure and the SCMO.  The SCMO provides a
26  deadline for the completion of expert discovery and the service of expert reports and
27  rebuttal reports.

28

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 63:**

Any and all DOCUMENTS that are, constitute, memorialize, concern, mention, relate to, refer to, or may provide evidence for the basis of YOUR contention and/or conclusion that SWEENEY was overcharging YOU for his services.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information. Moreover, because the Request fails to define the nature of the "services" being inquired about, Defendant's interpretation of the Request may be different from what Plaintiffs intended.

In addition, to the extent the Request seeks any documents from or created, in whole or in part, by any expert witness for Defendant, including, but not limited to, expert opinion reports or expert analyses, such documents will not be produced in response to this Request, but shall be disclosed, to the extent required, in accordance with the Federal Rules of Civil Procedure and the SCMO. The SCMO provides a deadline for the completion of expert discovery and the service of expert reports and rebuttal reports.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

**REQUEST FOR PRODUCTION NO. 64:**

Any and all DOCUMENTS identified by YOU in YOUR Initial Disclosures.

**RESPONSE:**

Defendant objects to this Request to the extent it is Burdensome, Overbroad, Vague, and seeks Irrelevant, Duplicative, Confidential, and Privileged information.

Defendant further objects to the extent the Request seeks the production of broad categories of documents that encompass material not relevant to this action. For example, category 4 identifies "[d]ocuments concerning the personal management services that Cortez Bryant and/or Jermaine Preyan provided Defendants." While this category encompasses documents relevant to the action, not every document within this broad category (or others) will reasonably lead to the discovery of admissible evidence. Where no such connection exists, the documents will not be produced.

In addition, to the extent the Request seeks any documents from or created, in whole or in part, by any expert witness for Defendant, including, but not limited to, expert opinion reports or expert analyses, such documents will not be produced in response to this Request, but shall be disclosed, to the extent required, in accordance with the Federal Rules of Civil Procedure and the SCMO. The SCMO provides a deadline for the completion of expert discovery and the service of expert reports and rebuttal reports.

Subject to and without waiving the foregoing specific objections and the General Objections, Defendant will produce responsive, non-privileged, non-confidential documents, if any, in his possession, custody, or control, but will not produce documents concerning any payments or money earned or received by Defendant or any of his companies beyond the applicable statutes of limitations for

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

the claims asserted, or after September 2018 when Sweeney was fired by Defendant and the agreement between Sweeney and Carter was voided, and will supplement his production as necessary if additional documents are discovered.

Defendant's investigation is ongoing, but at this time, the production of responsive, non-privileged, non-confidential documents will be made as limited by this response.

Dated:  August 4, 2021

**KATTEN MUCHIN ROSENMAN LLP**

Tami Kameda Sims

By:  ___/s/ Tami Kameda Sims_____

Tami Kameda Sims

Attorneys for Defendants

OBJECTIONS TO DEPOSITION NOTICE AND DOCUMENT REQUESTS BY DEFENDANT DWAYNE MICHAEL CARTER JR. p/k/a LIL WAYNE

## PROOF OF SERVICE

_Dwayne Carter p/k/a Lil Wayne and Young Money Touring, Inc.. adv. Ronald Sweeney – USDC Central District Western Division Case no. 2:21-cv-01689_

    I am over the age of 18 and not a party to the within action.  My business address is Katten Muchin Rosenman LLP, 2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012.

    On August 4, 2021, I served the foregoing document(s) described as follows: **OBJECTIONS BY DEFENDANT DWAYNE MICHAEL CARTER JR.  p/k/a LIL WAYNE TO PLAINTIFFS' NOTICE OF DEPOSITION AND THE REQUESTS FOR PRODUCTION OF DOCUMENTS IN EXHIBIT "A"**.  Said documents were served on the interested party or parties in this action by placing true copies thereof, enclosed in a sealed envelope, and addressed as follows:

| | |
|---|---|
| **X** | **U.S. MAIL -** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, addressed as set forth below. |
| **X** | **BY ELECTRONIC MAIL –** The document was electronically and the transmission was reported as complete without error. |
| | **BY FACSIMILE MACHINE**.  I caused the above-referenced document(s) to be transmitted to the person(s) on the below Service List at the fax number indicated adjacent to said person(s) name(s) and address(es).  I did not receive, within a reasonable time after the transmission, any message or other indication that the transmission was unsuccessful. |
| | **OVERNIGHT COURIER** - I caused the above-referenced document(s) to be delivered to an overnight courier service (Federal Express), for delivery to the addressee(s) indicated below. |

**Edward F. McPherson, Esq.**
**Pierre B. Pine, Esq.**
**McPherson LLP**
**1801 Century Park East, 24th Floor**
**Los Angeles, CA  90067**
**emcpherson@mcpherson-llp.com**
**ppine@mcpherson-llp.com**

    Executed on August 4, 2021 at Los Angeles, California.  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Paula Phillips_
_____
Paula Phillips

148606228