O

# United States District Court
# Central District of California

| | |
|---|---|
| RONALD E. SWEENEY, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>DWAYNE MICHAEL CARTER JR., et al.,<br><br>        Defendants. | Case № 2:21-cv-01689-ODW (JCx)<br><br>**ORDER GRANTING MOTION TO DISMISS [13]** |

## I.   INTRODUCTION

Pending before the Court is Defendants' motion to dismiss this action for lack of personal jurisdiction, among other things. (*See generally* Mot. to Dismiss ("Mot."), ECF No. 13.)   For the reasons discussed below, the Court **GRANTS** Defendants' Motion.[1]

## II.   BACKGROUND

Plaintiff Ronald E. Sweeney is a California entertainment attorney and President of co-plaintiff Avant Garde Management (collectively "Plaintiffs"). (Notice of Removal Ex. 2 ("Compl.") ¶ 5, ECF No. 1-2.)   Plaintiffs have worked for

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Defendant Dwayne Michael Carter, a performer professionally known as Lil Wayne, since 2005. (*Id.* ¶ 17.) Plaintiffs allege Carter has breached several oral agreements by failing to pay for Plaintiffs' services in full. (*Id.* ¶ 4.) Plaintiffs have also named Carter's "Young Money" business entities—namely Young Money Entertainment LLC (Carter's record label), Young Money Publishing, Inc., Young Money Records, Inc., Young Money Ventures, LLC, and Young Money Touring, Inc.—as co-defendants (collectively "Defendants"). (*Id.* ¶¶ 8–12, 18.)

In 2005, Carter's then-manager sought Sweeney's help renegotiating a "terrible contractual arrangement that [Carter] had with Cash Money Records" at the time. (*Id.* ¶ 17; Decl. Ronald E. Sweeney ("Sweeney Decl.") ¶ 8, ECF No. 14-1.) Plaintiffs assert Carter first met with Sweeney in Westwood, Los Angeles. (Sweeney Decl. ¶ 8.) Some time after this "successful first representation," Carter hired Sweeney on an ongoing basis. (*Id.*) Plaintiffs allege Carter hired Sweeney "as his personal manager," (Compl. ¶ 18), while Carter asserts he hired Sweeney solely as an "entertainment lawyer," (Decl. Dwayne Michael Carter ("Carter Decl.") ¶¶ 5, 13, ECF No. 13-2.)

In 2008, upon Carter creating Young Money Entertainment, Sweeney attests that his duties "expanded greatly." (Sweeney Decl. ¶ 9.) Sweeney contends that, as manager of the Defendant entities, he "agreed to perform a number of functions across the managerial, strategic and business spectrum for [Defendants]" in exchange for 10% of Carter's gross compensation (the "2008 Commissions Agreement"). (*Id.*)

In late 2013, Sweeney and Carter met in Atlanta, Georgia. (Compl. ¶ 26.) Plaintiffs allege that Carter, then low on funds, expressed concern he could not continue retaining Plaintiffs. (*Id.* ¶ 27.) Sweeney proposed Carter sue his label, Cash Money, for unpaid revenues and pay Plaintiffs out of the settlement proceeds. (*Id.* ¶¶ 26–27.) Carter allegedly agreed. (*Id.* ¶ 28.) In exchange for Plaintiffs' continued management services, Carter allegedly promised to pay Plaintiffs 10% of all proceeds from the litigation (the "2013 Litigation Agreement"), plus 10% of any future sales of

master recordings owned by Young Money Entertainment ("2013 Masters Agreement"), in addition to Sweeney's 10% commissions. (*Id.*)

In 2014, Carter sued Cash Money. (Sweeney Decl. ¶ 10.) In 2016, Carter initiated a separate suit against Universal Music Group ("UMG") and SoundExchange. (*Id.* ¶ 12.) In May 2018, Carter settled both lawsuits. (Compl. ¶ 37.) Plaintiffs contend the 2013 Litigation Agreement applies to the proceeds from both settlements. (Sweeney Decl. ¶ 12.) Plaintiffs allege they have received some portion of the settlements but not the agreed-upon 10% from each. (Compl. ¶ 38.)

Plaintiffs allege that, in May 2018, they agreed to additional management duties in exchange for a new commissions rate of 17% of Carter's gross compensation (the "2018 Increased Commissions Agreement"). (*Id.* ¶¶ 39–40.) In September 2018, Carter fired Plaintiffs. (*Id.* ¶ 43.) And in June 2020, Carter sold the master recordings owned by Defendants to UMG for more than $100 million. (*Id.* ¶ 44.)

Plaintiffs filed this suit in the Superior Court of the State of California, County of Los Angeles, asserting causes of action for breach of oral contract, fraudulent inducement, unjust enrichment, quantum meruit, and accounting. (*Id.* ¶¶ 47–68.) Plaintiffs allege that Carter has breached four oral agreements (collectively "the Oral Agreements") by promising but failing to pay:

- (1) outstanding 10% commissions owed for management work prior to May 2018, in violation of the 2008 Commissions Agreement, (*id.* ¶ 45);
- (2) the balance of Sweeney's 10% share of the Cash Money and UMG/SoundExchange settlements, in violation of the 2013 Litigation Agreement made in Atlanta, Georgia, (*id.* ¶¶ 46, 49);
- (3) all of Sweeney's promised 10% share of the 2020 UMG master recordings sale, in violation of the 2013 Masters Agreement made in Atlanta, Georgia, (*id.* ¶ 49); and

- (4) outstanding 17% commissions owed for May–September 2018 management work, in violation of the 2018 Increased Commissions Agreement, (*id.* ¶ 45).

Defendants removed the matter to this Court based on diversity jurisdiction. (Notice of Removal ¶ 6, ECF No. 1.) Defendants now move to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Mot. 1, 9–13.) Defendants alternatively move to dismiss or stay the instant action under the *Colorado River* doctrine based on Carter's pending lawsuit against Sweeney in New York state court. (*Id.* at 1, 14–19.) Defendants also alternatively move for judgment on the pleadings. (*Id.* at 1, 20–25.) The matter is fully briefed. (*See* Mot.; Opp'n, ECF No. 14; Reply ISO Mot., ECF No. 24.)[2]

### III.    LEGAL STANDARD

Under California's long-arm statute, courts may only exercise personal jurisdiction over a non-resident defendant if doing so "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Where the non-resident defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice,'" a court may exercise either general or specific personal jurisdiction. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[2] Defendants request judicial notice of numerous documents Carter filed in a separate action against Sweeney. (*See* Mot. 5 n.4.) These include a copy of that complaint (Carter Decl. Ex. A); an email from Sweeney terminating his relationship with Carter (Decl. Tami Kameda Sims ("Sims Decl.") Ex. A, ECF No. 13-1); an affidavit Sweeney filed and later withdrew (*id.* Ex. B); and a purported fee agreement, unsigned, between Sweeney and Carter, attached to Sweeney's withdrawn affidavit (*id.* Ex. B-4). Generally, a court may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, the Court may judicially notice "facts not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court does not rely on the proffered complaint to resolve the present Motion, nor may the Court judicially notice the other exhibits that remain disputed by the parties. Accordingly, the request is **DENIED**.

Pursuant to Rule 12(b)(2), a party may seek to dismiss an action for lack of personal jurisdiction. The plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

## IV. DISCUSSION

Defendants argue that the Court may not subject Carter or any of the Young Money entities to general or specific jurisdiction in California. For the reasons below, the Court agrees. Because that conclusion resolves the Motion, the Court need not address Defendants' second and third theories.[3]

### A. General Jurisdiction

To exercise general jurisdiction over a defendant, its affiliations with the forum state must be so "continuous and systematic" as to render it essentially "at home." *Daimler*, 571 U.S. at 139. Because a finding of general jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," the standard is "exacting." *Schwarzenegger*, 374 F.3d at 801. "For an individual, the paradigm forum for the exercise of general jurisdiction is [his] domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The equivalent "paradigm all-purpose forums" for a corporation are its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137.

---

[3] Plaintiffs file boilerplate objections to portions of Defendants' supporting declarations on the grounds that such statements lack foundation, lack personal knowledge, are speculative, and are conclusory. (*See* Pls. Evid. Objs. to Decls. Sims; Theodore Harris; Beth Sabbagh; and Derek A. Williams ISO Mot., ECF Nos. 15, 28–30.) In reaching its conclusion below, the Court does not rely on any statements that lack foundation, lack personal knowledge, or are speculative, conclusory, irrelevant, or otherwise inadmissible. Thus, to the extent the Court considers such statements, the Court **OVERRULES** Plaintiffs' objections.

The parties agree Carter is a resident of Florida. (Compl. ¶ 7; Carter Decl. ¶¶ 16, 18–20.) The parties also agree that no Defendant entity is incorporated or maintains its principal place of business in California. (Compl. ¶¶ 8–12; Carter Decl. ¶¶ 26–32.) As Defendants' "paradigm forums" of jurisdiction are outside California, the Court presumptively lacks general jurisdiction over Defendants.

Nonetheless, Plaintiffs contend all Defendants have sufficient ties to California to subject them to general jurisdiction. Plaintiffs point to Defendants' "significant and continuous business dealings and relationships" in the state, including recording, publishing, and touring agreements with California-based companies; California tour performances; and television show tapings in Los Angeles. (Opp'n 16–17; Sweeney Decl. ¶¶ 27–30.) Plaintiffs also contend Carter has significant personal connections to the forum, such as purchasing a home, maintaining bank accounts, and spending "the bulk of 2020" in California. (Sweeney Decl. ¶¶ 26, 32.)

The isolated contacts put forth by Plaintiffs fall well short of "continuous and systematic" affiliations. *Daimler*, 571 U.S. at 139. Courts have "routinely rejected the suggestion that generating substantial revenue from the sale of products or services to forum state residents is by itself sufficient to support the exercise of general jurisdiction." *Costa v. Keppel Singmarine Dockyard PTE*, No. CV 01-11015 MMM, 2003 WL 24242419, at *9–10 (C.D. Cal. Apr. 24, 2003) (collecting cases). Likewise, Carter's temporary travel and purchase of property in the forum hardly amount to the "exceptional case" where Defendants' operations are so substantial as to render them "at home" in California. *Daimler*, 571 U.S. at 139 n.19. Thus, the Court cannot exercise general jurisdiction over Defendants.

**B.      Specific Jurisdiction**

Where a defendant's forum contacts fail to demonstrate "continuous and systematic" affiliations, more limited specific jurisdiction may be found if "the suit arises out of or relates to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923–24 (alterations and internal quotation marks omitted). In the Ninth

Circuit, specific jurisdiction over a non-resident defendant exists where: (1) the defendant either purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim arises out of the defendant's forum-related activities; and (3) the court's exercise of personal jurisdiction over the defendant is reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of establishing the first two prongs. *Id.* The burden then shifts to the defendant to show the exercise of jurisdiction would not be reasonable. *Id*. Defendants primarily contest the first two prongs. (*See* Mot. 12–13; Reply 3–6.)

### 1. *Purposeful Availment*

In cases sounding in contract, courts most often use a purposeful availment analysis. *Schwarzenegger*, 374 F.3d at 802. The plaintiff must "show[] that a defendant purposefully availed himself of the privilege of doing business in" the forum. *Id.* Such a showing "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.*[4] "[M]erely contracting with a resident of the forum state is insufficient." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). In analyzing purposeful availment, courts primarily consider four factors: (1) prior negotiations between the parties; (2) the terms of the contract; (3) contemplated future consequences; and (4) the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

a. <u>Prior Negotiations</u>

"The first factor looks at where and how the parties conducted their negotiations." *Salvare La Vita Water, LLC v. Crazy Bottling Co., LLC*, No. 19-cv-07497-DMR, 2020 WL 4051792, at *5 (N.D. Cal. July 20, 2020). It is "presumptively reasonable" to subject a defendant to personal jurisdiction where he "deliberately

---

[4] Suits sounding in tort typically use a purposeful direction analysis, which examines "defendant's actions outside the forum state that are directed at the forum." *Id.* at 802–03. Where, as here, some claims sound in tort but all arise out of a contractual relationship, the standard of purposeful availment is appropriately applied. *See Costa*, 2003 WL 24242419, at *14–15.

reached out beyond" his own borders to negotiate with a party in the forum state. *Burger King*, 471 U.S. at 479–80 (alteration and internal quotation marks omitted).

Plaintiffs have not provided information on what, where, or how any negotiations took place prior to any of the Oral Agreements. Plaintiffs allege that they "agreed to" expand their duties in 2008 and 2018, implying Defendants requested the expansions. (Compl. ¶¶ 18, 39–40.) Initiating an agreement could support purposeful availment. *Cf. Skanda Grp. of Indus. v. Cap. Health Partner*, No. 2:20-CV-10189-CAS (MRWx), 2020 WL 7630687, at *5 (C.D. Cal. Dec. 21, 2020) ("[T]hat *plaintiff* solicited the deal with defendant cuts against finding purposeful availment." (emphasis added)). On the other hand, the record is clear that *Plaintiffs* proposed the 2013 Litigation Agreement, not Defendants. (Compl. ¶ 26.) Moreover, Plaintiffs did so in Georgia, not California, and Plaintiffs allege Sweeney and Carter reached the 2013 Masters Agreement in the same Georgia meeting. These facts weigh against purposeful availment.

Plaintiffs have provided no indication of negotiations occurring in the forum and, indeed, the record establishes Plaintiffs solicited at least one agreement *outside* the forum. On balance, this factor weighs against a finding of purposeful availment.

    b. <u>Terms of the Contract</u>

Similarly, Plaintiffs have not alleged any terms that indicate purposeful availment. "Terms that provide fair notice to a defendant that he may possibly be subject to suit in the forum state weigh in favor of a purposeful availment finding." *Skanda*, 2020 WL 7630687, at *5 (quoting *LocusPoint Networks v. D.T.V.*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *6 (N.D. Cal. Aug. 1, 2014)). In finding no purposeful availment in *Skanda*, the court noted the contract did not include a California choice of law provision, require performance in California, nor "mention California in any other way." *Id.* Here, Plaintiffs' pleadings similarly lack any forum-specific terms; indeed, the only contract terms Plaintiffs allege are Plaintiffs' rates of compensation. This factor weighs against a finding of purposeful availment.

8

### c. Contemplated Future Consequences

The contemplated future consequences of the Oral Agreements, likewise, do not support a finding of purposeful availment. Under this factor, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). In *Burger King*, a Michigan citizen entered into a 20-year contract with Florida-based Burger King to operate a franchise in Michigan. *Id*. at 480. The Supreme Court held that the defendant purposefully availed himself of the laws of Florida, in part because he had "voluntarily" accepted a "long-term" agreement of regulation from Burger King's Florida headquarters. *Id.* at 479–80 (alteration and internal quotation marks omitted).

Here, unlike *Burger King*, Plaintiffs have not shown Defendants contemplated future consequences in California from the Oral Agreements.

First, Plaintiffs assert that Sweeney "made [Carter] well aware of the fact" that Sweeney is a California attorney. (Sweeney Decl. ¶ 18.) However, it is undisputed that Sweeney maintained a New York office and used that address in his correspondence with Carter and Defendants while working for them. (*Id*. ¶ 20, Exs. C–D.) And although Sweeney's email signature notes Sweeney is licensed in California, it does not specify he is licensed *only* in California. (*Id.*) Carter also attests that Sweeney claimed to live in and practice law in New York while working for Carter. (Carter Decl. ¶ 7.) Given that Plaintiffs touted their significant New York connections to Defendants, the record does not support that Defendants contemplated consequences in California. Further, even assuming Carter knew Sweeney was licensed only in California, Plaintiffs specifically disavow the notion that Defendants hired Plaintiffs merely for legal services, (*see* Sweeney Decl. ¶¶ 9, 25), so the forum of Sweeney's license does not support a finding that Defendants purposefully availed themselves of California representation.

Second, Plaintiffs fail to demonstrate that Defendants agreed to any meaningful level of ongoing cooperation with a forum resident, as could indicate continuing obligation. *See LocusPoint*, 2014 WL 3836792, at *6 (finding foreign defendant had contemplated future obligations to California where it entered into a contract with a California plaintiff requiring both parties to "cooperate fully with each other" (alteration omitted)). Here, the Oral Agreements involve a much lesser degree of cooperation. Plaintiffs admit Defendants had little involvement with legal matters; Carter "never once met, spoke to, or otherwise communicated with[] any of his own litigation attorneys." (Sweeney Decl. ¶ 13.) The extent of Defendants' obligations, as alleged, was paying Plaintiffs. Thus, the nature of Defendants' relationship with California is far more "random, fortuitous, [and] attenuated" than the relationships supporting purposeful availment in *LocusPoint* and *Burger King*. *Burger King*, 471 U.S. at 480 (internal quotation marks omitted).

As Plaintiffs have not shown Defendants contemplated future consequences in California, this factor does not weigh in favor of purposeful availment.

        d.     <u>Actual Course of Dealing</u>

The final purposeful availment factor analyzes whether the "quality and nature" of Defendants' relationship with Plaintiffs in California created a substantial connection with the forum. *See id.* The Court finds no such connection here.

The case of *McGlinchy v. Shell Chemical Co.* is instructive. 845 F.2d 802 (9th Cir. 1988). In *McGlinchy*, a California resident and his wholly owned company entered into agreements with overseas defendant Shell International Chemical in exchange for sales commissions. *Id*. at 805. Although the plaintiffs signed the written contract in California and "performed 90% of [their] activities in the Bay Area," the Ninth Circuit found it lacked specific jurisdiction over the defendant. *Id*. at 816 (alteration in original). The contract did not refer to California as the plaintiffs' place of residence or the forum for dispute resolution, nor did it mention reliance on the plaintiffs' California facilities. *Id.* Moreover, the defendant performed no part of the

contract in California. *Id.* As the plaintiffs acted "unilateral[ly]" in the forum, the court held that their actions did not give rise to specific jurisdiction. *Id.* at 816–17.

Like the agreements in *McGlinchy*, the Oral Agreements here do not include California-specific terms. Additionally, like *McGlinchy*, Plaintiffs have not alleged that Defendants performed the Oral Agreements in the forum. *See id.* Sweeney attests that he carried out some 75% of his work pertaining to Carter from California. (Sweeney Decl. ¶ 17.) However, the scope of the Court's purposeful availment inquiry is limited to Defendants' contacts that "proximately result from actions by [Defendants *themselves*]," *Burger King*, 471 U.S. at 475 (emphasis in original); Plaintiffs' unilateral actions are "irrelevant," *Skanda*, 2020 WL 7630687, at *6. Indeed, Defendants' alleged failure to perform evinces a *lack* of activity in the forum. *See Hudson-Munoz, LLC. v. U.S. Waffle Co.*, No. 2:19-cv-01960-ODW (RAOx), 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019) (finding defendant's refusal to perform provisions directed towards California merely showed an absence of activity in, and not a connection with, California).

As Plaintiffs have not alleged any in-forum actions by Defendants to carry out the Oral Agreements, this factor does not weigh in favor of purposeful availment.

Plaintiffs additionally argue that Defendants purposely availed themselves of the privilege of conducting their activities in California by filing fifteen prior lawsuits in the state. (Opp'n 19–20; Sweeney Decl. ¶ 19.) However, to support a finding of specific jurisdiction, the prior litigation must be based on the same transaction or arise out of the same nucleus of operative facts. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863–64 (9th Cir. 2003). All of Carter's prior actions appear to arise out of an entirely different set of facts than this action. As a result, Carter's prior litigation in California does not support a finding of purposeful availment.

Analyzing the Oral Agreements under all four *Burger King* factors, the Court finds that Plaintiffs have failed to show Defendants purposefully availed themselves of the privilege of conducting activities in the forum.

### 2. Arising Out of Defendants' Forum-Related Activities

Even if Plaintiffs had satisfied the requirement of purposeful availment, which they do not, the Court finds that the claims asserted in the litigation do not arise out of Defendants' forum related activities. Courts in the Ninth Circuit analyze this prong under a "but for" causation analysis. *See Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (finding the causation prong satisfied where plaintiff's injury would not have occurred "but for" defendant's conduct directed toward plaintiff in California).[5] Even a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (alterations and internal quotation marks omitted).

Plaintiffs rely on a "single forum state contact" by Defendants that purportedly gave rise to the instant litigation: Carter traveling to Westwood, Los Angeles to meet Sweeney in 2005. (Opp'n 21.) Plaintiffs argue that the entirety of the parties' relationship, and thus the injury from the breached Oral Agreements, would not have occurred but for the Los Angeles meeting.

Plaintiffs' application of the "but for" test is overbroad. "But for" contacts with a forum state "may only be considered for purposes of the jurisdictional analysis if they are sufficiently related to the underlying causes of action"; they "still must have some degree of proximate causation." *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003). Here, Sweeney attests that the parties entered into the alleged 2008 Commissions Agreement upon the creation of Young Money Entertainment, years after the initial meeting in Los Angeles.

---

[5] As specific jurisdiction may be exercised where claims "arise[] out of *or relate[] to*" a defendant's contact with the forum, *Schwarzenegger*, 374 F.3d at 802 (emphasis added), the Supreme Court recently clarified that specific jurisdiction may still be found without strict causality, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (noting that "some relationships will support jurisdiction without a causal showing"). Because Plaintiffs have not shown Defendants purposefully availed themselves of the forum, and because neither party addresses whether the dispute sufficiently "relates to" Defendants' forum contacts, the Court moves forward with a causation analysis.

(Sweeney Decl. ¶ 9.) The Court finds the initial retention of Sweeney is too attenuated from the Oral Agreements to be considered a "but for" cause of Plaintiffs' alleged injuries.

### 3. *Reasonableness*

Plaintiff has not made a prima facie showing of the first two prongs of specific jurisdiction. Consequently, the Court need not reach the issue of reasonableness.

From the foregoing analysis, the Court concludes Plaintiffs have failed to meet their burden to establish personal jurisdiction over Defendants. Without personal jurisdiction, the Court must grant Defendants' Motion and dismiss all claims.

## C. Leave to Amend

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, where "the pleading could not possibly be cured by the allegation of other facts" consistent with the challenged pleading, leave to amend may be denied. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Based on the allegations in Plaintiffs' Complaint and Opposition, the Court finds Plaintiffs cannot demonstrate their claims arise out of or are related to Defendants' contacts in California. As the Court finds amendment would be futile, leave to amend is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion under Rule 12(b)(2). (ECF No. 13.) All claims are **DISMISSED** for lack of personal jurisdiction without leave to amend.

**IT IS SO ORDERED.**

October 12, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**